QUYEN L. TA (SBN 229956)
qta@kslaw.com
MICHAEL L. RESCH (SBN 202909)
mresch@kslaw.com
LIVIA M. KISER (SBN 285411)
lkiser@kslaw.com
SAMUEL R. DIAMANT (SBN 288738)
sdiamant@kslaw.com
**KING & SPALDING LLP**
50 California Street, Suite 3300
San Francisco, CA 94111
Telephone: (415) 318-1200
Facsimile: (415) 318-1300

*Attorneys for Defendants*
Flowers Foods, Inc. and
Dave's Killer Bread, Inc.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| DAVID SWARTZ,<br><br>    Plaintiff,<br><br>    v.<br><br>DAVE'S KILLER BREAD, INC. and FLOWERS FOODS, INC.,<br><br>    Defendants. | Case No. 4:21-cv-10053-YGR<br><br>Honorable Yvonne Gonzalez Rogers<br><br>**DEFENDANTS FLOWERS FOODS, INC.'S AND DAVE'S KILLER BREAD, INC.'S OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**<br><br>Hearing Date:    April 16, 2024<br>Hearing Time:    2:00 pm<br>Courtroom:    Courtroom 1, 4th Floor |

# **TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................ 1

II.   FACTUAL BACKGROUND ............................................................................ 4

      A.   The Evolution Of Plaintiff's Theories In This Case ........................................ 4

      B.   Plaintiff And His Expert, Mr. Weir, Have Failed To Account For
           The Nutrition Label In Two Critical Ways .................................................... 5

      C.   Plaintiff Testified To His Unique Experience With The Products
           At Issue ......................................................................................................... 7

      D.   The Protein Labeling Of The Products Changed Multiple Times
           During The Proposed Class Period ................................................................ 8

      E.   The Science Of Amino Acids: Plaintiff's "Useless Protein"
           Argument Is Wrong ...................................................................................... 9

III.  PLAINTIFF'S CLASS CERTIFICATION MOTION SHOULD BE
      DENIED ........................................................................................................... 11

      A.   Plaintiff Has The Burden To Prove That The Requirements Of
           Rule 23 Have Been Satisfied ....................................................................... 11

      B.   Plaintiff Has Not Met His Burden To Prove That Common Issues
           Predominate .................................................................................................. 12

           1.   Plaintiff Has Not Met His Burden To Show That Damages
                Can Be Calculated On A Class-Wide Basis ..................................... 12

           2.   Plaintiff's Proposed Damages Model Is Tied To The
                Theory That The Court Held Was Preempted ................................... 14

           3.   Plaintiff Has Not Met His Burden To Prove That
                Causation And Injury Can Be Established On A Class-
                Wide Basis ....................................................................................... 15

      C.   Plaintiff Has Not Met His Burden To Prove Typicality .............................. 18

      D.   Plaintiff Has Not Met His Burden To Prove That The Class Is
           Ascertainable ................................................................................................ 20

      E.   Plaintiff Has Not Met His Burden Regarding The Non-Purchased
           Products ........................................................................................................ 23

      F.   Plaintiff's Unlawful Prong Claim Is Preempted Under *Buckman* ............... 25

IV.   CONCLUSION ................................................................................................ 25

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Astiana v. Kashi Co.*,
  291 F.R.D. 493 (S.D. Cal. 2013) ...........................................................................19

5

*Buckman Co. v. Plaintiff's Legal Comm.*,
  531 U.S. 341 (2001)...............................................................................................25

6

7

*Campion v. Old Republic Home Protection Co., Inc.*,
  272 F.R.D. 517 (S.D. Cal. 2011) .....................................................................15, 17

8

9

*Clevenger v. Welch Foods Inc.*,
  342 F.R.D. 446 (C.D. Cal. 2022) ...........................................................................19

10

*Comcast Corp. v. Behrend*,
  569 U.S. 27 (2013)......................................................................................... *passim*

11

12

*In Re ConAgra Foods. Inc.*,
  302 F.R.D. 537 (C.D. Cal. 2014) ...........................................................................13

13

14

*Hanon v. Dataproducts Corp.*,
  976 F.2d 497 (9th Cir. 1992) .....................................................................18, 19, 20

15

16

*Jones v. ConAgra*,
  2014 WL 2702726 (N.D. Cal. June 13, 2014) .......................................................22

17

*Kosta v. Del Monte Foods, Inc.*,
  308 F.R.D. 217 (N.D. Cal. 2015)................................................................20, 21, 22

18

19

*Krommenhock v. Post Foods, LLC*,
  334 F.R.D. 552 (N.D. Cal. 2020)............................................................................19

20

*Kwikset Corp. v. Superior Ct.*,
  51 Cal. 4th 310 (2011) ........................................................................................2, 15

21

22

*McKinnon v. Dollar Thrifty Automotive Group, Inc.*,
  2016 WL 6582045 (N.D. Cal. Nov. 7, 2016) .........................................................19

23

24

*McMorrow v. Mondelez Int'l*, Inc.,
  2020 WL 1157191 (S.D. Cal. Mar. 9, 2020) ..........................................................13

25

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
  31 F.4th 651 (9th Cir. 2022) ......................................................................11, 12, 15

26

27

*Perez v. Nidek Co.*,
  711 F.3d 1109 (9th Cir. 2013) .............................................................................4, 25

28

*In Re PFA Insurance Mktg. Litig.*,
2021 WL 5994908 (N.D. Cal. Nov 3, 2021) ...................................................16

*In re POM Wonderful LLC*,
2014 WL 1225184 (C.D. Cal. Mar. 25, 2014) ...............................................22

*Roffman v. Perfect Bar, LLC*,
2022 WL 4021714 (N.D. Cal., Sept. 2, 2022) (Corley, J.) ...........................18

*Roffman v. Perfect Bar, LLC*,
2023 WL 174961 (N.D. Cal. Jan. 12, 2023) ..................................................17

*In re Seagate Tech. LLC*,
326 F.R.D. 223 (N.D. Cal. 2018) ..................................................................12

*Stotz v. Mophie, Inc.*,
2017 WL 1106104 (C.D. Cal. Feb. 27, 2017)................................................24

*Turcios v. Carma Labs., Inc.*,
296 F.R.D. 638 (C.D. Cal. 2014) ..................................................................18

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011)........................................................................................11

*Weiner v. The Dannon Co.*,
255 F.R.D. 658 (C.D. Cal. 2009 ...............................................................24, 25

*Weiner v. Snapple Beverage Corp.*,
2010 WL 3119452 (S.D.N.Y. Aug. 5, 2010) ............................................ 12-13

*Wolin v. Jaguar Land Rover N. Am., LLC*,
617 F.3d 1168 (9th Cir. 2010) ......................................................................18

*Wolph v. Acer Am. Corp.*,
272 F.R.D. 477 (N.D. Cal. 2011)...................................................................20

*Xavier v. Philip Morris USA Inc.*,
787 F. Supp. 2d 1075 (N.D. Cal. 2011) ........................................................20

*Young v. Cree, Inc.*,
No. 4:17-CV-06252-YGR, 2021 WL 292549 (N.D. Cal. Jan. 28, 2021) ...............12

**Statutes**

Cal. Bus. & Prof. Code § 17204 .......................................................................2, 15

21 C.F.R. § 101.9(c)(7).........................................................................................6

Fed. R. Civ. P. § 23(a) ............................................................................... *passim*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Fed. R. Civ. P. § 23(a)(2) ..................................................................................................... 12

Fed. R. Civ. P. § 23(a)(3) ............................................................................................ 3, 18, 24

Fed. R. Civ. P. § 23(b)(3) ................................................................................................. *passim*

## TABLE OF REFERENCES

| Abbreviation | Description |
|---|---|
| dos Santos Decl. | Declaration of Joao dos Santos attached as **Exhibit 5** to the supporting Declaration of Samuel R. Diamant |
| Jan. 7 Text Msg. | January 7, 2022 Text Message Exchange Between Michael Smith and David Swartz attached as **Exhibit 7** to the supporting Declaration of Samuel R. Diamant |
| Kivetz Decl. | Declaration of Dr. Ran Kivetz attached as **Exhibit 4** to the supporting Declaration of Samuel R. Diamant |
| Letchinger Decl. | Declaration of Dan Letchinger attached as **Exhibit 3** to the supporting Declaration of Samuel R. Diamant |
| Safier Email | Email from Gutride Safier to David Swartz attached as **Exhibit 8** to the supporting Declaration of Samuel R. Diamant |
| Swartz Tr. | Excerpts of Transcript of David Swartz's January 25, 2024 Deposition attached as **Exhibit 1** to the supporting Declaration of Samuel R. Diamant |
| Wallingford Decl. | Declaration of Dr. John Wallingford attached as **Exhibit 6** to the supporting Declaration of Samuel R. Diamant |
| Weir Decl. | Declaration of Colin B. Weir filed in support of Plaintiff's Class Certification Motion (ECF Nos. 72-49, 73-13) |
| Weir Tr. | Excerpts of Transcript of Colin B. Weir's January 23, 2024 Deposition attached as **Exhibit 2** to the supporting Declaration of Samuel R. Diamant |

## I.    INTRODUCTION

Plaintiff David Swartz filed this lawsuit alleging that defendants deceived consumers and violated 21 C.F.R. § 101.9(c)(7) by failing to include a % Daily Value ("%DV") for protein in the Nutrition Facts Panel ("nutrition label") on some of their product labels. Recognizing the challenges he faces in seeking and maintaining class certification, plaintiff embarked on two strategies designed to ease his burden on this motion: (1) Plaintiff abandoned class treatment for virtually all of his claims and now "seeks to certify for class treatment only his UCL unlawful prong claim," Motion for Class Certification ("Mtn") at 1:21; (2) Plaintiff focused exclusively on defendants' front of pack ("front label") protein content statement (*e.g.*, "5g Protein") and decided to jettison his claims based on the %DV entirely. Both gambits fail, and plaintiff's class certification motion should be denied for numerous, independent reasons.

***First***, plaintiff's motion should be denied under *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013) because he has not met his burden to prove common class-wide damages under Rule 23(b)(3). As *Comcast* explains, the "first step in a damages study is the translation of the legal theory of the harmful event into an analysis of the economic impact of that event." *Id*. at 38. Here, plaintiff relies on the declaration of an expert, Colin Weir, to propose a damages model that is disconnected from the alleged unlawful conduct.

- **Mr. Weir only proposes to identify purported "damages" based on the protein content statement—*i.e.*, "5g Protein"—without reference to its location on the label.** Mr. Weir apparently tried to design his conjoint analysis to ascertain the price premium, if any, attributable to the front label protein statement. Mr. Weir's survey, however, does ***not*** test the front label protein statement—it simply lists "5g Protein" as one bullet in a short list of "attributes" that would be seen by survey participants, no matter where it is located on the label. *See* Weir Decl. ¶¶ 53-54. ***But that precise protein statement is also required to be included in the nutrition label***—and Mr. Weir's study contains no mention of the location of the protein content statement. Because the study does not distinguish between the statement "5g Protein" on the front label, on the one hand, and in the nutrition label, on the other, Mr. Weir's study necessarily will attribute a price premium to defendants' ***lawful statement*** of the amount of protein in their products. Such an approach not

only violates the rule in *Comcast*, but it also ignores this Court's ruling that such a general challenge to the products' protein content is preempted. *See* ECF No. 34 at 4-8.

- **Mr. Weir's intention to study the front label protein statement is flawed anyway.** Even if the study were designed to assess the price premium associated only with the front label protein statement (which it is not), it still fails under *Comcast*. Under plaintiff's unlawful theory, the same labels would be lawful if defendants simply added a %DV for protein and maintained the front label protein statement. Mr. Weir, however, fails to consider the "but for" world where the %DV is added to the nutrition label without any other label changes. To align with plaintiff's unlawful theory, any conjoint study must address the %DV on the nutrition label; otherwise, the result will ***not*** reflect damages that are "as a result of" the alleged labeling violation. *See* ECF No. 46 (Order Denying Motion to Dismiss) at 4:8-9 ("The claims alleged in the amended complaint rely on the relationship between the front label and the nutrition label."). During his deposition, Mr. Weir conceded that he is not measuring the price difference, if any, between the actual label and a label with the %DV. Weir Tr. 94:6-7; 95:11-19.

Having failed to propose a damages model that complies with plaintiff's allegations and the theory of his case, plaintiff's motion should be denied under Rule 23(b)(3) and under *Comcast*.[1]

***Second***, plaintiff has failed to satisfy his burden to prove predominance under Rule 23(b)(3) for another reason: he has not provided any common, class-wide evidence of causation and injury. Hoping to leverage his unlawful prong strategy, plaintiff erroneously argues that he "has no obligation to prove deception, reliance, or materiality in any form." Mtn. 13:11-12. But plaintiff never addresses, let alone proves, class-wide causation as required under the UCL —*i.e.*, injury ***"as a result"*** of the alleged unlawful conduct. *See* Cal. Bus. & Prof. Code § 17204; *Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 322 (2011). Without such a class-wide causal link between the alleged unlawful conduct and any harm, the motion must be denied.

---

[1] Mr. Weir's proposed conjoint analysis fails to comply with numerous well-established scientific requirements that apply to such studies and, therefore, cannot support class certification in any event, as set forth in defendants' concurrently filed motion to strike Mr. Weir's declaration. ECF No. 89.

1    ***Third***, plaintiff's recent deposition testimony demonstrates that he cannot meet his burden

2    to establish typicality under Rule 23(a)(3). More specifically, plaintiff's testimony establishes that:

3    ████████████████████████████████████████████████████████████████

4    ██████████████████████████████████████████ Jan. 7 Text Msg; Swartz Tr. 62:21-

5    25; 64:1-66:4.

6    ████████████████████████████████████████████████████████████████

7    ██████████████████████████████████████████████████████ *Id.* at

8    147:4-9; 159:8-17; 167:17-22; 171:12-172:1.

9    ████████████████████████████████████████████████████████████████

10   ████████████████████████████████████████████████████████████████

11   ███████ *Id.* at 113:24-25; 152:19; 99:17-100:1.

12   • ██████████████████████████████████████████████████████████████

13   ████████████████████████████████████████████████████████████████

14   ████████ *Id.* at 99:17-100:1.

15       Each one of these admissions by itself constitutes a defense that is unique to plaintiff, which

16   defeats typicality. Taken together, typicality is not a close question.

17       ***Fourth***, the proposed class is not ascertainable given changes to the label during the class

18   period. It is undisputed that the labels changed during the class period (defined by plaintiff as

19   December 29, 2017 to the present). *See* Notice of Motion at ii; ECF No. 37 (First Amended

20   Complaint ("FAC")) ¶ 68; Letchinger Decl. ¶¶ 11-13. At the start of the class period, some of the

21   labels included a %DV (which plaintiffs argue was calculated incorrectly); toward the end of the

22   class period, the labels also included a %DV. See *id.* It is also undisputed that there is no way of

23   knowing when the label changes hit the shelves. *Id.* at ¶¶ 9-10. New labels would have been placed

24   on store shelves at different times, depending on the store, the product, and potentially the

25   geographic region within California. *Id.* at ¶ 10. As such, the proposed class includes individuals

26   who would have purchased bread products that had different labels—*i.e.*, some with %DV and

27   some without %DV. This also precludes certification of the class.

28

***Fifth***, plaintiff has not provided evidence supporting the inclusion of bagels, buns, and non-purchased bread products. Plaintiff seeks certification of a class that includes 4 bagel products, 2 bun products, 4 thin-sliced bread products, and 5 other bread products. *See* ECF No. 37 (FAC), Ex. B. Mr. Weir's declaration does not mention buns at all and, not surprisingly, confirms that the conjoint analysis proposed in his declaration would ***not*** be used for bagels and thin-sliced bread products. *See* Weir Decl. at p. 27, n.47. Mr. Weir references designing additional studies in the future (*id*.), but the time for such work has passed. Defendants and the Court needed to have had the opportunity to address the adequacy of any such studies as part of this motion. This provides an independent ground to deny the motion as to the bagels, buns, and thin-sliced bread products.

***Sixth***, plaintiff's new, unique strategy to pursue only an unlawful claim based solely on a labeling violation walks straight into *Buckman* preemption. Plaintiff is now clearly suing "*because*" the conduct violates the FDCA (through the Sherman Law) and certainly is not pursuing a theory based on traditional state tort law predating the FDCA. *See Perez v. Nidek Co.*, 711 F.3d 1109, 1120 (9th Cir. 2013).

For all these reasons, plaintiff's class certification motion should be denied.

## II.    FACTUAL BACKGROUND

### A.    The Evolution Of Plaintiff's Theories In This Case

As explained in the Court's May 20, 2022 Order on defendants' first motion to dismiss, plaintiff's original complaint was based on two theories: (1) defendants allegedly misled consumers into believing that their products contain more digestible protein than they do by representing total protein on their product labels, and (2) defendants allegedly fail to include the %DV for protein in the nutrition label, as required by FDA regulations.[2] *See* ECF No. 34 at 4.

The Court concluded that plaintiff's first theory is preempted given that FDA regulations expressly allow defendants to identify the total protein on the product labels. *Id*. at 8. In light of its preemption ruling, the Court dismissed with prejudice "plaintiff's claims regarding statements

---

[2] Defendants dispute plaintiff's allegation that their labels were unlawful and believe it is based on a misinterpretation of the FDA protein labeling regulations. Defendants will not argue the point here, however, given that such a merits-based issue is better addressed elsewhere.

defendants make about protein on the front label of their products." *Id*. at 1:24-25.

The Court also determined that plaintiff had "not met his burden to show standing" for the second theory:

> Plaintiff does not allege that he read or relied upon the nutrition labels prior to purchasing defendants' products. As such, he has failed to show that his injury is fairly traceable to the alleged misrepresentation (defendants' omission of %DV from the nutrition label) or that requiring defendants to include %DV on the nutrition label would redress his alleged confusion over the protein content of the products he purchased.

*Id*. at 9 (citations omitted). The Court dismissed with leave to amend "plaintiff's claims based on defendants' omission of %DV protein on nutrition labels." *Id*. at 10.

On June 17, 2022, plaintiff filed the FAC. ECF No. 37. The Court described the FAC as pursuing two theories: (1) the product labels are allegedly unlawful because they do not include the %DV for protein, and (2) because the nutrition label does not include %DV protein, the front label protein statement is allegedly unlawful and misleading. ECF No. 46 at 2-3 (citations omitted).

The Court denied defendants' motion to dismiss the FAC, finding that plaintiff had addressed the standing deficiencies in the original complaint by pleading allegations that he read the nutrition label and "[h]ad it included %DV, he would have understood that there were less than five grams of usable protein per serving and would have either not purchased or spent less on the product." *Id*. at 3.

Now, in his class certification motion, plaintiff "seeks to certify for class treatment only his UCL unlawful prong claim." Mtn. at 1:21. In doing so, plaintiff and his expert, Mr. Weir, have focused only on the protein statement on the front label, ignoring that the basis for the unlawful prong claim is the allegedly missing %DV in the nutrition label. As described below, plaintiff and his expert may not disregard this Court's prior order and law of the case to pursue the preempted claim that relies solely on the front label. After all, as the Court explained, it is "the relationship" between the front label and nutrition label that forms the basis for his claims. ECF No. 46 at 4.

**B.    Plaintiff And His Expert, Mr. Weir, Have Failed To Account For The Nutrition Label In Two Critical Ways**

As described above, plaintiff and his expert, Mr. Weir, have now focused exclusively on

the front label and ignored the nutrition label altogether. This approach is fatally flawed in two important ways: (1) the approach ignores the %DV—*i.e.*, the very labeling omission at the core of the case, and (2) the approach ignores that the same protein content statement (*e.g.*, "5g Protein") will appear lawfully in the nutrition label, even if the front label protein statement were removed.

Despite that the %DV for protein is at the heart of his claim, plaintiff ignores the %DV and focuses his class certification arguments solely on front label protein statement on the products, such as "5g protein." *See, e.g.*, Mtn. 10:27-28 ("Plaintiff's claim is that Defendants' *front label* was unlawful and the protein claim should never have been present") (emphasis added); *see also id.* 1:19-20; 3:16-17; 4:9-10,  & 15-16, 5:3-5. Plaintiff's selected approach on damages is also limited to the front label only. *See id.* 2:3-4 ("Plaintiff's model will isolate the price premium attributable to the *front label* protein claims") (emphasis added). Similarly, Mr. Weir states that he will attempt to calculate damages from the "Protein Claim" defined as the "prominently displayed labels claiming that the Products contained a specific level of protein per serving" (Weir Decl. ¶¶ 5, 11).

In pursing the front-label theory only, plaintiff provides no evidence whatsoever (let alone common, class-wide evidence) regarding the injury that was allegedly suffered "as a result of" the %DV that he claims was omitted from the nutrition label. Mr. Weir also does not propose to calculate any price premium based on the lack of a %DV. Weir Tr. 94:6-7; 95:11-19. In short, plaintiff made the strategic decision to limit his class certification motion to the purported impact of the front label protein content statement, without any reference to the %DV, which is the very claim that the Court previously dismissed with prejudice as expressly preempted.

At the same time, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Swartz Tr. 151:1-10. But neither he nor Mr. Weir account for the indisputably lawful protein statement in the nutrition label. As explained in the motion to strike Mr. Weir, for example, Mr. Weir's conjoint survey simply shows participants a "5g Protein" statement without any reference to its location on the package. Weir Decl. ¶ 54; *see also* Weir Tr. 218:5-219:2. As such, Mr. Weir has not isolated the challenged conduct, and the nutrition label's

1   protein statement is necessarily included in his price premium analysis—even though there is no

2   dispute that the nutrition label's protein content statement is lawful and could not have caused

3   "damage" to anyone.

4       **C.**    **Plaintiff Testified To His Unique Experience With The Products At Issue**

5       During his deposition, plaintiff made a series of extraordinary admissions that undermine

6   the allegations in his pleading and create a set of claims and defenses that are ***uniquely particular***

7   ***to him***.



8 · 
9 
10   Swartz Tr. 62:21-25; 64:1-66:4.
11 · 
12   *Id*. at 147:4-9; 159:8-17; 167:17-22.
13 · 
14   *Id*. at 171:12-172:1.
15 · 
16   *Id*. at 171:12-172:8, 181:3-18.
17 · 
18   *Id*. at 105:10-24, 203:22-204:5, 204:14-205:3.
19 ·   *Id*.  at
20   113:24-25, 152:19; *see also* 99:17-100:1, 158:8.
21 · 
22   *See, e.g., id.* at 84:19-85:3.
23 · 
24   *Id*. at 117:16-118:11.
25 · 
26   *Id*. at 151:1-10.
27 · 

28



*Id*. at 184:23-195:23; 191:8-20

• 

*Id*. at 162:16-163:13; 183:6-184:11; Safier Email.

By any measure, plaintiff's experience and conduct was not "typical."[3]

**D.    The Protein Labeling Of The Products Changed Multiple Times During The Proposed Class Period**

At various times during the class period, labels on the products at issue changed and, on top of that, shelving practices in stores make it impossible to identify which products containing a %DV appeared on which store shelves during which periods of time. Defendants have produced packaging files of the labels of the fifteen products. Letchinger Decl. ¶ 11. These packaging files reflect the approved packaging designs of particular products. *See id*. at ¶¶ 3-5. They also indicate approved labeling changes to the products, as well as the dates in which the designs were approved. *Id*. The packaging files for the relevant products indicate that during the first two years of the class period, labels on seven of the fifteen products were approved with a %DV in the nutrition label. *Id*. at ¶ 12. The labels on all fifteen products changed again later in the class period to include the %DV in the nutrition label. *Id*. at ¶ 13.

Most significantly for the purposes of this motion, there is no way to determine when any of the label changes actually appeared in stores or were seen by consumers. *Id*. at ¶¶ 9-10. While the dates provided in the packaging files indicate when a label was *approved*, this date does not reflect when the labeling change went *into effect and would be seen by consumers*. As is common in the food industry, there are numerous steps after a manufacturer approves a label before a consumer will see the product with that particular label. *See id*. at ¶¶ 5-8. The manufacturer first depletes its existing packaging inventory; new packaging inventory must be ordered and printed

---

[3] In light of plaintiff's admissions, defendants have concurrently filed a Rule 12(b)(1) motion to dismiss for lack of standing, which is scheduled to be heard on March 26, 2024.

by the packaging supplier; the new packaging must be delivered to the manufacturer and then used in the manufacturing of the product; the inventory of the product with the new packaging must be shipped to retailers and distributors; and finally, the retailers must place it on the shelves for consumers to see. *See id.* at ¶¶ 6-8. The timing of this last step in particular is neither known to Flowers nor capable of being known. *See id.* at ¶¶ 9-10. In addition, it will vary greatly by retailer and even within the different stores and geographic areas within California of a single retailer. *Id.* at ¶¶ 8, 10.

In short, there are no records reflecting when a particular product label change made it to the store shelves; nor could there be, as there is no way to track that information. *Id.* at ¶ 9. The newly labeled products will appear at different stores at different times, depending on a multitude of factors outside of defendants' control. *Id.* at ¶¶ 8, 10. Thus, on a given day during the class period, some customers may have purchased a product with a %DV on the label while other customers purchased the same product without a %DV.

### E.  The Science Of Amino Acids: Plaintiff's "Useless Protein" Argument Is Wrong

Plaintiff has alleged and argued that "*two thirds* of the protein advertised in [the] products is *functionally useless for human nutrition*." *See, e.g.*, Mtn. at 1 (emphasis in original). As explained in the declaration of Dr. John Wallingford—a nutritionist with a Ph.D. in Metabolism and Human Nutrition from MIT who served as a Nutritionist and Senior Scientist at FDA's Center for Food Safety and Applied Nutrition (CFSAN)—this contention is false. In particular, the usefulness of protein in the bread (or any food) is highly dependent on the individual consuming the food (*e.g.*, weight, health, activity level) as well as the other foods consumed by the individual, which are all highly individualized issues. What is more, the individual "usefulness" of protein content can be far greater than plaintiff would have the Court believe. *See generally* Wallingford Decl.

More specifically, plaintiff's counsel[4] argues that the difference between the amount of protein based on a product's Protein Digestibility Corrected Amino Acid Score ("PDCAAS") and the amount of protein identified from nitrogen testing performed on that same product is not "nutritionally valuable" protein. *See id*. By way of example, plaintiff's counsel believes if a product has 5 grams of protein based on its PDCAAS score, and the amount of protein derived from nitrogen testing is 7 grams, then (according to plaintiff's counsel), the difference of 2 grams of protein is purportedly worthless. As Dr. Wallingford explains, however, plaintiff's counsel misunderstands the nutritional value of amino acids.

Protein is made up of amino acids, all of which serve different functions in the body. Nine of these amino acids are called "essential amino acids" because they cannot be produced independently by one's body and can only be obtained through the consumption of food. *Id*. at ¶ 20. These essential amino acids taken together can synthesize into protein to the extent that they are all meeting certain values. *Id*. at ¶ 21. For this reason, PDCAAS testing evaluates all nine essential amino acids but only values them up to the lowest scoring amino acid (known as the limiting amino acid). *See id*. at ¶¶ 25, 36. This means that PDCAAS finds *all* essential amino acids in a food to be only as effective as the *least-performing* amino acid, or the one that is present in the lowest quantity relative to that particular amino acid's reference value. *Id*.

With this background in mind, Dr. Wallingford explains that plaintiff's assumption—*i.e.*, anything not captured by PDCAAS is "useless"—is wrong for at least two reasons:

***First***, when the bread at issue is consumed with other proteins (as plaintiff testified he and his family did and almost all consumers do), more protein ***from the bread*** is unlocked. *Id*. at ¶¶ 31-38. The limiting amino acid in the bread is lysine. *Id*. at ¶ 30. This means that no matter how high the other 8 essential amino acids may be, the PDCAAS method caps the protein from the bread based on its lysine content. When the bread is consumed with another food that contains lysine, however, it will allow for the use of the other 8 essential amino acids in the bread. For example,

---

[4] ████████████████████████████████████████████████ Swartz Tr. 165:3-166:4. ██████████████████

Dr. Wallingford shows how a ham and cheese sandwich made with Dave's Killer Bread 21 Whole Grains and Seeds delivers more protein ***from the bread*** than the grams identified based on the PDCAAS testing of the bread. *Id*. ¶ 37. Simply put, the nutritional value of protein is highly dependent on the meal—a consumer who eats the bread with any other protein "unlocks" more of the protein from the bread than is reflected through its PDCAAS score.

 ***Second***, the scoring pattern for PDCAAS is based on the essential amino acid requirements of a young child. *See id*. at ¶¶ 25-30. But protein needs vary by person and largely depend on age, weight, calorie intake, and activity level. As a result, the PDCAAS score alone cannot determine what is "useful" for an entire class of people. The analysis becomes even more complex and individualized when evaluated against the FDA's Daily Value for protein, which is based on a 2,000-calorie diet and includes other assumptions that will vary significantly by individual.

## III. PLAINTIFF'S CLASS CERTIFICATION MOTION SHOULD BE DENIED

### A. Plaintiff Has The Burden To Prove That The Requirements Of Rule 23 Have Been Satisfied

 The class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (quotation marks omitted). Departure from the usual rule requires a putative class representative to "affirmatively demonstrate" that he or she has satisfied all requirements of Rule 23. *Comcast*, 569 U.S. at 33. "Rule 23 does not set forth a mere pleading standard." *Dukes*, 564 U.S. at 350. Rather, plaintiffs "wishing to proceed through a class action must actually prove— not simply plead—that their proposed class satisfies each requirement of Rule 23." *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 664 (9th Cir. 2022) (internal quotations omitted). Class certification is proper "only if the trial court is satisfied, after rigorous analysis" that the requirements of Rule 23 have been satisfied, an analysis that "will frequently entail overlap with the merits of plaintiff's underlying claim." *Comcast*, 569 U.S. at 33- 34 (internal quotation marks omitted).

 Plaintiff must demonstrate that all four requirements of Rule 23(a) are satisfied: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or

fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). "Further, although not explicitly discussed in the Rule, 'an implied prerequisite to class certification is that the class must be sufficiently definite; the party seeking certification must demonstrate that an identifiable and ascertainable class exists.'" *In re Seagate Tech. LLC*, 326 F.R.D. 223, 239 (N.D. Cal. 2018) (citation omitted). Plaintiff must also establish "through evidentiary proof at least one of the provisions of Rule 23(b)." *Comcast*, 569 U.S. at 33. Because plaintiff seeks certification under Rule 23(b)(3), he must prove that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Olean*, 31 F.4th at 663-64. Plaintiff cannot meet his burden, and his motion should be denied.

### B.     Plaintiff Has Not Met His Burden To Prove That Common Issues Predominate

Plaintiff has failed to meet his burden under Rule 23(b)(3) to show that common issues predominate for three reasons, each of which is an independent ground to deny this motion.[5]

#### 1.     Plaintiff Has Not Met His Burden To Show That Damages Can Be Calculated On A Class-Wide Basis

As a threshold matter, plaintiff's purported class-wide damages model is set forth exclusively in the declaration of Mr. Colin Weir. For the reasons set forth in defendants' motion to strike Mr. Weir's declaration, the declaration should not be considered in connection with this motion. ECF No. 89. Without the declaration, plaintiff's class certification motion lacks supporting evidence regarding damages and should be denied. *See Young v. Cree, Inc.*, No. 4:17-CV-06252-YGR, 2021 WL 292549, at *14 (N.D. Cal. Jan. 28, 2021) (Gonzalez Rogers, J.) ("Without such [expert] evidence, [plaintiff] does not show commonality in support of class certification."); *see also Weiner v. Snapple Beverage Corp.*, 2010 WL 3119452, at *10 (S.D.N.Y. Aug. 5, 2010)

---

[5] Defendants incorporate Rule 23(a)(2) commonality issues into their discussion of predominance under Rule 23(b)(3).

1  ("Without [the expert's] testimony, plaintiffs offer no evidence that a suitable methodology is

2  available to prove the elements of causation and actual injury on a class-wide basis").[6]

3       Separately, the motion should be denied for its substantive deficiencies under *Comcast*. In

4  *Comcast*, the Court held that "a model purporting to serve as evidence of damages in this class

5  action must measure *only those damages attributable to that theory*." *Comcast*, 569 U.S. at 35

6  (emphasis added). Here, plaintiff has **not** proposed a model that measures damages solely as a

7  result of the alleged unlawful conduct.

8       *First*, plaintiff's proposed damages model does not isolate the alleged "unlawful" aspect

9  on the packaging and, therefore, will calculate any price premium based, in part, on the "lawful"

10  (*i.e.*, FDA required) protein statement in the nutrition label. Despite the fact that the total grams of

11  protein will *always* appear in at least one place (the nutrition label) on the product packaging, Mr.

12  Weir proposed to study the impact of the statement "5g Protein" without any reference whatsoever

13  to the location of the statement. Weir Tr. 83:8-16; 265:24-3.

14       Based on this flawed methodology, Mr. Weir will never be able to calculate any price

15  premium that is solely attributable to plaintiff's theory that the front label statement is "unlawful."

16  In other words, any "damages" that he later calculates will not distinguish between the impact of

17  the legally required statement of the total grams of protein in the nutrition label. Thus, Mr. Weir's

18  study does not (and cannot) calculate "only those damages attributable" to plaintiff's theory as

19  *Comcast* requires. Mr. Weir's first *Comcast* mismatch is described in detail in the motion to strike

20  (ECF No. 89), as well as the rebuttal expert declarations of Dr. Ran Kivetz (an award-winning

21

22  _____

[6] In at least two of Mr. Weir's prior engagements, courts denied certification motions after

23  striking his declaration for failing to satisfy *Comcast* requirements. *See In Re ConAgra Foods*.

*Inc.,* 302 F.R.D. 537, 578-79 (C.D. Cal. 2014) (Morrow, J.) ("Under Comcast, therefore, Weir

24  must be able to isolate the price premium associated with misleading consumers. It does not

appear from his declaration and deposition testimony that he intends to do so . . ."); *McMorrow*

25  *v. Mondelez Int'l*, Inc., 2020 WL 1157191, at *1, n. 2 (S.D. Cal. Mar. 9, 2020) (Bashant, J.)

("Plaintiffs' damages model, presented through Dennis and Weir, does not measure only the

26  damages attributable to their liability theory . . . [their] opinions and testimony are therefore not

relevant."). While those courts denied class certification without prejudice, Mr. Weir cannot cure

27  the foundational defects in his declaration in this case. As such, he should not be given an

opportunity to amend his proposed damages approach.

28

professor at Columbia University Business School) and Mr. Joao dos Santos (an economist with over 25 years of experience in these matters).

**Second**, there is another *Comcast* mismatch in plaintiff's proposed damages model. Mr. Weir does not seek to identify whether there was a price premium as a result of the failure to include the %DV for protein in the nutrition label (*i.e.*, the alleged "unlawful" omission). *See* Weir Tr. 94:6-7; 95:11-19. Under plaintiff's theory, however, the front label statement is only purportedly "unlawful" due to the lack of the %DV for protein on the back which, by all accounts, Mr. Weir has not considered. Such an approach fails under *Comcast*, because under plaintiff's theory defendants could lawfully keep the same front label if they added the %DV for protein. Without testing the impact of the %DV, Mr. Weir's analysis necessarily will not isolate the damages as a result of the alleged unlawful conduct.

Because Mr. Weir has not proposed to study the impact of the omitted %DV at all, he provides no "translation of the legal theory of the harmful event into an analysis of the economic impact of that event." *Comcast*, 569 U.S. at 38. Put another way, plaintiff has not even attempted to quantify the impact of the allegedly omitted %DV for protein which is the basis for his "unlawful" claim. Plaintiff therefore "failed to measure damages resulting from the particular . . . injury on which . . . liability in this action is premised." *Id.* at 36. Further explanation of this second *Comcast* mismatch is also included in the motion to strike and rebuttal expert declarations.

### 2. Plaintiff's Proposed Damages Model Is Tied To The Theory That The Court Held Was Preempted

Independent of the *Comcast* deficiency, by only studying the front label protein statement (without any attention to the %DV or the nutrition label), plaintiff's proposed damages model reflects the same theory that the Court has already held is preempted. The Court previously dismissed with prejudice "claims regarding statements defendants make about protein on the front label of their products," and dismissed with leave to amend "claims regarding defendants' omission of a [%DV for] protein from nutrition labels." ECF No. 34 at 1-2. As noted in the Court's subsequent order, plaintiff's claims in the FAC "rely on the relationship between the front label and the nutrition label." ECF No. 46 at 4. This "relationship" is not measured *at all* by plaintiff's

proposed damages model, which ignores the %DV for protein and the protein content statement in the nutrition label. Stated differently, there is no distinction between the study proposed in Mr. Weir's declaration and the one that would be proposed based on the preempted theory. Such an end around the Court's preemption ruling is improper.

### 3. Plaintiff Has Not Met His Burden To Prove That Causation And Injury Can Be Established On A Class-Wide Basis

Plaintiff has failed to meet his predominance burden under Rule 23(b)(3) for the independent reason that he has failed to establish a "causal link between [defendants'] alleged unlawful business practices and any harm suffered by class members can [] be established on a class-wide basis." *See Campion v. Old Republic Home Protection Co., Inc.*, 272 F.R.D. 517, 532-33 (S.D. Cal. 2011) (denying class certification of UCL unlawful prong claim for failure to prove causation on a class-wide basis). Significantly, plaintiff does not argue otherwise in his motion; rather, he seems to suggest that he has no burden to show causation on a class-wide basis because he is only pursuing an unlawful prong claim. Plaintiff is wrong.

As plaintiff recognizes, "considering whether 'questions of law or fact common to class members predominate' begins, of course, with the elements of the underlying cause of action." Mtn. at 12 (citing *Olean*, 31 F.4th at 665). There can be no dispute that a claim under the UCL's unlawful prong claim requires "injury in fact and . . . lost money or property *as a result* of the unfair competition." Cal. Bus. & Prof. Code § 17204 (emphasis added). This requires plaintiff to "(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury*, and (2) show that that economic injury was the result of, i.e., *caused by*, the unfair business practice of false advertising that is the gravamen of the claim." *Kwikset*, 51 Cal. 4th at 322 (emphasis in original). Plaintiff does not even address these causation and injury elements in his motion.

To be sure, plaintiff argues that he "has no obligation to prove deception, reliance, or materiality in any form, let alone through common proof." Mtn. at 13:11-12. Whatever plaintiff may mean by this argument, any suggestion that courts have removed the causation and injury elements from the UCL for unlawful prong claims does not withstand scrutiny. There is certainly

1  no suggestion in any of the decisions cited by plaintiff that a UCL unlawful prong claim somehow

2  avoids the need to prove injury "as a result of" the unlawful conduct.

3       Plaintiff's reliance on this Court's decision in *In re PFA Insurance Marketing Litigation*

4  illustrates the point. *See* Mtn. at 10, 13-14. There, plaintiffs joined the Premier Financial Alliance

5  (PFA) and purchased life insurance policies based on the potential to succeed at PFA by recruiting

6  and selling policies to other individuals. *In Re PFA Insurance Mktg. Litig.*, 2021 WL 5994908, at

7  *1 (N.D. Cal. Nov 3, 2021). Plaintiffs sought recission under the UCL's unlawful prong based on

8  alleged predicate violations of California's Endless Chain Scheme Law ("ECL"). *Id* at *13. After

9  a careful review of the ECL, the Court concluded that plaintiffs had satisfied the predominance

10  requirement under Rule 23(b)(3) and rejected defendants' argument that individual questions

11  regarding exposure and reliance predominate. *Id.* at *14-17.

12       In ruling that exposure and reliance are not elements of the UCL and did not predominate

13  based on the facts of that case (*id.*), the Court plainly did not intend to suggest that the "as a result

14  of" causation language in the UCL could be ignored. Indeed, the decision does not even mention

15  the UCL's "as a result of" language, and there is nothing in the Court's ruling that allows plaintiff

16  to avoid his burden to satisfy the causation element under the UCL with common, class-wide

17  evidence.[7]

18       In short, plaintiff must "connect the dots" on a class-wide basis between the alleged

19  unlawful conduct and the alleged injury. He has failed to do so.

20       Relying on his erroneous belief that his unlawful claim is not subject to the "as a result of"

21  causation element in the UCL, plaintiff never submits common, class-wide evidence to prove

22

23      [7] Further, it is not surprising that the Court in *In re PFA* concluded that the UCL analysis would

24  predominate over causation issues given the obvious injury that would flow from the alleged
   Ponzi scheme and the straightforward recission relief requested by plaintiffs. In stark contrast,

25  the "as a result of" causation here is neither clear nor established. Plaintiff is pursuing a price
   premium theory of damages based on an alleged technical violation of FDA's regulatory

26  framework—*i.e.*, nothing like the injury resulting from a Ponzi scheme. Indeed, ████████

27  ████████████████████████████████████████████████████████████████████████████

28      Swartz Tr. 113:24-25, 152:19; *see also id.* at 99:17-100:1, 158:8.

causation and injury. Instead, his predominance analysis jumps straight from "unlawfulness" (Mtn. at 14) to discussing the quantification of damages (Mtn. at 17). In doing so, plaintiff has failed to meet his burden under Rule 23(b)(3). *See Campion*, 272 F.R.D. at 532-33.

The alleged unlawful conduct in this case (*i.e.*, the first dot) is defendants' failure to include the %DV for protein given the protein statement on the front label. Although plaintiff tries to rely on the front label statement on its own, as this Court recognized, his claims necessarily "rely on the relationship between the front label and the nutrition label." ECF No. 46 at 4:8-9. Judge Corley explained it well in another protein labeling case:

> In other words, Defendant's allegedly unlawful labeling could be fixed either by adding a PDCAAS figure to the nutrition facts panel or by removing the nitrogen-method protein claim from the front label. Cf. id. §§ 101.9(c)(7)(i) (not requiring a PDCAAS figure on the nutrition facts panel if there is no front-label protein claim), 101.13 (not requiring a front-label protein claim). ***There is no meaningful difference between the front label's information being unlawful because of the nutrition facts panel's omission and the nutrition facts panel's omission being unlawful because of the front label's information.***

*Roffman v. Perfect Bar, LLC*, 2023 WL 174961, at *3 (N.D. Cal. Jan. 12, 2023) (emphasis added).

The injury alleged by plaintiff (*i.e.*, the second dot) is the price premium that consumers allegedly paid for the product—*i.e.*, plaintiff alleges that the price for the product would have been less in the "but for" world where the label is lawful. Mtn. at 17-20.

Plaintiff failed to provide common, class-wide evidence of a causal link between the two dots. He has submitted no surveys or other evidence to prove that the lack of a %DV for protein (whether alone or in combination with the front label statement) resulted in any injury. For example—and setting aside the many flaws in his work—Mr. Weir has not conducted any surveys; he has only proposed a conjoint study to measure ***the amount of damages*** flowing only from the protein content (5g Protein) of the products. This certainly does not serve as common, class-wide

evidence of causation and injury,[8] and plaintiff's failure to offer such proof of these elements is fatal to his class certification motion. *See Roffman v. Perfect Bar, LLC*, 2022 WL 4021714, at *6 (N.D. Cal., Sept. 2, 2022) (Corley, J.) (holding in granting motion to dismiss, "[u]nder Plaintiffs' theory, the front-label protein claim may have been lawful if there was a corresponding figure on the nutrition facts panel. Therefore, without an allegation that Plaintiffs ever looked at the nutrition facts panel—and thus ever knew one way or the other if the nutrition facts panel had a corresponding figure—***there is no causal link between the allegedly unlawful front-label protein claim and Plaintiffs' alleged harm***.") (emphasis added).[9]

### C.    Plaintiff Has Not Met His Burden To Prove Typicality

As a threshold matter, plaintiff cannot prove typicality under Fed. R. Civ. P. 23(a)(3) because he lacks standing to bring this claim for the reasons set forth in defendants' separate Rule 12(b)(1) motion to dismiss (ECF No. 87). *Turcios v. Carma Labs., Inc.*, 296 F.R.D. 638, 647–48 (C.D. Cal. 2014) ("typicality may not be established unless the named representative has individual standing to raise the legal claims of the class").

Independent of defendants' Rule 12(b)(1) argument, plaintiff fails to establish typicality because his claims and the related defenses are far from typical of the class. Fed. R. Civ. P. 23(a)(3). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (citations omitted). Further, "class certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir.

---

[8] Plaintiff also submitted documents and testimony from defendants suggesting that protein generally may matter to certain consumers. This is ***not*** evidence that connects the specific alleged unlawful conduct (the lack of a %DV alone or in combination with the front label) with any alleged injury. Kivetz Decl. ¶¶ 172-184.

[9] Plaintiff's failure to prove class-wide causation is particularly significant here given, as explained by Dr. Wallingford, individual protein needs can vary greatly and the amount of protein delivered by the bread can differ based on what other foods are consumed with it.

1992) (concluding that plaintiff's "unique background and factual situation" required him to prepare to meet defenses that would not typically be raised against other members of the proposed class). That is precisely the situation here.

     ***First***, plaintiff's testimony subjects him to a unique defense based on ██████████████

████████████████████████████████████████████████████████████████████████████

███████████████████████ Swartz Tr. 65:10-66:14 ██████████████████████████████

███████████████████████████████████████████████████████████ Jan. 7 Text Msg.

Plaintiff's post-complaint purchase indicates that plaintiff was satisfied with the product and experienced no injury as a result of the alleged unlawful conduct, which is fatal to any attempt to establish typicality. *See Hanon*, 976 F.2d at 508; *McKinnon v. Dollar Thrifty Automotive Group, Inc.*, 2016 WL 6582045, at *9-10 (N.D. Cal. Nov. 7, 2016).[10]

     ***Second***, ████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

██████████████████████ Swartz Tr. 171:12-172:8. Plaintiff cannot be a typical class representative when he fails to show that his injury was a result of the lack of %DV. *See McKinnon*, 2016 WL 6582045, at *9-10 (no typicality when plaintiffs failed to show that their injuries were caused by the lack of the disclosure). ███████████████████████████████████████████████

█████████████████████████████████████████ as it will undoubtedly result in his claim being "subject to serious dispute" and will "require him to prepare to meet defenses that are not typical of the defenses which may be raised against other members of the proposed class." *Hanon*, 976 F.2d at 508.

     ***Third***, ██████████████████████████████████████████████████████████

██████████████████████████ Swartz Tr. 113:24-25 ███████████████████████████

---

[10] Plaintiff's typicality cases are inapposite, as the plaintiffs in those cases proved reliance and did not raise the same type of unique claims and defenses that are at issue here. Mtn. at 10 (citing *Clevenger v. Welch Foods Inc.*, 342 F.R.D. 446, 456 (C.D. Cal. 2022); *Astiana v. Kashi Co.*, 291 F.R.D. 493, 503 (S.D. Cal. 2013); *Krommenhock v. Post Foods, LLC*, 334 F.R.D. 552, 562 (N.D. Cal. 2020).



1   152:19 (same); *see also id* at. .158:8

2   ; 99:17-100:1

3   *Id.* at 117:16-118:11

4

5   . Instead, plaintiff purchased Dave's Killer

6   Bread for a unique reason that will not be shared by most, if any, members of the class. Plaintiff

7   testified

8   *Id.* at 84:19-85:3, 93:1-94:1. This is not a typical reason

9   to purchase bread or to look at protein content of a product. As such, plaintiff cannot show

10  typicality with such "unique" purchasing behavior. *Hanon*, 976 F.2d at 508.

11      ***Fourth***,

12  (Swartz Tr. 184:23-195:23;

13  191:8-20) will also create scrutiny that is unique to this plaintiff. *See Hanon*, 976 F.2d at 508

14  (affirming denial of class certification motion based on lack of typicality given plaintiff's litigation

15  experience and "relationship with his lawyers").

16      In sum, plaintiff is an unsuitable and atypical class representative.

17      **D.    Plaintiff Has Not Met His Burden To Prove That The Class Is Ascertainable**

18      "While the identity of the class members need not be known at the time of certification,

19  class membership must be clearly ascertainable. The class definition must be sufficiently definite

20  so that it is administratively feasible to determine whether a particular person is a class member."

21  *Wolph v. Acer Am. Corp.*, 272 F.R.D. 477, 482 (N.D. Cal. 2011) (citation omitted). In order for a

22  proposed class to be ascertainable, "membership must be determinable from objective, rather than

23  subjective, criteria." *Xavier v. Philip Morris USA Inc.*, 787 F. Supp. 2d 1075, 1089 (N.D. Cal.

24  2011). Thus, plaintiff "must demonstrate that: (i) members of the proposed class are readily

25  identifiable by objective criteria, and (ii) it is administratively feasible to determine whether a

26  particular person is a member of the class." *Kosta v. Del Monte Foods, Inc.*, 308 F.R.D. 217 (N.D.

27  Cal. 2015). Plaintiff has not done so.

28

---

DEFS.' OPP. TO PLAINTIFF'S                    20                    CASE NO. 4:21-cv-10053-YGR
CLASS CERTIFICATION MOTION

**First**, plaintiff has not shown that class members are readily identifiable by objective criteria. Plaintiff is attempting to certify a broad class with no less than fifteen separate products (only two of which plaintiff allegedly purchased), across four separate product categories (bread, thin-sliced, bagels and buns), all with labels that varied over time and location such that the individual label at the time of a class member's purchase cannot be ascertained. Even if the consumer remembers purchasing a product during the class period, there is no objective way to determine whether a consumer purchased a product containing the omitted %DV.

There are hundreds of potential combinations of products and labels over the course of plaintiffs' alleged time period, from December 29, 2017 to the present. Indeed, the labels of each product changed at various times during the class period, which has important consequences. *See* Letchinger Decl. ¶¶ 12-13. For example, nearly half of the products included in the class definition included a %DV during some part of the first two years of the class period. *See id.* at ¶ 12. Moreover, toward the end of the class period, the labels for all of the products were changed to include the %DV calculated under the PDCAAS method. *Id.* at ¶ 13. The class definition, therefore, is overbroadly defined to include products with labels without the challenged omission.

Significantly, plaintiff cannot simply narrow the class definition to match the date when the label change was approved, because there is *no way* of knowing when consumers would have seen the new label.[11] *See id.* at ¶¶ 9-10. After a label is approved, it is sent to the printer and later shipped to the individual Flowers bakeries. *Id.* at ¶¶ 7-8. The bakery will package products at different times depending on their existing inventory and then ship the products to retailers and distributors. *Id.* at ¶ 8. This process takes varying amounts of time, depending on individual circumstances, such that there is no way to ascertain when products with new labels arrived in stores. In fact, the arrival of newly packaged products likely varied by store. *Id.* The variability in the timing that it takes for a product with a new label to appear at the stores, as well as the lack of uniformity even store-to-store in receiving and shelving products, means that it is likely that a

---

[11] For the same reason, plaintiff is wrong to suggest that there could be a subclass of purchasers who purchased a product with the allegedly incorrect %DV. *See* Mtn. at 16, n. 7. It is impossible to know which consumers purchased a product with which nutrition label.

given product was sold at the same time in California with and without the %DV.

*Kosta* is illustrative. There, the Court concluded that the proposed class was unascertainable because the challenged statement only appeared on some varieties of the products, and the labels on some products changed during the class period. *Kosta*, 308 F.R.D. at 227-29. The Court concluded that "the product labels and packaging at issue here do not fall into neatly separate categories such that one can say with any confidence that the purchaser of an item in that category was subject to the alleged violations." *Id.* at 228. Similarly, in *Jones v. ConAgra Foods*, the Court found the proposed class to be unascertainable given that "some variants of Swiss Miss products had the challenged label statements for some points in the class period and not others, and during certain periods of time, versions of a given product with and without the challenged statements were for sale at the same time." 2014 WL 2702726, at *12 (N.D. Cal. June 13, 2014). As in *Jones*, the variations in product labels mean that even if a consumer recalled buying a Dave's Killer Bread product during the class period, that "does not establish that the consumer was exposed to the challenged statement." *Id.*

**Second**, plaintiff has not shown that it is administratively feasible to determine the members of the class. Purchasing bread at the grocery store is hardly a memorable experience for most consumers. For example, it is unlikely that the average consumer could recall what brand of hamburger buns they bought for a cookout six years ago, and even less likely that one would retain a receipt or a record of the purchase. Such a low-cost, unremarkable purchase means that it could be difficult for a customer to accurately self-identify whether they purchased the included products during the class period, much less whether those products contained the labels at issue. *See In re POM Wonderful LLC*, 2014 WL 1225184, at *6 (C.D. Cal. Mar. 25, 2014) ("[i]n situations where purported class members purchase an inexpensive product for a variety of reasons, and are unlikely to retain receipts or other transaction records, class actions may present such daunting administrative challenges that class treatment is not feasible"); *Jones v. ConAgra*, 2014 WL 2702726, at *11 ("[t]he variety of products and of labels, combined with the lack of receipts and the low cost of the purchases, means that consumers are unlikely to accurately self-identify").

1    Similarly, two consumers who purchased the same product on the same day, but in different

2    stores, may have purchased items with and without the challenged omission. Given that the labels

3    changed at indeterminate times during the class period, class membership would rely on the

4    individual consumer's subjective memory of whether the label on the particular product they

5    purchased included a %DV in the nutrition label. In other words, there are no objective criteria by

6    which class membership could be established, and the proposed class is not ascertainable.

7        **E.    Plaintiff Has Not Met His Burden Regarding The Non-Purchased Products**

8    Plaintiff seeks to certify claims with respect to fifteen (15) separate bakery products

9    belonging to four different product categories: (1) sandwich bread; (2) thin-sliced bread; (3)

10   bagels; and (4) buns. *See* FAC, Ex. B.[12] Among this broad set, there is a wide range of protein

11   statements, from "3g Protein" on various thin-sliced products to "13g Protein" on the Epic

12   Everything Bagel. *Id*.

13   As a threshold issue, plaintiff has provided no evidence of common damages for the three

14   products categories: thin-sliced, bagels, and buns. Mr. Weir does not mention the buns products *at*

15   *all* in his declaration. Mr. Weir cannot propose a model for the buns at a later date; the time for

16   him to present his approach has passed. In addition, Mr. Weir attempts to defer any disclosures

17   regarding the thin-sliced and bagel products until "the merits phase" with "additional conjoint

18   surveys" that will have "minor adjustments" in methodology that he does not describe with any

19   detail. Weir Decl. at n. 47. But defendants have had no opportunity to review Mr. Weir's "minor

20   adjustments" and "additional conjoint surveys" in order to challenge or verify his methodology

21   under the *Daubert* standard as to the thin-sliced and bagel products (not to mention the buns). In

22   short, there is no evidence of damages at all for these other categories, and even that proposed

23   study is properly stricken for the reasons set forth in the concurrently-filed motion to strike.

24

25

26   [12] The 15 products are: 21 Whole Grains and Seeds; Good Seed; Powerseed; 100% Whole
     Wheat, Righteous Rye; 21 Whole Grains and Seeds Thin-Sliced; Good Seed Thin-Sliced;

27   Powerseed Thin-Sliced; Sprouted Whole Grains Thin-Sliced; Epic Everything Bagels; Plain
     Awesome Bagels; Cinnamon Raisin Remix Bagels; Boomin' Berry Bagels; 21 Whole Grains and

28   Seeds Burger Buns; and Burger Buns Done Right. FAC, Ex. B.

Plaintiff also has not shown that the 15 products satisfy typicality and adequacy requirements under Rule 23. "[W]hether Plaintiffs may be allowed to present claims on behalf of others in the class who have purchased similar, but not identical, products [is] determined on an assessment of typicality and adequacy of representation at the motion for class certification stage." *Stotz v. Mophie, Inc.*, 2017 WL 1106104, at *6 (C.D. Cal. Feb. 27, 2017) (internal citations omitted). Rule 23(a)(3) analyzes whether class members' claims related to the other products are "fairly encompassed by [the plaintiff's] claims," or are "so interrelated to relieve doubts that the interests of [class members] will be fairly and adequately protected in their absence." *Weiner v. The Dannon Co.*, 255 F.R.D. 658, 666-67 (C.D. Cal. 2009 (citations omitted). Here, the other products are not "fairly encompassed" or "so interrelated" to justify their inclusion.

*First*, Mr. Weir has acknowledged that the various product categories are not the same, stating that the thin-sliced and bagel products are "numerically different" which will require "minor adjustments, such as the protein Claims, to make measurements applicable to the other products." Weir Decl. ¶ 98, n.47. Having conceded that there are differences between the product categories, Mr. Weir provides no explanation on why the proposed survey he has designed is appropriate for the other categories of thin-sliced and bagels (not to mention the entirely omitted category of buns). Of course, there could be meaningful differences between the products and how consumer research is conducted, including for example on the key issue of pricing. But Mr. Weir has not studied these differences, nor has he presented any proposed approach for the study of differing products.

*Second*, plaintiff's testimony demonstrates that he cannot represent class members' interests who were allegedly injured by the thin-sliced, bagels, and buns products. ███████ ████████████████████████████████████████████████████████████ ████████ Swartz Tr. 57:16-25. As a result, they would not have considered the thin-sliced products to be similar to the sandwich bread products that plaintiff purchased. In addition, plaintiff testified that ██████████████████████████████████████████ ████████, *Id.* at 111:13-22; 113:13-25. Plaintiff testified that ████████████████

1    ██████████████████████████████████████ *Id*. at 78:20-23. And, ███████

2    ████████████████████████████████████ *Id*. 79:24-80:10; 111:3-12.

3    In short, plaintiff cannot be an appropriate class representative for class members who claim injury

4    from purchasing these various other bakery products based on a lack of %DV. Plaintiff cannot

5    present claims on behalf of the class for Dave's Killer Bread buns and bagel products when his

6    testimony raises serious "doubts that the interests of [class members] will be fairly and adequately

7    protected in their absence." *Weiner*, 255 F.R.D. at 667.

8          **F.**    **Plaintiff's Unlawful Prong Claim Is Preempted Under *Buckman***

9          In their motion to dismiss, defendants argued that plaintiff's claims were preempted under

10   *Buckman Co. v. Plaintiff's Legal Comm.*, 531 U.S. 341 (2001). ECF No. 39 at 8-11. As the Ninth

11   Circuit has explained, a "plaintiff must not be suing *because* the conduct violates the FDCA (such

12   a claim would be impliedly preempted under *Buckman*)." *Perez v. Nidek Co.*, 711 F.3d 1109, 1120

13   (9th Cir. 2013) (emphasis in original). Rather, a plaintiff must "rely[] on traditional state tort law

14   which had predated the federal enactments in question." *Buckman*, 531 U.S. at 353.

15         In its January 9, 2023 Order, the Court rejected defendants' *Buckman* argument, stating

16   that courts "routinely hold that food labeling claims under the Sherman Law are not preempted by

17   *Buckman*." ECF No. 46 at 4-5. All of the cases cited by the Court, however, included traditional

18   state law deception claims; none involved a single standalone unlawful prong claim based

19   exclusively on an alleged labeling violation like plaintiff has chosen to pursue. Such a standalone

20   unlawful theory does not involve a traditional state law claim and falls squarely within *Buckman*.

21   As such, the reconsideration of *Buckman* in this new context requires denial of this motion.

22   **IV.**    **CONCLUSION**

23         For the foregoing reasons, Flowers respectfully requests that the Court deny plaintiff's

24   motion for class certification. Flowers further requests that this denial be with prejudice in light of

25   the significant deficiencies set forth above, and in Flowers' Rule 12(b)(1) Motion (ECF No. 87)

26   and Motion to Strike (ECF No. 89) which cannot be remedied in any renewed motion.

27

28

DEFS.' OPP. TO PLAINTIFF'S
CLASS CERTIFICATION MOTION

CASE NO. 4:21-cv-10053-YGR

1   Dated: February 12, 2024              KING & SPALDING LLP

2                                         By:    */s/ Michael L. Resch*

3                                                Quyen L. Ta
                                                 Michael L. Resch
4                                                Livia M. Kiser
                                                 Samuel R. Diamant
5
                                                 *Attorneys for Defendants*
6                                                Flowers Foods, Inc. and
                                                 Dave's Killer Bread, Inc.
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28