**GUTRIDE SAFIER LLP**
SETH A. SAFIER (State Bar No. 197427)
seth@gutridesafier.com
MARIE A. MCCRARY (State Bar No. 262670)
marie@gutridesafier.com
HAYLEY REYNOLDS (State Bar No. 306427)
hayley@gutridesafier.com
KALI R. BACKER (State Bar No. 342492)
kali@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

MATTHEW T. MCCRARY (admitted *pro hac vice*)
matt@gutridesafier.com
4450 Arapahoe Ave., Suite 100
Boulder, Colorado 80303
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID SWARTZ, an individual, on behalf of himself, the general public, and those similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>DAVE'S KILLER BREAD, INC. and FLOWERS FOODS, INC.,<br><br>Defendants. | CASE NO. 4:21-cv-10053-YGR<br><br>**PLAINTIFFS-IN-INTERVENTION'S NOTICE OF MOTION AND MOTION TO INTERVENE; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>DATE: April 16, 2024<br>TIME: 2:00 p.m.<br>CTRM: 1, 4th Floor<br><br>Hon. Yvonne Gonzalez Rogers |

## TABLE OF CONTENTS

I. INTRODUCTION ..... 2

II. STATEMENT OF FACTS ..... 3

a. Background ..... 3

b. New Plaintiffs Were Misled By the Same Unlawful Advertising at Issue in Swartz's Case. ..... 7

III. ARGUMENT ..... 8

a. Legal Standard ..... 8

b. New Plaintiffs May Intervene As a Matter of Right Under Rule 24(a). ..... 9

i. New Plaintiffs' Intervention Is Timely ..... 9

ii. New Plaintiffs Have Significant, Protectable Interests, and the Disposition of this Action May Impede Their Ability to Protect Their Interests. ..... 11

iii. Swartz May Not Adequately Represent New Plaintiffs' Interests. ..... 12

c. In the Alternative, This Court Should Permit New Plaintiffs To Intervene Under Rule 24(b). ..... 13

IV. CONCLUSION ..... 14

## TABLE OF AUTHORITIES

**Cases**

*China Agritech, Inc. v. Resh*,
138 S. Ct. 1800 (2018) .......... 3

*Citizens for Balanced Use v. Montana Wilderness Ass'n*,
647 F.3d 893 (9th Cir. 2011) .......... 12

*Denicolo v. Hertz Corp.*,
No. 19-cv-00210-YGR, 2021 U.S. Dist. LEXIS 59859 (N.D. Cal. Mar. 29, 2021) .......... 7

*Diaz v. Trust Territory of the Pacific Islands,*
876 F.2d 1401 (9th Cir. 1989)) .......... 13, 15

*Dixon v. Cost Plus*,
2012 WL 2499931 (N.D. Cal. June 27, 2012) .......... 15

*Forest Conservation Council v. U.S. Forest Serv.*,
66 F.3d 1489 (9th Cir. 1995) .......... 10

*Glass v. UBS Fin. Servs.*,
No. C-06-4068 MMC, 2007 U.S. Dist. LEXIS 8509 (N.D. Cal. Jan. 17, 2007) .......... 13

*Hanon v. Dataproducts Corp.*,
976 F.2d 497 (9th Cir. 1992) .......... 7

*Hawkins v. Kroger Co.*,
337 F.R.D. 518 (S.D. Cal. 2020) .......... 5

*Holt v. Noble House Hotels & Resort, Ltd.*,
No. 17cv2246-MMA (BLM), 2018 U.S. Dist. LEXIS 177940 (S.D. Cal. Oct. 16, 2018) .......... 7

*In re Cmty. Bank of N. Virginia*,
418 F.3d 277 (3d Cir. 2005) .......... 13

*In re ConAgra Foods, Inc.*,
90 F. Supp. 3d 919 (C.D. Cal. 2015) .......... 5

*In re JDS Uniphase Corp. Sec. Litig.*,
2005 WL 256261 (N.D. Cal. Oct. 12, 2005) .......... 14

*In re Melridge, Inc. Sec. Litig.*,
1988 U.S. Dist. LEXIS 14392 (D. Or. Aug. 11, 1988) .......... 13

*In re NJOY Consumer Class Action Litig.*,

120 F. Supp. 3d 1050 (C.D. Cal. 2015) .......... 5

*MGM Grand Hotel, Inc. v. Smith-Hemion Prods., Inc.*,
158 F.R.D. 677 (D. Nev. 1994) .......... 16

*Munoz v. PHH Corp.*,
2013 U.S. Dist. LEXIS 106004 (E.D. Cal. July 26, 2013) .......... 11, 12

*Prete v. Bradbury*,
438 F.3d 94 (9th Cir. 2006) .......... 9

*Sloan v. GM LLC*,
No. 16-cv-07244-EMC, 2020 U.S. Dist. LEXIS 167905 (N.D. Cal. Sep. 14, 2020) .......... 11

*Southwest Ctr. For Biological Diversity v. Berg*,
268 F.3d 810 (9th Cir. 2001) .......... 14

*Tribovich v. United Mine Workers*,
404 U.S. 528 (1972) .......... 14

*Trief v. Dun & Bradstreet Corp.*,
144 F.R.D. 193 (S.D.N.Y. 1992) .......... 15

*United States v. State of Oregon*,
745 F.2d 550 (9th Cir. 1984) .......... 10

*Venegas v. Mitchell,*
495 U.S. 82 (1990) .......... 16

*Venegas v. Skaggs*,
867 F.2d 527 (9th Cir. 1989) .......... 16

*W. Coast Seafood Processors Ass'n v. Natural Res. Def. Council, Inc.*,
643 F.3d 701 (9th Cir. 2011) .......... 11

*Wood v. Motorola, Inc.*,
587 F.Supp. 531 (D. Haw. 1984) .......... 16

*Yniguez v. State of Arizona*,
939 F.2d 727 (9th Cir. 1991) .......... 10

**Rules**

Fed R. Civ. P. 24(b)(1)(B) .......... 9, 16

Fed. R. Civ. P. 24(a)(2) .......... 9

Fed. R. Civ. P. 24(b) .......... 9, 15

**Regulations**

21 C.F.R. § 101.13(b) .......... 4
21 C.F.R. § 101.13(n) .......... 4
21 C.F.R. § 101.9(c)(7)(i) .......... 4

**TO DEFENDANTS AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on April 16, 2024 at 2:00 pm, or as soon thereafter as the Motion to Intervene ("Motion") may be heard, in Oakland Courthouse, Courtroom 1 – 4th Floor 1301 Clay Street, Oakland, CA 94612, Plaintiffs in Intervention Pablo Ondar, Loraine McWhorter, and Akeem Pina (collectively, "New Plaintiffs") will, and hereby do, move this Court, pursuant to Rule 24 of the Federal Rules of Civil Procedure, to intervene in the above-captioned matter and to file the proposed Complaint-in-Intervention attached hereto as Exhibit 1 to the Declaration of Seth A. Safier, filed concurrently.

Plaintiff David Swartz does not oppose that New Plaintiffs be granted leave to intervene.

Upon intervention, New Plaintiffs and Plaintiff Swartz request that they be permitted to file a second amended consolidated complaint ("Second Amended Consolidated Complaint"). Attached hereto as Exhibit 1 to the Declaration of Seth A Safier is a copy of the proposed Consolidated Complaint. [1]

This Motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the accompanying Declaration of Seth A. Safier, the pleadings and papers on file and all prior proceedings herein, and such other matters as may be presented to the Court at the time of hearing.

[1] The proposed Second Amended Complaint adds allegations for the plaintiffs-in-intervention. Exhibit 2 to the Declaration of Seth A. Safier shows these proposed changes to the operative complaint in redline.

## I. INTRODUCTION

Plaintiffs in intervention Pablo Ondar, Loraine McWhorter, and Akeem Pina ("New Plaintiffs") respectfully seek leave to intervene in this matter pursuant to Rule 24 of the Federal Rules of Civil Procedure. New Plaintiffs satisfy each of the requirements to intervene as a matter of right. If this Court finds otherwise, it should, nevertheless, exercise its discretion to permit intervention.

New Plaintiffs seek to intervene as additional class representatives in response to Defendants' repeated attacks and assertions that the current named plaintiff, David Swartz, is inadequate, atypical and lacks standing to represent the Class. *See* ECF 92, Ex. B at 18-20. Defendants make these incorrect assertions based on cherry-picked deposition testimony they contend shows that the protein representations were unimportant to him because he (a) purchased the product again 10-days after the complaint was filed and (b) testified that he was concerned about the protein intake of his growing daughter and he and his wife are not concerned about their protein consumption. *Id.* at 2. Defendants further argue that he is atypical because he lacks perfect recall of his purchase of a loaf of bread 8 years ago and has been a plaintiff in other cases, including with his current attorneys. Defendants conveniently ignore testimony wherein Mr. Swartz explained that he continued to purchase the Products to appease his daughter who is a picky eater, and ultimately did not purchase them again after January 2022. Tr. 121:7-17. Defendants do not and cannot explain why purchasing for a family member defeats standing or class certification. Defendants' arguments are mistaken or overblown, and none are disqualifying. If anything, they underscore Plaintiffs' typicality— after all, who remembers with complete recall what they purchased for $6 at a grocery store 8 years later?

Nevertheless, out of an abundance of caution, New Plaintiffs seek to intervene so that they may serve as alternative or additional class representatives to make certain *the class* suffers no prejudice, and so that none of the resources that the parties and the Court have invested in litigating this class action for the past two years will be wasted. New Plaintiffs easily satisfy the standards for intervention. They each purchased Dave's Killer Bread Products with a protein representation on the front label of the Products and that lacked a corrected grams of protein in

the form of a %DV for protein in the Nutrition Facts Panel ("NFP"). They are all therefore members of the proposed class defined in the motion for class certification filed by David Swartz ("Swartz"), i.e. "All persons in the State of California who purchased the Products between December 29, 2017 and the present." ECF 73 at 2. Like Swartz, New Plaintiffs all purchased the Dave's Killer Bread Products with an unlawful protein representation on the front label. Like Swartz, they all reviewed and relied on the Nutrition Facts Panel and were misled by the omission of a %DV based on the corrected amount of protein. Like Swartz and all class members, New Plaintiffs suffered damages as a result of Defendants' unlawful advertisements and have a direct interest in the outcome of this case.

Significant rights are at stake and New Plaintiffs (and other class members) will be prejudiced if the Court determines Plaintiff Swartz is inadequate, atypical, or lacks standing and simultaneously denies intervention. While the statute of limitations tolls from the date of the Complaint, that tolling provision does not carry over into a new class action. *See generally China Agritech, Inc. v. Resh*, 138 S. Ct. 1800, 1806-07 (2018) (plaintiffs not permitted to "piggyback" on an earlier class action). Although all New Plaintiffs have purchased Dave's Killer Bread products in the last year or two, many have been purchasing for much longer, as have thousands of class members. If New Plaintiffs must file a separate, new class action, many of these purchases will be excluded by the revised statute of limitations date. To deny New Plaintiffs the right to intervene in those circumstances will result in a windfall to Defendants and waste the judicial and party resources already expended in litigating the present class action.

## II. STATEMENT OF FACTS

### a. Background

Swartz filed this lawsuit on December 29, 2021, alleging that Dave's Killer Bread, Inc. and Flowers Foods, Inc. ("Defendants" or "Dave's Killer Bread") unlawfully, falsely and misleadingly advertised Dave's Killer Bread Products as providing a certain number of grams of protein on the front label of the products. ECF 1. The protein claims on the front of the Product packages, such as "5g PROTEIN," are unlawful in violation of parallel state and federal laws because Defendants did not comply with the regulatory requirements for making a protein claim.

21 C.F.R. § 101.9(c)(7)(i), 101.13(b), (n). The failure to include a statement of the corrected amount of protein based on PDCAAS in the NFP also rendered the NFP itself unlawful. *Id*. § 101.9(c)(7)(i).

Defendants have moved to dismiss three times. ECF 34, 46, 87. The Court granted in part and denied in part the first motion. ECF 34. The Court denied the second. ECF 46. The third motion to dismiss, really a motion for summary judgment, is pending. ECF 87.

On November 17, 2023, Swartz moved to certify a California class of purchasers. ECF 73. After Plaintiff filed his motion, Defendants took Mr. Swartz's deposition. Defendants have challenged Mr. Swartz's ability to represent the class in their opposition to Plaintiff's motion for class certification (ECF 90) and a separately filed motion to dismiss for lack of statutory standing (ECF 87), based on his deposition testimony and evidence of a single, post-filing purchase that occurred 10 days after he filed this complaint. Defendants repeatedly assert that the post-filing purchase means that Mr. Swartz "was satisfied with the product and experienced no injury as a result of the alleged unlawful conduct," and that he was therefore not injured and lacks standing, accordingly cannot meet the typicality and adequacy[2] requirements for certification. ECF 87 at 10–11; ECF 90 at 24–26. In truth, all this really highlights is the testimony Defendants ignored to serve their purpose. Mr. Swartz testified that his daughter was a picky eater and he needed to first find a substitute bread for her. More importantly, the single post-filing purchase has nothing to do with the injury he suffered when he first purchased the Product and every purchase thereafter for which he paid a premium based on the protein labeling.

Preferring their isolated "sound bites," Defendants also conveniently ignore Mr. Swartz's remaining testimony, which provides context to explain why he first purchased the product (to provide additional protein to his growing daughter) and why he continued to purchase it (because his daughter preferred the taste and rejected alternatives). Tr. 198:5-199; Tr. 91:10-18; Tr. 121:7-17. Here, Defendants suggest that this too makes him atypical because he no longer worries about

[2] Defendants argue that Plaintiff is inadequate as it concerns Dave's Killer Bread products he did not purchase. ECF 92, Ex. B at p. 24. This is legally misguided, but, in any event, it has nothing to do with Plaintiff's adequacy. It is a mislabeled typicality attack. That said, New Plaintiffs additionally address this concern, as they purchased additional products, including Dave's Killer Bread Buns.

protein consumption for himself or his wife. But this is irrelevant. What is relevant is that, at the time of initial purchase, he cared about protein for his child. Swartz Dep. Tr. 91:10-18 ("Well, when I started purchasing it specifically, it was when my kid was really little and when she was first eating solid foods. And I don't know if I mentioned, but she was like really little. . . . So protein was specifically something I was very concerned about at that time."). This is legitimate and typical because, like all class members, Swartz desired bread that could provide the stated amount of protein on the label. Indeed, the first purchases and all subsequent that resulted are what matters because they establish his reliance on Defendants' unlawful advertising.

Thus, regardless of whether he has standing to sue about his post-knowledge purchase, he undoubtedly has standing to sue for his pre-knowledge purchases because he relied on Dave's Killer Bread's unlawful protein claims as a reason for those purchases and paid a market price premium as a result, and is also, therefore, an adequate and typical class representative. *See In re NJOY Consumer Class Action Litig.*, 120 F. Supp. 3d 1050, 1087 (C.D. Cal. 2015) (finding proposed class representative typical and adequate despite continued purchases because "the fact Halberstam continued to purchase the product does not compel a conclusion that he has not suffered the requisite injury to confer standing") (alterations and quotations omitted); *In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 967-68 (C.D. Cal. 2015) (same); *Hawkins v. Kroger Co.*, 337 F.R.D. 518, 536 (S.D. Cal. 2020) (finding plaintiff's claims were typical despite her continued purchase of the products out of habit).

Next, Defendant's quiz on whether the Product did or did not have a %DV in 2016 when Plaintiff first purchased it is misguided. Defendants know, and their 30(b)(6) witness testified, that the Products did not have a corrected grams of protein represented as a %DV based on PDCAAS testing until sometime in 2023, which was added as a result of this Litigation. ECF 72-4, at 51:1-53:10, 60:8-61:19, 115:6-10. So, the whole line of questioning is little more than attorney driven "gotcha." Defendants also conveniently ignore that Mr. Swartz clarified that "[i]ts possible that the reason I don't remember [the %DV] is because it wasn't there." Swartz Dep. Tr. 197:21-22. In any event, issues related to Plaintiff's review of the NFP are irrelevant to the unlawfulness claim Plaintiff has sought to certify for class treatment. Swartz testified that the

Product had a protein claim on the front, which he relied on because protein was important for his daughter. Swartz Dep. Tr. 198:5-199 (stating that the protein claim on the front of the product was very important to him because "my daughter was super tiny. Single percentage for weight and size and whatever other measurements they were giving us percentiles for every time we brought her in. And bulking her up was a high priority. And trying to get her to stop falling in her percentile against her age peers. And maximizing her protein intake was a large part of our strategy."). Plaintiff's unlawfulness claim is premised on the fact that Defendants had no right to make any claim regarding the protein content of the Products on the front label. Nothing in Swartz's testimony undermines the fact that he was injured by the illegal front label claim.

Swartz further testified as follows:

> Q Okay. So when you made that first purchase, did you review the nutrition fact panel on the back of the product?
> A I'm sure I did.
> Q Do you typically review nutrition fact panels on food labels when you're considering a new product?
> A Yeah. Almost always.
> Q Do you use the NFPs to compare different products?
> THE WITNESS: I do. I use nutrition fact panels to compare products.

Swartz Dep. Tr. 201:5-202:12. He also testified that when comparing two products with identical grams protein but different percent DV, "[he] would be inclined to buy the one that had a higher percent DV [for protein]." Tr. 202:2-12. This testimony shows that in addition to relying on the front label claim, Swartz also relied on the NFP in making his purchasing decision and was injured by his reliance on the NFP. Nothing in Swartz testimony contradicts the allegations in the FAC. Indeed, his testimony confirms the allegations that this Court held were sufficient to support that Swartz had relied on Defendants' packaging in its Order on Defendant's original motion to dismiss. *See* ECF 46 at 3–4 ("The Court finds that these allegations [FAC ¶¶ 61–63] sufficiently allege reliance."); *see also* FAC ¶ 61 (Swartz "read[] and rel[ied] on the truthfulness of Defendants' front labels that promised the Products provided a specific number of grams of protein per serving."), ¶ 62 (Swartz "looked at and read the [nutrition label] on the Products before purchasing them for the first time"), ¶ 63 ("Had he seen that the provide provided only 5% (or less) of the daily value for protein" he would have paid less for it.).

Finally, without any evidence to even suggest a conflict of interest, Defendants argue that Plaintiff Swartz is inadequate because the firm has successfully represented him before. As courts have previously found, "in the absence of some evidence to indicate that a [relationship] between the class representative and one of his attorneys would create a conflict of interest, the court will not presume one." *See Denicolo v. Hertz Corp.*, No. 19-cv-00210-YGR, 2021 U.S. Dist. LEXIS 59859, at *15-16 (N.D. Cal. Mar. 29, 2021); *Holt v. Noble House Hotels & Resort, Ltd.*, No. 17cv2246-MMA (BLM), 2018 U.S. Dist. LEXIS 177940, at *17-18 (S.D. Cal. Oct. 16, 2018) (conflicts only found when there is a "financial or familial tie[]") (collecting cases). The relationship with Swartz simply does not rise to the level of a present or potential conflict of interest.

The single case on which Defendants rely, *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992), offers no support because it involved a named plaintiff who purchased stock for the purpose of bringing suit, which made him subject to unique defenses. There is, of course, no such evidence here. This attack is specious. Nevertheless, to protect the interests of the class and keep the case moving forward in a timely manner, the New Plaintiffs are seeking to intervene should the Court determine Mr. Swartz cannot represent the class.[3]

**b. New Plaintiffs Were Misled By the Same Unlawful Advertising at Issue in Swartz's Case.**

There are three New Plaintiffs, all of whom were injured in the same way as Swartz. Loraine McWhorter resides in Bethel Island, California. She purchased Dave's Killer Bread 21 Whole Grains & Seeds and Dave's Killer Bread Thin Sliced Good Seed, relying on the representations of 5g and 3g protein respectively on the front label. For Ms. McWhorter, the protein amount was a draw of the Products. She regularly checks the NFP of products and uses the %DV to inform her purchases. Without the %DV calculated based on PDCAAS, the only information Ms. McWhorter had about the Products was the protein quantity claim, and she believed she was receiving a product providing the full amount of that quantity in a form the body could use.

[3] Plaintiff intends to fully respond to each of Defendants' arguments in his opposition to Defendants' motion to dismiss and in his reply in support of class certification.

Pablo Ondar resides in Stockton, California. He purchased Dave's Killer Bread 21 Whole Grains & Seeds, similarly relying on the representation of 5g protein on the front label, and believed the protein would be in a form useable by the body as protein. Just like Ms. McWhorter, the protein amount was a draw of the Products for Mr. Ondar. He regularly checks the NFP of products and uses the %DV to inform his purchases. Without the %DV calculated based on PDCAAS, the only information Mr. Ondar had about the Products was the protein quantity claim, and he believed he was receiving a product providing the full amount of that quantity in a form the body could use.

Akeem Pina resides in Oakland, California. He has purchased Dave's Killer Bread 21 Whole Grains & Seeds, Dave's Killer Bread Good Seed, Dave's Killer Bread Power Seed and Dave's Killer Bread Burger Buns. Just like Ms. McWhorter and Mr. Ondar, the protein amount was a draw of the Products for Mr. Pina. He regularly checks the NFP of products and uses the %DV to inform his purchases. Without the %DV calculated based on PDCAAS, the only information Mr. Pina had about the Products was the protein quantity claim, and he believed he was receiving a product providing the full amount of that quantity in a form the body could use.

Plaintiff's counsel offered to make each New Plaintiff available for deposition, and respond to discovery, before the class certification hearing. Safier Decl., ¶ 6, Ex. 4. Defendants rejected the offer. *Id.*

## III. ARGUMENT

### a. Legal Standard

Federal Rule of Civil Procedure Rule 24(a), referred to as "mandatory intervention" or "intervention by right," requires that a court permit a party to intervene where that party "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). Rule 24(b), which governs "permissive intervention," authorizes the Court to permit anyone to intervene who "has a claim or defense that shares with the main action a common

question of law or fact." Fed. R. Civ. P. 23(b)(1)(B). New Plaintiffs meet all of the requirements for both mandatory and permissive intervention.

**b. New Plaintiffs May Intervene As a Matter of Right Under Rule 24(a).**

An applicant seeking to intervene as of right under Rule 24 must satisfy four requirements: "(1) the intervention application is timely; (2) the applicant has a significant protectable interest relating to the property or transaction that is the subject of the action; (3) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; and (4) the existing parties may not adequately represent the applicant's interest." *Prete v. Bradbury*, 438 F.3d 949, 954 (9th Cir. 2006). In applying this rule, the Ninth Circuit has further explained that:

> A liberal policy in favor of intervention serves both efficient resolution of issues and broadened access to the courts. By allowing parties with a *practical* interest in the outcome of a particular case to intervene, we often prevent or simplify future litigation involving related issues; at the same time, we allow an additional interested party to express its views before the court.

*Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1496 (9th Cir. 1995) (emphasis added). Thus, while an applicant seeking to intervene has the burden to show that these four elements are met, the requirements are broadly interpreted in favor of intervention. *See id.* at 1493. As New Plaintiffs easily satisfy all four requirements, their motion for intervention as of right should be granted.

**i. New Plaintiffs' Intervention Is Timely**

Timeliness is left to the sound discretion of the trial court. *See Yniguez v. State of Arizona*, 939 F.2d 727, 731 (9th Cir. 1991). In determining timeliness under Rule 24, a court should consider "(1) the stage of the proceeding; (2) the prejudice to other parties; and (3) the reason for and the length of the delay." *United States v. State of Oregon*, 745 F.2d 550, 552 (9th Cir. 1984). A court should not base its decision merely on the length of time the case has been pending, but rather, it must consider all the circumstances relating to timeliness in the case. *Id.* The most important consideration in deciding whether a motion for intervention is timely is whether any delay in bringing the motion has prejudiced the existing parties to the case. *Id*. at 553. A court also should construe the timeliness requirement broadly in favor of the party seeking intervention

and "the timeliness requirement for intervention as of right should be treated more leniently than for permissive intervention because of the likelihood of more serious harm." *Id.* at 552.

Here, New Plaintiffs are timely in seeking to intervene. Discovery is still open. A class has not been certified yet. While Defendants will no doubt complain that this motion to intervene comes after the case has been pending for over two years, that alone is not a basis for denial. *See United States v. Oregon*, 745 F.2d 550, 552 (9th Cir. 1984) ("Mere lapse of time alone is not determinative."); *Munoz v. PHH Corp.*, 2013 U.S. Dist. LEXIS 106004 at *21-22 (E.D. Cal. July 26, 2013) (rejecting arguments that motion to intervene in class action untimely even though case had been pending for over five years, because "[d]iscovery is ongoing" and "very little has actually been litigated."); *Sloan v. GM LLC*, No. 16-cv-07244-EMC, 2020 U.S. Dist. LEXIS 167905, at *27-28 (N.D. Cal. Sep. 14, 2020) ("With respect to the stage of the proceedings and the reason for delay, courts regularly permit intervention after class certification"). Rather, this motion comes at a natural juncture in this litigation. Moreover, it comes less than two weeks after Defendants' challenge to Plaintiff Swartz's ability to serve as a class representative.

No significant delay will be caused by the intervention. The class certification hearing is set for April 16, 2024. New Plaintiffs have offered to sit for depositions. New Plaintiffs would not otherwise affect any aspect of the pending class certification motion. They assert the same legal theories and would rely on the same evidence currently submitted.

Nor can Defendants show prejudice. "To determine whether intervention prejudices other parties to a case, the court compares the harm from allowing intervention at a later stage of the proceedings with what would have occurred no matter when the applicant was allowed to intervene." *W. Coast Seafood Processors Ass'n v. Natural Res. Def. Council, Inc.*, 643 F.3d 701, 710 (9th Cir. 2011); *see also Munoz*, 2013 U.S. Dist. LEXIS 106004, at *24 ("prejudice in this context is the harm that arises from late intervention as opposed to early intervention"). In other words, to show prejudice, Defendants must show that they would be prejudiced in ways they would not have otherwise been had New Plaintiffs sought intervention sooner. Defendants cannot do so, particularly because any claimed prejudice would be of their own making—e.g., refusing to depose New Plaintiffs despite being afforded the opportunity.

*Munoz* is on point. There, a new plaintiff sought to intervene at the time the court held a hearing on the plaintiff's motion for class certification. *Munoz*, 2013 U.S. Dist. LEXIS 106004, at *4, 9-10. The intervenor proposed entirely adopting the allegations of the complaint and sought to intervene "for the sole purpose of tethering the already-pled . . . allegations to a named class representative." *Id.* at *17-18. The court found her motion timely, despite the fact the case had been pending for five years. *Id.* at *21. The court also rejected the defendant's argument that intervention would prejudice them by requiring taking her discovery and briefing additional class certification issues, finding that to amount to "little-to-no-prejudice." *Id.* at *25. Here, as in *Munoz*, the allegations are the same, and any new discovery to be propounded will either be discovery that Defendants would have to propound regardless of when intervention occurs, or otherwise is discovery that would occur in a separate litigation.

Finally, the inclusion of New Plaintiffs in this litigation in connection with the class certification motion will arguably expedite the proceeding. Should this Court find Swartz to be atypical or inadequate to represent the California purchasers, the analysis can be conducted here and now, rather than in a later class certification briefing that will arise out of the lawsuits New Plaintiffs will inevitably file if they are not permitted to intervene.

**ii. New Plaintiffs Have Significant, Protectable Interests, and the Disposition of this Action May Impede Their Ability to Protect Their Interests.**

To demonstrate a sufficient interest in a motion to intervene, prospective intervenors must establish that they have a "significant predictable interest" such that "disposition of the action may . . . impair or impede the [intervenors'] ability to protect [their] interest." *Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011). These two prongs are automatically satisfied where, as here, a person seeks to intervene in a class action of which he is a member of a putative class. *In re Cmty. Bank of N. Virginia*,418 F.3d 277, 314 (3d Cir. 2005) ("In the class action context, the second and third prongs of the Rule 24(a)(2) inquiry are satisfied by the very nature of Rule 23 representative litigation."); *see also Glass v. UBS Fin. Servs*., No. C-06-4068 MMC, 2007 U.S. Dist. LEXIS 8509, at *8 n.1 (N.D. Cal. Jan. 17, 2007) ("the Ninth Circuit has stated, albeit in a footnote, that where a motion to intervene is timely, a

class member 'should have the right to intervene in a class action if he can show the inadequacy of the representation of his interest by the representative parties before the court,' thus suggesting that members of a class, by their very nature, meet the first two requirements for intervention as a matter of right.") (citing *See Diaz v. Trust Territory of the Pacific Islands,* 876 F.2d 1401, 1405 n.1 (9th Cir. 1989)); *Munoz*, 2013 U.S. Dist. LEXIS 106004, at *35 (noting that a complaint that "alleges claims that span a class period encompassing [intervenor's] claims . . . provide a ***significant*** protectable interest") (emphasis added); *In re Melridge, Inc. Sec. Litig.*, 1988 U.S. Dist. LEXIS 14392, at *4 (D. Or. Aug. 11, 1988) ("Denying [intervenor] leave to intervene and forcing him to start his own suit, as a practical matter, impair [intervenor's] and the class members' who he seeks to represent interests in the suit.")

Here, New Plaintiffs are members of the putative class now represented solely by Plaintiff Swartz. Denying New Plaintiffs the opportunity to intervene in this suit would cause duplicative lawsuits to be filed in this Court by the New Plaintiffs. Such an outcome would be detrimental to all parties in the matter, as well as the Court itself.

**iii. Swartz May Not Adequately Represent New Plaintiffs' Interests.**

In determining whether a would-be intervenor's interests will be adequately represented by an existing party, "courts consider: (1) whether the interest of a present party is such that it will undoubtedly make all the intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether the would-be intervenor would offer any necessary elements to the proceedings that other parties would neglect." *Southwest Ctr. For Biological Diversity v. Berg*, 268 F.3d 810, 810 (9th Cir. 2001). Additionally, the burden of showing inadequacy is "'minimal,' and the applicant need only show that representation of its interests by existing parties '*may be*' inadequate." *Tribovich v. United Mine Workers*, 404 U.S. 528, 538 n. 10 (1972) (emphasis added)*; see also In re JDS Uniphase Corp. Sec. Litig.*, 2005 WL 256261 (N.D. Cal. Oct. 12, 2005) (defendants' "attack on the standing of the current named [p]laintiff to bring claims on behalf of the [] Subclass actually bolsters the motion to intervene, because it illustrates why [intervenor] seeks, in an abundance of caution, to intervene to protect its interests").

Here, there exists the possibility that this Court could find that New Plaintiffs are not adequately represented by Swartz. While their claims with respect to the Defendants' unlawful protein labeling are identical, Defendants have argued that Swartz's recent deposition testimony regarding his purchase of the Product a few weeks after he filed a complaint demonstrates a lack of standing making him atypical or inadequate. As noted above, Plaintiff Swartz vigorously disputes those assertions, but, out of an abundance of caution and in the interest of the class as a whole, New Plaintiffs make this motion to intervene in case this Court determines that Mr. Swartz cannot adequately represent the interests of California consumers.

Intervention under circumstances such as this should be granted as a matter of right. *See, e.g., Diaz v. Trust Territory of the Pacific Islands*, 876 F.2d 1401, 1405 n. 1 (9th Cir. 1989) ("[A] member of a class should have the right to intervene in a class action if he can show the inadequacy of the representation of his interest by the representative parties before the court"); )); *Munoz*, 2013 U.S. Dist. LEXIS 106004, at *39 (intervention granted as a matter of right where intervenor could represent class members with different statute of limitations concerns); *Dixon v. Cost Plus*, 2012 WL 2499931 (N.D. Cal. June 27, 2012) (intervention granted as a matter of right where intervenor raised concerns about putative representative's adequacy); *Trief v. Dun & Bradstreet Corp.*, 144 F.R.D. 193 (S.D.N.Y. 1992) ("Intervention of class representatives to ensure adequate class representation is highly desirable.").

**c. In the Alternative, This Court Should Permit New Plaintiffs To Intervene Under Rule 24(b).**

Rule 24(b) allows permissive intervention when (1) application is timely; (2) the proposed intervenor and the existing parties present common questions of law or fact; and (3) intervention will neither unduly delay nor prejudice the rights of the original plaintiffs or defendants. *See* Fed. R. Civ. P. 24(b).

For the reasons set forth in detail above, New Plaintiffs have satisfied the first and third prongs of timeliness and lack of delay or prejudice.

With respect to the second requirement under Rule 24(b), New Plaintiffs' claims raise identical issues of law and fact to those in Swartz's operative first amended complaint. Moreover,

Rule 24 does not require that all questions of fact and law be identical, but rather, it merely requires that the intervenor have "***a*** claim or defense that [it] shares with the main action." Fed R. Civ. P. 24(b)(1)(B) (emphasis added). Here, where all the key factual issues underlying New Plaintiffs' claims are identical to Swartz's, the second prong is satisfied.

Finally, in evaluating whether to grant a Rule 24(b) request for intervention, this Court should consider the interests of judicial economy. *See Venegas v. Skaggs*, 867 F.2d 527, 531 (9th Cir. 1989) *aff'd sub nom*. *Venegas v. Mitchell,* 495 U.S. 82 (1990) ("judicial economy is a relevant consideration in deciding a motion for permissive intervention"). In *Venegas*, the Ninth Circuit considered the consequences of a district court's refusal to grant permissive intervention where that refusal would result in a subsequent lawsuit being filed. *Id*. The Ninth Circuit concluded that because the parties "would be required to make a record that would consist of facts and arguments that are already before this court . . . [and] would be forced to litigate before a judge who lacks the long experience with this case," the interests of judicial economy would be better served by allowing intervention. *Id.* (citing *Wood v. Motorola, Inc.*, 587 F.Supp. 531, 532-533 (D. Haw. 1984)); *see also MGM Grand Hotel, Inc. v. Smith-Hemion Prods., Inc.*, 158 F.R.D. 677, 680 (D. Nev. 1994) (considering judicial economy in decision to allow for permissive intervention). Accordingly, New Plaintiffs should be permitted to intervene.

## IV. CONCLUSION

For the foregoing reasons, New Plaintiffs respectfully request they be permitted to file the complaint in intervention attached as Exhibit 1 and join in Plaintiff Swartz's request for leave to file an identical consolidated amended complaint.

Dated: February 23, 2024

**GUTRIDE SAFIER LLP**
*/s/Seth Safier/s/*
Seth A. Safier, Esq.
Marie McCrary, Esq.
Hayley Reynolds, Esq.
100 Pine Street, Suite 1250
San Francisco, CA 94111