**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**DAVID SWARTZ,**

Plaintiff,

v.

**DAVE'S KILLER BREAD, INC. AND FLOWERS FOODS, INC.,**

Defendant.

**Case No.: 4:21-cv-10053-YGR**

**ORDER DENYING DEFENDANTS' MOTION TO DISMISS FOR LACK OF STANDING;**

**DENYING MOTION TO INTERVENE;**

**GRANTING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION; AND**

**DENYING DEFENDANTS' MOTION TO STRIKE THE DECLARATION OF COLIN B. WEIR**

Re: Dkt. Nos. 73, 87, 89, 100

Plaintiff David Swartz brings this case against defendants Dave's Killer Bread, Inc. and Flowers Foods, Inc. under the California Unfair Competition Law. Plaintiff alleges defendants violated regulations of the Food and Drug Administration ("FDA"), and therefore California's Unfair Competition Law ("UCL"), by including unlawful labels on their bread products.

Plaintiff moves to certify a class on a single UCL claim. In response, defendants move (i) to strike the declaration of plaintiff's expert, Colin B. Weir and (ii) to dismiss plaintiff for lack of Article III standing. In response to the latter, proposed intervenors move to intervene so they may maintain the action in case plaintiff is dismissed.[1]

[1] The parties also submit several administrative motions to file under seal and administrative motions to consider whether another party's material should be sealed. (Dkt. Nos. 72, 77, 88, 91, 92, 103, 107, 115, 124.) To the extent the Court relies on information sought-to-be sealed in this Order, the motions are **DENIED**. For the rest, the Court **GRANTS** the motions at this stage. The Court reserves the right, however, to unseal currently sealed submissions upon ruling on dispositive motions or at trial.

United States District Court
Northern District of California

## I. BACKGROUND

The Court assumes familiarity with this case and incorporates the background sections of its prior orders. (Dkt. Nos. 34 at 2, 46 at 2.)

In relevant part, plaintiff alleges that defendant violated FDA labeling regulations, and as a result, plaintiff paid a price premium for the products. (Dkt. No. 37 ¶¶ 7-8.) Plaintiff contends that defendant unlawfully included protein content claims on the front of their bread product labels, without also including the protein content calculated using the FDA-mandated protein digestibility-corrected amino acid score ("PDCAAS") method as a percentage of daily value ("%DV") on the labels' nutrition facts panel (the "NFP"). (*Id.* at ¶¶ 5, 24.)[2]

The Court previously granted a motion to dismiss with leave to amend (Dkt. No. 34), before denying a second motion to dismiss allowing plaintiff to proceed on claims under the California Consumer Legal Remedies Act ("CLRA," Cal. Civil Code § 1750 et seq.); California False Advertising Law ("FAL," Cal. Bus. & Prof. Code § 17500 et seq.); and California Unfair Competition Law ("UCL," Cal. Bus. & Prof. Code § 17200 et seq.), as well as for fraud and misrepresentation; and unjust enrichment. (Dkt. No. 46 at 1.) Plaintiff now moves to certify class on only his UCL claim. (Dkt. No. 72-3 at ii.)

## II. MOTION TO DISMISS & MOTION TO INTERVENE

Defendants move to dismiss under 12(b)(1) for lack of Article III standing arguing that plaintiff's deposition testimony contradicts facts alleged in his complaint and otherwise renders his complaint factually deficient. (Dkt. No. 88-4 at 1.) As noted, proposed intervenors move to intervene as a precaution. (*See* Dkt. Nos. 100 at 2; 113 at 10.) As the intervention motion turns on whether plaintiff has standing, the Court addresses that motion first.

---

[2] Defendants argue that, at some points during the class period, they included a %DV on some labels. Plaintiff responds that defendants did not use the PDCAAS method to calculate the %DV, and therefore all products sold during the class period fall under their UCL theory. (Dkt. No. 115-2 at 13.)

United States District Court
Northern District of California

### A. Article III Standing

In the Ninth Circuit, when "the sole named plaintiff never had standing . . . the case must be dismiss[ed]" and "substitution or intervention" is not permissible. *Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1023 (9th Cir. 2003).[3]

A party may raise the court's lack of subject matter jurisdiction "at any time in the same civil action." *Kontrick v. Ryan*, 540 U.S. 443, 455 (2004). An attack on subject matter jurisdiction under Rule 12(b)(1) may be either facial or factual. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). A factual attack on jurisdiction such as defendants' "disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Id*. The Court also "need not presume the truthfulness of the plaintiff's allegations" when resolving a factual attack under Rule 12(b)(1). *White*, 227 F.3d at 1242.

Article III of the United States Constitution provides that federal courts may only adjudicate "cases" and "controversies." U.S. Const. Art. III, § 2. The constitutional standing inquiry "focuses on whether the plaintiff is the proper party to bring this suit." *Raines v. Byrd*, 521 U.S. 811, 818 (1997). To establish standing under Article III, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1547 (2016).[4]

---

[3] Plaintiff argues that the Court should convert defendants' motion to dismiss under 12(b)(1) to a motion for summary judgment because defendants cite only to *statutory standing* cases, as opposed to *Article III constitutional standing* cases to support their motion. (Dkt. No. 103-2 at 5.) The Court declines to convert the motion and evaluates the motion as a motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1). *See Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011) ("[L]ack of statutory standing requires dismissal for failure to state a claim, lack of Article III standing requires dismissal for lack of subject matter jurisdiction."). The Court notes, however, that defendants' arguments are of little persuasive authority due to their weak bearing on the question of whether plaintiff has Article III standing.

[4] Defendants argue that an Article III standing analysis "can consider standing under the alleged statutes." Dkt. No 107-3 at 4 (referencing *In re Coca- Cola Prod. Mktg. & Sales Pracs.*

United States District Court
Northern District of California

Defendants argue that plaintiff made three claims in his deposition testimony that render his complaint factually deficient and therefore defeat subject matter jurisdiction.

First, defendants challenge plaintiff's claim that he would not have purchased the product or would have paid less for it if he had known the "true nature of the Products" (Dkt. No. 37 ¶ 65) because he made a single post-lawsuit purchase of the product. Not so. Plaintiff's claim is based on the allegation that he paid a price premium for a product with an unlawful label to meet his child's nutritional protein needs. (*See* Dkt. No. 104-2, Reynolds Decl., Ex. 1 at 84:19-23 91:2-6; 92:4- 25; 94:16-95:18; 143:19-144:9.) A claim that defendants "create[d] demand that would not otherwise have existed," "causing plaintiffs to overpay" is sufficient to establish Article III standing. *See Maya* 658 F.3d at 1069. Plaintiff's one-time post lawsuit purchase because his child had become accustomed to its taste is not relevant to the inquiry as he can assert that the protein considerations were no longer as significant as when the child was young. (*Id.*, Reynolds Dec., Ex. 1 at 55:23-56:3, 80:22-81:6, 119:15-25, 121:7–17.) That single purchase does not contradict the allegation that plaintiff suffered an injury in fact. Nor does it demonstrate that the injury of paying a premium is not traceable to the defendants' conduct, or that it cannot be redressed. Defendant cites no authority holding that a post-lawsuit purchase defeats Article III standing, and the Court is not persuaded that a single post-lawsuit purchase nullifies several purchases before filing. Plaintiff's single post-lawsuit purchase, therefore, is not enough to defeat reliance. *Clay v. CytoSport, Inc.*, No. 3:15-CV-00165-L-AGS, 2018 WL 3648061 (S.D. Cal. July 31, 2018) (denying summary judgment on statutory standing claims where plaintiff "relied on the protein content at least for some of her purchases.").

Second, defendants argue that plaintiff's deposition testimony contradicts his complaint. Specifically, defendants argue that plaintiff's complaint states that he relied on the %DV in the NFP, while he stated during deposition he did not remember whether the purchased products had a

*Litig.* (No. II), No. 20-15742, 2021 WL 3878654, at *1 (9th Cir. Aug. 31, 2021). The Court declines to do so here and analyzes only whether plaintiff has Article III standing. Analyzing statutory standing under the UCL together with Article III standing would allow defendant to use a back-door to make 12(b)(6) arguments using a 12(b)(1) motion.

United States District Court
Northern District of California

%DV on the NFP. (Dkt. No. 103-2 at 16.) Plaintiff does not proceed solely on a theory that he relied on the lack of a %DV in the NFP, however. Plaintiff also alleges that he paid a price premium stemming from defendants' unlawfully labeled products. (Dkt. No. 37 ¶¶ 7-8.) For this theory, the lack of a %DV is relevant only insofar as it establishes that defendants allegedly violated regulations, but plaintiff is not required to show that his injury stemmed from reliance on that claim. Plaintiff's theory that he paid a price premium attributable to unlawful labels sufficiently pleads an injury in fact that is fairly traceable to the challenged conduct of the defendant. *See Spokeo* 136 S.Ct. at 1547 (2016).

Finally, defendants argue that plaintiff stated in his deposition that he did not know how %DV is calculated, or that it relates to "useable protein." Here, too, plaintiff's claim does not require reliance on a misleading statement; only that plaintiff bought an unlawful product and paid a premium. Plaintiff has done so, and therefore established Article III standing.

### B. INTERVENTION

Proposed plaintiffs conceded that their motion to intervene "may be denied as moot" if the Court holds that plaintiff has standing and is allowed to represent the class. (Dkt. No. 113 at 9.) Having denied the motion and granted plaintiff's motion for class certification (*see* Infra Part III), the Court hereby **DENIES AS MOOT** proposed plaintiffs' motion to intervene.

## III. MOTION FOR CLASS CERTIFICATION

Plaintiff moves to certify the following class:

> All persons in the State of California who purchased the Products[5] between December 29, 2017 and the present.

(Dkt. No. 72-3 at ii.) The Court begins with the predominance element under Rule 23(b)(3) where defendants place primary focus.

---

[5] The "Products" are all Dave's Killer Bread, Inc. and Flowers Foods, Inc. products which made a front label protein claim and fail to include the statement of the corrected amount of protein per serving expressed as the percent of daily value in the Nutrition Facts Panel during the class period. A Product list is attached as Exhibit B to the First Amended Complaint filed on June 17, 2022 and attached hereto as Exhibit A. (*See* Dkt. No. 37.) This definition applies each subsequent time this Order references the "Products" in a class definition.

**A. PREDOMINANCE – RULE 23(B)(3)**

*1. Damages Calculated on Class-Wide Basis*

Defendants argue that damages cannot be calculated on a class-wide basis because plaintiff violates *Comcast*. "Calculations need not be exact, but at the class-certification stage (as at trial), any model supporting a plaintiff's damages case must be consistent with its liability case . . . ." *Comcast v. Behrend*, 569 U.S. 27, 35 (2013) (cleaned up). A Rule 23(b)(3) plaintiff must show a class wide method for damages calculations as a part of the assessment of whether common questions predominate over individual questions. *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 514 (9th Cir. 2013).

"[P]laintiffs must be able to show that their damages stemmed from the defendant's actions that created the legal liability." *Id.* at 513-14. However, uncertainty "regarding class members' damages does not prevent certification of a class as long as a valid method has been proposed for calculating those damages." *Lambert v. Nutraceutical Corp.*, 870 F.3d 1170, 1182 (9th Cir. 2017), *rev'd on other grounds, sub nom*. *Nutraceutical Corp. v. Lambert*, 139 S. Ct. 710 (2019). "[T]here is no requirement that the evidence relied upon by Plaintiffs to support class certification be presented in an admissible form at the class certification stage." *Lytle v. Nutramax Lab'ys, Inc.*, 99 F.4th 557, 570 (9th Cir. 2024). "Nor is there a requirement that class action plaintiffs actually prove that classwide damages exist in order to obtain class certification. Rather, . . . class treatment [may] be appropriate . . . based upon a showing that damages could be calculated on a classwide basis, even where such calculations have not yet been performed." *Id.* at 571.

First, defendants argue that plaintiff's model violates *Comcast* because it does not *solely* measure and isolate damages that result from the alleged unlawful conduct, but also measures damages which includes lawful conduct. Specifically, defendants argue that plaintiff's damages survey includes a question about the statement "5g Protein" without specifying the location of that statement on product packaging. Therefore, argue defendants, survey respondents may think the statement refers to lawful claims in the NFP. (Dkt. No. 92-4 at 12-13.) An example of plaintiff's survey is below.

| | | | |
|---|---|---|---|
| Brand | O organics | Dave's Killer Bread | 365 Whole Foods Market |
| Label Statements | • Heart Healthy<br>• No High Fructose Corn Syrup<br>• NON-GMO<br>• Good Source of Fiber | • No Artificial Ingredients<br>• 5g Protein<br>• Good Source of Fiber<br>• 22g Whole Grains | • USDA Organic<br>• NON-GMO<br>• 5g Protein<br>• 22g Whole Grains |
| Price | $6.99 | $4.49 | $7.49 |
| | Select | Select | Select |

Assuming you were actually shopping for a package of bread and the options presented were your only options, **would you be willing to buy the bread that you chose?**

Yes No

Back Next

(Dkt. No. 77-49 ¶ 54.)

The Court disagrees. The survey methodology sufficiently tests whether users would pay more for protein claims because it demonstrates that users are being asked about front-of-package claims. The "5g Protein" claim at issue is provided alongside other claims that appear on the front of packages. Further, respondents would not confuse the "5g protein" claim for a NFP claim because there are no other claims in the survey that are typically included in a NFP.

Second, defendants urge that the Court allowed plaintiff to proceed on a narrow theory: consumers paid a premium based "on the relationship between the front label and the nutrition

United States District Court
Northern District of California

label." (*See* Dkt. No. 46 at 4.) Thus, to be consistent with that liability theory, plaintiff's model must specifically test whether there is a price premium associated with the omission of a %DV in the NFP, instead of testing only the premium associated with a front-of-label claim. (Dkt. No. 92-4 at 14.) As articulated by plaintiff, the methodology currently only tests whether there is a price premium associated with the absence or presence of a front-of-package protein content claim – e.g., "5g protein." (*See* Dkt. No. 77-49 ¶¶ 11, 48-55.)

Plaintiff's methodology is consistent with his theory of liability, however, because it evaluates the price premium associated with defendants' alleged violation of the regulatory scheme at issue. The Court allowed plaintiff to proceed on his claim that defendants violated FDA regulations that state that "a nutrient content claim[] may not be made on the label or in labeling of foods unless" it provides a PDCAAS-based %DV for protein. (Dkt. No. 46 at 2 (citing 21 C.F.R. § 101.9(c)(7)(i)-(ii); § 101.13(n)). A seller can comply by either omitting a front-of-package protein content claim, or if they choose to include such a claim, they can also include a %DV for the protein content in the nutrition fact panel on the back of the package. Weir's methodology estimates a price premium by measuring the cost of complying with the regulation, specifically by omitting a front-of-package claim. Therefore, measuring the premium paid by consumers is "consistent with" plaintiff's "liability case." *Comcast* 569 U.S. at 35.

Defendants argue that plaintiff must also measure the impact of adding a %DV because plaintiff's liability theory depends on the relationship between a front-of-package claim and a %DV claim. (Dkt. No. 92-4 at 5.) While a conjoint study measuring the effect of %DV may also be consistent with plaintiff's liability case, plaintiffs are not generally required to test every potential liability theory. They must only provide a methodology consistent with their liability case, which plaintiff has done here.

*2. Causation and Injury Established on a Class-Wide Basis*

Defendants next argue that a causal link between defendants' unlawful practices and harm to consumers has not been established on a class-wide basis. (Dkt. No. 92-4 at 15, citing *Campion v. Old Republic Home Protection Co., Inc.*, 272 F.R.D. 517, 532-33 (S.D. Cal. 2011).) The UCL unlawful prong requires "injury in fact and . . . lost money or property as a result of the unfair

competition." Cal. Bus. & Prof. Code § 17204. Upon establishing an unlawful practice, the UCL authorizes restitution of any amount of money "which may have been acquired by means of such" unlawful conduct. Cal. Bus. & Prof. Code § 17203. "[T]his standard focuses on the defendant's conduct, . . . and is substantially less stringent than a reliance or 'but for' causation test." *In re Tobacco Cases II*, 240 Cal. App. 4th 779, 798 (2015). While "a named plaintiff in a UCL class action now must show that he or she suffered injury in fact and lost money or property as a result of the unfair competition, once the named plaintiff meets that burden, no further individualized proof of injury or causation is required to impose restitution liability against the defendant in favor of absent class members." *In re Steroid Hormone Prod. Cases*, 181 Cal. App. 4th 145, 154 (2010).

Here, plaintiff meets his burden by demonstrating that he and the class members paid a price premium resulting from the inclusion of a front-of-package claims without a %DV in the NFP. *See Gunaratna v. Dennis Gross Cosmetology LLC*, No. CV202311MWFGJSX, 2023 WL 5505052, at *23 (C.D. Cal. Apr. 4, 2023). ("If there was a premium, all who purchased the Products were economically harmed.").

Defendants counter that plaintiff must, but does not, show that the lack of a %DV for protein, in combination with the front label statement, resulted in injury. (Dkt. No. 92-4 at 17.)[6] Here, plaintiff does show that the lack of a %DV claim resulted in injury. Plaintiff argues that (1) defendants' "sale of . . . products was unlawful" and (2) defendants "acquired [money] by means of those sales." (Dkt. No. 115-2 at 1 (citing *Steroid Hormone Prod. Cases*, 181 Cal. App. 4th 145, 155 (2010)). The first prong of this argument, that the sale of products was unlawful, encompasses plaintiff's fundamental regulatory argument that the lack of a %DV for protein, in combination with the front label statement was unlawful. Plaintiff, therefore sufficiently demonstrates unlawful practices and harm to the class members on a class wide basis.

[6] To support this argument, defendants cite only an order dismissing a complaint for failing to connect front-of-package claims to %DV NFP claims. (Dkt. No. 92-4 at 17-18 citing *Roffman v. Perfect Bar, LLC*, 2022 WL 4021714, at *6 (N.D. Cal., Sept. 2, 2022). Here, the Court has already held that plaintiff sufficiently connected such claims. (Dkt. No. 46 at 4.)

**B. TYPICALITY – RULE 23(A)(3)**

"The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (cleaned up). Further, "class certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).

Defendants bring four challenges to plaintiff's typicality. First, plaintiff is atypical because he purchased Dave's Killer bread once after filing the complaint. Notably, post-knowledge purchases do not necessarily defeat typicality. *See, e.g.*, *Corcoran v. CVS Health*, No. 15-CV-03504-YGR, 2017 WL 1065135, at *8 (N.D. Cal. Mar. 21, 2017) (rejecting the argument that plaintiffs "should be considered atypical because they continued to purchase prescriptions from CVS pharmacies even after learning of the alleged misrepresentations"). Here, plaintiff purchased Dave's Killer Bread products for their protein content, and the products included a package that violated FDA regulations. Such facts are typical of the class and a single post-complaint purchase does not render plaintiff atypical.

Second, defendants argue that plaintiff did not remember, when deposed, whether the Dave's Killer Bread he purchased included a %DV on the nutrition label. Defendants argue that plaintiff's lack of memory requires him to meet defenses not typical of other class members. Plaintiff's claim turns on whether defendants violated a statute by including front-of-package protein claims without corresponding %DV NFP content. Defendants do not specify what plaintiff's unique defenses may be, but it is unlikely plaintiff's recollection of a %DV is relevant to the question of whether defendants violated regulations and plaintiff paid a premium. Plaintiff's memory of the package he purchased several years ago may impact his credibility at trial but such defenses will likely not be unique to this plaintiff. Therefore, he is typical.

Third, defendants point to plaintiff's admission that he purchased defendants' bread products not for his own consumption, but for his child. Defendants do not articulate why purchasing groceries for a family member is atypical, and the Court is not persuaded that doing so

makes someone unique. Relevant here is that plaintiff purchased the products for their protein content, and allegedly paid a premium to do so.

Fourth, defendants argue that plaintiff's prior work plaintiff's counsel in other class actions makes him atypical. This alone is not sufficient to defeat typicality. "[C]ourts have rejected the notion that serial plaintiffs are inadequate and atypical class representatives solely by virtue of having served as named plaintiffs in other class actions." *Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084, 1120 (N.D. Cal. 2018). Typicality issues arise when a plaintiff does something at the behest of their counsel for the sole purpose of serving as a class representative, for example by purchasing stocks to represent a class. *See Hanon*, 976 F.2d at 508. Such is not the case here.

**C. "ASCERTAINABILITY"**

Defendants argue plaintiff does not demonstrate that "it is administratively feasible to determine whether a particular person is a member of the class." (Dkt. No. 92-4 at 20–23.) "[R]equiring class proponents to satisfy an administrative feasibility prerequisite conflicts with the well-settled presumption that courts should not refuse to certify a class merely on the basis of manageability concerns." *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1128 (9th Cir. 2017) (cleaned up). The Ninth Circuit assesses manageability "as one component of the superiority inquiry." *Id.*

Here, it is sufficient that plaintiff's class definition includes specific product purchases containing specific claims during a specific class period. *See Farar v. Bayer AG*, No. 14-CV-04601-WHO, 2017 WL 5952876, at *14 (N.D. Cal. Nov. 15, 2017) ("[P]laintiffs' class definitions provide objective criteria that allow class members to determine whether they are included in the proposed class. . . . [C]lass members need only evaluate whether they (1) purchased Bayer One A Day Supplements (2) that contained one or more Claims (3) during the Class Period"); *see also Otto v. Abbott Lab'ys Inc.*, No. 512CV01411SVWDTB, 2015 WL 9698992, at *4 (C.D. Cal. Sept. 29, 2015) ("As courts in our circuit have repeatedly found, whether or not someone purchased a product at a specific time is an accessible question that can be determined on an objective basis.").

Defendants counter that the labels have changed over time, and that some labels included a %DV during some part of the first two years of the class period. (Dkt. No. 92-4 at 21.) Plaintiff

demonstrates by a preponderance of the evidence,[7] however, that labels including a %DV were not compliant with the regulations at issue, because the %DV was not calculated using the statutory mandated "PDCAAS" method.[8] Therefore, those labels, like all labels sold during the class period, meet the class definition, and can be determined on an objective basis.

Defendants also argue that some product labels "toward the end of the class period . . . were changed to include the %DV calculated under the PDCAAS method." (*Id*.) Defendants are correct that these products do not fall under plaintiff's proposed class definition, and the Court modifies the class definition accordingly, below.

Next, defendants argue that there is "no way of knowing when consumers would have seen the new label." (*Id.*) Not so. Defendants' declaration notes that new labels appear in stores only after multiple rounds of review and approval. (Dkt. No. 90-4 ¶¶ 4-8.) Defendants' testimony also notes that the first label with a PDCAAS-based %DV was approved on September 6, 2023, and that it would be impossible for any new label to have been on stores shelves in California prior to that approval date. (Dkt. No. 115-4, Reynolds Decl., Ex. C at 68:21-69:15.) Therefore, the Court hereby modifies the class period to end on September 5, 2023. The modified class definition is:

> All persons in the State of California who purchased the Products between December 29, 2017 and September 5, 2023.

---

[7] Courts in the Ninth Circuit use the preponderance of the evidence standard to evaluate motions for class certification. *In re JUUL Labs, Inc., Mktg. Sales Pracs. & Prod. Liab. Litig.*, 609 F. Supp. 3d 942, 959 (N.D. Cal. 2022); *see also Kristensen v. Credit Payment Servs.*, 12 F. Supp. 3d 1292, 1302 (D. Nev. 2014) ("Although neither the Supreme Court nor the Ninth Circuit has established the proper standard of proof for class certification, this Court follows other district courts within the Ninth Circuit that have applied the preponderance standard.").

[8] Dkt. No. 117 ¶ 7 (summarizing review of the labels at issue and stating that none include PDCAAS-calculated %DV); *see also* Dkt. No. 115-4, Ex. C at 69:15-71:3 (Defendants' declarant confirming he is not aware of "labels prior to . . . September 6, 2023, that had a percent daily value in the nutritional facts panel for Dave's Killer Bread product that was calculated using PDCAAS.")

**D. NON-PURCHASED PRODUCTS**

Defendants argue that various Dave's Killer Bread products not purchased by plaintiff do not belong in the class definition because plaintiff has not provided evidence of common damages. Defendants also argue that plaintiff is not a typical class representative for those other products.

First, plaintiff must demonstrate that "damages are capable of measurement" on a class-wide basis. *Comcast* 569 U.S at 34. Here, plaintiff has done so for all products for which he seeks certification. He provides a proposed conjoint methodology that is capable of assessing the price premium attributable to front-label protein claims on *any* of the products at issue. (*See generally*, Dkt. No. 72-49, Weir Decl.) Plaintiff's expert uses the specific bread product that he purchased to provide illustrative examples of his methodology, and notes he will use the same methodology to assess the premium for the other products (i.e. thin-sliced breads and bagels) that make different numerical claims (e.g. "3g Protein" or "13g Protein"). Plaintiff's expert will make minor adjustments to the numerical value of the represented protein claims and the prices in the survey to account for the different protein claims. (*Id.* ¶ 98 n.47.)[9] Defendants argue that they will not have an opportunity to challenge Weir's "minor adjustments," however they will have an opportunity to do so when Weir performs the methodology to calculate the results and submits an additional report. *Johnson v. Nissan N. Am., Inc.*, No. 3:17-CV-00517-WHO, 2022 WL 2869528, at *6 (N.D. Cal. July 21, 2022) (the "tactical choice to not perform the [conjoint] survey yet . . . was the plaintiffs' to make.").

Second, defendants argue that plaintiff is not typical because he prefers regular sliced bread to thin-sliced bread or bagels. (Dkt. No. 92-4 at 23-25.) Plaintiffs need not be "identical" to all class members to be typical. *See Just Film, Inc. v. Buono*, 847 F.3d 1108, 1117 (9th Cir. 2017) (holding that plaintiff injuries stemming from the "same overall course of misconduct against other members of the class" is sufficient.) His claim that the front label protein claim on a regular-sliced bread product was unlawful due to the absence of a %DV for protein in the NFP is identical to those of all other product purchasers, which is sufficient for typicality. *See Werdebaugh v. Blue Diamond*

[9] Plaintiff's expert does not specifically "buns" in his declaration. Defendants do not specify why buns would require a different methodology or are otherwise different from any other Products, so the Court allows them in the class definition.

United States District Court
Northern District of California

*Growers*, No. 12-CV-2724-LHK, 2014 WL 2191901, at *15 (N.D. Cal. May 23, 2014) (rejecting argument plaintiff was "atypical because he purchased only one of the eighteen products included in the class definition" because all products included same challenged label claim and the "legal theory is identical" for all products).

### E. *Buckman* Preemption

Defendants argue that plaintiff's claim is preempted under *Buckman*. This Court previously held that courts "routinely hold that food labeling claims under the Sherman Law are not preempted by *Buckman*." Dkt. No. 46 at 4-5. Since its decision, the Ninth Circuit has added further clarity, holding "the FDCA does not impliedly preempt private enforcement of the Sherman Law," in a case involving a UCL food labeling claim similar to the one at issue here. *Davidson v. Sprout Foods, Inc.*, 106 F.4th 842, 852 (9th Cir. 2024). The court held that because "the Sherman Law incorporates all the federal food labeling requirements, it is 'identical' to federal standards and not expressly preempted. It is expressly permitted." *Id.* at 848. Because plaintiff brings a claim under the Sherman Law that is identical to the federal standards, his claim is likewise permitted.[10][11]

## IV. MOTION TO STRIKE PLAINTIFF EXPERT DECLARATION (*DAUBERT*)

Defendants move to strike plaintiff's expert declaration in support of plaintiff's motion for class certification. Defendants argue that (1) plaintiff's expert Weir's proposed damages model does not comply with *Comcast*, (2) Weir's conjoint analysis and damages model conflict with this Court's prior preemption ruling, and (3) Weir's proposed methodology is not scientifically valid.

---

[10] In a brief submitted prior to the Ninth Circuit's holding in *Davidson*, defendants argued that no district cases the "involved a single standalone unlawful prong claim based exclusively on an alleged labeling violation." (Dkt. No. 92-4 at 25.) Defendants, however, did not articulate why such a distinction is relevant here, and the case it cited does not contradict the Ninth Circuit's holding in *Davidson* that Congress expressly permits Sherman Law claims.

[11] Defendants concede that plaintiff satisfies Rules 23(a)(1), numerosity, and 23(a)(4), adequacy. (*See generally* Dkt. No. 92-4.) Defendants also incorporate their Rule 23(a)(2) commonality analysis into their predominance arguments. (*Id.* at 12 n.5.) Therefore, plaintiff has satisfied all elements necessary to certify a class.

United States District Court
Northern District of California

### A. Compliance with Comcast

Defendants' arguments here are fundamentally the same as the arguments the Court discusses above in Part III.A. The argument that "the methodology does not satisfy the requirement articulated in *Comcast* . . . *i.e.*, that damages be capable of measurement on a classwide basis . . . does not affect the admissibility of [an expert's] opinions." *In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 946 (C.D. Cal. 2015), *aff'd sub nom. Briseno v. ConAgra Foods, Inc*., 844 F.3d 1121 (9th Cir. 2017), and *aff'd sub nom. Briseno v. ConAgra Foods, Inc*., 674 F. App'x 654 (9th Cir. 2017). "In general, issues of methodology, design, and reliability go to the weight of the survey evidence, rather than its admissibility . . . . Importantly, the survey has not yet been conducted. Once it is complete, [defendant] may challenge it again at a later stage of litigation." *Fodera v. Equinox Holdings, Inc.*, 341 F.R.D. 616, 626 (N.D. Cal. 2022) (cleaned up).

Here, the Court finds that plaintiff's expert's model complies with *Comcast* for the same reasons articulated in Part III.A. To the extent there are any flaws in the methodology, they go to weight, and not admissibility, and do not support striking the declaration.

### B. Preemption

Defendants argue that Weir's proposed conjoint analysis and damages model tests a liability theory that the Court previously held is preempted. (Dkt. No. 92-5 at 14-15.) As discussed in Part III.A, above, Weir's methodology sufficiently tests the liability theory upon which the Court allowed plaintiff to proceed. It measures any premium associated with defendants' violation of the regulations at issue, and is therefore permissible.

### C. Scientific Validity of Weir's Methodology

Defendants raise four methodological critiques of Weir's conjoint analysis, arguing that each makes his analysis scientifically invalid. Federal Rule of Evidence 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702. At the class certification stage, "the relevant inquiry is a tailored *Daubert*[12] analysis which scrutinizes the reliability of the expert testimony in light of the criteria for class certification and the current state of the evidence." *Rai v. Santa Clara Valley Transportation Auth.*, 308 F.R.D. 245, 264 (N.D. Cal. 2015); *see also Grodzitsky v. Am. Honda Motor Co.*, 957 F.3d 979, 985–86 (9th Cir. 2020). "Ultimately, the test under *Daubert* is not the correctness of the expert's conclusions but the soundness of [their] methodology." *Elosu v. Middlefork Ranch Inc.*, 26 F.4th 1017, 1024 (9th Cir. 2022) (cleaned up).

1. *The Model's Pricing Assumptions*

Defendants argue that Weir's pricing model does not provide data, workpapers, or other analysis supporting his pricing assumptions. (Dkt. No. 29-5 at 15-16.) Weir states that his data set includes "through the register transaction data" for California during the class period, sourced from Information Resources, in addition to other methods. (Dkt. No. 72-49 ¶ 53, n.30.) Such real-world sales data is sufficient for admissibility. *See Krommenhock v. Post Foods, LLC*, 334 F.R.D. 552, 586 (N.D. Cal. 2020) (holding "sales figures produced by a third-party, IRI," supports certification.)

2. *Conjoint Survey Scientific Validity*

Defendants provide seven methodological arguments regarding Weir's survey methodology. Each argument, at best, goes to weight, and not admissibility. First, defendants argue that Weir's survey will artificially focus participants on the protein statements (Dkt. No. 92-5 at 17), but this argument does not persuade because "district courts have found that alleged focalism bias goes to the weight of the expert's opinion, not its admissibility." *In re Arris Cable Modem Consumer Litig.*, 327 F.R.D. at 372 (collecting cases).[13] Defendants' second and third arguments urge that Weir's surveys design relies on undocumented interviews. (Dkt. No. 92-5 at 18.) The survey design interviews at issue are merely a tool used in a survey design, and failure to take notes does not

---

[12] *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).

[13] Moreover, conjoint analyses are not required to "show the actual product packaging" and may "instead highlight[] challenged statements that survey respondents must read." *Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084, 1108 (N.D. Cal. 2018).

United States District Court
Northern District of California

warrant exclusion. Defendants may still "cross-examine" Weir "about the questions in his survey," regarding its questions, methodology, and the lack of development drafts. *Utne v. Home Depot U.S.A., Inc.*, No. 16-CV-01854-RS, 2022 WL 1443338, at *4 (N.D. Cal. May 6, 2022). Defendants' fourth and fifth arguments posit that Weir's survey will cause confusion because some label statements do not perfectly replicate labels as they would be seen in a store. However, "the Ninth Circuit has held that criticisms about a survey's fail[ure] to replicate real world conditions . . . go to the weight of the survey rather than its admissibility." *Hadley*, 324 F. Supp. 3d at 1108. (cleaned up).

Defendants' sixth and seventh arguments criticize Weir's methodology for not accounting for whether some consumers were or were not misled, or for different geographies, retailers, or time periods. (Dkt. No. 92-5 at 18-19.) Whether consumers were misled is not relevant to plaintiff's theory, however, and Weir's analysis does account for different geographies, retailers, and time periods. (Dkt. 73-13 ¶¶ 55-56.) Weir has provided enough specificity, and any methodological issues with addressing changes over time can be addressed after the study is carried out.

*3. Market Simulation Scientific Validity*

After conducting a consumer survey, Weir will use a market simulation tool to provide an estimate of any price premium that purchasers paid solely as a result of front-of-package protein claims. (Dkt. No. 118, Weir Reply Decl., ¶¶ 70–77.) Defendants argue that this step fails to account for competition because it does not include competitive offerings. Competitive offerings are accounted for in the data, however, because Weir includes questions about their labels in the survey. The simulator then holds competition constant to compare real world pricing and but-for world pricing. (*Id.* ¶¶ 78–81.) This method is sufficiently scientific.

*4. Supply Side Equilibrium Analysis*

Defendants argue that Weir's analysis should include a supply-side equilibrium analysis, rather than a method that considers supply-side factors through real-world pricing data. (Dkt. No. 92-5 at 20-21.) Moreover, this method does not account for the effect of a seller's willingness to sell the products on the price of the products. (Dkt. No. 92-5 at 22.)

Conjoint analyses "can adequately account for supply-side factors . . . when (1) the prices used in the surveys underlying the analyses reflect the actual market prices that prevailed during the class period; and (2) the quantities used (or assumed) in the statistical calculations reflect the actual quantities of products sold during the class period." *Hadley*, 324 F. Supp. 3d at 1105; *see also*, *Krommenhock v. Post Foods, LLC*, 334 F.R.D. 552, 576 (N.D. Cal. 2020). Here, plaintiff satisfies both prongs. (*See* Dkt. No. 72-49 ¶¶ 76–79 ("I will ground my analysis of the conjoint data in market reality by relying on the actual prices advertised and actual sales price data . . . . The price premium can be applied to every sale of the Products, and to every Class Member, respectively."))[14]

## V. CONCLUSION

For the foregoing reasons, the Court **GRANTS** plaintiff's motion for class certification under Rule 23(b)(3) for a class defined as:

> All persons in the State of California who purchased the Products between December 29, 2017 and September 5, 2023.

Further, the Court **DENIES** defendants' motion to dismiss for lack of standing; **DENIES** defendants' motion to strike the declaration of Colin Weir; and **DENIES AS MOOT** proposed intervenors' motion to intervene.

This terminates docket numbers 72, 73, 77, 87, 88, 89, 91, 92, 100, 103, 107, 115, and 124.

**IT IS SO ORDERED.**

Date: September 20, 2024

**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**

---

[14] In addition to the motions discussed in this Order, the Court also analyzed the flood of docket entries filed from February 16, 2024 to April 9, 2024. The Court denied the parties' administrative motions from the bench during the hearing on these motions. (Dkt. No. 136.) In addition to those rulings, the Court also: denies plaintiff's motion to strike the Wallingford expert opinion (Dkt. No. 122), overrules defendants' objection to Weir's reply declaration (Dkt. No. 121), and overrules defendants' objection to plaintiff's motion to strike objection. (Dkt. No. 126.)

United States District Court
Northern District of California

**EXHIBIT A – PRODUCTS INCLUDED IN CLASS DEFINITION**

| Product | Protein Label Claim |
|---|---|
| **Killer Breads** | |
| 21 Whole Grains and Seeds | 5g protein |
| Good Seed | 5g protein |
| Powerseed | 5g protein |
| 100% Whole Wheat | 4g protein |
| Righteous Rye | 5g protein |
| **Thin Sliced Bread** | |
| 21 Whole Grains and Seeds Thin-Sliced | 3g protein |
| Good Seed Thin-Sliced | 3g protein |
| Powerseed Thin-Sliced | 3g protein |
| Sprouted Whole Grains Thin-Sliced | 3g protein |
| **Breakfast Bagels** | |
| Epic Everything Bagels | 13g protein |
| Plain Awesome Bagels | 11g protein |
| Cinnamon Raisin Remix Bagels | 12g protein |
| Boomin' Berry Bagels | 11g protein |
| **Burger Buns** | |
| 21 Whole Grains and Seeds Burger Buns | 6g protein |
| Burger Buns Done Right | 6g protein |