MICHAEL L. RESCH (SBN 202909)
mresch@kslaw.com
LIVIA M. KISER (SBN 285411)
lkiser@kslaw.com
SAMUEL R. DIAMANT (SBN 288738)
sdiamant@kslaw.com
KING & SPALDING LLP
50 California Street, Suite 3300
San Francisco, California 94111
Telephone: (415) 318-1200
Facsimile: (415) 318-1300

QUYEN L. TA (SBN 229956)
quyen.ta@skadden.com
SKADDEN, ARPS, SLATE, MEAGHERS
& FLOM LLP
525 University Avenue, Suite 1400
Palo Alto, California 94301
Telephone: (650) 470-4500
Facsimile: (650) 798-6523

*Attorneys for Defendants*
Dave's Killer Bread, Inc.
and Flowers Foods, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| DAVID SWARTZ, | Case No. 4:21-cv-10053-YGR |
| Plaintiff, | Honorable Yvonne Gonzalez Rogers |
| v. | **DEFENDANTS DAVE'S KILLER BREAD, INC. AND FLOWERS FOODS, INC.'S:** |
| DAVE'S KILLER BREAD, INC. AND FLOWERS FOODS, INC., | |
| Defendants. | **(1) NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; AND** |
| | **(2) MEMORANDUM OF POINTS AND AUTHORITIES** |
| | [Separate Statement, Supporting Declaration and [Proposed] Order filed concurrently] |
| | Date: December 9, 2025 |
| | Time: 2:00 p.m. |
| | Location: Courtroom 1 – 4th Floor |

1

<u>**TABLE OF REFERENCES**</u>

2

<u>**Abbreviation**</u>                    <u>**Description**</u>

3

Kivetz Report                    Expert Report of Dr. Ran Kivetz attached as **Exhibit J** to the

4                                supporting Declaration of Michael Resch

5        Letchinger Decl.                 Declaration of Dan Letchinger dated July 28, 2025 attached as
                                 **Exhibit R** to the supporting Declaration of Michael Resch
6

7        SSUF                             Separate Statement of Undisputed Facts

8        Trumbo Decl.                     Declaration of Dr. Paula Trumbo, attached as **Exhibit Q** to the
                                 supporting Declaration of Michael Resch
9

10       Wallingford Decl.                Declaration of Dr. John Wallingford attached as **Exhibit P** to the
                                 supporting Declaration of Michael Resch
11

         Weir Decl.                       Amended Declaration of Colin B. Weir attached as **Exhibit D** to
12                                the supporting Declaration of Michael Resch

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT                    Case No. 4:21-cv-10053-YGR

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ..................................................................................................... 4

II.   BACKGROUND ..................................................................................................... 5

      A.    Relevant FDA Regulations ........................................................................... 5

      B.    Flowers' Product Labeling ............................................................................ 6

      C.    Swartz's Initial Complaint ............................................................................ 6

      D.    The Court Grants Flowers' First Motion to Dismiss Based on Preemption
            and Swartz's Failure to Allege Reliance ...................................................... 7

      E.    Swartz Cures the Statutory Standing Pleading Deficiency by Alleging that
            He Relied on the %DV in the NFP ............................................................... 7

      F.    The Court Certifies a Single UCL Unlawful Prong Claim ........................... 8

      G.    The Court Declines to Reach Statutory Standing Because Flowers Moved
            Under Rule 12(b)(1), Not for Summary Judgment ....................................... 8

      H.    Weir's Conjoint Surveys, As Conducted, Fail to Isolate the Front-Label
            Protein Statement ......................................................................................... 9

III.  ARGUMENT ......................................................................................................... 9

      A.    The UCL Claims, Including the Sole Certified Claim, Must Be Dismissed
            Under *Sonner* .............................................................................................. 9

      B.    Swartz Lacks Statutory Standing to Pursue the Certified UCL Claim ........ 12

            1.    Swartz's admissions establish that he did not rely on the omission
                  of the %DV. ........................................................................................ 13

            2.    There is no evidence that Swartz—or any other class member—lost
                  money as a result of the allegedly unlawful practice. ........................ 16

      C.    There is No Evidence that the Class Suffered Any Cognizable Injury ........ 22

      D.    Each of Swartz's Individual Claims Fails .................................................... 23

            1.    Swartz's UCL fraud and unfair claims fail as a matter of law. ........... 23

            2.    Swartz's common law fraud claim fails as a matter of law. ............... 24

            3.    Swartz's CLRA claim fails as a matter of law. ................................... 25

            4.    Swartz's FAL claim fails as a matter of law. ...................................... 25

           5.      Swartz's unjust enrichment claim fails as a matter of law.......................... 25

IV.     CONCLUSION ............................................................................................................. 25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Allegra v. Luxottica Retail N. Am.*,
    341 F.R.D. 373 (E.D.N.Y. 2022) ........................................................................... 21

*Backhaut v. Apple, Inc.*,
    74 F. Supp. 3d 1033 (N.D. Cal. 2014) .................................................................. 12

*Baghdasarian v. Amazon.com, Inc.*,
    458 F. App'x 622 (9th Cir. 2011) .......................................................................... 15

*Brazil v. Dole Packaged Foods, LLC*,
    660 F. App'x 531 (9th Cir. 2016) .......................................................................... 14

*Brown v. Natures Path Foods, Inc.*,
    No. 21-CV-05132-HSG, 2022 WL 717816 (N.D. Cal. Mar. 10, 2022) ................ 12

*Brown v. Van's Int'l Foods*,
    No. 3:2022-cv-0001-WHO, 2022 WL 3590333 (N.D. Cal. Aug 22, 2022) ............ 7

*Clevenger v. Welch Foods Inc.*,
    No. 20-01859-CJC, 2022 WL 18228288 (C.D. Cal. Dec. 14, 2022) ..................... 11

*Daniel v. Ford Motor Co.*,
    806 F.3d 1217 (9th Cir. 2015) ............................................................................. 13

*Davidson v. Kimberly-Clark Corp.*,
    889 F.3d 956 (9th Cir. 2018) ............................................................................... 13

*Durell v. Sharp Healthcare*,
    183 Cal. App. 4th 1350 (2010) ............................................................................ 12

*Duttweiler v. Triumph Motorcycles (Am.) Ltd.*,
    No. 14–cv–04809–HSG, 2015 WL 4941780 (N.D. Cal. Aug. 19, 2015) .............. 11

*Ebner v. Fresh, Inc.*,
    838 F.3d 958 (9th Cir. 2016) ......................................................................... 23, 24

*Graham v. VCA Animal Hosps., Inc.*,
    729 F. App'x 537 (9th Cir. 2018) ........................................................................ 14

*Guzman v. Polaris Indus. Inc.*,
    49 F.4th 1308 (9th Cir. 2022) .............................................................................. 10

*Hall v. Marriott International, Inc.*,
    344 F.R.D. 247 (S.D. Cal. 2023) ......................................................................... 11

iv

*Hamm v. Mercedes-Benz USA, LLC*,
     No. 16-cv-03370-EJD, 2022 WL 913192 (N.D. Cal. 2022) .................................... 10

*Haskell v. Time, Inc.*,
     965 F. Supp. 1398 (E.D. Cal. 1997) ....................................................................... 23

*Hinojos v. Kohl's Corp.*,
     718 F.3d 1098 (9th Cir. 2013) ................................................................................ 13

*Ibarra v. Pharmagenics LLC*,
     660 F. Supp. 3d 914 (C.D. Cal. 2023) .................................................................... 11

*In re iPhone Application Litig.*,
     6 F. Supp. 3d 1004 (N.D. Cal. 2013) ......................................................... 12, 13, 15

*Kearns v. Ford Motor Co.*,
     567 F.3d 1120 (9th Cir.2009) ................................................................................. 23

*Kwikset Corp. v. Superior Ct.*,
     51 Cal. 4th 310 (2011) ...................................................................................... 16, 22

*Lazar v. Superior Ct.*,
     12 Cal.4th 631 (2012) ............................................................................................. 24

*Mirkin v. Wasserman*,
     5 Cal. 4th 1082 (1993) ............................................................................................ 15

*Nacarino v. Chobani, LLC*,
     No. 20-CV-07437-EMC, 2021 WL 3487117 (N.D. Cal. Aug. 9, 2021) .................. 11

*In re NJOY, Inc. Consumer Class Action Litig.*,
     120 F. Supp. 3d 1050 (C.D. Cal. 2015) .................................................................. 15

*Noohi v. Johnson & Johnson Consumer Inc.*,
     __ F.4th __, No. 23-55190, 2025 WL 2089582 (9th Cir. July 25, 2025) ............... 16

*Passman v. Peloton Interactive, Inc.*,
     671 F. Supp. 3d 417 (S.D.N.Y. 2023) ............................................................... 21, 22

*Provenz v. Miller*,
     102 F.3d 1478 (9th Cir. 1996) ................................................................................ 25

*Richter v. CC-Palo Alto, Inc.*,
     176 F. Supp. 3d 877 (N.D. Cal. 2016) .................................................................... 25

*Ries v. Arizona Beverages USA LLC*,
     No. 10-01139 RS, 2013 WL 1287416 (N.D. Cal. Mar. 28, 2013) .......................... 23

*Rodriguez v. Just Brands USA, Inc.*,
     No. 2:20-cv-04829-ODW, 2021 WL 1985031 (C.D. Cal. May 18, 2021) ......... 11, 12

*Sonner v. Premier Nutrition Corp.*,
   971 F.3d 834 (9th Cir. 2020) .......................................................................... *passim*

*Southern Pac. R. Co. v. United States*,
   200 U.S. 341 (1906) ................................................................................................ 10

*Strumlauf v. Starbucks Corp.*,
   No. 16-cv-01306-YGR, 2018 WL 306715 (N.D. Cal. Jan. 5, 2018) ..................................... 19

*Svenson v. Google Inc.*,
   No. 13-CV-04080-BLF, 2016 WL 8943301 (N.D. Cal. Dec. 21, 2016) ................................ 16

*In re Tobacco II Cases*,
   46 Cal. 4th 298 (2009) ....................................................................................... 4, 5, 23

*Turrey v. Vervent, Inc.*,
   2023 WL 6390620 (S.D. Cal. Sept. 29, 2023) ....................................................................... 10

*Utne v. Home Depot U.S.A., Inc.*,
   No. 16-CV-01854-RS, 2022 WL 1443339 (N.D. Cal. May 6, 2022) ................................... 10

*Vaughn v. Teledyne, Inc.*,
   628 F.2d 1214 (9th Cir. 1980) ..................................................................................... 24

*VP Racing Fuels, Inc. v. Gen. Petroleum Corp.*,
   673 F. Supp. 2d 1073 (E.D. Cal. 2009) ......................................................................... 25

*Wilson v. Frito-Lay N. Am., Inc.*,
   260 F.Supp.3d 1202 (N.D. Cal. 2017) ........................................................................... 14

*Zeiger v. WellPet LLC*,
   526 F. Supp. 3d 652 (N.D. Cal. 2021) ........................................................................... 21

**Statutes**

21 U.S.C. § 343(q)(l)(D) .......................................................................................................... 5

California Business & Professions Code § 17204 ............................................................. 4

California Civil Code § 1780(a) .......................................................................................... 25

California's Consumer Legal Remedy Act ..................................................................... *passim*

Federal Food, Drug, and Cosmetic Act ...................................................................... 5, 6, 7

**Other Authorities**

21 C.F.R. § 101.9(c)(7) .............................................................................................. 5, 6, 7, 16

21 C.F.R. § 101.13(i) ................................................................................................................ 6

vi

1

Fed. R. Evid. 702 ................................................................................................................ 13

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>NOTICE OF MOTION AND MOTION</u>**

TO THE COURT, ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that, on December 9, 2025, at 2:00 p.m., or as soon thereafter as counsel may be heard, in Courtroom 1 of the above-entitled Court, located at 1301 Clay Street, Oakland, California 94612, Defendants Flowers Foods, Inc. and Dave's Killer Bread, Inc. (collectively, "Flowers") will, and hereby do, move the Court, under Federal Rule of Civil Procedure 56, for summary judgment, on the individual and class claims pled by Plaintiff David Swartz in his First Amended Complaint ("FAC").

Flowers brings this motion for summary judgment on the sole claim that has been certified for class treatment, the California Unfair Competition Law ("UCL") unlawful prong claim (Claim 1), as well as Swartz's individual statutory claims for violations of the UCL, Consumer Legal Remedies Act (Claim 2), False Advertising Law ("FAL") (Claim 3), and common law claims for fraud, deceit, and/or misrepresentation (Claim 4) and unjust enrichment (Claim 5):

- o    The Court should dismiss Swartz's UCL claims, including the single certified claim under the "unlawful" prong, under *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020), because Swartz and the class have an adequate legal remedy, and thus the Court lacks equitable jurisdiction. Because the Court should dismiss the UCL claim in accordance with *Sonner*, it need not reach the following additional and independent grounds that warrant summary judgment on the UCL claims.

- o    There is no genuine dispute that Swartz lacks statutory standing to assert any UCL claim where (1) Swartz's sworn admissions preclude him from establishing actual reliance; and (2) there is no evidence that Swartz lost any money as a result of the allegedly unlawful practice.

- o    There is no genuine dispute that no class member suffered a cognizable injury as a result of the allegedly unlawful practice.

- o    As to Swartz's individual claim under the "fraud" and "unfair" prongs of the UCL, there is no genuine dispute that Swartz did not rely on the alleged omission, he

1

suffered no injury, and no reasonable consumer could be deceived by the challenged conduct.

o As to the individual claim for common law fraud, Swartz has no evidence that he relied on the alleged omission, that he suffered any damage, or that Flowers acted with the requisite knowledge or intent.

o As to the individual claim under the CLRA, Swartz has no evidence that he relied on the alleged omission.

o As to the individual claim under the FAL, Swartz has no evidence that Flowers failed to act with reasonable care or that reasonable consumers are likely to be deceived by the omission.

o As to the individual claim for unjust enrichment, Swartz has no evidence that he is entitled to recover any amount in restitution.

In the alternative, Flowers moves for partial summary as to each of the claims as set forth above.

Flowers bases its Motion upon this Notice, the Memorandum of Points and Authorities, the Separate Statement, the declaration of Michael L. Resch and the exhibits attached thereto, the pleadings and exhibits on file in this action, and upon any oral argument presented by Flowers counsel at the hearing on this Motion.


Dated: July 29, 2025                          KING & SPALDING LLP

                                              By:    /s/ Michael L. Resch
                                                     Michael L. Resch
                                                     Livia M. Kiser
                                                     Samuel R. Diamant

                                                     *Attorneys for Defendants*
                                                     *Flowers Foods, Inc. and*
                                                     *Dave's Killer Bread, Inc.*

## STATEMENT OF ISSUES TO BE DECIDED

1.     Whether the Unfair Competition Law ("UCL") claim, including the certified claim under the "unlawful" prong, must be dismissed under *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020), because Swartz and the class have an adequate legal remedy.

2.     If the Court does not dismiss the UCL claim under *Sonner*, whether summary judgment should be granted because Swartz lacks statutory standing under the UCL where (1) Swartz's sworn admissions preclude actual reliance; and (2) there is no evidence that Swartz lost money as a result of the allegedly unlawful practice.

3.     If the Court does not dismiss the certified UCL unlawful prong claim under *Sonner*, whether summary judgment should be granted in Flowers' favor because Swartz has no evidence that class members paid a price premium attributable to the challenged practice.

4.     If the Court does not dismiss the UCL claim under *Sonner*, whether summary judgment on Swartz's individual claim under the "fraud" and "unfair" prongs should be granted because Swartz did not rely on the alleged omission, he suffered no injury, and no reasonable consumer could be deceived by the challenged conduct.

5.     Whether summary judgment on Swartz's individual claim for common law fraud (Fourth Cause of Action) should be granted because there is no evidence that Swartz relied on the alleged omission or that Flowers acted with the requisite knowledge and intent.

6.     Whether summary judgment on Swartz's individual claim under California's Consumer Legal Remedies Act (Second Cause of Action) should be granted in Flowers' favor because there is no evidence that Swartz relied on the alleged omission.

7.     Whether summary judgment on Swartz's individual claim under California's False Advertising Law (Third Cause of Action) should be granted in Flowers' favor because there is no evidence that reasonable consumers are likely to be deceived by the omission, nor is there any evidence that Flowers failed to exercise reasonable care.

8.     Whether summary judgment on Swartz's individual claim for unjust enrichment (Fifth Cause of Action) should be granted in Flowers' favor because there is no evidence that he is entitled to recover any amount in restitution.

3

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

The only claim the Court certified in this case is a single claim (based on a narrow theory) for restitution under the UCL unlawful prong. The sole theory of the certified claim is that consumers of Dave's Killer Bread products paid a price premium because Defendants Flowers Food, Inc. and Dave's Killer Bread, Inc. ("Flowers") included the amount of protein per serving on the front label *while also omitting* from the nutrition fact panel ("NFP") the percent daily value ("%DV") for protein. The Court cautioned that to have statutory standing under Proposition 64 to pursue such a claim, Plaintiff David Swartz, as the named plaintiff, must establish that he actually read and relied upon that alleged omission of the %DV and suffered injury as a result.

But the undisputed evidence establishes the opposite—Swartz never relied on the alleged omission, the %DV meant nothing to him, and the alleged omission had no impact on his purchase decision. Swartz's failure to proffer any evidence of actual reliance is fatal to his statutory standing (an issue the Court has not yet reached), which defeats his ability to serve as class representative and each of his individual claims. Additional legal and evidentiary defects independently warrant dismissal and summary judgment in Flowers' favor on all claims.

First, the class and individual UCL claims must be dismissed under *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020). *Sonner* makes clear that the Court lacks equitable jurisdiction to award restitution, which is the only remedy Swartz seeks for himself and on behalf of the class. Swartz and the class have an adequate legal remedy through a claim for money damages under California's Consumer Legal Remedy Act (CLRA)—damages that Swartz himself seeks in an individual capacity. Because the Court lacks equitable jurisdiction to award relief on the UCL claims, it need not reach the additional grounds as to why summary judgment should be granted in Flowers' favor on those claims.

Second, as the California Supreme Court has explained, in UCL actions based on misrepresentations and omissions, the named plaintiff "must plead and prove actual reliance to satisfy the standing requirement of [California Business & Professions Code § 17204]." *In re Tobacco II Cases*, 46 Cal. 4th 298, 326 (2009). Swartz's own admissions reflect that he did not rely

4

on the alleged unlawful conduct and thus defeat statutory standing.

Nor is there any evidence Swartz "lost money or property as a result of" the allegedly unlawful label, as statutory standing requires. *Id.* at 315. At class certification, Swartz relied on his expert Colin Weir's *proposed* conjoint surveys to demonstrate his price premium theory. But now that Weir has conducted his surveys, they do not and cannot prove any such injury. In a case where Swartz's entire theory rests on the location of the "5g protein" statement (i.e., Swartz alleges that the front of pack protein statement is unlawful but concedes that the same statement in the NFP is legally required), Weir admitted that his studies cannot account for that statement's location. Swartz's previous assurances that survey respondents would nonetheless understand that they were being asked about front-label statements is belied by the as-conducted surveys. And indeed, when Flowers' expert Dr. Ran Kivetz conducted the same experiment, but showed respondents the actual packaging, there *was no price premium*. Nor did Dr. Kivetz find a price premium associated with the allegedly unlawful omission of the %DV from the NFP. Since neither Weir nor Swartz's rebuttal expert even purports to test the impact of %DV, Dr. Kivetz's studies are unrebutted on this point.

Third, because there is no evidence of a price premium caused by the alleged unlawful conduct, there is no evidence that *any* class member suffered a cognizable injury that would entitle them to restitution under the certified UCL claim, so the class claim fails.

Fourth, the lack of evidence establishing reliance or injury is also fatal to Swartz's remaining individual claims, several of which suffer from independent failures of proof.

Flowers respectfully requests that the Court dismiss the certified claim for lack of jurisdiction and grant summary judgment on all of Swartz's individual claims.

## II.    BACKGROUND

### A.    Relevant FDA Regulations

The FDCA is a complex labeling scheme that governs food labeling and requires companies to state the "total protein contained in each serving" on the product label. 21 U.S.C. § 343(q)(l)(D). 21 C.F.R. § 101.9(c)(7) provides how manufacturers must calculate and label the amount of protein in a product. That regulation provides that food labels "must include the total amount of protein per

1    serving, calculated using the nitrogen-content method." Dkt. 34 at 6 (citing 21 C.F.R. §
2    101.9(c)(7)).

3    In addition to *requiring* placement of the protein statement in the NFP, FDA regulations
4    also *allow* manufacturers to place statements about the protein content of each serving on the
5    product labels outside of the NFP. See 21 C.F.R. § 101.13(i). Under § 101.9(c)(7)(i), when such a
6    statement constitutes a "protein claim," the NFP must list the appropriate %DV.

7    **B.    Flowers' Product Labeling**

8    Swartz alleges that certain Flowers breads, bagels, and burger buns included a statement on
9    the front of the package indicating the number of grams of protein per serving, calculated using the
10   nitrogen-content method, as also set forth in the product's NFP. Dkt. 37 ¶ 2. Swartz alleges that
11   such a front-label protein statement qualifies as a "protein claim," making it unlawful unless the
12   NFP also provides the %DV. *Id.* ¶ 6.

13   Communications among Flowers' regulatory team from 2017 to 2020 demonstrate that
14   individuals with industry and regulatory expertise discussed "at length" the meaning of these
15   requirements, including whether a statement of the number of grams of protein was a "claim" under
16   the regulations. SSUF ¶ 15–16; Resch Decl. Exs., L, O, P. Flowers' regulatory team concluded that
17   when the front label merely restates the grams of protein without any words characterizing the
18   protein in the label (e.g., "good source of protein"), such a statement did not constitute a protein
19   "claim" and thus did not trigger the %DV requirement. *Id.* Flowers was not alone in this
20   determination. Other companies reached the same conclusion, as did Dr. Paula Trumbo, an FDA
21   official with responsibility for such labeling matters. Trumbo Decl. ¶ 8.

22   **C.    Swartz's Initial Complaint**

23   Swartz's original Complaint asserted various claims challenging Flowers' protein
24   statements on the front of the package. As the Court observed, the original Complaint was based
25   on two theories: (1) Flowers allegedly violated the FDCA and "misle[]d consumers into believing
26   that their products contain more digestible protein than they do by representing total protein [as
27   opposed to "corrected protein"]. . . in nutrient content claims" on the front labels of the products,
28   and (2) Flowers allegedly "fail[ed] to include the %DV corrected protein per serving in the nutrient

6

1    label of their products, as required by [21 C.F.R. § 101.9(c)(7)(ii)] on any packaging containing a

2    nutrient content claim about protein." Dkt. 34 at 4.

3       **D.      The Court Grants Flowers' First Motion to Dismiss Based on Preemption and**

4              **Swartz's Failure to Allege Reliance**

5              The Court granted in part and denied in part Flowers' motion to dismiss the Complaint. As

6    to the first theory, the Court agreed with Flowers that "the FDCA preempts plaintiff's claim that

7    defendants may not make nutrient content claims on products based on total protein." Dkt. 34 at 5.

8    The Court found that "the FDA's explicit statement that nutrient content claims may be based on

9    total protein, calculated using the nitrogen-content method, [was] dispositive." *Id.* at 7. The Court

10   thus held that "[a]ny claim alleging that defendants' use of total protein in nutrient content

11   statements violates section 101.9(c)(7) is preempted." *Id.* The Court thus dismissed with prejudice

12   Swartz's "claims regarding statements defendants make about protein *on the front label of their*

13   *products*." *Id.* at 1 (emphasis added).

14             As to the second theory, regarding the %DV on the NFP, the Court held that Swartz had not

15   sufficiently pleaded statutory standing under Proposition 64, which requires a plaintiff to allege

16   that they relied on the purported misrepresentations and suffered economic injury as a result. *Id.* at

17   9. Specifically, the Court held, Swartz failed to "allege that he read or relied upon the nutrition

18   labels prior to purchasing defendants' products." *Id.* The Court dismissed with leave to amend

19   Swartz's "claims regarding defendants' omission of percent daily value . . . from nutrition labels."

20   Dkt. 34 at 1–2.

21      **E.      Swartz Cures the Statutory Standing Pleading Deficiency by Alleging that He**

22              **Relied on the %DV in the NFP**

23             Swartz filed an amended complaint ("FAC"), Dkt. 37, and the Court denied Flowers' second

24   motion to dismiss, Dkt. 46. The Court's order reiterated that Swartz "must adequately allege"—

25   and, thus, ultimately prove—"that he relied on the statements or omissions on defendants'

26   packaging that were unlawful, misleading, or fraudulent." *Id.* at 3 (quoting *Brown v. Van's Int'l*

27   *Foods*, No. 3:2022-cv-0001-WHO, 2022 WL 3590333 at * 6–7 (N.D. Cal. Aug 22, 2022)). The

28   Court held that the FAC's new allegation that Swartz "looked at and read the [nutrition label] on

7

the Products before purchasing them for the first time" and "[h]ad he seen that the product provided only 5% (or less) of the daily value for protein" he would have not purchased the product or would have paid less for it" sufficiently alleged reliance. *Id.* at 3 (citing FAC at ¶¶ 62–63). The Court further confirmed that its preemption ruling on the first motion to dismiss did not apply to claims that "rely on the *relationship* between the front label *and the nutrition label*," which the Court held could be maintained if Swartz adequately alleged reliance. *Id.* at 4 (emphasis added).

## F.    The Court Certifies a Single UCL Unlawful Prong Claim

Swartz moved to certify a class on a single UCL unlawful prong claim based on the allegation that Flowers violated FDA regulations. Consistent with the two motion to dismiss orders, the Court's class certification order confirmed that Swartz's "fundamental regulatory argument" was "that the lack of a %DV for protein, *in combination with* the front label statement was unlawful." Dkt. 139 at 9 (emphasis added).

The Court held that, as to this theory, predominance, typicality, and ascertainability were satisfied. Dkt. 139 at 6–12. The Court found that Swartz's expert Colin Weir's *proposed* survey methodology "sufficiently tests whether users would pay more for protein claims [as opposed to NFP statements] because it demonstrates that users are being asked about front-of-package claims." *Id.* at 7. The Court based this conclusion on the observation that the "'5g Protein' claim at issue is provided alongside other claims that appear on the front of packages," whereas "there are no other claims in the survey that are typically included in a NFP." *Id.*

## G.    The Court Declines to Reach Statutory Standing Because Flowers Moved Under Rule 12(b)(1), Not for Summary Judgment

The Court also denied Flowers' Rule 12(b)(1) motion, finding that Swartz had Article III standing notwithstanding his deposition testimony that he did not recall whether the products he purchased even had a %DV. The Court reasoned that—*for purposes of Article III standing*—because Swartz had alleged a price premium theory, "plaintiff is not required to show that his injury stemmed from reliance on [the %DV] claim." Dkt. 139 at 5. *But see* Dkt. 34 at 9 (recognizing for UCL standing plaintiff must "adequately allege that he relied on the statements or omissions on defendants' packaging that were unlawful, misleading, or fraudulent").

1    The Court expressly "analyze[d] only whether plaintiff has Article III standing" and

2    declined to reach statutory standing. Dkt. 139 at 3–4 n.4. The Court also declined to convert the

3    Rule 12(b)(1) motion challenging Article III standing to a motion for summary judgment

4    challenging statutory standing, and thus did not analyze whether the evidence before the Court

5    defeated statutory standing. *Id.* at n.4.

6    **H.    Weir's Conjoint Surveys, As Conducted, Fail to Isolate the Front-Label**

7    **Protein Statement**

8    After class certification, Weir conducted four conjoint surveys (one for each product

9    category). Without showing the survey respondents any product packaging, Weir calculated alleged

10   damages totaling over $20 million for the California class. Weir Decl. ¶ 117, Table 3.

11   Contrary to the arguments Plaintiff presented to the Court at the class certification stage,

12   however, the surveys as conducted did *not* distinguish between the protein statement on the front

13   of pack, on the one hand, and the same protein statement on the NFP, on the other. Indeed, during

14   his deposition taken after the surveys were conducted, Weir acknowledged that they did not test

15   the location or prominence of the protein statement. SSUF ¶ 10.

16   Nor were the label statements used in the surveys limited to language that appeared on the

17   front label of the challenged products. For example, the Thin Sliced-Bread survey included, among

18   other things, a "70 calories" statement —which, just like the protein statement, is represented on

19   both the front *and back* label (in the NFP) of Dave's Killer Bread thin-sliced products. SSUF ¶ 11;

20   Resch Decl. ¶¶ 7–10 & Exs. F–I. Additionally, the survey Weir designed for the bagel products

21   included a "0g Trans Fat" statement—which is a statement that is only represented on *the back* of

22   Dave's Killer Bread bagel products in the NFP. Resch Decl. ¶ 9 Ex. H. Other label statements in

23   the Weir surveys appeared across the front, side, and back of the packages, making it impossible

24   for survey respondents to associate the protein statement in the survey with the front label. SSUF ¶

25   11.

26   **III.    ARGUMENT**

27   **A.    The UCL Claims, Including the Sole Certified Claim, Must Be Dismissed**

28   **Under *Sonner***

9

*Sonner* requires dismissal of Swartz's first cause of action, including the sole certified claim, for equitable relief under UCL's unlawful prong, because Swartz cannot establish that he or any class member lacks an adequate legal remedy. 971 F.3d at 844. Swartz himself asserted a CLRA claim for money damages seeking precisely the same relief he seeks as restitution. Because the CLRA claim is an adequate legal remedy, the Court lacks equitable jurisdiction to grant restitution, and dismissal of the first cause of action under the UCL is mandatory.[1]

"[F]ederal courts must apply equitable principles derived from federal common law to claims for equitable restitution under California's [UCL] and [CLRA]," including "the principle precluding courts from awarding equitable relief when an adequate legal remedy exists." *Sonner*, 971 F.3d at 837, 842. Thus, "if the plaintiffs ha[ve] an adequate legal remedy under the CLRA, they [can]not also maintain equitable claims under the UCL and CLRA in federal court." *Guzman v. Polaris Indus. Inc.*, 49 F.4th 1308, 1312 (9th Cir. 2022) (citing *Sonner*, 971 F.3d at 844). Dismissal of equitable claims in such circumstances is mandatory. *Id.* ("[Plaintiff] had an adequate remedy at law through his CLRA claim for damages . . . and . . . the district court was therefore *required* to dismiss his equitable UCL claim." (emphasis added)).

There is no viable argument that the legal remedies available to Swartz and the class are inadequate. The money Swartz seeks to recover on behalf of himself and the class through restitution under the UCL is identical to the money he seeks as damages under his CLRA claim. As Swartz concedes, his UCL claim "remedies . . . the price premium associated with defendants' alleged violation of the regulatory scheme at issue." Dkt 156 at 3. But that alleged price premium is precisely what Swartz could recover as compensatory damages under the CLRA. Dkt. 37 ¶ 96 (seeking "compensatory damages . . . and restitution of any ill-gotten gains due to Defendants' acts"); *see also Hamm v. Mercedes-Benz USA, LLC*, No. 16-cv-03370-EJD, 2022 WL 913192, at

---

[1] Contrary to Swartz's anticipated argument, Flowers' timely asserts its *Sonner* argument because "[a]n objection to equitable jurisdiction, 'need not always be raised by some pleading, but may be presented on the hearing even in the appellate court.'" *Turrey v. Vervent, Inc.*, 2023 WL 6390620, at *5 (S.D. Cal. Sept. 29, 2023) (quoting *Southern Pac. R. Co. v. United States*, 200 U.S. 341, 349 (1906)); *Utne v. Home Depot U.S.A., Inc.*, No. 16-CV-01854-RS, 2022 WL 1443339, at *2 (N.D. Cal. May 6, 2022) (no waiver when objection to equitable jurisdiction was raised at summary judgment). Indeed, the argument was raised in *Sonner* on the eve of trial. *Sonner*, 971 F.3d at 845.

*2–3 (N.D. Cal. 2022). That Swartz elected not to pursue money damages under the CLRA for the class does not render that remedy *unavailable*. *See Sonner*, 971 F.3d at 845 (damages remedy adequate where plaintiffs "strategically chose" not to pursue it in hopes of prevailing on claim for equitable restitution). Here, as in *Sonner*, Swartz "fails to explain how the same amount of money for the exact same harm is inadequate or incomplete." *Id.*

Swartz cannot avoid *Sonner*'s application by relying on a contrived distinction between the "harms" purportedly remedied by the CLRA claim and the UCL claim. This Court rejected a nearly identical argument in *Nacarino v. Chobani, LLC*, No. 20-CV-07437-EMC, 2021 WL 3487117 (N.D. Cal. Aug. 9, 2021). There, the plaintiff argued her claim under the UCL unlawful prong "is rooted in a different theory of liability" than her other claims. *Id.* *12. But she failed to allege any "specific facts—*e.g.,* compensation via damages than restitution—showing that damages under the CLRA are necessarily 'inadequate or incomplete, and nothing in the record supports that conclusion.'" *Id.* (quoting *Sonner*, 971 F.3d at 844). The relevant inquiry is not, as Swartz suggests, whether "proof of the same elements would establish both the legal and equitable claims." Dkt. 156 at 3. Rather, the controlling question is whether Swartz can establish that "damages under the CLRA alone would not provide adequate relief." *Duttweiler v. Triumph Motorcycles (Am.) Ltd.*, No. 14–cv–04809–HSG, 2015 WL 4941780, at *9 (N.D. Cal. Aug. 19, 2015). And, here, Swartz cannot establish that "monetary damages would not make [him] whole or that the CLRA legal remedy is "inadequate to fully compensate" him. *Clevenger v. Welch Foods Inc.*, No. 20-01859-CJC, 2022 WL 18228288, at *5 (C.D. Cal. Dec. 14, 2022).

Indeed, courts applying *Sonner* have routinely rejected equitable claims in these circumstances. In *Ibarra v. Pharmagenics LLC*, 660 F. Supp. 3d 914 (C.D. Cal. 2023), the court dismissed the equitable claim on the ground that the plaintiff's "claim for damages under the CLRA, which is predicated on the same conduct as [plaintiff's] claims for equitable relief, undermines any potential inadequacy of legal remedies." *Id.* at 922. Similarly, in *Hall v. Marriott International, Inc.*, 344 F.R.D. 247 (S.D. Cal. 2023), the court dismissed a claim for restitution on *Sonner* grounds where plaintiff sought money damages to recover the same amount in money damages. *Id.* at 262–63. And in *Rodriguez v. Just Brands USA, Inc.*, No. 2:20-cv-04829-ODW,

1   2021 WL 1985031 (C.D. Cal. May 18, 2021), the court dismissed restitution claims with prejudice

2   "[b]ecause Plaintiffs' CLRA, UCL, and FAL claims are all based on the same factual predicates."

3   *Id.* at *8. So, too, here.

4          Because Swartz's first cause of action and the certified claim for equitable restitution under

5   the UCL seek "the same sum in equitable restitution . . . as [Swartz] requested in damages to

6   compensate [him] for the same past harm," it must be dismissed. *Sonner*, 971 F.3d at 844. And

7   because the Court must dismiss Swartz's UCL claims under *Sonner*, the Court need not reach the

8   grounds for summary adjudication of the UCL claims set forth in Sections III.B and C, below.

9          **B.       Swartz Lacks Statutory Standing to Pursue the Certified UCL Claim**

10         As the Court has held, to establish standing under the UCL, Swartz must show that "he

11  relied on the defendants' purported misrepresentations and suffered economic injury as a result."

12  Dkt. 34 at 9 (citing *Brown v. Natures Path Foods, Inc.*, No. 21-CV-05132-HSG, 2022 WL 717816,

13  at *4 (N.D. Cal. Mar. 10, 2022)). A plaintiff pursuing a UCL claim "must make a twofold showing:

14  he . . . must demonstrate injury in fact *and* a loss of money or property caused by unfair

15  competition." *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1360 (2010) (citation omitted).

16  And in a case where "the 'unfair competition' underlying a plaintiff's UCL claim consists of a

17  defendant's misrepresentation, a plaintiff must have actually relied on the misrepresentation, and

18  suffered economic injury as a result of that reliance, in order to have standing to sue." *In re iPhone*

19  *Application Litig.*, 6 F. Supp. 3d 1004, 1013 (N.D. Cal. 2013). Courts have applied the actual

20  reliance requirement to claims brought under the UCL's unlawful prong to the extent "the predicate

21  unlawful conduct is based on misrepresentations." 183 Cal. App. 4th at 1355; *see also Backhaut v.*

22  *Apple, Inc.*, 74 F. Supp. 3d 1033, 1047 (N.D. Cal. 2014). This actual reliance requirement is

23  consistent with "Proposition 64's intention to limit private enforcement actions under the UCL."

24  *Durell*, 183 Cal. App. 4th at 1363.

25         This Court has made clear that to establish statutory standing under the UCL, Swartz must

26  show that he relied on the allegedly unlawful omissions on Flowers' packaging (even if such

27  showing is not required for purposes of Article III standing). Dkt. 34 at 9; Dkt. 46 at 3; Dkt. 139 at

28  8–9. Now, at the summary judgment stage, when the Court no longer accepts all allegations as true,

the incontrovertible evidence is that Swartz did *not* rely on the conduct he claims is unlawful. Swartz's sworn admissions that he does not recall if the product labels included %DV and does not even know what %DV means preclude him from showing "that [he] was exposed to false information about the product, which caused the product to be sold at a higher price, and that [he] 'would not have purchased the goods in question absent this misrepresentation.'" *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 966 (9th Cir. 2018) (quoting *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1105 (9th Cir. 2013)). Nor can Swartz adduce any evidence that he suffered any "economic injury"—i.e., that he (or any consumer) lost money or property *as a result of* the unlawful conduct—because the conjoint study Weir conducted does not measure any price premium attributable to the unlawful conduct.[2]

### 1. Swartz's admissions establish that he did not rely on the omission of the %DV.

To establish an "economic injury" sufficient to support a UCL claim, Swartz must establish that "[he] was exposed to false information about the product purchased, which caused the product to be sold at a higher price, and that [he] 'would not have purchased the goods in question absent this misrepresentation.'" *Davidson*, 889 F.3d at 966 (citation omitted). In other words, Swartz "must have seen the misrepresentations and taken some action based on what [he] saw." *In re iPhone App. Litig.*, 6 F. Supp. 3d at 1015 (granting summary judgment where plaintiff lacked actual reliance). Because, as this Court recognized, "the alleged misrepresentation" is "defendants' omission of %DV from the nutrition label," Dkt. 34 at 9, Swartz must "prov[e] that, had the omitted information had been disclosed, [he] would have been aware of it and behaved differently." *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1225 (9th Cir. 2015) (quotation marks omitted). But Swartz admitted he would not have been aware of the %DV or acted differently had the %DV been disclosed.

---

[2] Flowers' motion for summary judgment does not turn on whether the Court grants Flowers' forthcoming Motion to Exclude Expert Testimony of Colin B. Weir. As set forth below, even with Weir's conjoint surveys, Swartz lacks evidence that he or any class member suffered any economic injury as a result of the allegedly unlawful practice. That Weir's opinions should be excluded under Federal Rule of Evidence 702 is a separate argument not needed to grant this Motion (but would lead to the same conclusion).

*First*, Swartz testified repeatedly that he does not recall if the product labels identified the %DV for protein and, in fact, he believes they *did*. SSUF ¶¶ 1–2. This testimony precludes findings of reliance or injury. Swartz cannot establish that he would have acted differently if the NFP contained a %DV for protein when, for all he remembers, it *did just that*. The alleged omission of the %DV for protein simply "cannot be said to have influenced [the] purchase" of a consumer who does not even remember if it was even omitted. *Brazil v. Dole Packaged Foods, LLC*, 660 F. App'x 531, 534 (9th Cir. 2016); *see also Wilson v. Frito-Lay N. Am., Inc.*, 260 F.Supp.3d 1202, 1215 (N.D. Cal. 2017) (granting summary judgment in part because Plaintiff "testified at his deposition that he did not rely on the 'all natural' label when making his purchasing decision").

*Second*, Swartz admitted that the %DV is meaningless to him. Swartz testified that he does not know how %DV is calculated, he does not understand its relationship to usable protein, and he could not perform the calculation to compare the %DV to the grams of protein (nor did he ever attempt to). SSUF ¶¶ 3–7. Thus, even if the %DV had been included, it would not have allowed Swartz to clarify any alleged confusion about digestible protein.[3] The Court previously required Swartz to *allege* "that requiring defendants to include %DV on the nutrition label would redress his alleged confusion over the protein content of the products he purchased," but his testimony has now confirmed that it would not and did not. Dkt. 34 at 9. These admissions prove that the inclusion or omission of %DV was completely irrelevant to Swart's purchasing decision, and Swartz cannot establish statutory standing. *Graham v. VCA Animal Hosps., Inc.*, 729 F. App'x 537 (9th Cir. 2018) (affirming summary judgment based on lack of reliance where plaintiff "repeatedly and unambiguously stated that she did not notice the [alleged misrepresentation]").

Nor can Swartz rely on a purported price premium in lieu of evidence of actual reliance. A claim that a consumer suffered harm in the form of "overpayment," untethered to any proof that

---

[3] Although not material to the motion, Flowers' expert Dr. John Wallingford, an expert in nutrition and protein digestibility, explains in his report that the %DV does not reflect the amount of protein consumers receive from an individual food product. That is because the method used to calculate the %DV does not take into consideration the amino acids available from (1) other foods consumed through meals made with Dave's Killer Bread products; (2) other foods consumed throughout the day; and (3) backup amino acid pools available in the body. *See* Wallingford Decl. ¶¶ 14–15.

1    the consumer based any decision on the misrepresentation at issue, does not suffice to establish

2    actual reliance under the UCL. For instance, in *In re iPhone Application Litigation*, plaintiffs

3    claimed that they overpaid for iPhones as a result of Apple's misrepresentations concerning data

4    collection and privacy policies. 6 F. Supp. 3d at 1015. In granting summary judgment, the court

5    found that a plaintiff who did not hear any alleged misrepresentation until after she purchased her

6    phone could not "demonstrate that [the misrepresentation] was causally linked to any of the harms

7    she claims to have suffered." *Id.* at 1021. The court concluded, "[b]ecause there is no evidence that

8    [plaintiff] based her decision to obtain an iPhone, in whole or in part, on the ability to save battery

9    power by turning Location Services off, she cannot claim to have relied on this alleged

10   misrepresentation in obtaining her iPhone and thus cannot claim to have 'overpaid' for her iPhone

11   as a result of this representation." *Id.* Here, too, there is no evidence that Swartz based his purchase

12   decision on the omission of the %DV. Allowing Swartz to pursue a UCL claim would effectively

13   eliminate the UCL actual reliance requirement and contravene Proposition 64.[4]

14       *Third*, ten days after learning of the alleged omission of the %DV for protein, Swartz

15   continued to purchase the very same product at its posted price. SSUF ¶ 8. This purchase confirms

16   what his admissions already proved—that Swartz would not have "behaved differently" had the

17   %DV been disclosed. *See Mirkin v. Wasserman*, 5 Cal. 4th 1082, 1093 (1993); *see also*

18   *Baghdasarian v. Amazon.com, Inc.*, 458 F. App'x 622, 623–24 (9th Cir. 2011) (affirming summary

19   judgment where plaintiff testified that he "would not have been deterred from making the

20   purchases" even if he were aware of the challenged practice); *In re NJOY, Inc. Consumer Class*

21   *Action Litig.*, 120 F. Supp. 3d 1050, 1088 (C.D. Cal. 2015) ("Because Halberstam admitted that he

22   would have purchased NJOY e-cigarettes even if the packaging had disclosed that it contained

23   propylene glycol and glycerin, he has conceded that he did not suffer injury in fact due to the alleged

24   omission.").

25   

26   [4] In its previous order denying Flowers' 12(b)(1) motion, the Court determined that "[a] claim that defendants create[d] demand that would not otherwise have existed, causing plaintiffs to overpay is sufficient to establish Article III standing." Dkt. 139 at 4. Although Flowers continues

27   to dispute that Swartz need not establish reliance to satisfy Article III standing, the Court did not address whether a purported price premium can, on its own without allegations of actual reliance,

28   satisfy statutory standing.

**2.    There is no evidence that Swartz—or any other class member—lost money as a result of the allegedly unlawful practice.**

As another independent ground for summary judgment, Swartz has no evidence that he, or any other class member, paid a price premium as a result of the allegedly unlawful practice. *See Kwikset Corp. v. Superior Ct., 51 Cal. 4th 310,* 322 (2011); *Svenson v. Google Inc.*, No. 13-CV-04080-BLF, 2016 WL 8943301, at *17 (N.D. Cal. Dec. 21, 2016) (granting summary judgment on UCL claim because plaintiff to show loss of money or property as a result of challenged practice). More specifically, now that Weir has conducted his conjoint studies, it is clear the studies neither (1) isolate the front-label protein statement, nor (2) test a price premium associated with omission of %DV from the NFP.

*Weir's surveys, as conducted, do not isolate the allegedly unlawful front-of-package protein statement*. To isolate allegedly unlawful conduct, Weir's surveys must, at the very least, demonstrate a price premium associated with having a protein statement *on the front of the package*. If the survey tests the impact of that same information more generally without reference to the statement's location on the package, it is not testing the impact of unlawful conduct because is undisputed that the same information *must* appear on the label in the NFP under federal law. Dkt. 34 at 6 (citing 21 C.F.R. § 101.9(c)(7)); Letchinger Decl. ¶ 5.

This Court acknowledged as much when, for purposes of class certification, it held that Weir's "methodology sufficiently tests whether users would pay more for protein claims because it demonstrates that users are being asked about front-of-package claims." Dkt. 139 at 7. The Court reached that conclusion based on the assumption that the "5g" protein statement would be "provided alongside other claims that appear on the front of packages" and with "no other claims in the survey that are typically included in a NFP," such that users would understand the survey to be asking about front label statements. *Id.* But "the inquiry at the class certification stage differs from that at summary judgment." *Noohi v. Johnson & Johnson Consumer Inc.*, ___ F.4th ___, No. 23-55190, 2025 WL 2089582 (9th Cir. July 25, 2025). Now that Weir has executed his proposed experiment, there can be no doubt that his surveys presented a mix of statements that appear on the front of packages, the side labels, the back labels, and NFPs—and, as Weir admitted during his

16

deposition, the surveys did not test the impact of where the protein statement was placed on the package. Because Weir's survey participants could not have known where on the package the "5g protein" statement appeared, it is impossible for Weir to conclude that any price premium associated with that statement can be ascribed to its appearance on the front of the package, rather than in the NFP, where it is legally required to appear.

*First*, it is undisputed that the surveys as conducted did not account for the placement of the protein statement on the label (i.e., they did not distinguish between protein on the front label and protein in the NFP). Survey respondents were merely shown a "product profile" in a text-based format and told that bulleted statements are "label statement[s]." SSUF ¶¶ 9–10. They were not told, however, *where* these statements appear on a label. Weir admitted the surveys do not tell the participant whether the "5g protein" appears on the front, the side, or the NFP, and do not contain any indicia of prominence on the label. SSUF ¶ 10.

*Second*, nothing in Weir's surveys ensured that "respondents would not confuse the '5g protein' for a NFP statement." Dkt. 139 at 7. In Weir's conducted surveys, the "5g protein" statement was provided alongside a mix of statements that appear on the side and back of the package, including in the NFP, thereby defying both of the Court's basic assumptions: (1) that the "5g protein" statement would be provided alongside other front-of-package statements and (2) that "there are no other claims in the survey that are typically included in a NFP." Dkt. 139 at 7. As to (1), among the seven other statements Weir presented in the survey for the 21 Whole Grains and Seeds regular sliced bread, only *one* statement appears solely on the front of the pack ("21 whole grains"). Resch Decl. ¶ 7 Ex. F. Two statements appear only on the side of the pack ("No artificial ingredients" and "No High Fructose Corn Syrup"), one appears on both the front and the side of the pack ("USDA Organic"), and two do not appear on the Dave's Killer Bread product at all ("Good Source of Fiber" and "Heart Healthy"). *Id.* Similarly, for the product profile Weir used for the Thin-Sliced Bread survey, multiple attributes ("USDA Organic," "Non GMO," and "70 calories") appear in multiple places on the package—not just the front. *Id.* ¶ 8 Ex. G. And as to (2), the as-conducted surveys include statements such as "70 calories" and "0g Trans Fat" that *unquestionably* appear in the NFP. *Id.*; *id.* ¶ 9 Ex. H. Because there *are* other statements in the

17

survey that are *not* front-of-pack statements and that *do* typically appear in the NFP, the Court's initial inference that "respondents would not confuse the '5g protein' claim for a NFP claim" does not apply to the conducted surveys.

The table below illustrates the material ways in which Weir's surveys depart from their proposed form in a manner that makes it impossible for a respondent to conclude that the label statements appear on the front of package. The statements highlighted in blue in the chart below represent statements that *never* appear on the front of pack of the tested Dave's Killer Bread products, the statements highlighted in green represent statements that appear on the front and in other locations (other than the NFP), and the statements highlighted in red represent statements that appear in the NFP:

| | | Regular Sliced Bread | Thin Sliced Bread | Bagels | Burger Buns |
|---|---|---|---|---|---|
| **Table 1.** | | | | | |
| **Conjoint Survey Design** | | | | | |
| **Attributes and Levels** | | | | | |
| Brands | | • Daves Killer Bread<br>• Oroweat<br>• 365<br>• O Organic | • Daves Killer Bread<br>• Oroweat<br>• 365<br>• O Organic | • Daves Killer Bread<br>• Thomas<br>• 365<br>• Sara Lee | • Daves Killer Bread<br>• Oroweat<br>• 365<br>• O Organic |
| Protein Claim | | • 4g Protein<br>• 5g Protein | • 3g Protein | • 11g Protein<br>• 12g Protein<br>• 13g Protein | • 6g Protein |
| Other Label Statements | | • USDA Organic<br>• No Artificial Ingredients<br>• Good Source of Fiber<br>• NON-GMO<br>• No High Fructose Corn Syrup<br>• 22g Whole Grains<br>• Heart Healthy | • USDA Organic<br>• No Artificial Flavors<br>• Good Source of Fiber<br>• NON-GMO<br>• No High Fructose Corn Syrup<br>• 12g Whole Grains<br>• Sustainably baked with wind energy<br>• 70 Calories | • USDA Organic<br>• 0g Trans Fat<br>• 560mg Omega-3<br>• NON-GMO<br>• No High Fructose Corn Syrup<br>• 27g Whole Grains | • USDA Organic<br>• Free from Artificial Preservatives, Colors, and Flavors<br>• 280mg Omega-3<br>• NON-GMO<br>• No High Fructose Corn Syrup<br>• No Bleached Flour |
| Price | | • $4.49-7.49 | • $3.99-6.99 | • $4.49-7.49 | • $4.49-7.49 |

Weir Decl. ¶ 65 (highlighting added); Resch Decl. ¶¶ 7–10 & Exs. F–I.

*Third*, Weir's survey does not, and cannot, capture the price premium based on the placement of the protein statement where respondents were never shown actual packaging. Participants were instead shown artificial and unrealistic "product profiles" that are no better, and are arguably worse, than the "caricatured images" of products in the survey this Court rejected in

18

1  *Strumlauf v. Starbucks Corp.*, No. 16-cv-01306-YGR, 2018 WL 306715 (N.D. Cal. Jan. 5, 2018).

2  Like the unrealistic coffee cups shown to participants there, the product profiles Weir used bear no

3  resemblance to packages that a consumer encounters while shopping for bread at the store:

11  Weir Decl. ¶ 63. The difference between the artificial product profiles participants saw and

12  the actual packages a consumer encounters in the store is critical. As scholars in the field of conjoint

13  analysis agree, choice-based conjoint surveys are particularly ill-suited to understand consumer

14  purchase decisions where there are too many relevant product attributes to realistically  capture—

15  as on a package of bread. Kivetz Report ¶ 55.

16      In contrast to Weir, Flowers' expert Dr. Kivetz conducted two kinds of studies, both of

17  which used actual packaging. The first type was a choice experiment that Dr. Kivetz conducted to

18  correct the deficiencies in Weir's study, which demonstrates there is no price premium when label

19  placement is considered. Like Weir's conjoint study, Dr. Kivetz's choice experiment asked

20  consumers to choose a product from among three options. But unlike Weir, Dr. Kivetz showed

21  participants 3-dimensional, 360-images of actual product packages (including the actual bread) as

22  consumers shopping in the real world would see them, with the complete set of label statements

23  (not a hand-picked subset) *and* with accurate placement and prominence. *See* Kivetz Report ¶ 59

24

25

26

27

28

19

& Figures 3a and 3b (comparing actual package shown in Kivetz surveys to "profile" in Weir surveys). The below reflects a static version of the images shown to Kivetz's participants:



Figure 7: Image of Oroweat-365-Dave's Triplet (with Price Information) [84]

Kivetz Report ¶ 92. When two separate groups of participants were presented with a single choice between three (realistic) images of the sliced breads that Weir selected for his survey, there was no statistically significant difference between (1) the percentage of participants in the test group (i.e. participants who saw the "5g protein" statement on the front of pack) who selected Dave's among the options, and (2) the percentage of participants in the control group (i.e., participants who saw identical packaging without the "5g protein" statement on the front of pack) who selected Dave's among the options. *Id.* ¶ 106. In fact, in multiple studies, more respondents from the control group chose Dave's without the front of pack protein statement. *Id.* ¶ 104 & Table 1.

The second set of studies compared Dave's product with and without the front-label protein statement. *Id.* ¶ 114. These surveys, which also used realistic images of actual product packages, were designed to measure consumers' likelihood of purchasing, along with willingness to pay for, Flowers' products. *Id.* ¶¶ 113–14. They exposed a test group to a package image with the front-of-package protein statement and exposed a control group to an identical package image, except with the protein statement removed from the front label. *Id.* ¶ 114. The results showed that the removal of the protein statement did not affect consumers' purchasing decisions or willingness to pay. In other words, the surveys established that the "5g protein" statement on the front of pack has *no price premium at all. Id.* ¶ 135, 141.

1    The Kivetz surveys underscore the foundational problem with the Weir surveys: as Weir

2    admitted, his surveys do not test the placement of the protein statement on the package. SSUF ¶ 10.

3    And Dr. Kivetz's surveys constitute the only evidence that, when the placement of the protein

4    statement is tested (as Dr. Kivetz did), there is no price premium.

5    Because Weir's admissions and the surveys themselves make clear that Weir's surveys are

6    wholly agnostic to label placement, they cannot as a matter of law isolate a price premium based

7    solely on the front label statement. Swartz therefore cannot establish that he "lost money or property

8    as a result of the alleged misconduct," and summary judgment must be granted on Swartz's first

9    cause of action.

10    ***Weir does not present any evidence of a price premium associated with the %DV.*** Even if

11    Swartz could demonstrate a price premium from a front-of-package protein statement alone (he

12    cannot), that premium would not constitute property lost as a result of unlawful conduct, as required

13    for statutory standing. As the Court previously held, it is the *combination* of (1) the inclusion of the

14    front label statement *and* (2) the omission of the %DV in the NFP that gives rise to Swartz's legal

15    injury. Dkt. 139 at 9. Thus, the only restitution Swartz could theoretically recover under the UCL

16    is a price premium he allegedly paid "resulting from the inclusion of a front-of-package claims

17    without a %DV." *Id.* Swartz, however, has not even attempted to proffer any evidence of a price

18    premium from the omission of the %DV for protein from the NFP.

19    When a plaintiff seeks to establish a price premium involving omissions, the premium must

20    measure "what [plaintiff] would have paid *for the products absent the alleged . . . omissions.*"

21    *Zeiger v. WellPet LLC*, 526 F. Supp. 3d 652, 686 (N.D. Cal. 2021). It is not sufficient to measure

22    premiums associated with other affirmative statements where the alleged liability arises from an

23    omission. *See Allegra v. Luxottica Retail N. Am.*, 341 F.R.D. 373, 459–60 (E.D.N.Y.

24    2022); *Passman v. Peloton Interactive, Inc.*, 671 F. Supp. 3d 417, 468 (S.D.N.Y. 2023). For

25    example, in *Passman*, the Court found that a damages analysis—also prepared by Weir—failed to

26    measure the price impact of the alleged omission. Plaintiffs alleged that Peloton advertised that its

27    website included an "ever-growing library" of content, but failed to disclose that, due to copyright

28    infringement lawsuits, the library would imminently shrink by 50%. Swartz's theory of

21

1    misrepresentation was based on the omission of the latter statement. *Passman*, 671 F. Supp. 3d at

2    468. The court held that "at most, [plaintiffs' experts] measure the price impact of the 'ever-growing

3    library' statement, *which is not tantamount to an alleged omission* that the number of classes in the

4    library would shrink." *Id.* (emphasis added). That logic applies with equal force here—Weir's

5    model purports to measure the impact of the front label statement, which is not tantamount to an

6    alleged omission of the %DV.

7          This is undisputed. Weir admitted he does not offer any affirmative opinions on the %DV,

8    and concedes his surveys do not attempt to capture any perceived value associated with the %DV.

9    SSUF ¶ 12. Weir testified that his survey makes no distinction between a product label with no

10   %DV, one with an inaccurate %DV, and one with an accurate %DV, and thus makes no distinction

11   between a premium associated with an unlawful label and a lawful one. *Id.* Indeed, Weir concedes

12   that his survey would yield the exact same price premium regardless of whether the %DV was

13   absent, 2%, or 6%. *Id.* But a price premium that is the same whether or not the label is in fact lawful

14   cannot be said to measure money lost as a result of *unlawful* conduct.

15         **C.    There is No Evidence that the Class Suffered Any Cognizable Injury**

16         Swartz's failure of proof regarding statutory standing is also fatal to the class claim, because

17   "the economic harm" allegedly suffered by the class "is the same"—here, equal to zero. *Kwikset*,

18   51 Cal. 4th at 329. The only relief sought on behalf of the certified UCL claim is defined as "the

19   premium and/or the full price that they and others paid to Defendants" attributable to the unlawful

20   practice. In the Court's words, the class claim seeks to recover the price premium "resulting from

21   the inclusion of a front-of-package claims without a %DV." Dkt. 139 at 9.

22         For the reasons explained above, there is no evidence that any class member paid *any* price

23   premium. Although the Court previously determined that the class could recover a price premium

24   measured by the inclusion of the front-of-package claim (without regard to the inclusion or

25   omission of %DV on the NFP), Weir's conducted study does not capture any such premium. *See*

26   *supra* III.B.2. And Swartz does not even purport to have evidence of a price premium associated

27   with the omission of the %DV. The *only* study to test the impact on price of including %DV in the

28   NFP, is Dr. Kivetz's study, which concludes that the %DV had no impact whatsoever on purchasing

behavior. *See id.* Because no class member is entitled to any money in restitution, summary judgment should be granted on the certified UCL claim. *Ries v. Arizona Beverages USA LLC*, No. 10-01139 RS, 2013 WL 1287416, at *7–8 (N.D. Cal. Mar. 28, 2013) (granting summary judgment where there was no evidence to support restitution).

> **D.    Each of Swartz's Individual Claims Fails**
>
> > **1.    Swartz's UCL fraud and unfair claims fail as a matter of law.**

As set forth in Sections III.A and B, above, each of Swartz's individual UCL claims fail because Swartz has an adequate legal remedy, *Sonner*, 971 F.3d at 844, and because he lacks evidence of reliance and resulting injury, *In re Tobacco II Cases*, 46 Cal. 4th at 326 (requiring actual reliance for UCL fraud prong); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir.2009) (recognizing fraud requirements may apply to claim brought under unfair prong). They also fail for lack of evidence of likelihood of deception.

The UCL imposes a "reasonable consumer" test, which requires Swartz to show that the challenged label was *likely* to mislead the public. *Haskell v. Time, Inc.*, 965 F. Supp. 1398, 1406–07 (E.D. Cal. 1997). To survive summary judgment, Swartz "must demonstrate by extrinsic evidence, such as consumer evidence, that the challenged statements tend to mislead consumers." *Id.* at 1407. He cannot do so.

According to Swartz, the omission of the %DV in the NFP "mislead[s] reasonable consumers regarding the amount of protein the Products provide nutritionally in a form that humans can use." Dkt. 37 ¶ 79. First, and as demonstrated by Dr. Wallingford, consumers could "use" all of the grams of protein listed on the front of the products. *See generally* Wallingford Decl. But more fundamentally, as a matter of law, a reasonable consumer cannot be misled by a 5g protein statement, when that amount is accurately calculated by the nitrogen method and contains precisely the same information the consumer would find in the NFP. The Ninth Circuit's decision in *Ebner v. Fresh, Inc.*, 838 F.3d 958 (9th Cir. 2016), is instructive. There, the plaintiff alleged that the defendant deceived consumers about the amount of product in its lip balm because only a portion of the stated product quantity was "reasonably accessible to the consumer." According to the plaintiff, the defendant's omission of a supplemental or clarifying statement about product

accessibility "render[ed] the existing net weight label deceptive and misleading." *Id.* at 964. The Ninth Circuit disagreed, holding that the plaintiff failed to plausibly allege that such omissions would mislead a reasonable consumer where the label indisputably included an accurate statement of the net weight in accordance with applicable laws. *Id.* at 965–66. The same reasoning applies here—the omission of the %DV cannot render the front-of-package "5g protein" statement misleading to a reasonable consumer where the "5g protein" statement is accurate under an FDA-approved method.

Because Swartz cannot satisfy the reasonable consumer test, Flowers is entitled to summary judgment on Swartz's individual UCL claims.

### 2.    Swartz's common law fraud claim fails as a matter of law.

Swartz's common law fraud claim fails because Swartz has no evidence of the essential elements of fraud: (1) misrepresentation (such as false representation, concealment, or nondisclosure); (2) knowledge of falsity; (3) intent to defraud or induce reliance; (4) justifiable reliance; and (5) resulting damages. *Lazar v. Superior Ct.*, 12 Cal.4th 631, 638 (2012). As explained above, there is no evidence that Swartz relied on the omission of the %DV when making purchases or that he suffered any damages resulting from that omission. *See supra* III.B.

There is also no evidence that Flowers acted with the knowledge and intent necessary to give rise to common law fraud. To survive summary judgment, Swartz must demonstrate a genuine dispute that Flowers knew its label was false, and that it purposefully omitted the %DV with the intent to deceive. Mere allegations are not enough; Swartz "must present significant probative evidence relevant to the issue of intent." *Vaughn v. Teledyne, Inc.*, 628 F.2d 1214, 1220 (9th Cir. 1980). But there is *no* evidence to support these elements. To the contrary, the *only* evidence demonstrates that the Flowers regulatory team engaged in good-faith discussions about the meaning of complex federal regulations, before reasonably concluding that restating the protein content on the front of pack did not trigger an obligation to include the %DV. SSUF ¶¶ 15–16. In one communication, for example, a Flowers employee explains that she had discussed "at length" whether a statement of grams of protein constitutes a claim, after which it was decided that such a statement would not constitute a claim. Resch Decl. ¶ 12 Ex. L; *accord id.* ¶ 15 Ex. P; *id.* ¶ 16 Ex.

O. Flowers' understanding is consistent with the expert opinion of Dr. Paula Trumbo, a former FDA official who agrees that the protein statement on the front label is not a protein "claim" that would trigger the requirement to include the %DV. Trumbo Decl. ¶ 8. These facts negate the element of intent to defraud. Because "there is no rational basis in the record for concluding that any of the challenged statements was made with requisite scienter," summary judgment should be granted. *Provenz v. Miller*, 102 F.3d 1478, 1490 (9th Cir. 1996).

### 3.    Swartz's CLRA claim fails as a matter of law.

"Under California Civil Code section 1780(a), CLRA actions may be brought by a consumer who suffers any damage as a result of the use or employment of a proscribed method, act, or practice." *Richter v. CC-Palo Alto, Inc.*, 176 F. Supp. 3d 877, 899 (N.D. Cal. 2016) (citation omitted). Thus, a "CLRA claim based in fraud requires reliance." *Id.* For the reasons set forth in Section II.B, above, Flowers is entitled to summary judgment because there is no evidence that Swartz relied on the alleged omission.

### 4.    Swartz's FAL claim fails as a matter of law.

To prevail on a FAL claim, Swartz must show that (1) statements in the advertising are untrue or misleading in that members of the public are likely to be deceived, and (2) Flowers knew, or by the exercise of reasonable care should have known, that the statements were untrue or misleading. *VP Racing Fuels, Inc. v. Gen. Petroleum Corp.*, 673 F. Supp. 2d 1073, 1088 (E.D. Cal. 2009). As set forth above, Swartz adduces no evidence demonstrating reasonable consumers are likely to be deceived by the omission. *See* Section III.D.1 *supra.* Nor can Swartz establish that Flowers failed to exercise reasonable care. *See* Section III.D.2, *supra.*

### 5.    Swartz's unjust enrichment claim fails as a matter of law.

Finally, Swartz's unjust enrichment claim is entirely duplicative of his statutory claims under the UCL, CLRA, and FAL. As set forth above, Swartz has no evidence that he is entitled to any amount in restitution, and Flowers is thus entitled to summary judgment on this claim.

Conclusion

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, the Court should grant Flowers' motion for summary judgment.

Dated: July 29, 2025

KING & SPALDING LLP

By:   */s/ Michael L. Resch*
Michael L. Resch
Livia M. Kiser
Samuel R. Diamant

*Attorneys for Defendants*
*Flowers Food, Inc. and*
*Dave's Killer Bread, Inc.*