1   MICHAEL L. RESCH (SBN 202909)
    mresch@kslaw.com
2   LIVIA M. KISER (SBN 285411)
    lkiser@kslaw.com
3   SAMUEL R. DIAMANT (SBN 288738)
    sdiamant@kslaw.com
4   KING & SPALDING LLP
    50 California Street, Suite 3300
5   San Francisco, California 94111
    Telephone: (415) 318-1200
6   Facsimile: (415) 318-1300

7   QUYEN L. TA (SBN 229956)
    quyen.ta@skadden.com
8   SKADDEN, ARPS, SLATE, MEAGHERS
    & FLOM LLP
9   525 University Avenue, Suite 1400
    Palo Alto, California 94301
10  Telephone: (650) 470-4500
    Facsimile: (650) 798-6523

11
    *Attorneys for Defendants*
12  Dave's Killer Bread, Inc.
    and Flowers Foods, Inc.

13
                    UNITED STATES DISTRICT COURT
14
                  NORTHERN DISTRICT OF CALIFORNIA
15
                          OAKLAND DIVISION
16

17  DAVID SWARTZ,                          Case No. 4:21-cv-10053-YGR

18              Plaintiff,                 Honorable Yvonne Gonzalez Rogers
          v.
19                                         **DEFENDANTS DAVE'S KILLER
    DAVE'S KILLER BREAD, INC. AND          BREAD, INC.'S AND FLOWERS FOODS,
20  FLOWERS FOODS, INC.,                   INC.'S MOTION TO EXCLUDE EXPERT
                                           TESTIMONY OF COLIN B. WEIR**
21              Defendants.
                                           Hearing Date:      December 9, 2025
22                                         Hearing Time:      2:00 pm
                                           Courtroom:         Courtroom 1, 4th Floor
23

24

25

26

27

28

---

DEFS' MOTION TO EXCLUDE COLIN WEIR                    CASE NO. 4:21-cv-10053-YGR

# TABLE OF CONTENTS

Page

I.   INTRODUCTION ................................................................................................................. 3

II.  BACKGROUND .................................................................................................................. 5

   A.   The Product Label ...................................................................................................... 5

   B.   The Court's Prior Order on Weir's *Proposed* Survey Design at The Class Certification Stage ......................................................................................................................................... 6

   C.   Weir's Four Conjoint Surveys as Conducted ............................................................ 7

III. LEGAL STANDARD ......................................................................................................... 9

IV.  ARGUMENT ...................................................................................................................... 9

   A.   Weir's Testimony is Irrelevant ................................................................................. 9

   B.   Weir's Testimony is Unreliable .............................................................................. 14

     1.   Weir's Surveys Generated Irrational Results .................................................... 15

     2.   Weir's Surveys Omitted Key Attributes ........................................................... 16

V.   CONCLUSION ................................................................................................................. 18

DEFS' MOTION TO EXCLUDE COLIN WEIR                    CASE NO. 4:21-cv-10053-YGR

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Cooper v. Brown,*
    510 F.3d 870 (9th Cir. 2007) .................................................................................. 9

*Daubert, v. Merrell Dow Pharmaceuticals, Inc.,*
    509 U.S. 579 (1993) ................................................................................. *passim*

*Elsayed Mukhtar v. Cal. State Univ., Hayward,*
    299 F.3d 1053 (9th Cir. 2002) .............................................................................. 9

*Flodin v. Cent. Garden & Pet Co.,*
    No. 21-CV-01631-JST, 2024 WL 4565340 (N.D. Cal. Oct. 23, 2024) ................................... 9

*Fodera v. Equinox Holdings, Inc.,*
    341 F.R.D. 616 (N.D. Cal. 2022) ................................................................. 3, 7

*Johnson Elec. N. Am. Inc. v. Mabuchi Motor Am. Corp.,*
    103 F.Supp.2d 268 (S.D.N.Y. 2000) .......................................................... 14, 16

*In re Juul Labs, Inc., Mktg. Sales Pracs. & Prods. Liab. Litig.,*
    609 F.Supp.3d 942 (N.D. Cal. 2022) ............................................................... 16

*In re LIBOR-Based Fin. Instruments Antitrust Litig.,*
    299 F. Supp. 3d 430 (S.D.N.Y. 2018) ............................................................. 14

*Lust By & Through Lust v. Merrell Dow Pharms., Inc.,*
    89 F.3d 594 (9th Cir. 1996) .................................................................................. 9

*Noohi v. Johnson & Johnson Consumer Inc.,*
    -- F.4th --, 2025 WL 2089582 (9th Cir. July 25, 2025) ................................... 3, 9

*Oracle Am., Inc. v. Google Inc.,*
    2012 WL 850705 ....................................................................................... *passim*

*United States v. Hermanek,*
    289 F.3d 1076 (9th Cir. 2002) .......................................................................... 14

**Statutes**

Cal. Bus. & Prof. Code § 17200 ............................................................................ 6

**Other Authorities**

21 C.F.R. § 101.9(c)(7) ......................................................................................... 6

Fed. R. Evid. 702 .................................................................................. 9, 11, 14

i

# **TABLE OF REFERENCES**

| Abbreviation | Description |
|---|---|
| Kivetz Decl. | Declaration of Dr. Ran Kivetz dated April 7, 2025 attached as **Exhibit 5** to the Declaration of Michael L. Resch filed in support of Defendants' Motion to Exclude the Testimony of Colin B. Weir |
| Hearing Tr. | Excerpts from the Transcript of the September 5, 2024 hearing attached as **Exhibit 2** to the Declaration of Michael L. Resch filed in support of Defendants' Motion to Exclude the Testimony of Colin B. Weir |
| Simulator Screenshot | Figure 2 of the Declaration of Dr. Ran Kivetz dated April 7, 2025, which is a screenshot of a sample simulation in Sawtooth Lighthouse using Weir's Simulator, attached as **Exhibit 6** to the Declaration of Michael L. Resch filed in support of Defendants' Motion to Exclude the Testimony of Colin B. Weir |
| Swartz Tr. | Excerpts from the Transcript of Plaintiff David Swartz' January 25, 2024 Deposition attached as **Exhibit 1** to the Declaration of Michael L. Resch filed in support of Defendants' Motion to Exclude the Testimony of Colin B. Weir |
| Weir Decl. | Amended Declaration of Colin B. Weir dated February 17, 2025 attached as **Exhibit 3** to the Declaration of Michael L. Resch filed in support of Defendants' Motion to Exclude the Testimony of Colin B. Weir |
| Weir Tr. | Excerpts from the Transcript of Colin B. Weir's March 24, 2025 Deposition attached as **Exhibit 4** to the Declaration of Michael L. Resch filed in support of Defendants' Motion to Exclude the Testimony of Colin B. Weir |

DEFS' MOTION TO EXCLUDE COLIN WEIR                    CASE NO. 4:21-cv-10053-YGR

TO THE COURT AND ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that, on December 9, 2025, at 2:00 p.m., or as soon thereafter as counsel may be heard, in Courtroom 1 of the above-entitled Court, located at 1301 Clay Street, Oakland, California 94612, Defendants Flowers Foods, Inc. and Dave's Killer Bread, Inc. (collectively, "Flowers") will, and hereby do, move the Court to exclude Colin Weir's proffered testimony in its entirety because it does not satisfy the standards set forth by Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). There is good cause to grant this motion including, among other things:

1.  Weir admitted that his surveys as conducted do not measure the location or prominence of the statements included in those surveys, and thus his surveys failed to isolate, or measure, any impact of the front label protein statement. Weir's surveys as conducted do not (and cannot) distinguish between admittedly lawful conduct (*i.e.*, statements of protein content on the back of the package) and the challenged conduct (*i.e.*, those same statements on the front of the package), which means that his testimony cannot be relevant to this case. *See id.* at 591.

2.  Relatedly, Weir's surveys as conducted include the protein statement next to other statements from all over the product label (including the nutrition facts panel on the back of the package) such that respondents could have no way of knowing that the surveys were asking about the front label. Respondents were just as likely to have understood the protein statement as indicating the presence of protein and the lack of a protein statement as indicating the complete absence of protein. The results from his survey thus "do[] not relate to any issue in the case" which make them "not relevant and, ergo, non-helpful." *Id*.

3.  Weir's damages model flowing from the conducted surveys is also unreliable, as demonstrated by the illogical results produced from his surveys and his failure to incorporate numerous features of the products that were deemed important by the consumers he interviewed and also by Plaintiff David Swartz. The unreliability of his testimony is an independent ground for exclusion. *See id*. at 589 (expert testimony must be "not only relevant, but reliable").

This Motion is brought pursuant to Civil Local Rule 7-2 and Federal Rule of Evidence 702 and is based on this Notice of Motion and Motion, the Declaration of Michael L. Resch (and the

exhibits attached thereto), the following Memorandum of Points and Authorities, such oral

argument as may be heard at the hearing on this Motion, and any further information that may be

presented to the Court regarding this Motion.


Dated: August 5, 2025                    KING & SPALDING LLP

                                         By:   /s/ Michael L. Resch
                                               Michael L. Resch
                                               Livia M. Kiser
                                               Samuel R. Diamant
                                               Quyen L. Ta

                                               *Attorneys for Defendants*
                                               *Dave's Killer Bread, Inc.*
                                               *and Flowers Foods, Inc.*

## I.     INTRODUCTION

Plaintiff alleges that the protein statement on the front label of certain Dave's Killer Bread products was unlawful because the nutrition facts panel ("NFP") on the back of the package only listed the same protein statement and did not also list the percent daily value ("%DV") for protein. The Court granted class certification based on a *proposed* class-wide damages model by Plaintiff's proffered damages expert, Colin B. Weir. Now that Weir has conducted his study, however, it is clear that the model yielded results that are neither "relevant" nor "reliable" under *Daubert, v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993). Simply put, in a case where liability hinges on the location of the challenged statement on the package, Weir conducted surveys that fail entirely to account for label placement.

At the class certification stage, Weir proposed to identify the so-called "price premium" associated with the front label protein statement via a conjoint survey that (i) showed respondents the grams of protein in a bullet point list without displaying any product packaging, and (ii) did not include any analysis of the omitted %DV for protein which allegedly made the front-label statement unlawful. In response to Flowers' objection that the survey failed to distinguish between the allegedly unlawful front-label statement and the very same legally required NFP statement, the Court relied on Plaintiff's assurances that the survey would somehow isolate the front label. The Court reasoned that, with regard to the *proposed* survey, the protein statement "is provided *alongside other claims that appear on the front of packages*" and "there are *no other claims in the survey that are typically included in a NFP*" such that a participant would understand the statement to be a front-label statement. Order Granting Plaintiff's Motion for Class Certification, ECF No. 139 ("Order") at 7:24-26 (emphasis added). The Court, however, noted that Flowers could "challenge" Weir's surveys "at a later stage of this litigation" once they were complete. *Id.* at 15:9-10 (citing *Fodera v. Equinox Holdings, Inc.*, 341 F.R.D. 616, 626 (N.D. Cal. 2022) (cleaned up)); *see also Noohi v. Johnson & Johnson Consumer Inc.*, -- F.4th --, 2025 WL 2089582, at *7 (9th Cir. July 25, 2025) (stating that if plaintiff's expert's execution of his surveys "f[e]ll short" of his assurances then defendant could explore those failures at summary judgment in a renewed *Daubert* motion).

Flowers now moves to exclude Weir's testimony and opinions in their entirety based on his surveys as conducted, for three independent reasons.

**First**, during his deposition taken after he conducted the surveys (and after the Court's certification of the class), Weir admitted that his conjoint surveys do not address the location or prominence of the protein statement. Weir Tr. at 126:25-127:6; 127:10-17 ("It is correct that I am not trying to identify the placement of the label as part of the survey."). But the location of the protein statement is the lynchpin of Plaintiff's entire case, because even according to Plaintiff's theory, the statement is only unlawful if it appears in a specific location—on the front (as opposed to in the NFP, where it is *legally required*). This admission alone demonstrates the need to exclude Weir's damages model.

**Second**, consistent with his deposition admission, the surveys show that Weir did <u>not</u> isolate the impact of the front-label protein statement as he claimed he would. Rather than showing respondents only front label statements, the surveys include other label statements that appear on the back label NFPs of the Dave's Killer Bread products (*i.e.*,"0g trans fat", "70 calories"). Kivetz Decl. ¶¶ 40, 71. Weir's surveys also include statements that appear only on the side or back labels of the products and *never* on the front label of the products (*e.g.,* "No High Fructose Corn Syrup", "No artificial ingredients"). *Id*. Thus, contrary to the Court's understanding at class certification based on the *proposed* methodology, the conducted surveys include the protein statement next to other statements from all over the product label, such that the participant could have no way of knowing that the survey was asking about the front label. Indeed, respondents are just as likely to have understood the protein statement as indicating the presence of protein and the lack of a protein statement as indicating the complete absence of protein. Because his surveys fail to measure the front-label protein statement, Weir's testimony "does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Daubert*, 509 U.S. at 591 (cleaned up).

**Third**, Weir's testimony is also unreliable as demonstrated by his illogical results. For example, the statement "11g protein" received a much *lower* price premium than "3g protein." Kivetz Decl. ¶ 71. And label statements such as "No High Fructose Corn Syrup" or "No Artificial Ingredients," which in the real world, appear in small text on the back or sides of Dave's Killer

Bread labels, received much *higher* price premia than statements prominently placed on the front labels. *Id.* This facial unreliability is likely due to Weir's failure to indicate the prominence and placement of the statements in his surveys. Weir also failed to include in his surveys other product characteristics that the respondents he interviewed identified as important to their purchasing behavior, such as statements related to fiber and taste/flavors of the products. *See Oracle Am., Inc. v. Google Inc.*, 2012 WL 850705, at *10-*11 (N.D. Cal. Mar. 13, 2012). Weir provides no reasoning for exclusion of these factors, and his failure to include them skews his results. *See id.*

Based on these reasons, as described in more detail below, Weir's testimony is properly excluded as part of the Court's gatekeeping function under *Daubert*.

## II.     BACKGROUND

### A.     The Product Label

Plaintiff's claims concern the alleged mislabeling of certain Dave's Killer Bread products containing a front-label protein content statement (*e.g.*, "5g protein")[1] which simply restates the amount of grams of protein listed on the back label in the NFP, as shown below:




---

[1] The Class includes purchasers of fifteen separate Dave's Killer Bread products in four separate categories: (1) Regular-Sliced Bread Products; (2) Thin-Sliced Bread Products; (3) Bagels; and (4) Burger Buns. *See* November 20, 2025 Order Granting Class Certification, ECF No. 139 at 5:25-28, fn. 5, Exhibit A.  These products have a range of protein statements, from "3g Protein" on thin-sliced products to "13g Protein" on the Epic Everything Bagel. *See id.*

Notably, the NFP on the back of all of Dave's Killer Bread products *always* listed protein content because FDA regulations *require* the total grams of protein in the products to be listed there. *See* 21 C.F.R. § 101.9(c)(7) (Nutrition information must include "[a] statement of the number of grams of protein in a serving, expressed to the nearest gram"); *see also* Declaration of Dan Letchinger (ECF No. 176-20), filed in support of Flowers' Motion for Summary Judgment (ECF No. 176). The grams of protein listed on the front *always* matched the legally required statement of grams of protein listed in the NFP. *See id.*

In addition to the total grams of protein as identically listed on the back, a consumer looking at the front label would be able to see: the look of the bread inside the packaging, the Dave's Killer Bread brand logo, the product name (here, 21 Whole Grains and Seeds), the "Organic Bread" banner, the USDA Organic seal, the Non-GMO Project butterfly, and the nutrition-related statements regarding the fiber, Omega-3, and Whole Grains content of the bread. The sides and back of the packaging include other statements, such as further descriptions of the product along with the second-chance story of original founder Dave Dahl returning to his family's bakery after spending fifteen years in prison and starting his own successful line of products.

Plaintiff contends that the front-label's restatement of the protein content from the NFP was unlawful because the NFP did not contain a %DV for protein, as he argues FDA regulations require. This legal position is inconsistent with the plain text of the regulations, the previous analyses conducted by Flowers' regulatory team, and the expert opinion of Dr. Paula Trumbo, a former FDA official. *See* ECF No. 176 at 24:22-24:3. Plaintiff brings claims alleging the front protein statement was unlawful and deceptive, but the Court has only certified a class based on the alleged "unlawful" claim under the California Unfair Competition Law, California Business and Professions Code Section 17200 ("UCL"). *See* Order at 1:21.

### B. The Court's Prior Order on Weir's *Proposed* Survey Design at The Class Certification Stage

The Court denied Flowers' motion to strike Weir's first declaration that Plaintiff submitted in support of his motion for class certification. *See* Order at 18:15-16. At that time, Weir had only proposed one conjoint survey (for the Regular Sliced Bread products) and had not conducted any

6

surveys at all. While the Court found Weir's proposed design of that one survey to be sufficient for the purposes of class certification (*see id*. at 15:2-11), the Court noted that Weir's survey had not yet been conducted and that Flowers could "challenge it again at a later stage of this litigation" once it was complete, *id*. at 15:9-11 (citing *Fodera*, 341 F.R.D. at 626 (cleaned up)).

The Court concluded that Weir's survey as proposed sufficiently tested front-of-package claims, because based on the *proposed* design, the "5g protein statement" would be provided "alongside other claims that appear on the front of packages" and *not* other claims that are "typically included in a NFP." *Id*. at 7:24-26. The Court also stated that Flowers would have the opportunity to challenge any "minor adjustments" Weir made to the additional conjoint surveys conducted for the other category of products (*i.e.*, the Thin-Sliced Bread, Bagels, and Buns products), like adjusting the numerical value of the grams of protein. *See id*. at 13:12-17.

**C. Weir's Four Conjoint Surveys as Conducted**

Following the Court's certification order, Weir designed three additional surveys for the remaining product categories. He then conducted all four conjoint surveys separately: 1.) a "Regular-Sliced Bread Survey"; 2.) a "Thin-Sliced Bread Survey"; 3.) a "Bagels Survey", and 4.) and a "Burger Buns Survey" (collectively, the "surveys"). *See* Weir Decl. ¶¶ 54. 65, Table 1.

| Table 1. Conjoint Survey Design Attributes and Levels | | | | |
|---|---|---|---|---|
| | **Regular Sliced Bread** | **Thin Sliced Bread** | **Bagels** | **Burger Buns** |
| **Brands** | • Daves Killer Bread<br>• Oroweat<br>• 365<br>• O Organic | • Daves Killer Bread<br>• Oroweat<br>• 365<br>• O Organic | • Daves Killer Bread<br>• Thomas<br>• 365<br>• Sara Lee | • Daves Killer Bread<br>• Oroweat<br>• 365<br>• O Organic |
| **Protein Claim** | • 4g Protein<br>• 5g Protein | • 3g Protein | • 11g Protein<br>• 12g Protein<br>• 13g Protein | • 6g Protein |
| **Other Label Statements** | • USDA Organic<br>• No Artificial Ingredients<br>• Good Source of Fiber<br>• NON-GMO<br>• No High Fructose Corn Syrup<br>• 22g Whole Grains<br>• Heart Healthy | • USDA Organic<br>• No Artificial Flavors<br>• Good Source of Fiber<br>• NON-GMO<br>• No High Fructose Corn Syrup<br>• 12g Whole Grains<br>• Sustainably baked with wind energy<br>• 70 Calories | • USDA Organic<br>• 0g Trans Fat<br>• 560mg Omega-3<br>• NON-GMO<br>• No High Fructose Corn Syrup<br>• 27g Whole Grains | • USDA Organic<br>• Free from Artificial Preservatives, Colors, and Flavors<br>• 280mg Omega-3<br>• NON-GMO<br>• No High Fructose Corn Syrup<br>• No Bleached Flour |
| **Price** | • $4.49-7.49 | • $3.99-6.99 | • $4.49-7.49 | • $4.49-7.49 |

As illustrated in Table 1 of Weir's report shown above, each of these surveys included statements that appear in various locations on Dave's Killer Bread product labels. For example, the statements highlighted in blue in the chart above represent statements that *never* appear on the front of Dave's products; the statements highlighted in green represent statements that appear multiple times on different parts of the label (*e.g.*, front, side, and/or back), and the statements highlighted in red represent statements that appear in the NFP. *See* Kivetz Decl. at ¶ 71, Figures 6b, 6c, 6d.

As Weir explains in his report, a conjoint analysis attempts to measure a "price premium" by analyzing the "partworths" (*i.e.*, utility) that survey respondents assign to particular product attributes and using them to calculate respondents' willingness to pay (or "WTP") for those attributes. *See* Weir Decl. ¶¶ 76, 79. Weir purports to calculate through his surveys the price premium associated with the protein attribute, which he describes as the "main attribute/level of interest." *Id*. at ¶¶ 5, 7-8, 60. Weir confirmed that the "Protein Claim" his surveys measures is "the grams of protein" or "5g" on the label. Weir Tr. at 76:7-15. He also confirmed that his surveys measure "5g" as a label statement generally and that they do not specify where exactly the "5g" appears on the label. *See id.* at 126:25-127:17. While Weir did not measure the price premium for other attributes in his surveys, like the "Other Label Statements" listed in Table 1, he did agree as a "technical" matter that the price premium could be similarly measured for the other attributes based on existing survey results. Weir Tr. at 174:14-175:10.

Plaintiff claims that the Lighthouse "market simulator" that Weir uses in his conjoint analysis will somehow "hold constant" (or account for) all other statements on the label (like the grams of protein listed in the NFP). *See* Hearing Tr. at 30:2-8. But as explained in further detail below, this is false because the simulator can only account for the data it receives from the conjoint surveys, which is limited to the factors measured in the surveys. *See infra* at 11. In Weir's proffered market simulation, Weir simply compares two Dave's Killer Bread product profiles (1) one with challenged "Protein Claim", and (2) one without it, and adjusts the price until the simulator predicts equal choices of the two products. Weir then uses the price difference as the value attributed to the "Protein Claim." *See* Simulator Screenshot.

Based on the data obtained through the four surveys, Weir concluded that the protein statements on the products (*i.e.*,"3g", "4g," "5g", "6g", "11g", "12g", and "13g") resulted in price premiums ranging from 2.40% to 5.61%, totaling over $20 million in alleged damages for the class based on California sales alone. Weir Decl. at ¶¶ 117-118, Table 3.

## III. LEGAL STANDARD

The proponent of expert testimony "has the burden of proving admissibility." *Lust By & Through Lust v. Merrell Dow Pharms., Inc*., 89 F.3d 594, 598 (9th Cir. 1996); *see* Fed. R. Evid. 702. The proponent must establish that the expert testimony is "based on sufficient facts or data," "the product of reliable principles and methods," and that it "reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702. In short, expert testimony must be "not only relevant, but reliable." *Daubert,* 509 U.S. at 589; *see also Elsayed Mukhtar v. Cal. State Univ., Hayward*, 299 F.3d 1053, 1063 (9th Cir. 2002) ("Expert testimony is admissible pursuant to Rule 702 if it is both relevant and reliable.") (citing *Daubert*, 509 U.S. at 589).

The *Daubert* standard at the summary judgment and pretrial stage is more rigorous than the burden for expert testimony at class certification. *See Flodin v. Cent. Garden & Pet Co.,* No. 21-CV-01631-JST, 2024 WL 4565340, at *2 (N.D. Cal. Oct. 23, 2024) ("Rather than the *Daubert* gatekeeper standard, a lower *Daubert* standard should be employed at this [class certification] stage of the proceedings.") (internal quotations and citation omitted); *Noohi*, 2025 WL 2089582, at *4 (a "full-blown *Daubert* assessment" of a "proposed damages model" is premature at the class certification stage) (internal quotation marks and citation omitted). "If evidence lacks either reliability or relevance, it must be excluded." *Cooper v. Brow*n, 510 F.3d 870, 943 (9th Cir. 2007).

## IV. ARGUMENT

### A. Weir's Testimony is Irrelevant

Weir's testimony is untethered to the front-label protein statement because each of his four surveys failed to isolate the price premium, if any, attributable to the protein statement on the front label of the products. *See Daubert,* 509 U.S. at 591 ("expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful") (cleaned up). In other words, Weir's testimony is not "sufficiently tied to the facts of the case . . ." *Id.*

9

*First,* Weir's surveys failed to account for the fact that the same protein statement is *always* included on the NFP on the back labels. Weir admitted that his study does not indicate *where* the protein statement appears. Weir Tr. at 126:25-127:8 (placement of a statement "is not something that is directly indicated."); *id.* at 127:10-17 ("It is correct that I am not trying to identify the placement of the label as part of the survey."). Consequently, there is no basis from which to conclude that the price premium Weir purports to measure is derived from the allegedly unlawful front-label statement, rather than the protein statement that has *always* appeared on the nutrition-facts panel on *all* Dave's Killer Bread products as required by law.[2]

Weir's decision to present product profiles that were not limited to front label statements further underscores why his results blur the price premium attributable to allegedly unlawful conduct (the front label statement) versus legally required (the NFP statement). For example, Weir's surveys include statements like:

- "0g Trans Fat"—which *only ever appeared on the nutrition facts panel (and never on the front)* of Dave's Killer Bread products (*see* Kivetz Decl. at ¶ 40);

- "70 calories"—which *appeared on both the front and back* of certain Dave's Killer Bread products (*id.*); and

- "No Artificial Ingredients"—*which only ever appeared on the side label* of Dave's Killer Bread products (*id.*).

*See also supra* at 7-8 for details on where the other statements in Weir's surveys can be found on the product labels. Weir's inclusion of these label statements appearing on the back and sides of Dave's Killer Bread product labels makes clear that he is not testing only front label statements (and no respondent would understand the response to the survey should be limited to the front statement). Weir's surveys as executed are thus misaligned with the proposed study that the Court accepted at class certification. *See* Order at 7:24-26 ("The '5g Protein' claim at issue is provided alongside other claims that appear on the front of packages. Further, respondents would not confuse

---

[2] In contrast to Weir, Flowers' expert Dr. Kivetz conducted two kinds of studies, both of which allowed respondents to see 3-dimensional views of *all sides* of the Dave's Killer Bread packaging. Dr. Kivetz' studies found that there was no price premium for the front-label protein statement. *See* Kivetz Decl. at ¶¶74-75; 92-95; 103-107; 112-114; 124; 131-135; 138-141.

the '5g protein' claim for a NFP claim because there are no other claims in the survey that are typically included in a NFP"). When Weir completed his surveys, his inclusion of other statements found in the NFP (and elsewhere on the label) would have caused the very confusion among respondents that the Court previously was assured would not be present.

Plaintiff previously insisted that the market simulation conducted through the "Lighthouse" platform would account for, *i.e.*, "hold constant," the information appearing in the NFP, including the protein statement. *See* Hearing Tr. 30:4-8 (Plaintiff counsel stating that Weir "explains why he doesn't have to provide information about the nutrition facts panel to be able to hold the value of the claim in the nutrition facts panel constant."). But as Dr. Kivetz, an expert on conjoint surveys who is well versed in Lighthouse's platform, has explained: "the simulator has no way whatsoever to address the nutrition label; it is entirely dependent on the data from the conjoint survey." Kivetz Decl. at ¶¶ 48-49; *see also* Simulator Screenshot for a sample simulation in Lighthouse for the 4g protein statement using Weir's Simulator for the Regular-Sliced Survey. As this sample Simulator Screenshot illustrates, the NFP is not referenced anywhere in the simulator. Rather, the simulator compares a Dave Killer Bread's product profile that listed "4g Protein" with an otherwise identical Dave's Killer Bread product profile that did not list protein at all (or one that lists "blank" under protein). *See* Kivetz Decl. at ¶ 50; *see also* the red ovals in the Simulator Screenshot. Nothing in the data that Weir provided from his conjoint surveys would enable the simulator to hold the grams of protein in the NFP constant because there is nothing in the data that measures the grams of protein in the NFP. And the Court's "gatekeeping function requires more than simply 'taking the expert's word for it.'" Fed. R. Evid. 702 advisory committee's note (2000) (citation omitted).

Moreover, Weir's decision to include certain NFP statements in his surveys, while excluding others (like the %DV), further undermines the relevancy of his results. As explained in Flowers Motion for Summary Judgment, even if Weir could demonstrate a price premium from a front-of-package protein statement alone, that premium cannot be tied to Plaintiff's purported legal injury without consideration of the %DV. ECF No. 176 at 21:10-22:14. Weir had the opportunity to present evidence of a price premium for the omission of the %DV for protein, and his failure to

do so further disqualifies his testimony under the *Daubert* standard.[3]

**Second,** respondents in Weir's surveys as conducted could have easily believed that a product profile that did not list protein content meant that the product did not contain any protein at all. This risk of confusion among respondents makes his surveys irrelevant to the allegations in this matter, which have to do with whether consumers paid an alleged price premium for the presence of the front protein statement and not about whether consumers paid a price premium for the presence of actual protein in the product.

As described above, *supra* at 8, Weir's conjoint surveys provided respondents with different options related to protein content. For example, for his Regular-Sliced Bread Survey, respondents would have reviewed a screen with three product profiles with three different protein content options, such as: 1.) an Oroweat product with "4g" protein; 2.) a Dave's Killer Bread product without any protein statement; and 3.) a 365 product with "5g" protein. *See* Weir Decl. ¶¶ 63, 65, and Table 1. Below is a representation of this scenario that could have been presented in Weir's Regular-Sliced Survey (Kivetz Decl. ¶ 45, Figure 1).

In this example below, respondents would have no reason to understand that the missing bullet point under the Dave's Killer Bread label containing protein information meant the front label of the Dave's Killer Bread package did not include such a statement—the more likely alternative conclusion respondents reasonably could have reached is that the Dave's Killer Bread product shown did not contain any protein at all. *See id*. Weir admitted that he did not know, and never attempted to determine, what respondents would take away from a product profile that listed "5g" protein versus a product profile that did not list protein at all. *See* Weir Tr. at 123:20-123:7 (explaining that he is "not offering an opinion" about what respondents would take away from a product profile that did not contain any statement related to protein in it); *see also id*. at 210:4-7 (explaining that he asked respondents to "to take at face value what they see here" and that he did not tell them "to believe any particular thing about the products").

_____

[3] The Court determined at the class certification stage that Weir's methodology was consistent with Plaintiff's theory of liability. ECF No. 139 at 7:22-8:23. Flowers respectfully submits that Weir's model does not comport with Plaintiff's theory of liability because it admittedly does not test the combination of the front label statement and the allegedly omitted %DV. But the Court need not revisit this issue in order to exclude Weir's testimony as irrelevant and/or unreliable.



The data from Weir's indicate that respondents were confused by what the protein statement in the product profiles (or lack thereof) meant. For example, according to his data, some respondents greatly preferred "4g protein" over "5g protein" or no protein over "5g protein"—which is not reasonable and cannot be logically explained. *See* Weir Tr. at 161:22-162:13 ("Q. And I'd like to focus on the protein. And for this there's a 4 gram protein, a 5 gram protein and a blank protein, correct, those are the three levels for that attribute? A. Yes. Q. All right. And am I reading this correctly, Mr. Weir, and as you would read it, that for respondent, they much preferred 4 gram protein over 5 grams of protein? A. So I would agree with you at a high level, but I would suggest that I would not put too much stock into any one individual's -- individual part-worth measurements out of the context of the totality of the sample.") Weir cannot explain these inconsistencies away but rather argues (without any support) that the inconsistencies do not matter. *See id*.

Weir's testimony should be excluded in full on relevancy grounds for failing to measure, and appropriately isolate, the challenged protein statement on the front of Dave's Killer Bread products. *Daubert*, 509 U.S. at 591; Fed. R. Evid. 702.[4]

## B. Weir's Testimony is Unreliable

Weir's testimony should be excluded on the independent ground that it is unreliable. Pursuant to *Daubert*, the Court must also assess whether Weir's testimony is reliable, or whether the reasoning or methodology underlying his testimony is scientifically valid. 509 U.S. at 590-91. If an expert's methodology "produces contradictory or otherwise implausible results," it "strongly suggest[s] that [the] methodology has been insufficiently tested and that the methodology has a high potential rate of error." *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 299 F. Supp. 3d 430, 468 (S.D.N.Y. 2018); *see also, e.g., United States v. Hermanek*, 289 F.3d 1076, 1097 (9th Cir. 2002) ("inconsistent results may be an indicator of unreliability"). In assessing reliability, "a resort to common sense is not inappropriate," and courts have excluded expert testimony where conjoint surveys generated results that defy common sense. *Johnson Elec. N. Am. Inc. v. Mabuchi Motor Am. Corp.*, 103 F.Supp.2d 268, 286 (S.D.N.Y. 2000); *see also Oracle*, 2012 WL 850705, at *10 (expert opinion based on conjoint survey was unreliable).

Judge Alsup's decision in *Oracle* is particularly instructive for the Court's reliability assessment of Weir's testimony. There, the court granted defendant's motion to exclude an expert's determination of market share based on a conjoint survey for two reasons: (a) the conjoint survey's "irrational results showed that study respondents did not hold all other, non-tested features constant"; and (b) the expert "omitted important features that would have played an important role in real-world consumers' preferences." 2012 WL 850705, at *10-*11. The *Oracle* court was specifically concerned with results showing that one quarter of all respondents preferred, or were indifferent between, "a smartphone costing $200 to a theoretically identical smartphone costing $100." *Id.* at *11. The court found these results to be unacceptable and determined that plaintiff's

---

[4] The confusion among respondents related to what the protein statement means also renders his results unreliable, because, even as plaintiff's expert in *Oracle* admitted, the "survey requires" that respondents have a "constant view of the meaning" of the attributes being tested. 2012 WL 850705, at *10.

1  expert had "created this problem for himself" through his incorrect selection of attributes in the

2  survey. *See id.*

3      Weir's conjoint surveys suffer from the same flaws and should be excluded for the same

4  reasons.

5          **1.      Weir's Surveys Generated Irrational Results**

6      Weir's surveys determined questionable price premia for many of the "Other Label

7  Statements" in the surveys, casting doubt on the study as a whole.  For example, as shown below,

8  the "'No Artificial Ingredients' and 'No High Fructose Corn Syrup' statements in Weir's surveys—

9  which appeared on the *side* of Dave's packaging (and that may have gone unnoticed by at least

10 some consumers in the marketplace)—received *higher* 'price premia' estimates than did the front-

11 label claims 'USDA Organic' and 'NON-GMO.'" Kivetz Decl. ¶ 71, Figure 6b.



26     These illogical results are evident across Weir's other surveys as well. *See e.g.*, Kivetz Decl.

27 ¶ 71, Figure 6c, 6d. The organic and non-GMO statements should have received much higher price

28 premia due to their prominence and placement as well as their impact on consumer purchasing

behavior, as evidenced by the well-known popularity of organic and non-GMO products. Indeed, Plaintiff himself testified that he preferred products with organic and non-GMO features (Swartz Tr. at 87:2-17; 126:3-127:4, 137:21-137:6) and that he did not find the statement "No High Fructose Corn Syrup" and "No Artificial Ingredients" to be a "significant" or "primary" reason for purchase (respectively) (*id*. at 138:20-139:5; *see also id*. at 86:15-89:1). In fact, Plaintiff could not remember if he ever even read the "No High Fructose Corn Syrup" "No Artificial Ingredients" statements on the side panel before purchasing the Dave's products. *Id*. at 133:11-134:8.

Similarly, the price premia calculated by Weir for the protein statements also show irrational results. For example, Weir calculated a *lower* price premium for the "11g" protein on the Bagels (3.47%) than the "3g" protein on the Thin-Sliced Bread (3.58%). *See* Weir Decl. at Table 3; Kivetz Decl. ¶ 71. Similarly, Weir calculated a lower price premium for the "13g" protein on the Bagels (5.21%) than the "6g" protein on the Burger Buns (5.61%). *See* Weir Decl. at Table 3; Kivetz Decl. ¶ 71.

Under basic "common sense" principles, the questionable results in the data outlined above, for both the protein and non-protein statements, show the unreliability of Weir's surveys. *Johnson*, 103 F.Supp.2d at 286. His testimony based on this unreliable data should thus be excluded. *See Daubert*, 509 U.S. at 589 (1993); *Oracle*, 2012 WL 850705, at *10.

### 2. Weir's Surveys Omitted Key Attributes

Expert testimony should also be excluded where, as here, the expert "omitted important features that would have played an important role in real-world consumers' preferences." *Oracle,* 2012 WL 850705, at *1,*30; *In re Juul Labs, Inc., Mktg. Sales Pracs. & Prods. Liab. Litig*., 609 F.Supp.3d 942, 1021 (N.D. Cal. 2022) (acknowledging that the omission of a "key or critical variable" is relevant to whether to exclude an expert's conjoint survey). In *Oracle*, plaintiff's expert discovered 39 features from his "own focus-group research . . . that real-world consumers said they would have considered when purchasing a smartphone." 2012 WL 850705, at *10. But instead of testing those 39 features in his conjoint analysis, the plaintiff's expert in *Oracle* selected only seven features to be studied (only three of which were covered by the at-issue patented functionality). *Id*. The Court found that the expert's failure to include the factors identified through his focus-group

16

research rendered his conjoint survey results unreliable because this failure "artificially forced" respondents to focus on factors (and thus give more weight to those factors) than they would in the real world. *Id*. While the court acknowledged that a conjoint analysis need not "test every distinguishing feature that may matter to consumers[,]" it found that the irrational results from the studies was enough to indicate that "study participants did not hold all other, non-tested features constant." *Id*. at *11.

One feature that Weir omits from his surveys is the %DV—a feature that Plaintiff himself claims is important to consumer's purchase decisions because it would have indicated to consumers that the product only provided "5% (or less) of the daily value for protein" and thus led consumers either to not purchase or to have paid less, for the products. *See* First Amended Complaint, ECF No. 37, at ¶¶ 3, 5, 23, 38, 40, 63. Despite Plaintiff putting the %DV at the center of this case, Weir's surveys as conducted fail to reflect any consideration of the %DV at all. Nothing in Weir's surveys tested the impact of the presence or absence of a %DV for protein on the nutrition facts panel. In fact, Weir admitted that his surveys would estimate the same price premium for (1) a challenged product without the %DV for protein on the nutrition facts panel; and (2) a non-challenged product with the %DV for protein on the nutrition facts panel. Weir Tr. at 70:7–11; 77:2–21; 85:20-86:12. But Plaintiff's theory of liability is that the front protein statement is unlawful only because the back label is missing the %DV for protein.

The %DV is not the only key attribute Weir omitted. Despite claiming that respondents in his cognitive interviews uniformly recognized preferences for products with characteristics related to "Whole-Grains," "Fiber," "Calories," and "Taste/Flavors," his surveys do not include these attributes. Weir Decl. ¶¶ 41-43; 47-48. Weir did not include a "Whole Grains"-related label statement in his Burger Buns Survey, did not test a "Fiber"-related statement in his Bagels and Burger Buns surveys, did not test a "Calories"-related statement in his Regular-Sliced Bread, Bagels, or Burger Buns surveys, and did not test any "Taste"- or "Flavor"-related statements in any survey. *See* Weir Decl. at Table 1. Considering that consumers directly told Weir that these types of statements were important to their purchasing decisions, his failure to test any one of these statements renders his surveys unreliable. *Oracle*, 2012 WL 850705, at *10-*11.

The illogical results in Weir's surveys and the absence of several important labeling statements—statements that have been identified by both Plaintiff and consumers interviewed by Weir as important—require the Court to exercise its gatekeeping function and exclude such unreliable testimony. *See Daubert*, 509 U.S. at 589 (1993); *Oracle*, 2012 WL 850705, at \*10-\*11.

## V.     <u>CONCLUSION</u>

For the foregoing reasons, Flowers respectfully requests that the Court exclude Weir's testimony in its entirety.

Dated: August 5, 2025                         KING & SPALDING LLP

                                                              By:   */s/ Michael L. Resch*
                                                                      Michael L. Resch
                                                                      Livia M. Kiser
                                                                      Samuel R. Diamant
                                                                      Quyen L. Ta

                                                                      *Attorneys for Defendants*
                                                                      *Dave's Killer Bread, Inc.*
                                                                      *and Flowers Foods, Inc.*