# EXHIBIT 3

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

DAVID SWARTZ, as an individual, on behalf
of himself, the general public and those
similarly situated,

                              Plaintiff,     CASE NO.: 4:21-cv-10053-YGR

v.

DAVE'S KILLER BREAD, INC. AND
FLOWERS FOODS, INC.,

                              Defendants.


Amended Declaration


of


**COLIN B. WEIR**


February 17, 2025


REFERENCES MATERIALS DESIGNATED "CONFIDENTIAL" AND "HIGHLY

CONFIDENTIAL" UNDER PROTECTIVE ORDER

I, Colin B. Weir, declare as follows:

I am President at Economics and Technology, Inc. ("ETI"), 100 Franklin Street, 6th Floor, Boston, Massachusetts 02110.  ETI is a research and consulting firm specializing in economics, statistics, regulation and public policy.

## I.  QUALIFICATIONS, BACKGROUND, AND EXPERIENCE

1.    I hold a Masters of Business Administration, with honors, from the High Technology program at Northeastern University, Boston, Massachusetts.  I hold a Bachelor of Arts degree cum laude in Business Economics from The College of Wooster, Wooster, Ohio.  I have provided expert testimony before federal and state courts, the Federal Communications Commission, and state regulatory commissions, and have contributed research and analysis to numerous ETI publications and expert testimony at the state, federal, and international levels.  I have consulted on a variety of consumer and wholesale products cases, calculating damages relating to food products, health/beauty care products, automobiles, household appliances, herbal remedies, electronics, and computers.  My Statement of Qualifications, which outlines my professional experience, publications, and record of expert testimony during the last four years, is attached hereto as Exhibit 1.  This includes a list of all cases in which, during the previous four years, I have testified as an expert at trial or by deposition.

2.    I have participated in the design, execution and/or determination of the economic suitability of conjoint surveys, or have been found by the court to have expertise in conjoint analysis in numerous litigations.  These cases include, but are not limited to, *Hadley vs. Kellogg; Krommenhock v. Post; Fitzhenry-Russell v. Dr. Pepper; Jones v. Nutiva; Hunter v. Nature's Way; Banks v. Bigelow; Sanchez-Knutson v. Ford Motor Company; Belfiore v. Procter and Gamble; Kurtz v. Kimberly Clark; In re Scotts EZ Seed Litigation; In re: ConAgra Foods; In re: Arris Cable Modem; Martinelli v. Johnson & Johnson; Hudock v. LG; Koenig v. Vizio; Banh v.*

*American Honda; and Kaupelis v. Harbor Freight; Cardenas v. Toyota*; *Bechtel v. Sole Fitness*; *Milan v. Clif Bar*; and *McMorrow v. Mondelez.*

3.    I received graduate level training in conjoint analysis as part of my MBA.  I take continuing education in advanced conjoint design, execution, and analysis through Sawtooth Software, a leading provider of conjoint analysis software.  In addition, I have more than 16 years of experience using conjoint analysis professionally.

## II.  ENGAGEMENT

4.    I provide this declaration in connection with the case filed by Plaintiff David Swartz ("Swartz" or "Plaintiff") on behalf of himself and all others similarly situated, in the above-captioned action against Defendants Dave's Killer Bread, Inc. and Flower Foods, Inc. (collectively, "Defendants").[1]  I make this declaration based upon my own personal knowledge and, if called as a witness in this action, I would be able to competently testify as to the facts and opinions set forth herein.

5.    I have been advised by Counsel for Plaintiff that Swartz and other class members purchased certain Dave's Killer Breads products[2] that prominently displayed labels claiming that the Products contained a specific level of protein per serving (hereinafter, "Protein Claim" or "Claim").[3]  Plaintiff alleges that the Defendants' use of the Protein Claim is unlawful because Defendants did not calculate or provide the following additional information, as required by the Food and Drug Administration:

---

[1] First Amended Class Action Complaint, filed June 17, 2022, (the "Complaint"); Order Denying Defendants' Motion To Dismiss For Lack Of Standing; Denying Motion To Intervene; Granting Plaintiff's Motion For Class Certification; And Denying Defendants' Motion To Strike The Declaration Of Colin B. Weir, filed September 20, 2024 (the "Class Certification Order").

[2] The products at issue include: Killer Breads: 21 Whole Grains and Seeds, Good Seed, Powerseed, 100% Whole Wheat, Righteous Rye; Thin Sliced Bread: 21 Whole Grains and Seeds, Good Seed, Powerseed, Sprouted Whole Grains; Breakfast Bagels: Epic Everything, Plain Awesome, Cinnamon Raison Remix, Boomin' Berry; Burger Buns: 21 Whole Grains and Seeds Burger Buns, Burger Buns Done Right; (Collectively, the "Products").

[3] *See,* Complaint, at paras 2, 22-25; Exhibit B.  *See also,* Class Certification Order, at page 2, Exhibit A.

(1) calculate the "corrected amount of protein per serving" based on the quality of the product's protein using the PDCAAS method; and

(2) provide a statement of that corrected amount of protein per serving in the NFP, expressed as %DV."[4]

6.  Plaintiff alleges that the Defendants' failure to comply with the FDA requirements and its use of the Protein Claim on the Class Products resulted in members of the class, and among other things, paying more for their Products than the actual value received at the time and point of purchase.[5]

7.  I have been asked by Counsel for Plaintiff to calculate the price premium associated with the Protein Claim on the Products.

8.  I have been asked by Counsel for Plaintiff to calculate damages on a class-wide basis based on Plaintiffs' unlawfulness claim.

9.  This declaration incorporates my opinions articulated in my declarations dated November 17, 2023 and March 22, 2024.  I will be prepared to testify in Court or at trial on any of my opinions in this case.

10.  ETI is presently being compensated at the rate of $900 per hour for my work on this case. The opinions expressed in this declaration are my own, and my compensation is not dependent upon the substance of these opinions or the outcome of the litigation.

11.  The documents, data and other materials that I relied upon in forming my opinions are identified throughout my report, and in Exhibit 2, attached hereto.  In addition, I have relied upon my educational background and more than 21 years of experience.

---

[4] Complaint, at para 24.

[5] Complaint, at para 25.

## III. FRAMEWORK FOR DAMAGES

12.   As a threshold matter, it is my opinion that it is possible to determine class-wide damages in this case using Defendants' own available business records, third-party records, industry resources, and a conjoint analysis.

13.   Below, I propose the use of conjoint analysis to calculate any price premium damages (wherein consumers would receive the value of the price premium they paid solely as a result of Defendants' conduct of labeling its Products with the Protein Claim).[6]

14.   This methodology can determine the damages across any prescribed time period, and across geographic regions, given any of the possible liability scenarios that may arise in this litigation.

15.   I understand that the Certified Class to be California purchasers of the Products during the Class Period, December 29, 2017 through September 5, 2023.[7]

**Product Differentiation**

16.   A price premium as alleged in this case may arise due to the concept of product differentiation.  In economics, the concept of product differentiation can be summarized as the introduction of product attributes that allows the consumer to differentiate between otherwise similar products, with the goal of increasing sales and profits.[8]

17.   Defendants appear to understand the concept of product differentiation.

18.   ██████████████████████████████████████████

██████████████████████████████████████████ ▊

---

[6] A particular claim need not be the most important claim or attribute of a product in order to cause there to be a price premium.

[7] The Class: All persons in the State of California who purchased the Products between December 29, 2017 and September 5, 2023.  *See,* Class Certification Order, at 12.

[8] Case, Fair & Oster, Principles of Microeconomics, 9th Edition, 2009, at 305-316, 449.

[9] FLO_00000535.

19. ███████████████████████████████████

████████████████████████████████

███████████████  ███████████████

20. ██████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████

█████████████[11]

21. ████████████████████████████████████

████████████████████.[12]

22. ████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████

█████████████████[13]

23. ████████████████████████████████[14]

24. Dan Letchinger, Senior Vice President of Growth Brands at Flowers Foods testified that

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████[15]

---

[10] FLO_00000570.

[11] *See,* FLO_00000715, FLO_00000552.

[12] FLO_00001591.

[13] FLO_0000527.

[14] FLO_0000528.

[15] Deposition of Dan Letchinger, November 10, 2023 ("Letchinger Deposition") at 37.

25.  Mr. Letchinger also testified that



---

[16] Letchinger Deposition, at 141.

[17] Letchinger Depostion, at 154-155.

[18] Letchinger Depostion, at 170.

26.   Clearly, Defendants appear to understand that the Protein Claim will differentiate the Products from competitors, allowing Defendants to charge a premium for this attribute and derive higher revenues and profits therefrom.

## IV.  CALCULATION OF PRICE PREMIUM
## DAMAGES: CONJOINT ANALYSIS

27.   In this litigation, price premium damages for the Class are the portion of the market price of the Products solely attributable to Defendants' Claim, or in other words, the difference in market value between the Products with the Claim and without.

**Conjoint Analysis: Overview of the Methodology**

28.   Conjoint analysis is a representative survey technique that permits an economist to analyze the value of various product attributes.[19]  Conjoint analysis can be used to determine market valuation/attribute information for a given product or attribute.  Conjoint analysis is founded on rigorous statistical and economic principles.[20]  Indeed, conjoint analysis has been used in litigation contexts to calculate damages for years.[21]

---

[19] Conjoint analysis as a discipline is quite broad, and can be used to facilitate many other sorts of research beyond the specific application that I discuss here.

[20] *See, e.g.*, Sawtooth Software technical papers, available online at http://www.sawtoothsoftware.com/support/technical-papers; *When "All Natural" May Not Be*, Analysis Group Forum (Winter 2013), https://www.analysisgroup.com/when-all-natural-may-not-be (last accessed January 28, 2025).

[21] *Applying Conjoint Analysis to Legal Disputes: A Case Study*, Wind, Yoram, *et al.*; *See, e.g.*, *Khoday v. Symantec Corp.*, 2014 WL 1281600, at *10 (D. Minn. March 13, 2014); *Sanchez-Knutson v. Ford Motor Company*, 310 F.R.D. 529, 538-39 (S.D. Fl. 2015); *In re: Lenovo Adware Litigation*, 2016 WL 6277245, at *21 (N.D. Cal. Oct. 27, 2016); *Guido v. L'Oreal, USA, Inc.*, 2014 WL 6603730, at *5, *10-*14 (C.D. Cal. July 24, 2014); *Brown v. Hain Celestial Group, Inc.*, 2014 WL 6483216, at *19 (N.D. Cal. Nov. 18, 2014); *Microsoft v. Motorola, Inc.*, 904 F.Supp.2d 1109, 1119-20 (W.D. Wa. 2012); *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 413-15 (S.D.N.Y. 2015); *Dzielak v. Maytag*, 2017 WL 1034197, at *6 (D. NJ. March 17, 2017); *TV Interactive Data Corp. v. Sony Corp.*, 929 F. Supp. 2d 1006, 1022 & n.6 (N.D. Cal. 2013); *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017); *Fitzhenry-Russell v. Dr Pepper Snapple Group, Inc.*, 2018 WL 3126385 (N.D. Cal. June 26, 2018); *In Re Arris Cable Modem Consumer Litig.*, 2018 WL 3820619, at *25-*31 (N.D. Cal. Aug. 10, 2018); *Hadley v. Kellogg Sales Co.*, 2018 WL 3954587, at *11-*16 (N.D. Cal. Aug. 17, 2018); *Martinelli v. Johnson & Johnson*, 2019 WL

29. It is well known that conjoint analysis has a long history of use in the food and beverage and consumer packaged goods industries.[22]

30. In a typical conjoint analysis, survey panelists are confronted with various choices of product attributes, prices, and other alternatives, and asked either to rank their preferences, or to choose the most preferred attribute or combination thereof.

31. Through conjoint analysis, by systematically varying the attributes of the product and observing how respondents react to the resulting product profiles, one can statistically measure information about the individual attributes.

32. Statistical methods (including regression analysis) are then applied to the survey responses to calculate attribute value.[23]

---

1429653, at *3-4 (E.D. Cal. Mar. 29, 2019); *Krommenhock v. Post Foods, LLC*, 2020 U.S. Dist. LEXIS 40463 (N.D. Cal. Mar. 9, 2020); *Hudock v. LG Elecs. USA, Inc.*, 2020 U.S. Dist. LEXIS 54994 (D. Minn. Mar. 30, 2020); *Koenig v. Vizio, Inc.*, Los Angeles Superior Court Case No. BC702266 (L.A. Super. Ct. Aug. 24, 2020); *Banh v. American Honda Motor Co.*, Inc., 2020 WL 4390371 (C.D. Cal. July 28, 2020); *Kaupelis v. Harbor Freight Tools, Inc.*, 2020 WL 5901116 (C.D. Cal. Sep. 23, 2020); *McMorrow v. Mondelez*, 2021 WL 859137 (S.D. Cal. Mar. 8, 2021); *de Lacour v. Colgate-Palmolive Co.*, 2021 WL 1590208 (S.D.N.Y. Apr. 23, 2021); *Bailey v. Rite Aid Corp.*, 2021 WL 1668003 (N.D. Cal. Apr. 28, 2021); *Prescod v. Celsius Holdings, Inc.*, Case No. 19STCV09321 (Cal. Super. Ct. Cnty. L.A. Aug. 2, 2021); *Cardenas v. Toyota Motor Corp.*, Case No.: 18-cv-22798, 2021 U.S. Dist. LEXIS 152920, at *21-*23, *52-*65 (S.D. Fla. Aug. 12, 2021); *Bechtel v. Fitness Equipment Svcs., LLC*, No. 1:19-CV-726, 2021 WL 4147766, at *2, *16-*17 (S.D. Ohio Sep. 12, 2021); *Milan v. Clif Bar & Co.*, Case No. 18-cv-02354-JD, 2021 WL 4427427, at *6-*7 (N.D. Cal. Sep. 27, 2021); *Testone v. Barlean's Organic Oils*, Case No. 19-cv-169-JLS (BGS), 2021 WL 4438391, at *5-*6, *15-*17 (S.D. Cal. Sep. 28, 2021); *Johnson v. Nissan N. Am., Inc.,* 2022 WL 2869528, at *5 (N.D. Cal. July 21, 2022); *Sonneveldt v. Mazada*, 2022 WL 17357780 (C.D. Cal. Oct. 21, 2022); *Willis v. Colgate Palmolive Co.*, No. CV 19-8542 JGB (RAOx) (C.D. Cal Jan. 5, 2023), ECF No. 105; *Chapman v. General Motors,* Case No. 2:19-CV-12333-TGB-DRG, 2023 WL 2745161 (E.D. Mich. Mar. 31, 2023); *Gunaratna v. Dennis Gross Cosmetology LLC*, Case No. CV 20-2311-MWF (GJSx), 2023 WL 2628620 (C.D. Cal. Mar. 15, 2023); *Banks v. R.C. Bigelow, Inc.*, No. 20-CV-06208 DDP (RAOx) (C.D. Cal. Jul. 31, 2023); *Bush v. Rust-Oleum Corp.*, Case No. 3:20-cv-03268-LB (N.D. Cal. Feb. 5, 2024), ECF No. 189, Amended Order Granting Motion for Class Certification; *Corbett v. Pharmacare U.S. Inc.*, No. 21-cv-137-JES (AHG) (S.D. Cal.) March 29, 2024 Order; *Sinatro v. Barilla America, Inc.*, No. 22-cv-03460-DMR, Dkt. No. 78 (N.D. Cal. May 28, 2024); *Cadena v. Am. Honda Motor Co., Inc.,* No. CV 18-4007-MWF (PJWx), 2024 WL 4005097 (C.D. Cal. Jul. 2, 2024); *Swartz v. Dave's Killer Bread, Inc.,* No. 4:21-cv-10053-YGR (N.D. Cal. Sept. 20, 2024) (order granting class certification) (Dkt. No. 193); *Wallenstein v. Mondelez Int'l, Inc.,* No. 22-cv-06033-VC, 2024 WL 4293904 (N.D. Cal. Sept. 25, 2024); *Lessin, et al. v. Ford Motor Co.,* Case 3:19-cv-01082-AJB-AHG, ECF No. 202 (S.D. Cal. Nov. 7, 2024) (Order re: Summary Judgment and Class Cert).

[22] *See, e.g., Getting Started With Conjoint Analysis: Strategies for Product Design and Pricing Research*, Bryan K. Orme, Research Publishers 2014 ("Getting Started With Conjoint").

[23] *Id.*

33. Conjoint analysis can, and indeed has, been used to analyze the value and importance of product claims, such as the Claim. One recent study used conjoint analysis to determine "whether health claims (claims of health-promoting effects) of food products positively influence product price and consumer choices."[24] Prior to conducting the conjoint survey, the study finds that "[i]n general, consumers consider health and wholesomeness as important aspects of food quality." The study then uses choice-based conjoint analysis to measure the effects of various product attributes on the price of a single product, green tea. The study examines only four product attributes: health claim, country of origin, the size of the product, and price. The study finds that the health claim on green tea is a positive, statistically significant purchase driver, and results in a price premium of approximately 20%.

34. In light of proposed FDA standardized front-of-pack nutrition labeling standards, another study sought "to estimate the relative contribution of declared amounts of different nutrients to the perception of the overall 'healthfulness' of foods by the consumer."[25] The study determined that claims such as "this product has no saturated fat," "this product is fat free," and "this product is low in total fat" were among the 22 most important nutrient content claims. The study concludes that "Conjoint analysis can lead to a better understanding of how consumers process information about the full nutrition profile of a product, and is a powerful tool for the testing of nutrient content claims."

35. An application of conjoint analysis to orange juice was used to evaluate which attributes of orange juice consumers value most. Results of the study showed that vitamin C content was the most important purchase driver besides price.[26]

---

[24] *Estimating Consumers' Willingness to Pay for Health Food Claims: A Conjoint Analysis*, Mitsunori Hirogaki, International Journal of Innovation, Management and Technology, Vol. 4, No. 6, December 2013.

[25] *Testing Consumer Perception of Nutrient Content Claims Using Conjoint Analysis*, Drewnowski, Adam *et al*., Public Health Nutrition: 13(5), 688–694.

[26] *Evaluation of Packing Attributes of Orange Juice on Consumers' Intention to Purchase by Conjoint Analysis and Consumer Attitudes Expectation*, Gadioli, I. L. et al., Journal of Sensory Studies 28 (2013):57-65.

36.  The use of conjoint analysis in similar applications is too extensive to document exhaustively here.

37.  Conjoint analysis, as a survey tool, does not rely on an existing data set for its analysis because it relies on data generated through the survey process.  Common conjoint analysis software permits the administration of a representative sample survey, and the analysis of the results therefrom.

38.  No individualized analyses, or Class-Member-specific inquiry will be required.  All relevant data needed to complete the conjoint analysis will be Class-wide, common evidence.

**Conjoint Survey: Exploratory Research**

39.  Prior to designing and conducting the conjoint survey, I conducted in-depth cognitive interviews with purchasers of Dave's Killer Bread Products as part of my work in developing the four surveys.  These cognitive interviews are a type of qualitative research, similar to focus groups, but better suited for the conjoint survey task.

40.  These interviews permit me to understand background information helpful to developing the conjoint surveys.  I sought background information on what product features drive purchasing behavior for purchasers of bread.

41.  As discussed in my November 17, 2023 Declaration, I previously conducted eight in-depth interviews of approximately 30 minutes in duration. I conducted the interviews over the telephone.  The participants in the interviews were all California residents and purchasers of one or more packages of Dave's Killer Bread during the proposed class period.

42.  From these cognitive interviews, I gained a better understanding of the drivers of consumer choices underlying bread purchases that aided my design of the conjoint survey for Defendants' Killer Breads.

43.  Through the interview process, I identified that brand and packaging were the starting point for many bread purchases.  I also identified that bread purchasers, to the extent

they have prior experience with a brand, associate and recall the flavor of the bread associated with different brands. I compiled a list of common bread "features" that purchasers sometimes consider, such as brand, packaging, various label claims, and price. Interviewees all purchased multiple brands of bread, though many had an affinity for Dave's Killer Bread. Interviewees were interested in a variety of the label claims, including

- Whole Grains;

- Organic;

- Fiber;

- Protein content;

- Taste/Flavors;

- Preference against non-natural ingredients; and

- General "healthier" preferences;

44. All of the respondents indicated that they were aware of protein claims on bread, and that protein claims were a reason they chose to purchase Dave's Killer Bread.

45. Respondents reported typically paying above $4 and a maximum of about $7.50 for a single loaf of bread.

46. Respondents indicated that their views on various bread attributes, including protein (as well as whole grains, organic, fiber, and non-GMO), would not vary based upon the size of the packaging (e.g., single or double loaf), flavor, price, or over the course of the past five years.

47. I recently conducted additional cognitive interviews to understand the factors influencing consumer choices for Defendants' thin slice bread, bagels and burger buns (eight each). Similar to the cognitive interviews regarding Dave's Killer Breads, these in-depth interviews were approximately 30 minutes in duration and conducted over the telephone. The participants in the interviews were all California residents and purchasers of one or more packages of Defendants' bread products – thin sliced bread, bagels or burger buns.

48.  The findings of these cognitive surveys were similar to the previous interviews focused on Defendants' Killer Breads.  Interviewees were interested and aware of a variety of the same label claims, as well as some additional claims, including:

- Whole Grains;

- Organic;

- Fiber;

- Protein content;

- Calories;

- Taste/Flavors;

- Preference against non-natural ingredients; and

- General "healthier" preferences;

49.  All respondents indicated that they were aware of protein claims on Defendants' bread products at the time of purchase.

50.  The surveys revealed that Daves Killer Bread products were often the respondents' first choice when shopping for thin sliced bread, bagels and burger buns.  When Daves Killer Breads' thin sliced bread was not available, respondents often purchased Oroweat, Wholefoods 365 brand, Ezekiel, or private label. When substituting Daves Killer Breads' burger buns, respondents would look for Whole Foods 365 brand, private label or in-store bakery products. For bagels, respondents would consider Thomas', Whole Foods 365 brand, Sara Lee, Private brand or in-store bakery bagel products.

51.  Respondents reported typically paying above $4 and below $8 for a single loaf of thin sliced or bagel Class Products.  For burger bun Products, respondents reported a range of $5 to $7 per package of burger buns.

52.  I also confirmed these findings by reviewing documents produced in the normal course of this litigation.

53.   In addition, I also reviewed the website of Defendant Dave's Killer Bread, other bread brand websites, and bread retailers and their websites.

**Conjoint Survey: Design**

54.   After completing the exploratory research, I drafted the design of the conjoint surveys.[27]   I designed a separate conjoint survey for each of the four Class Product categories: Killer Breads, Thin Sliced Breads, Breakfast Bagels and Burger Buns.

55.   It is standard survey practice to avoid indicating the sponsor and/or purpose of the survey to ensure respondents' objectivity and to make the respondent unaware of the sponsor and goal of the survey.   No disclosure of the sponsor or the goal of the survey were made.   Because the surveys were administered via the Internet, respondents were not be exposed to human interviewers, thereby eliminating the possibility of the survey administrator communicating the sponsor or purpose of the survey and influencing the outcome.

56.   The survey begins with an introduction that welcomes respondents to the survey, and asks several screening questions.   Respondents are presented with a CAPTCHA challenge to ensure that responses were not computer-generated.   Respondents are asked for their age and gender, and state of residence.   Respondents are asked a standard screening question about whether they or anyone in their household work for certain types of companies.   Respondents who indicate that they or someone in their household work for a market research company or advertising agency, or a company that manufactures or sells bread products, will not be allowed to continue.   Next, respondents are asked if they have purchased bread products in the last six years.[28]   Those that have made such a purchase are then asked to select the type if bread products they have purchased.   Those that indicate a purchase or consideration of purchase of sliced

---

[27] The survey design is discussed below.

[28] This update was made to reflect the passage of time since the original design was submitted for class certification.

bread, thin sliced bread, bagels or burger buns are then asked to indicate the brands of each category of bread that they have purchased in the last six years.  Respondents that have purchased Dave's Killer Bread products continue through the survey and are directed to one of the four conjoint surveys based on their purchase history (Killer breads, thin sliced breads, bagels and burger buns).  If a respondent has purchased more than one category of Dave Killer Bread brand products, the respondent is assigned to only one of the surveys by the survey management software.

57.  The core portion of each survey uses "Choice-based Conjoint" ("CBC").  CBC is the most widely used type of conjoint.[29]

58.  In the main part of each survey, respondents are presented with a series of instructions and information about the conjoint tasks.  The instructions inform respondents that they should imagine that they are going to purchase a package of regular sliced bread, thin sliced bread, bagels or burger buns, and that they will be presented with packages between which they must first make a selection of their preferred product, and then indicate whether they would buy that packaged bread product.  Respondents will be asked to assume:

- Any features not shown in the exercise are assumed to be the same across the possible choices presented.

- Assume that all of the packages bread products are of the flavor/variety you prefer.

59.  Next, respondents are introduced to the attributes that will be included in the choice exercises: Brand, Label Statements, and Price.  Respondents are instructed that, other than the features within each of the above categories, please assume that all other features will be the same across all packaged bread products you will be shown.

---

[29] The 2023 Sawtooth Software Annual User Survey finds CBC continues to be the most commonly used approach, accounting for 75% of projects.

60.  The main attribute/level of interest is the Claim.  The other attributes are distractor attributes, and were selected to be believable and understandable.[30]

61.  Respondents are then introduced to the levels of each attribute, and provided with some basic information about those levels.

62.  The following section provides an illustrative example in the conjoint survey for regular sliced bread, as presented to respondents.

*Brand*

- The Brand of bread.



| | | | |
|---|---|---|---|
| The Brand is Dave's Killer Bread | The Brand is Oroweat | The Brand is O Organics | The Brand is 365 |

*Label Statements*

- Some of the packages of bread you will see will make one or more of these statements on the packaging.

---

[30] The selection of attributes to include was based upon a review of Dave's Killer Bread and competitor labels, the cognitive interviews, the documentary evidence, a review of Defendants' and competitor's websites, retailer websites and the testimony of Dan Letchinger.

| | | |
|---|---|---|
| Grams of Protein | USDA Organic | No Artificial Ingredients |
| Good Source of Fiber | NON-GMO | No High Fructose Corn Syrup |
| Grams of Whole Grains | Heart Healthy | |

*Price*

- The price of the package of the packages of bread, ranging from $4.49 to $7.49.[31]

63.  After this information provision, respondents move on to complete the choice-based conjoint choice tasks.  Each respondent is presented with 13 choice tasks.  Twelve such tasks are generated by the conjoint software in a randomized, balanced, orthogonal design.  One task is the same for all respondents, and is known as a fixed or "holdout" task.  Each choice task presents three packages of bread with the three attributes, and varying levels.  As is common practice, to avoid influencing respondents' answers and survey results, the attributes are shown in a randomized order that differ for each respondent, but remain consistent throughout the 13 choices presented to any one individual respondent.  Brand is always

---

[31] The price points in the conjoint survey were derived from a review of historic, through the register transaction data from Information Resources, Inc.; a market scan of prices presently in the market; the cognitive interviews; and documentary evidence.

shown first, and price is always anchored last.  The label statements are randomized for each



respondent.  An illustrative example of such a task is shown below.

64.   After completing all 13 choice tasks, respondents are thanked for their input, and exited from the survey instrument.

65.   The design of the conjoint survey for thin sliced bread, bagels and burger buns is similar to the survey design outlined above for regular sliced bread, with only minor variation in attribute levels.  Table 1 summarizes the attributes and levels that were used in each of the four conjoint surveys.

| Table 1. Conjoint Survey Design Attributes and Levels | | | | |
|---|---|---|---|---|
| | **Regular Sliced Bread** | **Thin Sliced Bread** | **Bagels** | **Burger Buns** |
| **Brands** | • Daves Killer Bread<br>• Oroweat<br>• 365<br>• O Organic | • Daves Killer Bread<br>• Oroweat<br>• 365<br>• O Organic | • Daves Killer Bread<br>• Thomas<br>• 365<br>• Sara Lee | • Daves Killer Bread<br>• Oroweat<br>• 365<br>• O Organic |
| **Protein Claim** | • 4g Protein<br>• 5g Protein | • 3g Protein | • 11g Protein<br>• 12g Protein<br>• 13g Protein | • 6g Protein |
| **Other Label Statements** | • USDA Organic<br>• No Artificial Ingredients<br>• Good Source of Fiber<br>• NON-GMO<br>• No High Fructose Corn Syrup<br>• 22g Whole Grains<br>• Heart Healthy | • USDA Organic<br>• No Artificial Flavors<br>• Good Source of Fiber<br>• NON-GMO<br>• No High Fructose Corn Syrup<br>• 12g Whole Grains<br>• Sustainably baked with wind energy<br>• 70 Calories | • USDA Organic<br>• 0g Trans Fat<br>• 560mg Omega-3<br>• NON-GMO<br>• No High Fructose Corn Syrup<br>• 27g Whole Grains | • USDA Organic<br>• Free from Artificial Preservatives, Colors, and Flavors<br>• 280mg Omega-3<br>• NON-GMO<br>• No High Fructose Corn Syrup<br>• No Bleached Flour |
| **Price** | • $4.49-7.49 | • $3.99-6.99 | • $4.49-7.49 | • $4.49-7.49 |

**Conjoint Survey: Pretesting the Design**

66.  Prior to putting the survey into the field, the conjoint questionnaire was pretested with 10 respondents per each CBC exercise.  Following administration of the survey, respondents were debriefed about the survey experience and questionnaire.  I conducted the pretest for quality control and quality assurance testing of the survey design; to validate that the survey questionnaire was programmed correctly to my specifications; to identify any survey questions that were unclear to respondents; and to analyze the data collection to identify any

problems, such as unexpected missing response data or interview terminations. Pretest response data was not included in the final conjoint analysis.

67. These pretest interviews tested whether respondents did not have difficulty with the questions and instructions; whether they understood the choice exercise they were asked to perform; and whether they looked at all or almost all of the features in making their choices; whether they understood the written description of each feature; and whether they found the choices realistic or plausible.

68. Additionally, I tested for demand artifacts, asking respondents about their beliefs about the sponsor and purpose of the survey. No demand artifacts were detected in the design of the survey.

69. Pretesting revealed that respondents understood the questions, instructions, and descriptions presented in the questionnaire and that the interview flowed smoothly. Based on my review of the pretest, I concluded that the survey instrument was reliable. I did not make any survey question wording changes to the survey questionnaire based on the pretest prior to conducting the full study.[32]

**Conjoint Survey: Sample**

70. The sample was drawn from California residents, age 18+, who had purchased or considered purchasing a Dave's Killer Bread product in the past six years.

71. Typically, conjoint surveys collect data from around 300 respondents if the goal of the research is to conduct robust quantitative research.[33] Another rule of thumb for selecting a conjoint survey sample size is to set:

$$\frac{nta}{c} \geq 500$$

---

[32] The conjoint surveys are attached hereto as Exhibit 3.

[33] Getting Started with Conjoint, at 69.

where *n* is the number of respondents, *t* is the number of tasks, *a* is number of alternatives per task (not including the none alternative), and *c* is the number of analysis cells.[34]

72.　I requested that Dynata provide sample of N=360 for each of the four conjoint exercises, well in excess of the minimum recommended amount.

**Conjoint Survey: Administration and Data Collection**

73.　I used Sawtooth Software for the programming of the questionnaire, data collection, and analysis of the survey results.[35] Sawtooth Software is the leading provider of conjoint analysis survey software. The Sawtooth Lighthouse Studio program is widely used by academics and professionals around the world.

74.　I retained Dynata[36] to provide me with the online survey vendor service of providing the respondent sample. Based on my experience in the industry, the Dynata online panel sample is regarded as one of the most credible and reliable non-probability online panel having the necessary scale for this study.[37] Dynata referred respondents to the survey hosted through the Sawtooth Software survey system.

75.　After analyzing the response data, I removed 31 cases where respondents straightlined the conjoint survey. Straightlining is when a respondent picks the same conjoint product profile in all of the available tasks (e.g., choosing product 1 in all instances), and is

---

[34] *Id.*, at 68-69. When considering main effects, *c* is equal to the largest number of levels for any one attribute.

[35] http://sawtoothsoftware.com.

[36] As explained on Dynata's website: "Dynata helps with every step of your research and marketing journey. Our dataset of more than 62 million consumers and business professionals, fully-permissioned with billions of verified data points, gives you access to a wide variety of audiences. We can connect our data with your own and other sources, revealing the holistic picture of your customer and your market. Real people, ready to share their attitudes, behaviors and insights – the cornerstone for precise and trustworthy high-quality data." https://www.dynata.com/about/ (last accessed January 28, 2025).

[37] The Sawtooth Software Annual User Survey finds that a plurality of users selected Dynata for their primary online panel/web samples. https://sawtoothsoftware.com/resources/blog/posts/results-of-the-sawtooth-software-user-survey (last accessed January 28, 2025).

likely the result of a respondent clicking through the survey without making actual choices. This left N=358 respondents in the regular bread survey, and N=351 respondents in all of the remaining surveys. This sample size remains well above the recommended amounts needed to achieve statistically reliable results (as discussed above):

- For the regular sliced bread survey, this left $n$=358 respondents; respondents answered $t$=12 randomized choice tasks of $a$=3 alternatives per task; and the highest number of levels is $c$=7 analysis cells. The formula in this instance evaluates to 1,841; well in excess of the minimum recommended amount.

- For the thin sliced bread, bagels, and burger buns surveys, this left $n$=351 respondents; respondents answered $t$=12 randomized choice tasks of $a$=3 alternatives per task; and the highest number of levels is $c$=7 analysis cells. The formula in this instance evaluates to 1,805; well in excess of the minimum recommended amount.

**Conjoint Survey: Analysis**

76. The results of the surveys were first analyzed using Hierarchical Bayes regression analysis performed by the Sawtooth survey software to determine the "partworths" that are later used in the market simulation (which I discuss below).[38] This Bayesian analysis enhances predictive ability, making the conjoint analysis more reliable and valid. It is the most commonly used estimation method for choice based conjoint analysis. Hierarchical Bayes makes use of data from the overall sample of respondents when estimating the partworths. Bayesian partworth estimates are best suited for calculating statistics at the market level, such as the average or median value of certain variables of interest, and for simulating the overall, aggregate behavior of the market.

---

[38] Exhibit 4, attached hereto, contains the settings for the Bayesian regressions.

77.   In this analysis, I have imposed a constraint that the pricing data be monotonic, which is to say that there will be a negative slope to the utility for price: economic theory dictates that all else equal, people prefer to pay less than to pay more.

78.   Following the regression analysis, the results were checked to determine the appropriateness of using the partworths to forecast market behavior, and for their predictive behavior.

79.   One such method is to determine the holdout performance, which measures how well the partworths estimates predict the actual choices made by survey respondents when looking at a subset of the choice sets not used in the estimation.  In other words, if the model is able to predict product choices for the one choice set that is "held out" from the data used for estimation, we can be more confident in the validity of the model.  In very simple terms, we ask the model, "Given the information obtained from the partworths estimated from the 12 randomized choice sets, how well can you predict the product choice in the holdout choice?"  To get a valid indicator of holdout performance, I used the Hierarchical Bayes analysis of the 12 randomized choice sets to predict the choices in the hold out set.  A purely random guess would predict choices correctly one third of the time (given a choice of three products in the choice task).  The holdout performance of the surveys ranged between 68.66% and 77.65%.  A hit rate in excess of double the chance rate (i.e., 66.67% in this instance) indicates exceptional performance.

80.   I have also measured the performance of the four surveys using mean absolute error ("MAE").  These results are also excellent, with MAEs ranging from 1.62% to 3.45%.

81.   I also performed a check of the Bayesian results for interaction effects, and determined that there were no statistically significant interaction effects that needed to be controlled for.

82.   After the data was processed by the regression analysis, and those results were tested as described above, the results were used in a market simulation.

**Conjoint Survey: Market Simulation**

83.   After the data were processed by the regression analysis and checked for predictive power, I conducted the measurement of the price premium for each Product category using a market simulation tool produced by Sawtooth Software.

84.   The president of Sawtooth Software explains that:

> "the simulator is used to convert raw conjoint (partworth utility) data into something much more managerially useful: simulated market choices. Products can be introduced within a simulated market scenario and the simulator reports the percentage of respondents projected to choose each product.  A market simulator lets an analyst or manager conduct what-if games to investigate issues such as new product design, product positioning, and pricing strategy.  Market simulators are commercially available or can be constructed using spreadsheet programs.[39]

85.   In short, a market simulation tool is a "choice laboratory" for determining consumers' utilities for multiple real-world possibilities (e.g., any market price premium paid as a result of a challenged claim).

86.   Forecasts based on such market simulations are sufficiently accurate such that firms routinely make decisions based on the results of these simulations.[40]

87.   The market simulation provides a statistically robust estimate of any price premium that purchasers paid solely as a result of the challenged Claim.  The market simulation enables the calculation of the economic market value of the Claim in the market scenario where the Claim is removed, holding all else equal.  The results of the simulator are a market-wide result, not an average of individual preferences.

---

[39] Bryan Orme, Sawtooth Software, on "Market Simulators for Conjoint Analysis." https://www.sawtoothsoftware.com/download/techpap/introsim.pdf.  See also, Joel Huber et al., 2006. "Dealing with Product Similarity in Conjoint Simulations."

[40] Getting Started with Conjoint, Chapter 10: Market Simulators for Conjoint Analysis.

88.   The price premium is expressed as the percentage or amount of the sales price that is solely attributable to the challenged Claim.   For instance, a price premium of 11% for the Claim on a package of bread sold on average for $5.00 is the same as stating that $0.55 is the market value of the challenged Claim.

89.   For the market simulation, I compared a benchmark Dave's Killer Bread Product that uses the Claim to an otherwise identical Product that does not use the Claim.   I then used the market simulator to simulate a condition where the price of the second product is reduced to the level where both products obtain equal market acceptance.   At this market equilibrium, the market is indifferent as between the bread product with the Claim at a higher price, and the bread product without the Claim at a reduced market value.   The price premium will equal the difference between the price in the real world and the but-for price that compensates for the change in labeling.[41]   The simulation will be run for each product category using the randomized first choice model.

90.   In conducting the simulations, I used the common approach of simulating the premium from all of the price points in the survey, and conservatively selected the lowest value for conversion to a percentage premium.   In making the conversion to the percentage premium, I also conservatively selected as the denominator for the calculation the largest price contained in the survey.

**Conjoint Survey: Results**

91.   Based upon my observation that retail pricing of the Products fluctuated during the relevant time period, I calculated the price premium attributable to the Claim as a percentage of the total price of the Products to be applicable to the various retail price points in the marketplace.   I did so using four conjoint surveys that took into account actual marketplace

---

[41] This premium will be converted to a percentage for application to the sales of the Products.

prices and other supply-side considerations and therefore is able to measure marketplace outcomes, and calculated the following price premiums.

- A price premium percentage of 3.47% was calculated for the claim of "5g of Protein" on regular sliced bread.

- A price premium percentage of 2.40% was calculated for the claim of "4g of Protein" on regular sliced bread.

- A price premium percentage of 3.58% was calculated for the claim of "3g of Protein" on thin sliced bread.

- A price premium percentage of 3.47% was calculated for the claim of "11g of Protein" on bagels.

- A price premium percentage of 4.14% was calculated for the claim of "12g of Protein" on bagels.

- A price premium percentage of 5.21% was calculated for the claim of "13g of Protein" on bagels.

- A price premium percentage of 5.61% was calculated for the claim of "6g of Protein" on burger buns.

92.  The price premiums apply to every sale of the relevant Products, and to every Class Member, respectively.  Consumers do not negotiate the price of the Products in one-off transactions.  The prices are set by the market.  Just as a rising tide lifts all boats, a reduction in demand reduces prices market-wide.  This is why the price premium percentages calculated by the conjoint surveys will apply to all Class Members market-wide regardless of the absolute price they paid, and regardless of any individual Class Member's subjective valuation of the Products.

**Conjoint Survey: Additional Checks of Respondent Reliability on Results**

93.   Above, I noted that I had checked the respondent data and removed instances of respondents straightlining the data.  I also analyzed the data for other factors that might warrant exclusion of respondents.  I examined the data for speeders (respondents that complete the survey very quickly), laggards (respondents that appear to pause their attention to the survey and take the survey over a long period of time), and those with low root likelihood scores (those with lower fit statistics from the model).  In each survey, approximately 50 respondents were flagged under at least one of these three categories.

94.   Unlike with straightliners, where it is a reasonable presumption that the response data should be removed, these additional categories call for a more nuanced approach to evaluating whether the response data should be excluded.  For example, a respondent may make hasty choices in the survey, but in a similar fashion to the way they might make a hasty decision in a supermarket.  As another example, a respondent with a low root likelihood may not express strong opinions about product attributes, which could be reflective of their actual opinions.  As such, the data does not necessarily warrant exclusion.

95.   I performed two tests to determine whether to exclude these respondents.  First, I re-ran the market simulation excluding such cases, and compared the share of preference for the remaining sample to see if it diverged by more than the standard error of the original market simulation.  If the variance in share of preference is smaller than the standard error, the results of excluding the cases would be considered to have no statistical impact on the model.  Second, I ran a new Hierarchical Bayes regression (see discussion above) excluding the cases in question.  I then re-ran the market simulation based on the new results.  If the resulting premium is larger than the original (and the first test shows no statistical difference in the results) it is conservative to retain the sample cases in question.  In all four surveys, the exclusion tests showed no

statistical differences, and the original calculations proved to be conservative. As such, I chose not to remove such cases.

**Conjoint Survey: Summary of Checks of Reliability**

96. Above, I discussed checking the survey data for straightliners, checking the statistical properties of the models using the widely accepted measure of hold out hit rate performance and Mean Absolute Error, checking the data for other possible problematics respondents, and making conservative choices in the conduct of the market simulations.

97. Based upon all of these checks, it is my opinion that the results of all four surveys are scientifically and statistically reliable.

**Conjoint Survey: Supply Side Considerations**

98. I considered supply side factors in my determination of damages. First, unlike in a Lanham Act or intellectual property litigation where a but-for quantity of sales may need to be determined, in this litigation, the historic number of units sold is a fact (as I have discussed above) and in this litigation, it would be antithetical to the concept of class definition to suggest that the quantity supplied be anything other than the actual number of units sold by Defendants.

99. Furthermore, if one were to assume, *arguendo*, that Defendants would not have lowered their price in concert with demand (indicating that Defendants priced above the market clearing price), then the economic outcome would be that many or all of the purchases would not have taken place at all. As such, the price premium(s) determined using conjoint analysis are inherently conservative measures.

100. It is also an economic perversion for a defendant engaged in a litigation (with obvious conflict of interest) to simply state that it would never have adjusted its prices or would not have adjusted them enough so as to meet demand, and therefore damages should be set at

zero or something less than actual economic damages. If this were permitted, any defendant could simply postulate its way out of economic damages.

101. I took several steps to ensure that these surveys were appropriately designed to measure the true market value of the price premium attributable to the Claim, incorporating the supply side.

102. I conducted research of actual retail sales and market data and included these real-world price points in the survey. These real-world transactions occurred at prices that *already* reflect the supply side factors then extant in the marketplace. I also considered that variability in pricing at the retail level showed that Defendants' and retailers' pricing was responsive to changing market forces.

103. Another important supply-side factor that I accounted for was the fact that the quantity of the Products supplied is a known quantity, and fixed as a matter of history.

104. Similarly, another important supply-side factor that I considered was that, as I discuss below, the market for the Class Products is an "ordinary" and mature market, subject to competitive pressures that both competitors and retailers identified as risks to their business.

105. Bread products are produced by a number of manufacturers, and sold by a myriad of retailers. The market is highly competitive, and subject to ordinary market conditions, such as changes in consumer demand that affect price.

106. Flowers Foods, Inc., the current owner of Dave's Killer Bread, notes that,

The U.S. bakery industry is highly competitive.

Competition is based on product availability, product quality, price, effective promotions, and the ability to target changing consumer preferences.

Increased competition could result in reduced sales, margins, profits and market share.[42]

107. Grupo Bimbo, parent company of Bimbo Bakeries, the American holding company that owns the Oroweat brand that Defendants identify as a competitor notes that:

Demand for our products during the year was historic.

Consumers value transparency for many reasons, including the ingredients of our recipes, allergies, social responsibility, and sustainability, based on the belief that all organizations must be honest, open and direct with their customers, competitors and themselves.[43]

108. Many major retailers and manufacturers identify a willingness to adjust prices in response to changing economic conditions and consumer preferences. Target Corporation, a retailer that sells Dave's Killer Bread Products, recently advised its investors that:

A large part of our business is dependent on our ability to make trend-right decisions in a broad range of merchandise categories. If we do not predict and quickly respond to changing consumer preferences and spending patterns, we may experience lower sales, spoilage, and increased inventory markdowns, which could adversely affect our results of operations. Our ability to predict and adapt to changing consumer preferences depends on many factors, including obtaining accurate and relevant data on guest preferences, successfully implementing new technologies and capabilities emphasizing relevant merchandise categories, effectively managing our inventory levels, and implementing competitive and effective pricing and promotion strategies. We have not always been able to predict rapid changes in consumer preferences and spending patterns, including those that were impacted by the COVID-19 pandemic, which has previously resulted in insufficient or excess inventory, increased costs, and adverse impacts on our results of operations. If we are unable to effectively adapt to future changes in consumer preferences

---

[42] Flowers Foods, Inc., Form 10-K Annual Report filed with the US Securities and Exchange Commission, filed February 21, 2024.

[43] Grupo Bimbo, Annual Report 2023, available online at https://www.grupobimbo.com/en/investors/reports/annual-reports

and spending patterns, our results of operations and financial condition could
be adversely affected.[44]

109.  Other retailers and large grocers have also noted the intense level of competition in
the industry, as well as the importance of responding to consumers on their ability to earn profits.
Kroger reports to shareholders that the competitive risks present in the food retail industry could
adversely affect the company's profitability:

> The operating environment for the food retailing industry continues to be
> characterized by the proliferation of local, regional, and national retailers,
> including both retail and digital formats, and intense and ever-increasing
> competition ranging from online retailers, mass merchant, club stores, regional
> chains, deep discounters, and dollar stores, as well as ethnic, specialty and
> natural food stores. With the proliferation of grocery delivery – both by
> retailers and third-party delivery service providers – customers have an even
> wider range of retailers from which to choose. Customers continue to expect a
> great shopping experience both in-store and online. The industry continues to
> be shaped by e-commerce, cooking at home and prepared foods to go and other
> customer needs and preferences. Customers want to be able to shop on their
> own terms with zero compromise whether at brick and mortar stores or online,
> pick-up or delivery, depending on their particular trip needs and other factors.
> If we do not appropriately or accurately anticipate customer preferences or fail
> to quickly adapt to these ever-changing preferences, our sales and profitability
> could be adversely affected. If we fail to meet the evolving needs of our
> customers, our ability to compete and our financial condition, results of
> operations or cash flows could be adversely affected.
>
> […]We may be unsuccessful in implementing our alternative profit strategy,
> which could adversely affect our business growth and our financial condition,
> results of operations or cash flows. The nature and extent to which our
> competitors respond to the evolving and competitive industry by developing
> and implementing their competitive strategies could adversely affect our
> profitability.[45]

---

[44] Target, Corporation., Form 10-K Annual Report filed with the US Securities and Exchange Commission, filed
March 13, 2024.

[45] The Kroger Co., 2024 10-K Annual Report filed with the US Securities and Exchange Commission, filed April 2,
2024.

110. Publix advises investors:

**Increased competition and low profit margins could adversely affect the Company.**

The Company is engaged in the highly competitive retail food industry. The Company's competitors include traditional supermarkets, such as national and regional supermarket chains and independent supermarkets, as well as nontraditional competitors, such as supercenters, membership warehouse clubs, mass merchandisers, dollar stores, drug stores, specialty food stores, restaurants, convenience stores and online retailers. The Company's ability to attract and retain customers is based primarily on quality of goods and service, price, convenience, product mix and store location.

There has been a trend for traditional supermarkets to lose market share to nontraditional competitors. The Company's ability to attract and retain customers is based primarily on quality of goods and service, price, convenience, product mix and store location. The Company believes it will face increased competition in the future from existing and potentially new competitors. The impact of pricing, purchasing, advertising or promotional decisions made by its competitors as well as competitor format innovation, location additions and changes in service offerings could adversely affect the Company's financial condition and results of operations.[46]

111. Walmart, Inc. notes the high level of competition that it faces from other retailers:

Each of our segments competes for customers, employees, digital prominence, products and services and in other important aspects of its business with many other local, regional, national and global physical, eCommerce and omni-channel retailers, social commerce platforms, wholesale club operators and retail intermediaries, as well as companies that offer services in digital advertising, fulfillment and delivery services, health and wellness and financial services. The omni-channel retail landscape is highly competitive and rapidly evolving, and the entry of new, well-funded competitors may increase competitive pressures.

We compete in a variety of ways, including the prices at which we sell our merchandise, merchandise selection and availability, services offered to

---

[46] Publix Super Markets, Inc. 2023 10-K Annual Report filed with the US Securities and Exchange Commission, filed March 1, 2024.

customers, location, store hours, in-store amenities, the shopping convenience
and overall shopping experience we offer, the attractiveness and ease of use of
our digital platforms, cost and speed of and options for delivery to customers
of merchandise purchased through our digital platforms or through our omni-
channel integration of our physical and digital operations.[47]

112. Albertson's, the owner of the Safeway grocery chain, notes:

We maintain price competitiveness through systematic, selective and
thoughtful price investment to drive customer traffic and basket size.

The food and drug retail industry is highly competitive. The principal
competitive factors that affect our business are location, price, quality, service,
selection, convenience and condition of assets such as our stores.

We face intense competition from supercenters, other food and/or drug
retailers, club stores, online retailers, specialty and niche supermarkets,
"limited assortment" stores, drug stores, general merchandisers, wholesale
stores, dollar and discount stores, convenience stores, natural food stores,
farmers' markets, local chains and stand-alone stores that cater to the individual
cultural preferences of specific neighborhoods, restaurants and a growing
number of internet-based home delivery and meal solution companies. We and
our competitors engage in price and non-price competition which, from time to
time, has adversely affected our operating margins.[48]

113. Bread products are sold by many retailers. These are ordinary, traditional retailers
that set their prices based upon current market conditions.

114. The market for bread products is not price regulated. The market for the Class
Products is not restricted.

115. Pricing in the bread market operates as in an ordinary market: prices are established
in the marketplace, and consumers can choose to buy at the prices set in the market or not; there
are no insurance intermediaries, co-payments, or other such complexities.

---

[47] Walmart, Inc., Form 10-K Annual Report filed with the US Securities and Exchange Commission, March 15,
2024.

[48] Albertson's Form 10-K Annual Report filed with the US Securities and Exchange Commission, filed April 25,
2023.

## V.  TOTAL SALES OF THE PRODUCTS

116. I have been provided with through-the-register, retail sales data from Circana, Inc.

(formerly Information Resources Inc. ("IRI")).[49] ██████████████████████████████

████████████████████████ . ████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████

| Table 2. Summary of Sales Data Class Period 12/29/2017 - 9/5/2023 | | | |
|---|---|---|---|
| **Class Products** | **Protein Claim** | ████ | ████ |
| **Killer Breads** | | ████ | ████ |
| 21 Whole Grain and Seeds | 5g Protein | ████ | ████ |
| Good Seed | 5g Protein | ████ | ████ |
| Powerseed | 5g Protein | ████ | ████ |
| 100% Whole Wheat | 4g Protein | ████ | ████ |
| Righteous Rye | 5g Protein | ████ | ████ |
| **Thin Bread** | | ████ | ████ |
| 21 Whole Grain and Seeds | 3g Protein | ████ | ████ |
| Good Seed | 3g Protein | ████ | ████ |
| Sprouted Whole Grain | 3g Protein | ████ | ████ |
| Powerseed | 3g Protein | ████ | ████ |

---

[49] Circana Data Received Pursuant to Subpoena ("Circana Data").

| **Bagels** | | ████████ | ████████ |
|---|---|---|---|
| Epic Everything | 13g Protein | ████████ | ████████ |
| Plain Awesome | 11g Protein | ████████ | ████████ |
| Cinnamon Raisin Remix | 12g Protein | ████████ | ████████ |
| Bloomin' Berry | 11g Protein | ████████ | ████████ |
| **Burger Buns** | | ████████ | ████████ |
| 21 Whole Grains and Seeds | 6g Protein | ████████ | ████████ |
| Burger Buns Done Right | 6g Protein | ████████ | ████████ |
| **GRAND TOTAL** | | ████████ | ████████ |

## VI.  CALCULATION OF DAMAGES

117. After completing all of the work as discussed above, the final calculation of total price premium damages in this litigation is straightforward and based upon a common methodology.

118. With the price difference due to the Claim determined on a percentage basis, the calculation of class-wide damages for any Product is:

$$\%Price\ Premium\ Factor: Claim \times \$Units\ Sold\ = Damages$$

- With the data presently available to me I have calculated Damages using the Conjoint Price Premium Percentages noted above.  The calculation of the resulting Price Premiums is presented below, in Table 3.

| | Table 3. Calculation of Damages | | | |
|---|---|---|---|---|
| **Class Products** | **Protein Claim** | **Dollar Sales** | **Price Premium Percentage** | **Damages** |
| **Killer Breads** | | ▮ | | ▮ |
| 21 Whole Grain and Seeds | 5g Protein | ▮ | 3.47% | ▮ |
| Good Seed | 5g Protein | ▮ | 3.47% | ▮ |
| Powerseed | 5g Protein | ▮ | 3.47% | ▮ |
| 100% Whole Wheat | 4g Protein | ▮ | 2.40% | ▮ |
| Righteous Rye | 5g Protein | ▮ | 3.47% | ▮ |
| **Thin Sliced Bread** | | ▮ | | ▮ |
| 21 Whole Grain and Seeds | 3g Protein | ▮ | 3.58% | ▮ |
| Good Seed | 3g Protein | ▮ | 3.58% | ▮ |
| Powerseed | 3g Protein | ▮ | 3.58% | ▮ |
| Sprouted Whole Grains | 3g Protein | ▮ | 3.58% | ▮ |
| **Bagels** | | ▮ | | ▮ |
| Epic Everything | 13g Protein | ▮ | 5.21% | ▮ |
| Plain Awesome | 11g Protein | ▮ | 3.47% | ▮ |
| Cinnamon Raisin Remix | 12g Protein | ▮ | 4.14% | ▮ |
| Bloomin' Berry | 11g Protein | ▮ | 3.47% | ▮ |
| **Burger Buns** | | ▮ | | ▮ |
| 21 Whole Grains and Seeds | 6g Protein | ▮ | 5.61% | ▮ |
| Burger Buns Done Right | 6g Protein | ▮ | 5.61% | ▮ |
| **GRAND TOTAL** | | ▮ | | ▮ |

## VII.  INDIVIDUAL INQUIRY IS NOT REQUIRED

**Variations in purchase price do not alter the framework for, or prevent the calculation of total, class-wide damages**

119. Variations in purchase price do not prevent the calculation of class-wide damages. Such variations in price are captured in the sales data used for analysis and price variations are an element of conjoint surveys.  Such variations are also inapposite to the calculation of class-wide damages, because the ultimate method of distribution or allocation of damages to individuals during claims administration or a settlement does not alter the calculation of total, class-wide damages.

120. Class-wide damages under a price premium damages model can be calculated from the bottom up as the sum of individual damages (as defendants often assert), or can be calculated from the top down, without individual inquiry, by finding the percentage price premium for the Claim and then multiplying the price premium percentage by the dollars sold (as discussed in detail above).  As outlined above, I propose to use the latter technique, obviating the need for individual inquiry.

121. Ultimately, no matter the method by which damages are distributed, it does not affect the calculation of, or the total amount of class-wide damages in this litigation.

**Individual behavior or use of the Products is irrelevant to the determination of class-wide damages**

122. Calculating a price premium does not depend on individual behaviors or uses of the Class Products by Consumers.  If the market price for the Class Products was higher with the Protein Claim, then ALL consumers will have paid a higher price than if the Claim was not used by Defendants.  How any individual consumer uses the Class Products will not impact the market price or the price premium, which will have been paid and experienced by all consumers.

**Individual reasons for purchase do not change the price, or price premium experienced by an individual**

123. Individual reasons for purchase are irrelevant to damages in this case, because a consumer's individual reasons for purchase do not change the price paid by that individual. As I have discussed above, if there is a price premium paid for the Class Products as a result of Defendants' use of the Protein Claim and a consumer buys such a Class Product, he or she will pay the market price, and will experience the price premium regardless of the consumer's reasons for purchase, because those individual reasons for purchase do not change the price that will have been paid.

124. Even if a consumer bought a Class Product with the intention to immediately throw that product in the trash and make no use of it at all, the consumer has been harmed because the consumer paid more for the item than the consumer would have for a product without the Protein Claim.

## VIII. RESERVATION OF RIGHTS

125. My testimony is based upon the information and data presently available to me. Additional, different and/or updated data including market research data may be obtained in advance of trial. I therefore reserve the right to amend or modify my testimony.

VERIFICATION

I declare under penalty of perjury that the foregoing is true and correct to the best of my

knowledge, information, and belief, and that this declaration was executed at Parish of St.

George, St. Kitts, St. Kitts and Nevis, this 17th day of February 2025.

Colin B. Weir

# Statement of Qualifications

# COLIN B. WEIR

Colin B. Weir is President at Economics and Technology, Inc. Mr. Weir conducts economic, statistical, and regulatory research and analysis, and testifies as an expert witness. Mr. Weir's work involves econometric and statistical analysis, multiple regression, surveys, statistical sampling, micro- and macroeconomic modeling, accounting and other economic analysis. Such analysis often involves analysis of databases, call detail records, and other voluminous business records. Mr. Weir is familiar with common statistical and econometric software packages such as STATA and Sawtooth Software. Mr. Weir assists with analysis of economic, statistical and other evidence; and preparation for depositions, trial and oral examinations. Mr. Weir has provided expert testimony before federal and state courts, the FCC, and state regulatory commissions, and has contributed research and analysis to numerous ETI publications and testimony at the state, federal, and international levels. Prior to joining ETI, Mr. Weir worked at Stop and Shop Supermarkets as a cash department head, grocery/receiving clerk, and price-file maintenance head.

Mr. Weir's experience includes work on a variety of issues, including: economic harm and damage calculation; liquidated damages provisions; lost profits; false claims; diminution in value; merger/antitrust analysis; Early Termination Fees (ETFs); Late Fees; determination of Federal Excise Tax burden; and development of macroeconomic analyses quantifying the economic impact of corporate actions upon the US economy and job markets.

Mr. Weir has conducted research and analysis in numerous litigation and regulatory matters on behalf of corporate, government and individual clients, including AT&T, MTS Allstream (Canada), The US Department of Justice, Office of the Attorney General of Illinois, Pennsylvania Department of Revenue, Thomas v. Global Vision, (class action litigation, Superior Court, County of Alameda), Ayyad v. Sprint (class action litigation, Superior Court, County of Alameda), Forcellati v. Hylands (class action, U.S. District Court, Central District of California), and Ebin v. Kangadis Foods (class action, U.S. District Court, Southern District of New York).

Mr. Weir holds an MBA with honors from Northeastern University. He also holds a Bachelor of Arts degree *cum laude* in Business Economics from The College of Wooster.

Mr. Weir is a member of the Boston Economic Club, and a business member of the Boston Bar Association. Mr. Weir has served on the Board of Trustees of the Waring School, and served as the comptroller for the Sybaris Investment Partnership.

ECONOMICS AND
TECHNOLOGY, INC.

**Publications and Testimony of Colin B. Weir**

Mr. Weir has co-authored the following:

*Interoperability and Spectrum Efficiency: Achieving a Competitive Outcome in the US Wireless Market* (with Lee L. Selwyn) Economics and Technology, Inc., prepared on behalf of United States Cellular Corporation, July 2012.

*The Price Cap LECs' "Broadband Connectivity Plan": Protecting Their Past, Hijacking the Nation's Future* (with Lee L. Selwyn and Helen E. Golding) Economics and Technology, Inc., prepared on behalf of United States Cellular Corporation, September 2011.

*Regulation, Investment and Jobs: How Regulation of Wholesale Markets Can Stimulate Private Sector Broadband Investment and Create Jobs* (with Lee L. Selwyn, Susan M. Gately, and Helen E. Golding) Economics and Technology, Inc., prepared on behalf of Cbeyond, Inc., Covad Communications Company, Integra Telecom, Inc., PAETEC Holding Corp, and tw telecom inc., February 2010.

*Revisiting Us Broadband Policy: How Re-regulation of Wholesale Services Will Encourage Investment and Stimulate Competition and Innovation in Enterprise Broadband Markets*, (with Lee L. Selwyn, Susan M. Gately, and Helen E. Golding) Economics and Technology, Inc., prepared on behalf of MTS Allstream, February 2010.

*Longstanding Regulatory Tools Confirm BOC Market Power: A Defense of ARMIS* (with Lee L. Selwyn, Susan M. Gately, and Helen E. Golding) Economics and Technology, Inc., prepared on behalf of the AdHoc Telecommunications Users Committee, January 2010.

*Choosing Broadband Competition over Unconstrained Incumbent Market Power: A Response to Bell and TELUS* (with Lee L. Selwyn, Susan M. Gately, and Helen E. Golding) Economics and Technology, Inc., prepared on behalf of MTS Allstream, April 2009.

*The Role of Regulation in a Competitive Telecom Environment: How Smart Regulation of Essential Wholesale Facilities Stimulates Investment and Promotes Competition* (with Lee L. Selwyn, Susan M. Gately, and Helen E. Golding) Economics and Technology, Inc., prepared on behalf of MTS Allstream, March 2009.

*Special Access Overpricing and the US Economy: How Unchecked RBOC Market Power is Costing US Jobs and Impairing US Competitiveness* (with Lee L. Selwyn, Susan M. Gately, and Helen E. Golding) Economics and Technology, Inc., prepared on behalf of the AdHoc Telecommunications Users Committee, August 2007.

*The AWS Spectrum Auction: A One-Time Opportunity to Introduce Real Competition for Wireless Services in Canada* (with Lee L. Selwyn and Helen E. Golding) Economics and Technology, Inc., prepared on behalf of MTS Allstream, June 2007.

*Comparison of Wireless Service Price Levels in the US and Canada* (with Lee L. Selwyn) Economics and Technology, Inc., prepared on behalf of MTS Allstream, May 2007.



*Hold the Phone! Debunking the Myth of Intermodal Alternatives for Business Telecom Users In New York* (with Susan M. Gately and Lee L. Selwyn) Economics and Technology, Inc., prepared for the UNE-L CLEC Coalition, August 2005.

Mr. Weir has submitted the following testimony during the last four years:

**United States District Court, Northern District of California,** *Sharon Crowder, Joel Lumian, Robert Smith, Amanda Goldwasser, and Mark Elkins, each individually and on behalf of all others similarly situated, v. The Shade Store LLC*, Case No. 5:23-cv-2331, United States District Court, Western District of Washington At Seattle, *Lee Fitzgerald and Katherine Adler, individually and on behalf of all others similarly situated, v. The Shade Store LLC*, Case No. 2:23-cv-01435-RSM, on behalf of Dovel & Luner, LLP, Declaration submitted on January 23, 2025.

**United States District Court, Northern District of California,** *Condalisa LeGrand, on behalf of herself, all others similarly situated, and the general public, v. Abbott Laboratories*, Case No. 3:22-cv-5815-TSH, on behalf of Fitzgerald Monroe Flynn, PC, Declaration submitted on January 23, 2025.

**Superior Court of the State of California, County of Santa Clara,** *Makenzie Smith, individually and on behalf of all others similarly situated, v. LinkedIn Corporation*, Case No. 22CV404069, on behalf of Bursor & Fisher, P.A., Declaration submitted on January 13, 2025.

**United States District Court, Eastern District of Virginia, Richmond Division,** *James Dolan and James Morris, individually and on behalf of all others similarly situated, v. Ford Motor Company*, Case No. 1:19-cv-05045-REP, on behalf of Consumer Litigation Associates, PC, Declaration submitted on January 3, 2025; Reply Declaration submitted on February 12, 2025.

**United States District Court, Northern District of California,** *Nea Vizcarra, individually and on behalf of all others similarly situated, v. Michaels Stores, Inc.*, Case No. 5:23-cv-468-PCP, on behalf of Dovel & Luner, LLP, Declaration submitted on November 15, 2024; Deposition on January 8, 2025.

**Superior Court of the State of California, for the County of Alameda,** *David Livingston, individually and on behalf of all other persons similarly situated, v. Mercedes-Benz USA, LLC*, Case No. RG21109711, on behalf of Bursor & Fisher, P.A., Declaration submitted on November 14, 2024; Deposition on December 16, 2024.

**United States District Court, for the Northern District of California,** *Melissa Sanchez, Beverly Cassel, as individuals, on behalf of themselves, the general public and those similarly situated, v. Nurture, Inc.*, Case No. 5:21-cv-08566-EJD, on behalf of Gutride Safier, LLP, Declaration submitted on October 25, 2024; Deposition on December 12, 2024.



**United States District Court, Northern District of California,** *Colby Tunick, individually and on behalf of all others similarly situated, v. Takara Sake USA Inc.*, Case No. 3:23-cv-00572-TSH, on behalf of Clarkson Law Firm, Declaration submitted on October 17, 2024; Deposition on November 22, 2024; Reply Declaration submitted on January 28, 2025.

**United State District Court, Northern District of California,** *Venus Yamasaki, on behalf of herself and all others similarly situated, v. Natrol, LLC*, Case No. 3:23-cv-00182-JD, on behalf of Spangenberg Shibley & Liber LLP, Declaration submitted on October 11, 2024; Deposition on December 2, 2024.

**United States District Court, Northern District of California,** *Jennifer Vlacich, Brenda Robert, Elena Nacarino, Ana Krstic, Christina Vink, Lora Grodnick, Lisa Malara, and Teena Stambaugh, individually and on behalf of all others similarly situated, v. Del Monte Foods, Inc.*, Case No. 4:22-cv-00892-JST, on behalf of Dovel & Luner, LLP, Declaration submitted on August 30, 2024; Deposition on October 8, 2024.

**United States District Court, Northern District of Georgia, Atlanta Division,** *Kellie Carder et al., on behalf of themselves and all others similarly situated, v. Graco Children's Products, Inc.*, Case No. 2:20-cv-00137-LMM, on behalf of Milberg Coleman Bryson Phillips Grossman, LLC, Declaration submitted on August 16, 2024; Supplemental Declaration submitted on January 17, 2025.

**United States District Court, Northern District of California,** *Krystal Lopez and Damany Browne, individually and on behalf of all others similarly situated, v. Zarbee's Inc.*, Case No. 3:22-04465-CRB, on behalf of Dovel & Luner, LLP, Declaration submitted on August 2, 2024; Deposition on August 27, 2024.

**United States District Court, Southern District of New York,** *Tanysha Newman, individually and on behalf of all others similarly situated, v. Bayer Corporation and Bayer Healthcare, LLC*, Case No. 7:22-cv-07087-KMK-AEK, on behalf of Bursor & Fisher, P.A., Declaration submitted on July 18, 2024; Deposition on September 9, 2024.

**In the United States District Court, for the Northern District of Oklahoma,** *In re: Genentech, Inc. Herceptin (Trastuzumab) Marketing and Sales Practices Litigation*, MDL Docket No. 16-MD-2700, on behalf of GableGotwals, Declaration submitted on July 15, 2024; Deposition on September 4, 2024.

**United States District Court, Southern District of New York,** *Casey E. Hall-Landers, individually and on behalf of all others similarly situated, v. New York University*, Case No. 1:20-cv-03250, on behalf of Bursor & Fisher, P.A., Declaration submitted on June 21, 2024; Reply Declaration submitted on October 30, 2024.



**United States District Court for the Central District of California, Eastern Division,** *Steven Hernandez, individually and on behalf of all others similarly situated, v. Radio Systems Corporation*, Case No.: 22-cv-01861-JGB-KK, on behalf of Schubert Jonckheer & Kolbe, Declaration submitted on June 17, 2024; Declaration submitted on July 31, 2024; Deposition on November 1, 2024.

**United States District Court for the Southern District of California,** *Linda Sunderland and Benjamin Binder, individually and on behalf of all others similarly situated, v. Pharmacare U.S., Inc., a Delaware Corporation*, Case No.: 3:23-cv-01318-JES-BGS, on behalf of Milberg Coleman Bryson Phillips Grossman, LLC, Declaration submitted on June 3, 2024.

**United States District Court for the Northern District Of California,** *Martha Valentine, Ruby Cornejo, and Tiffany Avino, each an individual, on behalf of themselves, the general public, and those similarly situated, v. Crocs, Inc.*, Case No. 3:22-cv-07463-TLT, on behalf of Gutride Safier, LLP, Declaration submitted on May 31, 2024; Reply Declaration submitted on August 21, 2024.

**In the United States District Court for the Northern District of California,** *David Wallenstein, Montgomery Summa, individually and on behalf of all others similarly situated, v. Mondelez International, Inc., a Virginia corporation, Mondelez Global, LLC, a Delaware limited liability company, and Nabisco, Inc., a New Jersey corporation*, Case No. 3:22-cv-6033, on behalf of Fox Law APC, Declaration submitted on May 24, 2024; Deposition on June 27, 2024; Reply Declaration submitted on July 12, 2024; Reply Declaration submitted on August 9, 2024.

**United States District Court, Western District of Wisconsin,** *John Bankhurst, Pamela Anderson, Jonathan Zang, and Jesse Karp, individually and on behalf of all others similarly situated, v. Sub-Zero Group, Inc. and Wolf Appliance, Inc.*, Case No. 3:23-cv-253, on behalf of Dovel & Luner, LLP, Declaration submitted on May 17, 2024; Deposition on June 18, 2024.

**United States District Court, Eastern District of New York,** *Claudia Newton and Brandy Leandro, on behalf of themselves and all others similarly situated, v. R.C. Bigelow, Inc., and Does 1 through 10*, Case No.: 2:22-cv-05660-LDH-SIL, on behalf of The Wand Law Firm, Declaration submitted May 16, 2024; Rebuttal Declaration submitted on August 8, 2024.

**United States District Court, Northern District of Illinois, Eastern Division,** *Charlotte Willoughby, Lakendrea Camille Mcnealy, Shaylynn Doxie, Brittney Gray, Kataleena Helmick, Lani Johnston, Ashley Popa And Deniege Revord, individually and on behalf of a class of similarly situated individuals, v. Abbott Laboratories*, Case No. 1:22-cv-01322, on behalf of Lockridge Grindal Nauen P.L.L.P., Declaration submitted on April 12, 2024; Deposition on May 15, 2024; Reply Declaration submitted July 31, 2024.

ECONOMICS AND TECHNOLOGY, INC.

**In the United States District Court, Northern District of California**, *Aaron Brand, John Flodin, individually and on behalf of all others similarly situated, v. Central Garden & Pet Company, a Delaware corporation, Breeder's Choice Pet Foods, Inc., and Does 1-50, inclusive*, Case No.: 4:21-cv-01631-JST, on behalf of Fox Law APC, Declaration submitted on March 15, 2024; Deposition on June 11, 2024; Reply Declaration submitted on August 20, 2024.

**United States District Court, Central District of California**, *Tristan Hurd and Ken Dimicco, individually and on behalf of all others similarly situated, v. G.Skill International Enterprise Co., LTD., G.Skill USA, Inc., Racerspeed, Inc., and Neuteck, Inc.*, Case No. 2:22-cv-00685-SSS-MAR, on behalf of Dovel & Luner, LLP, Declaration submitted on March 15, 2024.

**In the United States District Court for the Western District of Virginia**, *Wendy Prince, individually and on behalf of all others similarly situated, v. Johnson Health Tech Trading, Johnson Health Tech Retail, Inc., and Johnson Health Tech, Inc*., Civil Action No. 5:22-cv-00035, on behalf of Milberg Coleman Bryson Phillips Grossman, LLC, Declaration submitted on February 29, 2024; Deposition on June 7, 2024.

**In the United States District Court, for the Southern District of Ohio, Eastern Division,** *Judy Kirkbride and Beeta Lewis, individually and on behalf of all others similarly situated, v. The Kroger Co*., Case No. 2:21-cv-00022-ALM-EPD, on behalf of Bursor & Fisher, P.A., Declaration submitted on February 23, 2024; Deposition on May 2, 2024; Reply Declaration submitted on July 25, 2024.

**United States District Court, for the Southern District of New York,** *Joseph Wolf, Carmen Wolf, on behalf of themselves and those similarly situated, v. Dolgen New York LLC*, Case No.: 7:23-cv-00558-PMH, Milberg Coleman Bryson Phillips Grossman, LLC, Declaration submitted on February 9, 2024; Supplemental Declaration filed March 20, 2024; Deposition on March 25, 2024.

**United States District Court, Southern District of California,** *Heather Turrey, Oliver Fiaty, Jordan Hernandez, and Jeffrey Sazon, individually, and on behalf of all others similarly situated, v. Vervent, Inc. fka First Associates Loan Servicing, LLC; Activate Financial, LLC; David Johnson; and Laurence Chiavaro*, Case No. 3:20-cv-00697-DMS-AHG, on behalf of Blood, Hurst, & O'Reardon, LLP, Declaration submitted on February 2, 2024.

**United States District Court, Southern District of California,** *William Lessin and Carol Smalley et al, on behalf of themselves and all others similarly situated, v. Ford Motor Company*, Case No. 19-cv-1082-AJB-WVG , on behalf of McCune Law Group, Declaration submitted on December 1, 2023; Deposition on January 19, 2024; Reply Declaration submitted on April 12, 2024.

**United States District Court, Northern District of California,** *Thomas Iglesias, David Salazar, Olivia Thurman, and Bethany Torbert, individually and on behalf of all others similarly situated, v. For Life Products, LLC*, Case No. 3:21-cv-01147-TSH, on behalf of Clarkson Law Firm, Declaration submitted on November 29, 2023; Deposition on January 4, 2024.



**United States District Court, Northern District of California,** *Matthew Sinatro and Shane Winkelbauer, individually and on behalf of all others similarly situated, v. Welch Foods Inc., A Cooperative and Promotion in Motion, Inc.*, Case No. 22-cv-07028-JD, on behalf of Clarkson Law Firm, Declaration submitted on November 20, 2023; Reply Declaration submitted on December 14, 2023; Deposition on December 20, 2023; Supplemental Declaration filed March 5, 2024.

**United States District Court, Northern District of California,** *David Swartz, as an individual, on behalf of himself, the general public and those similarly situated, v. Dave's Killer Bread, Inc., and Flowers Foods, Inc.*, Case No.: 4:21-cv-10053-YGR, on behalf of Gutride Safier, LLP, Declaration submitted on November 17, 2023; Deposition on January 23, 2024; Reply Declaration submitted on March 22, 2024.

**United States District Court, District of New Jersey,** *Thomas Niemczyk, individually, and on behalf of a class of similarly situated individuals, Pro Custom Solar LLC, D/B/A Momentum Solar*, Case No. 2:19-cv-07846-ES-MAH; *Herbert Walters, Rick Hill, and Barry Wolford, individually, and on behalf of a class of similarly situated individuals, v. Pro Custom Solar LLC, D/B/A Momentum Solar*, Case No. 2:22-cv-00247-ES-MAH, on behalf of Bursor & Fisher, P.A., Declaration submitted on October 16, 2023.

**United States District Court, Northern District of California,** *Steven C. Johnson, an individual, on behalf of himself and all others similarly situated, v. GLOCK, INC., a Georgia Corporation; Glock Ges.m.b.H, an Austrian entity; John and Jane Does I through V; ABC Corporations I-X, XYZ Partnerships, Sole Proprietorships and/or Joint Ventures I-X, Gun Component Manufacturers I-V*, CASE NO.: 3:20-cv-08807-WHO, on behalf of Lewis and Lewis Trial Lawyers, PLC, Declaration submitted October 12, 2023; Reply Declaration submitted on April 11, 2024.

**United States District Court, Northern District of California,** *Kenneth Glassman, individually and on behalf of all others similarly situated, v. Edgewell Personal Care, LLC*, Case No. 3:21-cv-07669-RS, on behalf of Bursor & Fisher, P.A., Declaration submitted on September 14, 2023; Deposition on November 8, 2023; Reply Declaration submitted on February 12, 2024.

**United States District Court, for the Northern District of California, San Francisco,** *Tracy Howard, Adina Ringler, and Trecee Artis on behalf of themselves and those similarly situated, v. Hain Celestial Group, Inc., d/b/a Earth's Best*, Case No. 3:22-cv-00527-VC, on behalf of Gutride Safier LLP, Declaration submitted on September 5, 2023; Deposition on October 12, 2023; Reply Declaration submitted on December 13, 2023.

**Superior Court of the State of California, for the County of Alameda, Northern Division,** *Patricia Bland and Edward White, individually and on behalf of all others similarly situated, v. Premier Nutrition Corporation; and DOES 1-25, inclusive*, Case No. RG19002714, on behalf of Blood, Hurst, & O'Reardon, LLP, Deposition on September 1, 2023.



**United States District Court, Northern District of California,** *Antonio Mckinney, Clint Sundeen, and Joseph Alcantara, each individually and on behalf of all others similarly situated, v. Corsair Gaming, Inc.*, Case No. 3:22-cv-00312-CRB, on behalf of Dovel & Luner, LLP, Declaration submitted on September 1, 2023; Deposition on January 9, 2024.

**United States District Court, Northern District of California,** *Matthew Sinatro, and Jessica Prost, individually and on behalf of all others similarly situated, v. Barilla America, Inc.*, Case No: 4:22-cv-03460, on behalf of Clarkson Law Firm, Declaration submitted on August 30, 2023; Reply Declaration submitted on February 7, 2024; Declaration submitted on February 7, 2025.

**United States District Court, for the Central District of California,** *Kathleen Cadena, et al., v. American Honda Motor Company, Inc.*, Case No. 2:18-cv-04007-MWF-MAA, on behalf of Gibbs Law Group, LLP, Declaration submitted on August 11, 2023; Deposition on September 27, 2023; Declaration submitted on December 23, 2024.

**United States District Court, for the Eastern District of Michigan,** *Edward Pistorio, Paul Murdock, Daniel Przekop, Hasan Aktulga, Sandra and Thomas Kloszewski, Randall Courtney, Corey Gerritsen, Sara Elice, Justin Bagley and Elizabeth Bagley, and Marcus Swindle on behalf of themselves and all others similarly situated, v. FCA US LLC*, Case No.: 2:20-cv-11838-SFC-RSW, on behalf of Capstone Law APC, Declaration submitted on July 31, 2023; Deposition on September 13, 2023.

**United States District Court, District of Minnesota,** *Teeda Barclay, Jay Ovsak, and Nicole Nordick, individually, and on behalf of others similarly situated, v. iFIT Health & Fitness, Inc. f/k/a Icon Health & Fitness, Inc., and Nordictrack, Inc.*, Case No. 0:19-cv-02970-ECT-DTS, on behalf of Markovits, Stock & DeMarco, LLC, Declaration submitted on July 14, 2023; Deposition on August 9, 2023; Declaration submitted on January 2, 2024.

**United States District Court, Eastern District of Michigan, Southern Division,** *Bobby Roe, et al., individually and on behalf of all others similarly situated, v. Ford Motor Company*, Case No. 2:18-cv-12528-LGM-APP, on behalf of Kessler Topaz Meltzer & Check LLP, Declaration submitted on June 28, 2023.

**United States District Court, for the Central District of California, Eastern Division**, *Sarah McCracken, Individually and on behalf of all others similarly situated, v. KSF Acquisition Corporation*, Case No. 5:22-cv-01666, on behalf of Schubert Jonckheer & Kolbe, Declaration submitted on May 24, 2023.

**United States District Court, Northern District of California, Oakland Division,** *Jonathan Rusoff and Joseph Gambino, on behalf of themselves and all others similarly situated, v. The Happy Group, Inc., a corporation; and DOES 1 through 10, inclusive*, Case No.: 4: 21-cv-08084-YGR, on behalf of The Wand Law Firm, Declaration submitted on April 11, 2023; Deposition on May 10, 2023; Reply Declaration submitted on July 18, 2023.



**United States District Court, Northern District of Illinois,** *Justin O'Connor, Stanislaw Zielinski, Daniel Fair, Bryan Smith, Jason Steen, William Fiedler, Michael Barcelona, Robert Marino, Brian Dougherty, Susan Heller, Victor M. Orndorff, and Michael McDonald on behalf of themselves and all others similarly situated, v. Ford Motor Company*, Case No. 1:19-cv-05045, on behalf of Milberg Coleman Bryson Phillips Grossman, LLC, Declaration submitted on March 30, 2023; Reply Declaration submitted on June 1, 2023; Deposition on June 15, 2023.

**United States District Court, Northern District of California, Oakland Division,** *In re: Plum Baby Food Litigation*, Case No. 21-cv-00913-YGR, on behalf of Lockridge Grindal Nauen P.L.L.P., Declaration submitted on December 20, 2022; Deposition on February 27, 2023; Declaration submitted on September 29, 2023.

**United States District Court, Northern District of California,** *Lisa M. Moore, individually and on behalf of all others similarly situated, v. GlaxoSmithKline Consumer Healthcare Holdings (US) LLC; Pfizer Inc.*, Case No. : 4:20-cv-09077-JSW, on behalf of Clarkson Law Firm and Moon Law APC, Declaration submitted on December 7, 2022; Deposition on April 13, 2023.

**United States District Court, Southern District of California,** *Montiqueno Corbett, Damaris Luciano, and Rob Dobbs, individually and on behalf of all others similarly situated, v. Pharmacare U.S., Inc.*, Case No.: 3:21-cv-00137-GPC-AG, on behalf of Milberg LLC, Declaration submitted on September 30, 2022; Declaration submitted on March 22, 2023; Deposition on April 10, 2023; Supplemental Declaration submitted on April 24, 2023; Declaration submitted on October 30, 2024.

**In the United States District Court, for the Eastern District of Texas, Sherman Division,** *William Squires, Jesse Badke, Ahmed Khalil, Michelle Nidever, John Murphy, Kevin Neuer, Nicholas Williams and Donna Sue Scott, on behalf of themselves and all others similarly situated, v. Toyota Motor Corp, Toyota Motor North America, Inc. and Toyota Motor Sales, U.S.A., Inc.*, Case No.: 4:18-cv-00138, on behalf of Berger Montague, P.C., Declaration submitted September 29, 2022; Deposition on October 27, 2022; Reply Declaration submitted December 21, 2022.

**United States District Court, Northern District of California,** *Anthony Bush, individually and on behalf of all others similarly situated, v. Rust-Oleum Corporation* Case No.: 3:20-cv-03268-LB, on behalf of Clarkson Law Firm and Moon Law, Declaration submitted on September 27, 2022; Deposition on February 8, 2023.

**United States District Court, Southern District of California,** *William D. Petterson, individually and on behalf of all others similarly situated, v. Circle K Stores Inc.*, Case No. 3:21-cv-00237-RBM-BGS, on behalf of Bursor & Fisher, P.A., Declaration submitted on September 22, 2022; Deposition on October 11, 2022.



**Superior Court of the State of California, For the County Of Santa Clara,** *Elizabeth J. VanCleave, and Katherine Hassan, individually and on behalf of a class of similarly situated individuals, v. Abbott Laboratories*, Case No. 19CV345045, on behalf of Goldstein, Borgen, Dardarian & Ho, Declaration submitted on September 19, 2022; Reply Declaration submitted on January 10, 2023; Deposition on February 1, 2023; Declaration submitted on August 29, 2024; Deposition on October 22, 2024; Supplemental Declaration submitted on October 31, 2024; Oral Testimony and Cross Examination on February 7, 2025.

**United States District Court, Southern District of New York,** *Asher Haft, Robert Fisher, and Cheryl Jones, individually and on behalf of all others similarly situated, v. Haier US Appliance Solutions, Inc. d/b/a GE Appliances*, Case No.: 1:21-cv-00506-GHW, on behalf of Milberg LLC, Declaration submitted on August 12, 2022.

**United States District Court for the District of Delaware,** *Michael Ninivaggi, Jake Mickey and Cailin Nigrelli, individually and on behalf of all others similarly situated, v. University of Delaware,* Case No. 20-cv-1478-SB, and *Hannah Russo, individually and on behalf of all others similarly situated, v. University of Delaware*, Case No. 20-cv-1693-SB, on behalf of Bursor & Fisher, P.A., Declaration submitted on July 1, 2022; Declaration submitted on August 1, 2022; Deposition on August 19, 2022; Reply Declaration submitted September 30, 2022.

**United States District Court, Central District of California,** *Kimberly Banks and Carol Cantwell, on behalf of themselves and all others similarly situated, v. R.C. Bigelow, Inc., a corporation; and DOES 1 through 10, inclusive,* Case No.: 20-cv-06208-DDP (RAOx), on behalf of The Wand Law Firm, Declaration submitted on June 17, 2022; Rebuttal Declaration submitted October 3, 2022; Declaration submitted on March 6, 2024; Deposition on May 30, 2024.

**United States District Court, Central District of California,** *Mocha Gunaratna and Renee Camenforte, individually and on behalf of all others similarly situated, v. Dr. Dennis Gross Skincare, LLC, a New York Limited Liability Company,* Case No. 2:20-cv-02311-MWF-GJS, on behalf of Clarkson Law Firm, P.C.; Declaration submitted on March 30, 2022; Deposition on May 20, 2022; Reply Declaration submitted on September 22, 2022.

**Superior Court of the State of California, County of Santa Clara,** *Lance Dutcher, individually and on behalf of all others similarly situated, v. Google LLC, d/b/a YouTube, and YouTube LLC,* Case No. 20CV366905, on behalf of Bursor & Fisher, P.A., Declaration submitted on March 2, 2022; Deposition on May 17, 2022; Reply Declaration submitted on August 2, 2022; Declaration submitted on May 2, 2023.

**United States District Court, Middle District of Tennessee, Nashville Division,** *In re Nissan North America, Inc. Litigation; Lakeita Kemp, individually and on, behalf of all others similarly situated v. Nissan North America, Inc., and Nissan Motor Co., Ltd.*, Cases Nos. 3:19-cv-00843, Case No. 3:19-cv-00854, on behalf of DiCello Levitt Gutzler, Declaration submitted February 28, 2022; Deposition on August 25, 2022; Reply Declaration submitted on November 15, 2022.



**In the Court of Claims, for the State of Ohio,** *Autumn Adams, individually and on behalf of all others similarly situated v. University of Cincinnati*, Case No. 2021-00458JD, on behalf of Bursor & Fisher, P.A., Declaration submitted February 11, 2022; Deposition on August 10, 2022; Reply Declaration submitted on November 16, 2022.

**United States District Court, Northern District of California, San Francisco Division,** *Eric Fishon, individually and on behalf, of all others similarly situated, v. Premier Nutrition Corporation f/k/a Joint Juice, Inc.*, Case No. 3:16-cv-06980-RS, on behalf of Blood, Hurst, & O'Reardon, LLP, Expert Report submitted January 24, 2022; Deposition on March 11, 2022; Oral Testimony and Cross Examination on May 31, 2022.

**Superior Court for the State of California, for the County of Alameda,** *Michelle Moran, an individual on behalf of herself and all others similarly situated, v. S.C. Johnson & Son, Inc.*, Case No.: RG20067897, on behalf of Clarkson Law Firm, P.C.; Declaration submitted on November 12, 2021.

**United States District Court, Eastern District of Michigan,** *Chapman, et al., v. General Motors, LLC*, Case No. 2:19-cv-12333-TGB-DRG, on behalf of Hagens Berman Sobol Shapiro LLP, Declaration submitted on November 10, 2021; Declaration submitted on March 1, 2022; Deposition on April 13, 2022; Reply Declaration submitted on June 16, 2022.

**United States District Court, Central District of California,** *Terry Sonneveldt, Esther Wright Schneider, Michael Bibbo, Alan Meshberg, Brian Hume, Amie Levasseur, Jean Levasseur, Christopher Lacasse, Beth Pickerd, Dan Pickerd, Tim Halwas, Erin Matheny, Lewis Delvecchio, Jon Sowards, Lawrence Bohana, Monika Bohana, David Dennis, Jacqueline S. Aslan, Michael Gilreath, and Renatta Gilreath, individually and on behalf of all others similarly situated, v. Mazda Motor of America, Inc. D/B/A Mazda North American Operations and Mazda Motor Corporation*, Case No.: 8:19-cv-01298-JLS-KES, on behalf of Kessler Topaz Meltzer & Check, LLP, Declaration submitted on November 3, 2021; Declaration submitted on March 11, 2022; Deposition on April 4, 2022; Declaration submitted July 26, 2022.

**United States District Court, Southern District of Texas, Corpus Christi Division,** *Tyler Allen Click, Troy Bowen, Bailey Henderson, Ethan Galan, Luis G. Ochoa Cabrera, Homero Medina, Michael Guidroz, Scott A. Hines, Bryan J. Tomlin, Quentin Alexander, and Jacqueline Bargstedt, individually and on behalf of all others similarly situated, v. General Motors LLC*, Case No. 2:18-cv-00455-NGR, on behalf of Hagens Berman Sobol Shapiro LLP, Declaration submitted on October 12, 2021.

**In the Court of Claims, for the State of Ohio,** *Lawrence Keba, individually and on behalf of all others similarly situated v. Bowling Green University*, Case No. 2020-00639JD, on behalf of Bursor & Fisher, P.A., Declaration submitted September 29, 2021; Reply Declaration submitted on November 26, 2021; Declaration submitted on March 31, 2023.

ECONOMICS AND TECHNOLOGY, INC.

**In the Court of Claims, for the State of Ohio,** *Mackenzie Weiman and Sarah Baumgartner, on behalf of themselves and all others similarly situated v. Miami University*, Case Nos. 2020-00614JD and 2020-00644JD, on behalf of Bursor & Fisher, P.A., Declaration submitted September 29, 2021; Reply Declaration submitted on November 10, 2021.

**United States District Court, Southern District of New York,** *Eric Fishon and Alicia Pearlman, individually and on behalf of all others similarly situated, v. Peloton Interactive, Inc.*, Case No. 1:19-cv-11711-LJL, on behalf of DiCello Levitt Gutzler and Keller Lenkner, Declaration submitted September 15, 2021; Deposition on October 12, 2021; Reply Declaration submitted on November 1, 2021; Declaration submitted on October 17, 2022; Reply Declaration submitted on November 30, 2022.

**In the Court of Claims, for the State of Ohio,** *Caitlyn Waitt and Jordan Worrell v. Kent State University*, Case No. 2020-00392JD, on behalf of Bursor & Fisher, P.A., Declaration submitted September 15, 2021; Reply Declaration submitted on November 11, 2021.

**United States District Court, Northern District of California,** *Christopher Julian, Mark Pacana, Paul Fiskratti, and Wayne Lewald, on behalf of themselves and all others similarly situated, v. TTE Technology, Inc., dba TCL North America*, Case No. 3:20-cv-02857-EMC, on behalf of Milberg LLC, Declaration submitted on August 27, 2021; Deposition on October 2, 2021.

**United States District Court for the Northern District of California,** *Sherris Minor, as an individual, on behalf of herself, the general public and those similarly situated, v. Baker Mills, Inc.; and Kodiak Cakes, LLC*, Case No. 20-cv-02901-RS, on behalf of Gutride Safier, LLP, Declaration submitted August 2, 2021; Deposition on September 2, 2021; Reply Declaration submitted on October 18, 2021.

**In the Court of Claims, for the State of Ohio,** *Lily Zahn v. Ohio University*, Case No. 2020-00371JD, and *Gila Duke, individually and on behalf of all others similarly situated, v. Ohio University*, Case No. 2021-00036JD, on behalf of Bursor & Fisher, P.A., Declaration submitted July 30, 2021; Deposition on October 6, 2021; Reply Declaration submitted on December 2, 2021; Oral Testimony and Cross Examination on January 18, 2022.

**In the Court of Claims, for the State of Ohio,** *Brooke Smith, individually and on behalf of all others similarly situated, v. The Ohio State University*, Case No. 2020-00321JD, on behalf of Bursor & Fisher, P.A., Declaration submitted June 24, 2021; Deposition on August 26, 2021; Reply Declaration submitted on September 29, 2021.

**United States District Court, Eastern District of California,** *Felix Obertman, individually and on behalf of all others similarly situated, v. Electrolux Home Products, Inc.*, Case No. 2:19-cv-02487-KJM-AC, on behalf of Bursor & Fisher, P.A., Declaration submitted on June 14, 2021; Reply Declaration submitted on November 18, 2021.



**United States District Court, Central District of California,** *Delaney Sharpe, Erin Weiler, Jenna Leder, and Adriana DiGennaro, on behalf of themselves and all others similarly situated, v. GT's Living Foods, LLC,* Case No. 2:19-cv-10920-FMO-GJS, on behalf of Bursor & Fisher, P.A., Declaration submitted on June 2, 2021; Deposition on June 30, 2021.

**United States District Court, Southern District of New York,** *In re: Elysium Health - ChromaDex Litigation,* Case No. 1:17-cv-07394-LJL, on behalf of Frankfurt Kurnit Klein & Selz PC, Declaration submitted on April 20, 2021; Deposition, on April 26, 2021; Declaration submitted on June 4, 2021.

**United States District Court, Southern District of Texas, Corpus Christi Division,** *Darren Fulton and Craig Jude Broussard, each plaintiff is a citizen of the State of Texas, and each plaintiff individually and on behalf of all others similarly situated, v. Ford Motor Company,* Case No. 2:18-cv-00456, on behalf of Hagens Berman Sobol Shapiro LLP, Declaration submitted on March 15, 2021; Deposition on April 16, 2021; Reply Declaration submitted on July 21, 2021.

**United States District Court, Southern District of California,** *Michael Testone, Collin Shanks, and Lamartine Pierre, on behalf of themselves, all others similarly situated, and the general public,v. Barlean's Organic Oils, LLC,* Case No. 3:19-cv-00169-JLS-BGS, on behalf of Law Offices of Jack Fitzgerald, Declaration submitted on March 1, 2021; Reply Declaration submitted on May 27, 2021; Declaration submitted on February 11, 2022; Deposition on March 25, 2022.

**In The United States District Court, For the District of New Hampshire,** *Derick Ortiz, individually and on behalf of all others similarly situated, v. Sig Sauer, Inc.,* Case No.: 1:19-cv-01025-JL, on behalf of Bursor & Fisher, P.A., Declaration submitted on February 26, 2021; Rebuttal Declaration submitted on July 28, 2021; Supplemental Declaration submitted on August 6, 2021; Declaration submitted on August 13, 2021; Oral Testimony and Cross Examination on May 4, 2022.

**United States District Court, Western District of Washington,** *Tamara Lohr and Ravikiran Sindogi, on behalf of themselves and all others similarly situated, v. Nissan North America, Inc., and Nissan Motor Co., LTD.,* Case No.: 2:16-cv-01023-RSM and United States District Court, Northern District of California, San Francisco Division, *Sherida Johnson, Subrina Seenarain, Chad Loury, Linda Spry, Lisa Sullivan, and April Ahrens on behalf of themselves and all others similarly situated, v. Nissan North America, Inc.,* Case No.: 3:17-cv-00517-WHO, on behalf of Simmons Hanly Conroy LLC; Declaration submitted on February 16, 2021; Deposition on May 5, 2021; Reply Declaration submitted on August 13, 2021.

**Superior Court of the State of California, County of Alameda,** *Donna Connary, Zoriana Pawluk-Florio, Adrienne Andry, and Paul Terrecillas, on behalf of themselves and all others similarly situated, v. S.C. Johnson & Son, Inc.,* Case No. RG20061675, on behalf of Feinstein Doyle Payne & Kravec, LLC; Settlement Declaration submitted on February 16, 2021.



**United States District Court, Western District of New York,** *In re: Rock 'N Play Sleeper Marketing, Sales Practices, and Products Liability Litigation*, Case MDL No. 1:19-md-2903, on behalf of Beasley Allen Law Firm, Deposition on March 11, 2021; Brief Reply Declaration submitted on September 24, 2021; Oral Testimony and Cross Examination on September 27, 2021; Reply Declaration submitted on October 13, 2021.

**Superior Court for The State of California, County of Los Angeles,** *Daniel Prescod, individually and on behalf of all others similarly situated, v. Celsius Holdings, Inc. and Does 1 through 10, inclusive*, Case No. 19STCV09321, on behalf of Clarkson Law Firm, P.C.; Deposition on April 14, 2021; Reply Declaration submitted on July 1, 2021.

**United States District Court, Central District of California,** *Sharon Willis, individually and on behalf of all others similarly situated, v. Colgate-Palmolive Co.*, Case No. 2:19-cv-08542-JGB-RAOx, on behalf of Bursor & Fisher, P.A.; Deposition on March 30, 2021; Reply Declaration submitted on July 15, 2021.

**In the United States Court of Federal Claims,** *Bryndon Fisher, individually and on behalf of all others similarly situated, v. The United States of America,* Case No. 15-1575C, on behalf of Schubert Jonckheer & Kolbe, Reply Declaration submitted on October 29, 2021.

**United States District Court, for the Southern District of Ohio, Western Division,** *Laura Bechtel and Troy Thoennes, on behalf of themselves and all others similarly situated, v. Fitness Equipment Services, LLC, dba SOLE Fitness*, Case No. 1:19-cv-00726-MRB, on behalf of Markovits, Stock & DeMarco, LLC, Reply Declaration submitted on June 14, 2021.

**United States District Court, Northern District of California,** *Thomas Bailey, on behalf of himself and all others similarly situated, v. Rite Aid Corporation*, Case No. 4:18-cv-06926-YGR, on behalf of Greg Coleman Law, Reply Declaration submitted on March 16, 2021; Declaration submitted on May 3, 2022.

**United States District Court, Southern District of Florida,** *Javier Cardenas, Rodney and Pamela Baker, Michelle Monge, and Kurt Kirton, individually and on behalf of all others similarly situated, v. Toyota Motor Corporation, Toyota Motor Sales, U.S.A., Inc., Toyota Motor Engineering & Manufacturing North America, Inc., and Southeast Toyota Distributors, LLC*, Case No.: 18-cv-22798-CIV-FAM, on behalf of Kessler Topaz Meltzer & Check, LLP, Supplemental Declaration submitted on February 17, 2023; Oral Testimony and Cross Examination on March 7, 2023.

**United States District Court, Northern District of California,** *Ralph Milan, Sarah Aquino, and Elizabeth Arnold, on behalf of themselves, those similarly situated and the general public, v. Clif Bar & Company,* Case No. 3:18-CV-02354-JD, on behalf of Law Office of Paul K. Joseph, PC, Declaration submitted on March 2, 2021; Declaration submitted on April 9, 2021; Deposition on May 7, 2021.



**Superior Court of the State of California, County of Los Angeles,** *Jeffrey Koenig, on behalf of himself and all others similarly situated, v. Vizio, Inc*., Case No. BC 702266, on behalf of Greg Coleman Law, Declaration submitted on August 31, 2021; Deposition on October 15, 2021; Supplemental Declaration submitted on May 2, 2022; Deposition on May 12, 2022; Supplemental Declaration submitted January 16, 2023; Deposition on February 13, 2023.

**United States District Court, for the Central District of California, Western Division,** *Toya Edwards, on behalf of herself and all others similarly situated, v. Walmart Inc*., Case No. 1:18-cv-9655, on behalf of Simmons Hanly Conroy LLC, Reply Declaration submitted on June 28, 2021.

**United States District Court, Southern District of California,** *Patrick McMorrow, Marco Ohlin and Melody DiGregorio, on behalf of themselves, all others similarly situated and the general public, v. Mondelez International, Inc*., Case No. 3:17-cv-02327-BAS-JLB, on behalf of Law Offices of Jack Fitzgerald, Declaration submitted on May 14, 2021; Rebuttal Declaration submitted on July 2, 2021.

**United States District Court, Southern District of New York,** *Anne De Lacour, Andrea Wright, and Loree Moran individually and on behalf of all others similarly situated, v. Colgate-Palmolive Co., and Tom's of Maine Inc.*, Case No. 1:16-cv-08364-RA, on behalf of Bursor & Fisher, P.A., Declaration submitted on July 22, 2022; Deposition on September 9, 2022.

**United States District Court, Northern District of California,** *Stephen Hadley, on behalf of himself, all others similarly situated, and the general public, v. Kellogg Sales Company*, Case No. 5:16-cv-04955-LHK-HRL, on behalf of Law Offices of Jack Fitzgerald, PC, Declaration submitted on March 10, 2021.

**United States District Court, Northern District of California,** *Sandra McMillion, Jessica Adekoya and Ignacio Perez, on Behalf of Themselves and all Others Similarly Situated, v. Rash Curtis & Associates*, Case No. 16-cv-03396-YGR, on behalf of Bursor & Fisher, P.A., Oral Testimony and Cross Examination May 7 - 8, 2019.

**United States District Court, Eastern District Of New York, Brooklyn Division,** *Reply All Corp., v. Gimlet Media, Inc.,* Case No. 15-cv-04950-WFK-PK, on behalf of Wolf, Greenfield & Sacks, P.C., Deposition on October 16, 2019.

Mr. Weir has provided expert testimony since 2007, served as a consultative expert in numerous proceedings that did not result in testimony, and has contributed research and analysis to numerous additional projects, publications and testimony at the state, federal, and international levels.

**Exhibit 1**

**Statement of Qualifications**
**of**

**COLIN B. WEIR**

# Exhibit 2


# Documents Reviewed

- First Amended Class Action Complaint, filed June 17, 2022

- Order Denying Defendants' Motion to Dismiss For Lack Of Standing; Denying Motion To Intervene; Granting Plaintiff's Motion For Class Certification; And Denying Defendants' Motion To Strike The Declaration Of Colin B. Weir, filed September 20, 2024.

- Weir Declaration, November 17, 2023

- Weir Reply Declaration, March 22, 2024

- Deposition of Dan Letchinger, November 10, 2023

- Defendant's Supplemental Responses to First Set of Interrogatories

- Case, Fair & Oster, Principles of Microeconomics, 9th Edition, 2009

- Sawtooth Software technical papers, available online at

https://sawtoothsoftware.com/resources/technical-papers

- *When "All Natural" May Not Be*, Analysis Group Forum (Winter 2013)

https://www.analysisgroup.com/when-all-natural-may-not-be

- Applying Conjoint Analysis to Legal Disputes: A Case Study, Wind, Yoram, et al.

- Khoday v. Symantec Corp., 2014 WL 1281600, at *10 (D. Minn. March 13, 2014)

- Sanchez-Knutson v. Ford Motor Company, 310 F.R.D. 529, 538-39 (S.D. Fl. 2015)

- In re: Lenovo Adware Litigation, 2016 WL 6277245, at *21 (N.D. Cal. Oct. 27, 2016)

- Guido v. L'Oreal, USA, Inc., 2014 WL 6603730, at *5, *10-*14 (C.D. Cal. July 24, 2014)

- Brown v. Hain Celestial Group, Inc., 2014 WL 6483216, at *19 (N.D. Cal. Nov. 18, 2014)

- Microsoft v. Motorola, Inc., 904 F.Supp.2d 1109, 1119-20 (W.D. Wa. 2012)

- In re Scotts EZ Seed Litig., 304 F.R.D. 397, 413-15 (S.D.N.Y. 2015)

- Dzielak v. Maytag, 2017 WL 1034197, at *6 (D. NJ. March 17, 2017)

- TV Interactive Data Corp. v. Sony Corp., 929 F. Supp. 2d 1006, 1022 & n.6 (N.D. Cal. 2013)

- Briseno v. ConAgra Foods, Inc., 844 F.3d 1121 (9th Cir. 2017)

- Fitzhenry-Russell v. Dr Pepper Snapple Group, Inc., 2018 WL 3126385 (N.D. Cal. June 26, 2018)

- In Re Arris Cable Modem Consumer Litig., 2018 WL 3820619, at *25-*31 (N.D. Cal. Aug. 10, 2018)

- Hadley v. Kellogg Sales Co., 2018 WL 3954587, at *11-*16 (N.D. Cal. Aug. 17, 2018)

- Martinelli v. Johnson & Johnson, 2019 WL 1429653, at *3-4 (E.D. Cal. Mar. 29, 2019)

- Krommenhock v. Post Foods, LLC, 2020 U.S. Dist. LEXIS 40463 (N.D. Cal. Mar. 9, 2020)

- Hudock v. LG Elecs. USA, Inc., 2020 U.S. Dist. LEXIS 54994 (D. Minn. Mar. 30, 2020)

- Koenig v. Vizio, Inc., Los Angeles Superior Court Case No. BC702266 (L.A. Super. Ct. Aug. 24, 2020)

- Banh v. American Honda Motor Co., Inc., 2020 WL 4390371 (C.D. Cal. July 28, 2020)

- Kaupelis v. Harbor Freight Tools, Inc., Case No. 19-cv-1203-JVS (C.D. Cal. Sep. 23, 2020)

- McMorrow v. Mondelez Int'l Inc., 2021 WL 859137 (S.D. Cal. Mar. 8, 2021)

- de Lacour v. Colgate-Palmolive Co., 2021 WL 1590208 (S.D.N.Y. Apr. 23, 2021)

- Bailey v. Rite Aid Corp., 2021 WL 1668003 (N.D. Cal. Apr. 28, 2021)

- Cardenas v. Toyota Motor Corp., Case No.: 18-cv-22798, 2021 U.S. Dist. LEXIS 152920 (S.D. Fla. Aug. 12, 2021)

- Prescod v. Celsius Holdings, Inc., No. 19STCV09321 (Cal. Super. Ct. Cnty. L.A. Aug 2, 2021)

- Bechtel v. Fitness Equipment Svcs., LLC, No. 1:19-CV-726, 2021 WL 4147766 (S.D. Ohio Sept. 12, 2021)

- Milan v. Clif Bar & Co., 2021 WL 4427427, (N.D. Cal. Sept. 27, 2021)

- Testone v. Barlean's Organic Oils, No. 19-cv-169-JLS (S.D. Cal.), Dkt. No. 98, Order Granting Motion for Class Certification (Sept. 28, 2021)

- Johnson v. Nissan N. Am., Inc., 2022 WL 2869528, at *5 (N.D. Cal. July 21, 2022)

- Sonneveldt v. Mazada, 2022 WL 17357780, Order Granting-in-Part Def's Mot. to Exclude (C.D. Cal. Oct. 21, 2022)

- Willis v. Colgate Palmolive Co., No. CV 19-8542 JGB (RAOx), ECF No. 105 (C.D. Cal Jan. 5, 2023)

- Chapman v. General Motors, Case No. 2:19-CV-12333-TGB-DRG, 2023 WL 2745161 (E.D. Mich. Mar. 31, 2023)

- Gunaratna v. Dennis Gross Cosmetology LLC, Case No. CV 20-2311-MWF (GJSx), 2023 WL 2628620 (C.D. Cal. Mar. 15, 2023)

- Banks v. R.C. Bigalow, Inc., No. 20-CV-06208 DDP (RAOx) (C.D. Cal. Jul. 31, 2023)

- Bush v. Rust-Oleum Corp., Case No. 3:20-cv-03268-LB (N.D. Cal. Feb. 5, 2024), ECF No. 189, Amended Order Granting Motion for Class Certification

- Corbett v. Pharmacare U.S. Inc., No. 21-cv-137-JES (AHG) (S.D. Cal.) March 29, 2024 Order

- Sinatro v. Barilla America, Inc., No. 22-cv-03460-DMR, Dkt. No. 78 (N.D. Cal. May 28, 2024)

- Cadena v. Am. Honda Motor Co., Inc., No. CV 18-4007-MWF (PJWx), 2024 WL 4005097 (C.D. Cal. Jul. 2, 2024)

- Swartz v. Dave's Killer Bread, Inc., No. 4:21-cv-10053-YGR (N.D. Cal. Sept. 20, 2024) (order granting class certification) (Dkt. No. 193)

- Wallenstein v. Mondelez Int'l, Inc., No. 22-cv-06033-VC, 2024 WL 4293904 (N.D. Cal. Sept. 25, 2024)

- Lessin, et al. v. Ford Motor Co., Case 3:19-cv-01082-AJB-AHG, ECF No. 202 (S.D. Cal. Nov. 7, 2024) (Order re: Summary Judgment and Class Cert.)

- *Getting Started with Conjoint*, Bryan Orme, 2020

- Estimating Consumers' Willingness to Pay for Health Food Claims: A Conjoint Analysis, Mitsunori Hirogaki, International Journal of Innovation, Management and Technology, Vol. 4, No. 6, December 2013

- Testing Consumer Perception of Nutrient Content Claims Using Conjoint Analysis, Drewnowski, Adam et al., Public Health Nutrition: 13(5)

- Evaluation of Packing Attributes of Orange Juice on Consumers' Intention to Purchase by Conjoint Analysis and Consumer Attitudes Expectation, Gadioli, I. L. et al., Journal of Sensory Studies 28 (2013)

- Bryan Orme, Sawtooth Software, on "Market Simulators for Conjoint Analysis." https://www.sawtoothsoftware.com/download/techpap/introsim.pdf

- Joel Huber et al., 2006. "Dealing with Product Similarity in Conjoint Simulations"

- 2023 Sawtooth Software Annual User Survey

- Flowers Foods, Inc., Form 10-K Annual Report

- Grupo Bimbo, Annual Report 2022, 2021, available online at grupobimbo.com/en/investors/reports/annual-reports

- Target Corporation, 10-K Annual Report

- Walmart, Inc. 10-K Annual Report

- Kroger, Co. 10-K Annual Report

- Albertson's Form 10-K Annual Report

- Publix Super Markets, 10-K Annual Report

- daveskillerbread.com

- oroweat.com

- pepperidgefarm.com

- flowersfoods.com

- grupobimbo.com

- bimbobakeriesusa.com

- safeway.com

- wholefoods.com

- walmart.com

- target.com

- albertsons.com

- kroger.com

- ralphs.com

- sawtoothsoftware.com

- dynata.com

- FLO_000000001-10

- FLO_000000012-27

- FLO_000000030-34

- FLO_000000037

- FLO_000000042-49

- FLO_000000051-63

- FLO_000000065-82

- FLO_000000085-97

- FLO_000000101-109

- FLO_000000111-154

- FLO_000000157-168

- FLO_000000509-529

- FLO_00000530 - 583

- FLO_00000702 - 703

- FLO_00000715

- FLO_00000740

- FLO_00001590-1592

- FLO_00002887-2889

- FLO_00002890-2900

- FLO_00004007-4064

- FLO_00005310

- FLO_00019952

- FLO_00019955-6

- FLO_00019959-60

- FLO_00019963

- FLO_00019965-70

- Circana Data received pursuant to subpoena

# Exhibit 3

# Conjoint Surveys

Thank you for your willingness to participate in our study. The responses you give to these questions are very important to us. If you don't know an answer to a question or if you are unsure, please indicate this by choosing the DON'T KNOW/UNSURE option. It is very important that you not guess.

Your answers will be kept in confidence. The results of this study will not be used to try to sell you anything.

This survey should take about 7-10 minutes to complete.

When you are ready to get started, please click the "NEXT" button.

*"Trademarks, Logos and Images used in this survey are all the intellectual property of their respective owners."*



0%                                 100%



Please type the year on the penny: 

Back     Next

0% 100%

Let's start with an easy question. Where do you live?

Choose your state. ▼

Back    Next

0% ▮▬▬▬▬▬▬▬▬▬ 100%

What type of electronic device are you using to complete this survey?
*Please select only one answer.*

○ Laptop computer

○ Tablet computer (e.g., Apple iPad, Kindle Fire, Samsung Galaxy Tab, Motorola Xoom)

○ Smartphone (e.g., Apple iPhone, Samsung Galaxy S4, HTC One)

○ Desktop computer

○ Other mobile or electronic device



0%  ▬  100%

## What is your gender?

○ Male

○ Female

[ Back ]  [ Next ]

0% ▪ 100%

## What is your age?

- ◯ Less than 18
- ◯ 18 - 20
- ◯ 21 - 34
- ◯ 35 - 54
- ◯ 55 - 74
- ◯ 75 or more

Back    Next

0% 100%

Do you or does any member of your household work for any of the following types of companies?
*Please select all that apply.*

- ☐ A company that manufactures or sells egg products
- ☐ A company that manufactures or sells men's or women's clothing
- ☐ A company that manufactures or sells hair care products
- ☐ A company that manufactures or sells bread products
- ☐ A company that manufactures or sells beverage products
- ☐ A company that manufactures or sells kitchen appliances
- ☐ A public relations or advertising agency
- ☐ A marketing or market research firm
- ☐ None of these

Back    Next

0% ▱▱▱▱▱ 100%

Which of the following products have you purchased <u>in the last six years</u>?
*Please select all that apply.*

- ☐ Breakfast Cereal
- ☐ Orange Juice
- ☐ Frozen French Fries
- ☐ Ice Cream
- ☐ Bread Products
- ☐ Tea Bags
- ☐ Carbonated Beverages (Soda, Seltzer)
- ☐ Pasta Products
- ☐ Hot Chocolate Mix
- ☐ Chicken Nuggets
- ☐ Energy Bars
- ☐ Don't know/Unsure
- ☐ None of the Above

Back    Next

0% ▬▬ 100%

Which of the following bread products have you purchased in the last six years?
*Please select all that apply.*

- [ ] Pita Pockets
- [ ] Sliced Bread
- [ ] Bagels
- [ ] Dinner Rolls
- [ ] Baguette
- [ ] Hot Dog Rolls
- [ ] Burger Buns
- [ ] Thin Sliced Bread
- [ ] English Muffins
- [ ] Don't know/Unsure
- [ ] None of the above

Back | Next

0% ▬▬ 100%

You have indicated that you have purchased the following categories of bread products within the past six years. For each of the bread catagories, please select all of the brands of you have purchased, or considered purchasing in the past six years.

| | Sliced Bread | Thin Sliced Bread | Bagels | Burger Buns |
|---|---|---|---|---|
| Rudi's | ☐ | ☐ | ☐ | ☐ |
| One Mighty Mill | ☐ | ☐ | ☐ | ☐ |
| Dave's Killer Bread | ☐ | ☐ | ☐ | ☐ |
| Store Brand | ☐ | ☐ | ☐ | ☐ |
| Pepperidge Farm | ☐ | ☐ | ☐ | ☐ |
| Ezekiel | ☐ | ☐ | ☐ | ☐ |
| Nature's Own | ☐ | ☐ | ☐ | ☐ |
| Orowheat | ☐ | ☐ | ☐ | ☐ |
| Whole Foods 365 | ☐ | ☐ | ☐ | ☐ |
| Sara Lee | ☐ | ☐ | ☐ | ☐ |
| O Organics | ☐ | ☐ | ☐ | ☐ |
| Don't Know/Unsure | ☐ | ☐ | ☐ | ☐ |
| None of the Above | ☐ | ☐ | ☐ | ☐ |

Back    Next

0% ▬▬ 100%

You have been selected to participate in our survey project.

If you normally wear glasses or contact lenses, please wear your glasses or contact lenses while you complete the survey.

To participate in this survey, you must agree to answer the questions by yourself and without asking anybody else in your household for help.

Do you agree to complete the survey on your own without help from anyone else?

Please select one answer.

○ Yes, I agree to do this

○ No, I do not agree to do this



Now imagine that you are going to purchase a **package of regular sliced bread**.

The following questions will involve a series of exercises. In each exercise, you will make **two** choices.

- First, you will be shown three packages of regular sliced bread with different attributes and prices. You will be asked to choose the product with the set of attributes and price shown that you **most** prefer.

- You will next be asked whether, given what you know about the market, including other **packages of regular sliced bread** available to you at your choice of retailer, would you or would you not be **willing** to purchase the package of regular sliced bread that you chose above wtih the brand, labels and price shown?



For the purpose of these exercises, you should assume:

- Any features not shown in the exercise are assumed to be the same across the possible product choices presented.
- All packages of regular sliced bread are the same size and contain the same number of bread slices.
- All packages of regular sliced bread are available in your choice of flavor/variety.
- Each package of regular sliced bread shown is offered by the same retailer, so any preference you may have for a particular retailer should not matter.



The packages of regular sliced bread that will be shown to you include one or more features within each of the following categories:

- **Brand**
- **Label Statements**
- **Price**

Other than the features within each of the above categories, **please assume that all other attributes will be the same across the packages of regular sliced bread you will be shown.**

We will now introduce you to the attributes that will vary in the products among which you will be asked to choose.



0% 100%

**Brands**

These are the **brands** of regular sliced bread that you will consider in making your choices.



Back    Next

0% ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ 100%

## Label Statements

Some of the packages of regular sliced bread you will see will have one or more of these **label statements**.



| No High Fructose Corn Syrup | NON-GMO | Grams of Protein | No Artificial Ingredients |
|---|---|---|---|
| Grams of Whole Grains | Good Source of Fiber | Heart Healthy | USDA Organic |

Back    Next

0% ▬▬▬ 100%

## Price

The **prices** of the packages of regular sliced bread presented to you will range from $4.49 to $7.49.



Here is an example of what one particular set of choices might look like. For this example, you cannot click to make a selection.



| Brand | | | |
|---|---|---|---|

**365** WHOLE FOODS MARKET

DAVE'S KILLER BREAD

O organics

| Label Statements | Price | |
|---|---|---|

**Label Statements**

- NON-GMO
- No High Fructose Corn Syrup
- USDA Organic
- Good Source of Fiber

- NON-GMO
- 5g Protein
- No Artificial Ingredients
- Heart Healthy

- NON-GMO
- 4g Protein
- Heart Healthy
- 22g Whole Grains
- Good Source of Fiber

**Price**

$5.49

$6.99

$4.49

Select

Select

Select

Given what you know about the market, including other **packages of sliced bread** available to you at your choice of retailer, would you or would you not be **willing** to purchase the product that you chose above wtih the brand, labels and price shown?

Yes, I would buy

No, I would not buy

Back

Next

0% ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ 100%

On each of the pages that follow there will be three hypothetical packages of regular sliced bread presented, each with a different set of features. You will be asked to choose the product you most prefer if there were no other options available assuming **all other features not mentioned in the exercise were the same across the products shown.**

- Please assume that the price shown with each hypothetical package of regular sliced bread presented is the best price available for this particular product.

Once you have chosen one of the three packages of regular sliced bread shown as your most preferred option you will then be asked a second question:

- "Given what you know about the market, including other **packages of regular sliced bread** available to you at your choice of retailer, would you or would you not be **willing** to purchase the package of regular sliced bread that you chose above wtih the brand, labels and price shown?"

There will be twelve of these choice exercises, after which the survey will conclude.



Next, you will begin the choice exercises. Click the "NEXT" button to get started.



**If these were your only options, and you had to choose a package of regular sliced bread, which would you choose?**

Please remember that the product choices below do not vary on any other features other than the features that are shown.



| | | | |
|---|---|---|---|
| **Brand** | OROWEAT | DAVE'S KILLER BREAD | 365 WHOLE FOODS MARKET |
| **Label Statements** | • 4g Protein<br>• No Artificial Ingredients<br>• Good Source of Fiber<br>• NON-GMO<br>• Heart Healthy | • USDA Organic<br>• NON-GMO<br>• No High Fructose Corn Syrup<br>• 22g Whole Grains | • 5g Protein<br>• No Artificial Ingredients<br>• Good Source of Fiber<br>• No High Fructose Corn Syrup |
| **Price** | $7.49 | $5.49 | $4.99 |
| | Select | Select | Select |

Given what you know about the market, including other **packages of regular sliced bread** available to you at your choice of retailer, would you or would you not be **willing** to purchase the product that you chose above wtih the brand, labels and price shown?

| Yes, I would buy | No, I would not buy |
|---|---|

Back    Next

0% ▬▬▬▬▬ 100%

Additional versions of conjoint choice tasks have been omitted for brevity.

Thank you for making your choices. We appreciate your sharing your opinions with us.



Now imagine that you are going to purchase a **package of thin sliced bread.**

The following questions will involve a series of exercises. In each exercise, you will make **two** choices.

- First, you will be shown three packages of thin sliced bread with different attributes and prices. You will be asked to choose the product with the set of attributes and price shown that you **most** prefer.

- You will next be asked whether, given what you know about the market, including other **packages of thin sliced bread** available to you at your choice of retailer, would you or would you not be **willing** to purchase the package of thin sliced bread that you chose above wtih the brand, labels and price shown?



For the purpose of these exercises, you should assume:

- Any features not shown in the exercise are assumed to be the same across the possible product choices presented.
- All packages of thin sliced bread are the same size and contain the same number of bread slices.
- All packages of thin sliced bread are available in your choice of flavor/variety.
- Each package of thin sliced bread shown is offered by the same retailer, so any preference you may have for a particular retailer should not matter.



The packages of thin sliced bread that will be shown to you include one or more features within each of the following categories:

- **Brand**
- **Label Statements**
- **Price**

Other than the features within each of the above categories, **please assume that all other attributes will be the same across the packages of thin sliced bread you will be shown.**

We will now introduce you to the attributes that will vary in the products among which you will be asked to choose.



**Brands**

These are the **brands** of thin sliced bread that you will consider in making your choices.



Back    Next

0% ▬▬▬▬▬ 100%

**Label Statements**

Some of the packages of thin sliced bread you will see will have one or more of these **label statements.**

| Sustainably baked with wind energy | No High Fructose Corn Syrup | Grams of Fiber |
|---|---|---|
| No Artificial Ingredients | NON-GMO | Calories |
| Grams of Whole Grains | Grams of Protein | USDA Organic |



0%  ████████░░░░░░░░░░░░░░░  100%

**Price**

The **prices** of the packages of thin sliced bread presented to you will range from $3.99 to $6.99.



Here is an example of what one particular set of choices might look like. For this example, you cannot click to make a selection.



Given what you know about the market, including other **packages of thin sliced bread** available to you at your choice of retailer, would you or would you not be **willing** to purchase the product that you chose above with the brand, labels and price shown?

Yes, I would buy    No, I would not buy

Back    Next

0%    100%

On each of the pages that follow there will be three hypothetical packages of thin sliced bread presented, each with a different set of features. You will be asked to choose the product you most prefer if there were no other options available assuming **all other features not mentioned in the exercise were the same across the products shown.**

- Please assume that the price shown with each hypothetical package of thin sliced bread presented is the best price available for this particular product.

Once you have chosen one of the three packages of thin sliced bread shown as your most preferred option you will then be asked a second question:

- "Given what you know about the market, including other **packages of thin sliced bread** available to you at your choice of retailer, would you or would you not be **willing** to purchase the package of thin sliced bread that you chose above wtih the brand, labels and price shown?"

There will be twelve of these choice exercises, after which the survey will conclude.



Next, you will begin the choice exercises. Click the "NEXT" button to get started.



**If these were your only options, and you had to choose a package of thin sliced bread, which would you choose?**

Please remember that the product choices below do not vary on any other features other than the features that are shown.



| | | | |
|---|---|---|---|
| **Brand** | organics | 365 WHOLE FOODS MARKET | OROWEAT |
| **Label Statements** | • 3g of Protein<br>• 3g Fiber<br>• 12g Whole Grains<br>• Sustainably baked with wind energy<br>• 70 Calories Per Slice | • Organic<br>• No Artificial Flavors<br>• No High Fructose Corn Syrup<br>• Sustainably baked with wind energy | • No Artificial Flavors<br>• 3g Fiber<br>• NON-GMO<br>• 12g Whole Grains |
| **Price** | $3.99 | $5.99 | $4.99 |
| | Select | Select | Select |

Given what you know about the market, including other **packages of thin sliced bread** available to you at your choice of retailer, would you or would you not be **willing** to purchase the product that you chose above wtih the brand, labels and price shown?

| Yes, I would buy | No, I would not buy |
|---|---|

Back    Next

0% ▬▬▬▬▬ 100%

Additional versions of conjoint choice tasks have been omitted for brevity.

Thank you for making your choices. We appreciate your sharing your opinions with us.



Now imagine that you are going to purchase a **package of bagels**.

The following questions will involve a series of exercises. In each exercise, you will make **two** choices.

- First, you will be shown three packages of bagels with different attributes and prices. You will be asked to choose the product with the set of attributes and price shown that you **most** prefer.

- You will next be asked whether, given what you know about the market, including other **packages of bagels** available to you at your choice of retailer, would you or would you not be **willing** to purchase the package of bagels that you chose above wtih the brand, labels and price shown?



For the purpose of these exercises, you should assume:

- Any features not shown in the exercise are assumed to be the same across the possible product choices presented.
- All packages of bagels are the same size and contain the same number of bagels.
- All packages of bagels are available in your choice of flavor/variety.
- Each package of bagels shown is offered by the same retailer, so any preference you may have for a particular retailer should not matter.



The packages of bagels that will be shown to you include one or more features within each of the following categories:

- **Brand**
- **Label Statements**
- **Price**

Other than the features within each of the above categories, **please assume that all other attributes will be the same across the packages of bagels you will be shown.**

We will now introduce you to the attributes that will vary in the products among which you will be asked to choose.



**Brands**

These are the **brands** of bagels that you will consider in making your choices.



Back    Next

0%  100%

## Label Statements

Some of the packages of bagels you will see will have one or more of these **label statements.**

| Grams of Protein | No Trans Fats | NON-GMO | No High Fructose Corn Syrup |
|---|---|---|---|
| Grams of Whole Grains | USDA Organic | Omega-3 | |

Back    Next

**Price**

The **prices** of the packages of bagels presented to you will range from $4.49 to $7.49.



Here is an example of what one particular set of choices might look like. For this example, you cannot click to make a selection.



| Brand | THOMAS' | 365 WHOLE FOODS MARKET | Sara Lee |
|---|---|---|---|
| Label Statements | • 12g Protein<br>• USDA Organic<br>• 0g Trans Fat<br>• NON-GMO | • 13g Protein<br>• NON-GMO<br>• No High Fructose Corn Syrup<br>• 27g Whole Grains | • USDA Organic<br>• NON-GMO<br>• No High Fructose Corn Syrup |
| Price | $4.49 | $7.49 | $6.99 |
| | Select | Select | Select |

Given what you know about the market, including other **packages of bagels** available to you at your choice of retailer, would you or would you not be **willing** to purchase the product that you chose above wtih the brand, labels and price shown?



| Yes, I would buy | No, I would not buy |
|---|---|

Back    Next

0% �_____ 100%

On each of the pages that follow there will be three hypothetical packages of bagels presented, each with a different set of features. You will be asked to choose the product you most prefer if there were no other options available assuming **all other features not mentioned in the exercise were the same across the products shown.**

- Please assume that the price shown with each hypothetical package of bagels presented is the best price available for this particular product.

Once you have chosen one of the three packages of bagels shown as your most preferred option you will then be asked a second question:

- "Given what you know about the market, including other **packages of bagels** available to you at your choice of retailer, would you or would you not be **willing** to purchase the package of bagels that you chose above wtih the brand, labels and price shown?"

There will be twelve of these choice exercises, after which the survey will conclude.



Next, you will begin the choice exercises. Click the "NEXT" button to get started.



**If these were your only options, and you had to choose a package of bagels, which would you choose?**

Please remember that the product choices below do not vary on any other features other than the features that are shown.



| Brand | Sara Lee | THOMAS' | 365 WHOLE FOODS MARKET |
|---|---|---|---|
| Label Statements | • 13g Protein<br>• USDA Organic<br>• 0g Trans Fat<br>• 27g Whole Grains | • 560mg Omega-3<br>• NON-GMO<br>• No High Fructose Corn Syrup<br>• 27g Whole Grains | • 11g Protein<br>• USDA Organic<br>• 560mg Omega-3<br>• NON-GMO |
| Price | $6.49 | $4.49 | $5.99 |
| | Select | Select | Select |

Given what you know about the market, including other **packages of bagels** available to you at your choice of retailer, would you or would you not be **willing** to purchase the product that you chose above wtih the brand, labels and price shown?

Yes, I would buy      No, I would not buy

Back      Next

0% ▬▬▬▬▬ 100%

Additional versions of conjoint choice tasks have been omitted for brevity.

Thank you for making your choices. We appreciate your sharing your opinions with us.



Now imagine that you are going to purchase a **package of burger buns**.

The following questions will involve a series of exercises. In each exercise, you will make **two** choices.

- First, you will be shown three packages of burger buns with different attributes and prices. You will be asked to choose the product with the set of attributes and price shown that you **most** prefer.

- You will next be asked whether, given what you know about the market, including other **packages of burger buns** available to you at your choice of retailer, would you or would you not be **willing** to purchase the package of burger buns that you chose above wtih the brand, labels and price shown?



For the purpose of these exercises, you should assume:

- Any features not shown in the exercise are assumed to be the same across the possible product choices presented.
- All packages of burger buns are the same size and contain the same number of burger buns.
- All packages of burger buns are available in your choice of flavor/variety.
- Each package of burger buns shown is offered by the same retailer, so any preference you may have for a particular retailer should not matter.



The packages of burger buns that will be shown to you include one or more features within each of the following categories:

- **Brand**
- **Label Statements**
- **Price**

Other than the features within each of the above categories, **please assume that all other attributes will be the same across the packages of burger buns you will be shown.**

We will now introduce you to the attributes that will vary in the products among which you will be asked to choose.



**Brands**

These are the **brands** of burger buns that you will consider in making your choices.

   

Back    Next

0% 100%

**Label Statements**

Some of the packages of regular sliced bread you will see will have one or more of these **label statements.**

| USDA Organic | No Bleached Flour | No High Fructose Corn Syrup | Grams of Protein |
|---|---|---|---|
| Free from artificial preservatives, colors, and flavors | Grams of Fiber | NON-GMO | |



**Price**

The **prices** of the packages of burger buns presented to you will range from $4.49 to $7.49.



Here is an example of what one particular set of choices might look like. For this example, you cannot click to make a selection.



| Brand | | | |
| --- | --- | --- | --- |
| | [O organics logo] | [Dave's Killer Bread logo] | [365 Whole Foods Market logo] |
| Label Statements | • 6g Protein<br>• USDA Organic<br>• 280mg ALA Omega-3<br>• No Bleached Flour | • NON-GMO<br>• No High Fructose Corn Syrup | • 6g Protein<br>• USDA Organic<br>• 280mg ALA Omega-3<br>• No Bleached Flour |
| Price | $6.99 | $4.99 | $5.49 |
| | Select | Select | Select |



Given what you know about the market, including other **packages of burger buns** available to you at your choice of retailer, would you or would you not be **willing** to purchase the product that you chose above wtih the brand, labels and price shown?

Yes. I would buy   No. I would not buy

Back   Next

0% ▬▬▬▬▬▬▬▬▬▬ 100%

On each of the pages that follow there will be three hypothetical packages of burger buns presented, each with a different set of features. You will be asked to choose the product you most prefer if there were no other options available assuming **all other features not mentioned in the exercise were the same across the products shown.**

- Please assume that the price shown with each hypothetical package of burger buns presented is the best price available for this particular product.

Once you have chosen one of the three packages of burger buns shown as your most preferred option you will then be asked a second question:

- "Given what you know about the market, including other **packages of burger buns** available to you at your choice of retailer, would you or would you not be **willing** to purchase the package of burger buns that you chose above wtih the brand, labels and price shown?"

There will be twelve of these choice exercises, after which the survey will conclude.



Next, you will begin the choice exercises. Click the "NEXT" button to get started.



**If these were your only options, and you had to choose a package of burger buns, which would you choose?**

Please remember that the product choices below do not vary on any other features other than the features that are shown.



Additional versions of conjoint choice tasks have been omitted for brevity.

Thank you for making your choices. We appreciate your sharing your opinions with us.



**Exhibit 4**

**Hierarchical Bayes Settings**

| Hierarchical Bayes Settings | | | | |
|---|---|---|---|---|
| All HB Regressions are run using the Sawtooth Software Lighthouse Studio defaults unless otherwise noted below. | | | | |
| Setting | Killer Breads | Thin Sliced Breads | Bagels | Buns |
| Respondent Filter: | Completes Only + Either: Exclude Straightliners OR Exclude Straightliners, Low RLH, Speeders, Laggards | | | |
| Tasks | 12 Random (excluding Fixed Tasks) | | | |
| Constraints | Price: Monotonicity Constraint (Best-to-worst) | | | |
| Iterations: | 20K Burn, 10K Draws | | | |
| Covariance Matrix: (DoF/PV) | 2/0.6 | 2/0.4 | 2/0.2 | 2/0.8 |