**GUTRIDE SAFIER LLP**
Seth A. Safier (State Bar No. 197427)
  seth@gutridesafier.com
Marie A. McCrary (State Bar No. 262670)
  marie@gutridesafier.com
Hayley A. Reynolds (State Bar No. 306427)
  hayley@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile:  (415) 449-6469

Matthew T. McCrary (*pro hac vice*)
  matt@gutridesafier.com
4450 Arapahoe Ave., Suite 100
Boulder, CO 80303
Telephone: (415) 639-9090
Facsimile:  (415) 449-6469

Patrick J. Branson (*pro hac vice*)
  patrick@gutridesafier.com
305 Broadway, 7th Floor
New York, NY 10007
Telephone: (415) 639-9090
Facsimile:  (415) 449-6469

*Attorneys for Plaintiff*
*David Swartz*

UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID SWARTZ, an individual, on behalf of himself, the general public, and those similarly situated,<br><br>                    Plaintiff,<br><br>  v.<br><br>DAVE'S KILLER BREAD, INC. and FLOWERS FOODS, INC.,<br><br>                    Defendants. | CASE NO. 4:21-cv-10053-YGR<br><br>PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT<br><br>Date:       December 9, 2025<br>Time:      2:00 p.m.<br>Location:  Oakland – Crtrm 1, 4th Fl.<br><br>Hon. Yvonne Gonzalez Rogers |

## **NOTICE OF MOTION**

Please take notice that on December 9, 2025, at 10:00 a.m., or soon thereafter as this motion may be heard, Plaintiff David Swartz will, and hereby does, move, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for partial summary judgment as to liability under Plaintiff's unlawfulness claim. This Court certified a class of purchasers pursuing an unlawfulness claim under California's Unfair Competition Law ("UCL"). Liability under Plaintiff's unlawfulness claim is based on application of food labeling regulations to undisputed facts, i.e., the product labels. Specifically, the regulations require that products that include a nutrient content claim comply with nutrition facts panel (NFP) regulations. Here, Defendant's products included a front label quantitative protein claim that is a nutrient content claim under 21 C.F.R. § 101.13(c). Because it the products included a protein claim, they were also required to include a percent daily value (%DV) for protein in the NFP that is calculated based on the protein digestibility corrected amino acid score ("PDCAAS"). The product labels all included a front label quantitative protein claim during the class period, e.g., "5g protein." The product labels and Defendant's admissions confirm that the Product labels did not include a PDCAAS-based %DV for protein in the NFP during the class period. Thus, the labels violated the underlying regulations, which serve as a predicate for Plaintiff's UCL unlawfulness claim. Because determination of Defendant's liability it is a pure question of law, partial summary judgment is appropriate for this claim.

This motion is based upon this Notice of Motion and Motion, Memorandum of Points and Authorities, the accompanying Declaration of Hayley Reynolds ("Reynolds Dec.") in support of partial summary judgment, and the complete record filed before this Court.

## **TABLE OF CONTENTS**

I.  INTRODUCTION ...................................................................................... 1

II.  RELEVANT BACKGROUND & PROCEDURAL HISTORY ...................................... 2

    A.  The Products Made Unlawful Front Label Protein Claims. ................................. 2

    B.  DKB Knowingly Violated Regulations and Deceived Consumers. ..................... 3

    C.  Defendants' Products Command a Price Premium During the Class Period. ....... 4

    D.  Plaintiff Swartz Relied on the Labeling When he Purchased the Products. ........ 4

    E.  Relevant Procedural History. ............................................................... 5

III.  MOTION FOR PARTIAL SUMMARY JUDGMENT ON LIABILITY UNDER THE UCL UNLAWFULNESS PRONG ......................................................... 6

    A.  Legal Standard. .............................................................................. 7

    B.  Plaintiff's UCL Unlawful Prong Claim. ................................................. 7

    C.  Defendants' Labels Did Not Provide a PDCAAS-based %DV. ...................... 8

        1.  Defendants' quantitative protein statements are nutrient content claims and protein claims. ........................................................ 8

    D.  Defendants' Interpretation of the Regulations are Untethered to the Text and Law. ..................................................................................... 10

IV.  PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ....................................................................................... 12

    A.  DKB's *Sonner* Argument Fails; This Court Has Equitable Jurisdiction. .......... 12

        1.  There is no remedy at law for plaintiff's UCL unlawful prong claim. .... 12

        2.  Even if the fraud claim as to the *NFP* were a remedy for DKB's unlawful *front label* advertising, it would be inadequate. ................... 14

        3.  Defendants waived their objection to this Court's equitable jurisdiction, or at minimum allowing it would be unfair. ...................... 17

    B.  Swartz Has Statutory Standing to Pursue the UCL Claims. ......................... 17

        1.  There is no dispute of material fact regarding Plaintiff's reliance on the unlawful labeling. ........................................................ 18

        2.  Plaintiff relied on the NFP. ............................................................ 20

        3.  Plaintiff's post-complaint purchase does not defeat reliance as a matter of law for his repeated pre-complaint purchases during the class period. ........................................................................ 23

        4.  Plaintiff and the Class lost money as a result of DKB's unlawful labeling. ................................................................................ 25

            a)  Plaintiff's damages model accounts for "the Location of the 5g Protein Statement." ................................................ 26

            b)  Plaintiff and the Class paid a price premium associated with the front label protein claim. ............................................ 28

    C.  The Evidence Creates a Triable Issue of Fact Regarding Plaintiff's Individual Claims. ........................................................................... 30

        1.  There is a triable issue of fact regarding deception. ........................... 30

1

2.   The evidence creates a triable issue of fact on plaintiff's economic
     injury. .............................................................................................. 33

3.   The evidence creates a triable fact on whether defendants acted
     intentionally for plaintiff's common law fraud claims. ......................... 34

4.   Plaintiff's unjust enrichment claim may also proceed. ........................... 35

# TABLE OF AUTHORITIES

**Cases**

*Allegra v. Luxottica Retail N. Am.*,
   341 F.R.D. 373 (E.D.N.Y.2022) ........................................................................... 30

*Allen v. Hyland's Inc.*,
   300 F.R.D. 643 (C.D. Cal. 2014) ......................................................................... 34

*Am. Life Ins. Co. v. Stewart*,
   300 U.S. 203 (1937) ............................................................................................ 17

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ........................................................................................ 8, 35

*Ang v. Bimbo Bakeries USA, Inc.*,
   No. 13-cv-01196-WHO, 2014 U.S. Dist. LEXIS 34443 (N.D. Cal. Mar. 13, 2014)............. 6

*Ariz. Cartridge Remanufacturers Ass'n v. Lexmark Int'l, Inc.*,
   421 F.3d 981 (9th Cir. 2005) ............................................................................... 31

*Backus v. ConAgra Foods, Inc.*,
   No. C 16-00454 WHA, 2016 U.S. Dist. LEXIS 178227 (N.D. Cal. Dec. 22, 2016)........... 25

*Baghdasarian v. Amazon.com, Inc.*,
   458 F. App'x 622 (9th Cir. 2011) ........................................................................ 26

*Baranco v. Ford Motor Co.*,
   294 F. Supp. 3d 950 (N.D. Cal. 2018) ................................................................. 21

*Barnes v. Unilever United States Inc.*,
   No. 21 C 6191, 2023 U.S. Dist. LEXIS 41196 (N.D. Ill. Mar. 11, 2023) ........................... 15

*Billfloat Inc. v. Collins Cash Inc.*,
   105 F.4th 1269 (9th Cir. 2024) ............................................................................ 29

*Brown v. Natures Path Foods, Inc.*,
   No. 21-cv-05132-HSG, 2022 U.S. Dist. LEXIS 42760 (N.D. Cal. Mar. 10, 2022) ............ 14

*Bruton v. Gerber Prods. Co.*,
   No. 15-15174, 2017 U.S. App. LEXIS 12833 (9th Cir. July 17, 2017) .............................. 17

*Buckman Co. v. Plaintiffs' Legal Comm.*,
   531 U.S. 341 (2001) ............................................................................................ 13

*Cappello v. Walmart Inc.*,
   394 F. Supp. 3d 1015 (N.D. Cal. 2019) ............................................................... 19

*Chacanaca v. Quaker Oats Co.*,
   752 F. Supp. 2d 1111 (N.D. Cal. 2010) ............................................................... 10

*Clay v. CytoSport, Inc.*,
   No. 3:15-cv-00165-L- AGS, 2018 U.S. Dist. LEXIS 129300
   (S.D. Cal. July 31, 2018).................................................................. 19, 25, 26, 27

*Colgan v. Leatherman Tool Group, Inc.*,
   135 Cal. App. 4th 663 (2006) ........................................................................ 31, 32

*Comcast Corp. v. Behrend*,
   569 U.S. 27, 133 S. Ct. 1426 (2013)...................................................................... 6

*Consumer Advocates v. Echostar Satellite Corp.*,
   113 Cal. App. 4th 1351 (2003) ............................................................................ 32

*Copart, Inc. v. Sparta Consulting, Inc.*,
    No. 2:14-cv-0046-KJM-CKD, 2018 U.S. Dist. LEXIS 154062
    (E.D. Cal. September 10, 2018) ........................................................................... 31

*Crowder v. Shade Store, LLC*,
    No. 23-cv-02331-NC, 2025 U.S. Dist. LEXIS 43189 (N.D. Cal. Mar. 10, 2025) ............... 17

*Daniel v. Ford Motor Co.*,
    806 F.3d 1217 (9th Cir. 2015) ................................................................... 21, 22

*Ebner v. Fresh, Inc.*,
    838 F.3d 958 (9th Cir. 2016) ...................................................... 14, 31, 33, 34

*Elgindy v. AGA Serv. Co.*,
    No. 20-cv-06304-JST, 2021 U.S. Dist. LEXIS 61269 (N.D. Cal. Mar. 29, 2021) ............... 14

*Farar v. Bayer AG*,
    No. 14-cv-04601-WHO, 2017 U.S. Dist. LEXIS 193729 (N.D. Cal. Nov. 15, 2017) ......... 35

*Fragale v. Faulkner*,
    110 Cal. App. 4th 229 (2003) ................................................................... 16, 35

*Giles v. General Motors Acceptance Corp.*,
    494 F.3d 865 (9th Cir. 2007) ............................................................................. 8

*Hadley v. Kellogg Sales Co.*,
    324 F. Supp. 3d 1084 (N.D. Cal. 2018) ......................................................... 27

*Hadley v. Kellogg Sales Co.*,
    No. 16-CV-04955-LHK, 2019 U.S. Dist. LEXIS 136791 (N.D. Cal. Aug. 13, 2019) ......... 18

*Hawkins v. Kroger Co.*,
    512 F. Supp. 3d 1079 (S.D. Cal. 2021) ......................................................... 26

*Hawkins v. Kroger Co.*,
    906 F.3d 763 (9th Cir. 2018) ................................................................... 10, 28

*Hewlett-Packard Co. v. United States*,
    No. C-04-03832 RMW, 2005 U.S. Dist. LEXIS 19972 (N.D. Cal. Aug. 5, 2005) ............... 8

*In re NJOY, Inc. Consumer Class Action Litig.*,
    120 F. Supp. 3d 1050 (C.D. Cal. 2015) ......................................................... 26

*In re Tobacco II Cases*,
    46 Cal. 4th 298, 320, 93 Cal. Rptr. 3d 559, 207 P.3d 20 (2009) ..................... 17, 19

*Jensen v. Natrol, LLC*,
    390 F. Supp. 3d 1100 (N.D. Cal. 2019) ......................................................... 35

*John v. United States*,
    247 F.3d 1032 (9th Cir. 2001) ............................................................................. 8

*Klein v. Chevron U.S.A., Inc.*,
    137 Cal. Rptr. 3d 293 (Cal. Ct. App. 2012) ..................................................... 8

*Konik v. Time Warner Cable*,
    No. CV 07-763 SVW (RZx), 2009 U.S. Dist. LEXIS 138618 (C.D. Cal. Dec. 2, 2009) ..... 19

*Lambert v. Nutraceutical Corp.*,
    870 F.3d 1170 (9th Cir. 2017) ................................................................... 27

*Mangum v. Action Collection Serv., Inc.*,
    575 F.3d 935 (9th Cir. 2009) ................................................................... 18

*McGlinchy v. Shell Chem. Co.*,
    845 F.2d 802 (9th Cir. 1988) ................................................................... 27, 34

- ii -

*Miletak v. Allstate Ins. Co.*,
   No. C 06-03778 JW, 2010 U.S. Dist. LEXIS 26913 (N.D. Cal. March 5, 2010)............... 31

*Miller v. Peter Thomas Roth, LLC*,
   No. C 19-00698 WHA, 2020 U.S. Dist. LEXIS 10854 (N.D. Cal. Jan. 22, 2020).............. 35

*Minor v. Baker Mills, Inc.*,
   No. 20-cv-02901-RS, 2020 U.S. Dist. LEXIS 258880 (N.D. Cal. Nov. 12, 2020) ............. 10

*Mullins v. Premier Nutrition Corp.*,
   178 F. Supp. 3d 867 (N.D. Cal. 2016) ................................................................................ 32

*Nacarino v. Kashi Co.*,
   77 F.4th 1201 (9th Cir. 2023) ............................................................. 9, 10, 11, 13

*Nationwide Biweekly Admin., Inc. v. Superior Court*,
   9 Cal. 5th 279 (2020) ........................................................................................................ 17

*Nutraceutical Corp. v. Lambert*,
   139 S. Ct. 710 (2019) ........................................................................................................ 27

*O'Shea v. Epson Am., Inc.*,
   No. CV 09 -8063 PSG (CWx), 2011 U.S. Dist. LEXIS 85273 (C.D. Cal. July 29, 2011)... 32

*Passman v. Peloton Interactive, Inc.*,
   671 F. Supp. 3d 417 (S.D.N.Y. 2023) ................................................................................ 30

*Passman v. Peloton Interactive, Inc.*,
   19 Civ. 11711 (LGS), 2025 U.S. Dist. LEXIS 84144 (S.D.N.Y. May 2, 2025)................. 31

*Porter v. NBTY, Inc.*,
   No. 15 CV 11459, 2016 U.S. Dist. LEXIS 163352 (N.D. Ill. Nov. 28, 2016) .................... 10

*Provenz v. Miller*,
   102 F.3d 1478 (9th Cir. 1996) .......................................................................................... 35

*Pulaski & Middleman, LLC v. Google, Inc.*,
   802 F.3d 979 (9th Cir. 2015) ............................................................................................ 26

*Pusey & Jones Co. v. Hanssen*,
   261 U.S. 491 (1923)........................................................................................................... 18

*Rahman v. Mott's LLP*,
   No. CV 13-3482 SI, 2014 U.S. Dist. LEXIS 147102 (N.D. Cal. Oct. 15, 2014) ............... 26

*Rausch v. Flatout, Inc.*,
   660 F. Supp. 3d 855 (N.D. Cal. 2023) ........................................................... 15, 20, 24

*Rickards v. Canine Eye Registration Found., Inc.*,
   704 F.2d 1449 (9th Cir. 1983) .................................................................................. 27, 34

*Roffman v. Perfect Bar, LLC*,
   No. 22-cv-02479-JSC, 2022 U.S. Dist. LEXIS 159762 (N.D. Cal. Sep. 2, 2022) .............. 20

*Silicon Image, Inc. v. Analogix Semiconductor, Inc.*,
   642 F. Supp. 2d 957 (N.D. Cal. 2008) .............................................................................. 32

*Sonner v. Premier Nutrition Corp.*,
   971 F.3d 834 (9th Cir. 2020) ............................................................... 13, 14, 15, 18

*Stearns v. Ticketmaster Corp.*,
   655 F.3d 1013 (9th Cir. 2011) .......................................................................................... 17

*Steroid Hormone Prod. Cases*,
   181 Cal. App. 4th 145 (2010) ............................................................................................. 8

*Thomas v. Costco Wholesale Corp.*,
  No. 12-cv-02908-BLF, 2015 U.S. Dist. LEXIS 106831 (N.D. Cal. Aug. 13, 2015)............ 13

*Ulrich v. Probalance, Inc.*,
  No. 16 C 10488, 2017 U.S. Dist. LEXIS 132202 (N.D. Ill. Aug. 18, 2017) ........................ 10

*Zeiger v. WellPet LLC*,
  526 F. Supp. 3d 652 (N.D. Cal. 2021) ................................................................................ 30

**Statutes**

Cal. Health & Safety Code § 110100(a) ........................................................................................ 8

**Other Authorities**

55 Fed. Reg. 29476 (July 19, 1990).............................................................................................. 24

Restatement (Second) of Torts, Section 546 at cmt. B ................................................................ 19

**Rules**

Fed. R. Civ. P. 56 ........................................................................................................................... 7

Fed. R. Civ. P. 56(a) ...................................................................................................................... 7

**Regulations**

21 C.F.R. § 101.13 ................................................................................................................ 8, 9, 10

21 C.F.R. § 101.13(b) .............................................................................................................. 8, 10

21 C.F.R. § 101.13(b)(1) ............................................................................................................. 28

21 C.F.R. § 101.13(c) ....................................................................................................... 9, 11, 13

21 C.F.R. § 101.13(n) ........................................................................................................... passim

21 C.F.R. § 101.9 ......................................................................................................................... 11

21 C.F.R. § 101.9(c)(7) ........................................................................................................... 9, 10

21 C.F.R. § 101.9(c)(7)(i) ..................................................................................................... passim

21 C.F.R. § 101.9(c)(7)(ii) ................................................................................................... 6, 7, 8

21 C.F.R. § 101.9(c)(7)(iii) ...................................................................................................... 7, 8

## I.     INTRODUCTION

Plaintiff is entitled to partial summary judgment on the purely legal question of whether Defendants Dave's Killer Bread, Inc. and Flowers Foods, Inc.'s ("DKB" or "Defendants"), uniform practice of making front label protein claims while failing to provide a PDCAAS-based %DV for protein in the nutrition facts panel ("NFP") violated parallel FDA and California regulations prohibiting such conduct and was, thereby, unlawful under California's Unfair Competition Law ("UCL"). There are no disputed facts as to this discrete question. The labels, and what they state, speak for themselves. And, as this Court recognized in its Order Granting Class Certification, the Class's UCL unlawful prong "claim does not require reliance on a misleading statement," ECF 139 at 5, precluding any factual issues on consumer deception or materiality. Instead, whether DKB acted unlawfully turns on "plaintiff's fundamental regulatory argument,"—which presents a pure question of law. ECF 139 at 9.

In contrast to Plaintiff's motion, DKB's motion relies entirely on twisting disputed facts and law. First, this Court has equitable jurisdiction over the certified UCL unlawfulness claim. A CLRA fraud claim as to the *back label* is no remedy at all for Plaintiff's UCL unlawful prong claim that DKB's *front label* claim was illegal. They are entirely different legal claims and theories, even if some of the underlying facts overlap. Even if it were a remedy, it would be inadequate because it does not provide the same amount of money for the *same harm*. The CLRA remedies the harm of deceiving consumers, measured by the harm of that deception; whereas the UCL unlawful claim remedies the harm to competition from DKB violating the applicable regulatory scheme, measured by the "cost of complying with the regulations." ECF 139 at 8. Those are different amounts of money for different harms. And finally, by waiting until after the Class chose to pursue only an equitable claim before raising a challenge to equitable jurisdiction, DKB engages in unfair gamesmanship and has therefore waived this equitable defense.

The remainder of DKB's motion relies on disputed facts and disregards issues this Court has already resolved. DKB's argument that Plaintiff does not have statutory standing to pursue his certified UCL unlawfulness claim because of a purported lack of evidence that he relied on the NFP must fail; as this Court recognized, "the lack of a %DV is relevant only insofar as it

establishes that defendants allegedly violated regulations, but plaintiff is not required to show that his injury stemmed from reliance on that claim." ECF 139 at 5. Nor does Plaintiff's single post-filing purchase defeat standing because, "Plaintiff's one-time post lawsuit purchase because his child had become accustomed to its taste is not relevant to the inquiry as he can assert that the protein considerations were no longer as significant as when the child was young." *Id*. at 4.

Next, DKB argues that there is no evidence that the class "suffered any cognizable injury." But DKB does not dispute that conjoint analysis can be used as part of a scientifically reliable method to establish the price premium attributable to a product label claim. Instead, DKB's presentation amounts to, at best, a classic battle of the experts. Plaintiff relies on the exact damages model this Court found sufficient at class certification—where it rejected all of the arguments DKB now rehashes. ECF 139 at 7.

Finally, DKB's attacks on Plaintiff's individual fraud-based claims also fail. Deception is almost always triable because the primary evidence in a false advertising case is the advertising itself. This case is no different. The jury can evaluate DKB's advertising, that DKB knew about the requirement to include a %DV for protein, knew the Products had low quality protein, and ignored guidance that the PDCAAS-derived %DV for protein was required on the Product labels. Then, the jury can determine whether DKB's advertising was likely to mislead reasonable consumers. California law is clear that, although extrinsic evidence such as consumer surveys and expert opinions can assist the trier of fact, they are not necessary. Further, Plaintiff testified he relied on both the front label and the NFP where the %DV for protein was missing, and DKB's testimony confirms that their targeted consumer "would read the totality of [the] packaging to make a good choice or a choice of their products." Thus, as triable fact issues exist for Plaintiff's fraud-based claims and unjust enrichment claim, those claims must proceed to a jury trial.

## II.    RELEVANT BACKGROUND & PROCEDURAL HISTORY

### A.    The Products Made Unlawful Front Label Protein Claims.

DKB cannot dispute that during the class period, all of the labels included a front label, quantitative protein claim such as "5g protein." Similarly, during the class period, none of the labels included a %DV calculated using the Protein Digestibility Corrected Amino Acid Score

1    ("PDCAAS") in the NFP. These are the only relevant facts for determination of whether DKB's

2    labeling violated the pertinent regulations during the class period.

3        **B.    DKB Knowingly Violated Regulations and Deceived Consumers.**

4        DKB's decision to include a front label protein claim without the required PDCAAS-

5    derived protein claim in the NFP was not a simple mistake. DKB chose to violate the regulations

6    knowing that the protein in the Products was not a complete protein that would provide

7    nutritionally the amount claimed on the front label. ████████████████████████

8    ████████████████████████████████████████████████████████

9    ████████████████████████████████████████████████████████

10   ████████████████████████████████████████████████████████

11   ████████████████████████████████

12       ████████████████████████████████████████████████████

13   ████████████████████████████████████████████████████████

14   ████████████████████████

15   ████████████████████████████████████████████████

16

17

18   ████████████████████

19

20   ████████████████████████████████████████████████████████

21   ████████████████████████████████████████████████████████

22   ████████████████████████████████████████████████████████

23   ████████████████████████████████████████████████████████

24   ████████████████████████████████████

25       DKB kept their front label protein claims despite the low quality protein because it was a

26   critical selling point of the Products. ████████████████████████████████

27   ████████████████████████████████████████████████████████

28   ████████████████████████████████████████████████████████

1

2

3

4

5

6

7

8      **C.      Defendants' Products Command a Price Premium During the Class Period.**

9          Plaintiff's damages expert, Colin Weir, designed and executed four surveys for four

10   product categories: sliced bread, thin-sliced bread, bagels, and buns. The damages analysis

11   followed the model proposed to and accepted by this Court at class certification: measurement of

12   the price premium that consumers paid as a result of the inclusion of protein claims on the front

13   label using conjoint analysis. Mr. Weir submitted the model for the regular sliced bread at class

14   certification and did not make substantive changes to the executed survey. He followed the same

15   procedure outlined at class certification in designing the remaining three surveys: he selected

16   attributes based on the labeling of DKB and its competitors, and otherwise tested each protein

17   claim that appeared on the front labels during the class period.

18          Based on the surveys and the relevant analyses, Mr. Weir determined that the price

19   premiums associated with the front label protein claims ranged from 2.40% to 5.61%, depending

20   on the product type and protein claim. *See* ECF 176-2, Ex. D (Weir Report) at 36.

21      **D.      Plaintiff Swartz Relied on the Labeling When he Purchased the Products.**

22          Plaintiff testified "[t]he protein listed on the front and back [of the Product] was crucial to

23   my decision to buy that specific product. . . . And to be willing to pay for it what I paid for it."

24   ECF 103-3 at 200:9–15. Based on the protein labeling, Plaintiff believed the protein was "useful

25   to a human." *Id*. at 152:10–11. And that if he knew that some of the protein was useless it would

26   have been a factor that affected his "willingness to pay what [he was] paying for it and committing

27   to [the Dave's Killer Bread] brand." *Id*. at 200:16–201:3. He testified that he reviewed the NFP

28   on the back of the product when he made his first purchase and that he "almost always" reviews

the nutrition fact panels on food labels. *Id*. at 201:5–17. He testified that he "use[s] nutrition fact panels to compare products." *Id*. He testified that when comparing two products, he would be "inclined to buy [a product] that had a higher percent DV." *Id*. at 202:2–12. And he testified that he purchased the bread because "this was the highest grams of protein that [he] saw" and did not have any reason to question the grams statement. *Id*. at 180:17–20.

Plaintiff also explained his continued purchase of the Products after filing suit. Mr. Swartz originally purchased the Products in 2016 for his young daughter who was, at the time, under two years old. *Id*. at 92:4–15. He was concerned about her growth and wanted to increase her protein intake. *Id*. at 91:10–18. After trying a few different breads, his daughter preferred the Dave's Killer Bread Products. *Id*. at 119:15–23. Thereafter, Plaintiff purchased the bread "because that was what my daughter was willing to eat after we got her on [it]." *Id*. at 120:9–11. He then stopped purchasing the bread "not long after finding out about the protein content issue." *Id*. at 121: 8–9. After learning about the protein content, Mr. Swartz "started trying to buy some alternatives," but none of them "took" for his daughter. *Id*. at 121:8–17. Eventually Mr. Swartz stopped buying sliced bread altogether because his daughter was "not very adaptable." *Id*. at 121:16–17.

### E.    Relevant Procedural History.

In denying DKB's motion to dismiss and granting Plaintiff's motion for class certification, this Court rejected several arguments that DKB seeks to relitigate now. ECF 139. The Court rejected DKB's argument that a single post-lawsuit purchase of the Product defeated his allegation that he would not have purchased the Product or would have paid less for it, finding:

> Plaintiff's one-time post lawsuit purchase because his child had become accustomed to its taste is not relevant to the inquiry as he can assert that the protein considerations were no longer as significant as when the child was young. (*Id.*, Reynolds Dec., Ex. 1 at 55:23–56:3, 80:22–81:6, 119:15–25, 121:7–17.) That single purchase does not contradict the allegation that plaintiff suffered an injury in fact. Nor does it demonstrate that the injury of paying a premium is not traceable to the defendants' conduct, or that it cannot be redressed. ECF 139 at 4.

The Court rejected DKB's argument that the model does not measure the front label protein claim and could instead be measuring the protein statement inside the NFP, finding that:

> The "5g Protein" claim at issue is provided alongside other claims that appear on the front of packages. Further, respondents would not confuse the "5g protein" claim for a NFP claim because there are no other claims in the survey that are typically included in a NFP claim. ECF 139 at 7.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

The Court rejected DKB's argument that Plaintiff's damages model for the unlawfulness claims must account for the omitted %DV, concluding that:

> Plaintiff's methodology is consistent with his theory of liability, however, because it evaluates the price premium associated with defendants' alleged violation of the regulatory scheme at issue. The Court allowed plaintiff to proceed on his claim that defendants violated FDA regulations that state that "a nutrient content claim[] may not be made on the label or in labeling of foods unless" it provides a PDCAAS-based %DV for protein. (Dkt. No. 46 at 2 (citing 21 C.F.R. § 101.9(c)(7)(i)–(ii); § 101.13(n)). A seller can comply by either omitting a front-of-package protein content claim, or if they choose to include such a claim, they can also include a %DV for the protein content in the nutrition fact panel on the back of the package. Weir's methodology estimates a price premium by measuring the cost of complying with the regulation, specifically by omitting a front-of-package claim. Therefore, measuring the premium paid by consumers is "consistent with" plaintiff's "liability case." *Comcast Corp. v. Behrend*, 569 U.S. 27, 35, 133 S. Ct. 1426 (2013). . . . While a conjoint study measuring the effect of %DV may also be consistent with plaintiff's liability case, plaintiffs are not generally required to test every potential liability theory. They must only provide a methodology consistent with their liability case, which plaintiff has done here. ECF 139 at 8.

## III.  MOTION FOR PARTIAL SUMMARY JUDGMENT ON LIABILITY UNDER THE UCL UNLAWFULNESS PRONG

Plaintiff moves for partial summary judgment on DKB's liability under the unlawfulness prong of the UCL. Whether DKB's labels violated the regulations is easily resolved as a matter of law. *See Ang v. Bimbo Bakeries USA, Inc.*, 2014 U.S. Dist. LEXIS 34443, at *28 (N.D. Cal. Mar. 13, 2014) ("[A] claim that products are illegally mislabeled as a matter of law because the labels fail to disclose something required by a statute or regulation can be resolved . . . [because the] label is either illegal or it is not."). Here, the regulations make clear that if a manufacturer makes a protein claim on the label it "shall" state the "corrected amount of protein" in the NFP expressed as a %DV, and calculated using the PDCAAS method. 21 C.F.R. § 101.9(c)(7)(i)–(iii). Thus, as there is no genuine dispute that, during the class period, the Product labels (1) made a quantitative protein claim on the Products (e.g., "5g Protein") and (2) failed to provide a PDCAAS-based statement of the corrected amount of protein (i.e. a %DV calculated using PDCASS), DKB has violated 21 C.F.R. §§ 101.13(n), 101.9(c)(7)(i)–(iii), and by extension California's Sherman Law, which incorporates by reference FDA food labeling regulations. This violation serves as the necessary predicate to establish liability for a UCL unlawfulness claim.

DKB cannot reasonably dispute the appearance of the Product labels during the Class Period. Rather, DKB only offers an untethered interpretation of the at-issue FDA regulations.

This interpretation is atextual, contradicted by precedent, and contradicted by the FDA itself. Indeed, the only support DKB offers for their interpretation is its own internal (incorrect) interpretation of the regulations and the declaration of a purported expert whose (improper) opinion on the law lacks foundation and is directly contradicted by the FDA's own statements. *See* ECF 180 (Plaintiff's motion to exclude the opinion of Dr. Trumbo). Accordingly, there is no dispute as to the facts and law required to prove DKB's liability under the UCL. *See* Fed. R. Civ. P. 56(a).

### A. Legal Standard.

Partial summary judgment is appropriate under Fed. R. Civ. P. 56(a) when there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. A district court must determine, viewing the evidence in the light most favorable to the nonmoving party, whether or not there are any genuine issues of material fact. *Giles v. General Motors Acceptance Corp.*, 494 F.3d 865, 873 (9th Cir. 2007). A genuine issue of fact is one that could reasonably be resolved, based on the factual record, in favor of either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). Questions of statutory interpretation are well suited for summary judgment as they are questions of law. *Hewlett-Packard Co. v. United States*, 2005 U.S. Dist. LEXIS 19972, at *3–4 (N.D. Cal. Aug. 5, 2005) ("Statutory interpretation is a question of law") (citing *John v. United States*, 247 F.3d 1032, 1041 (9th Cir. 2001)).

### B. Plaintiff's UCL Unlawful Prong Claim.

The UCL "borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Klein v. Chevron U.S.A., Inc.*, 137 Cal. Rptr. 3d 293, 326–27 (Cal. Ct. App. 2012) (cleaned up). An unlawful prong claims requires establishing only two elements: (1) that defendants acted unlawfully; and (2) the amount of money they "acquired by means of" their unlawful conduct. *Steroid Hormone Prod. Cases*, 181 Cal. App. 4th 145, 155 (2010). Here, Plaintiff seeks partial summary judgment only on the first element regarding the unlawfulness of the DKB's conduct, i.e., liability, which is based on the predicate violation of FDA protein labeling regulations that the Sherman Law adopts into

California law. *See* Cal. Health & Safety Code § 110100(a). As for the amount of money DKB acquired, Plaintiff reserves that issue for trial.

As relevant here, FDA regulations provide that "a nutrient content claim[] may not be made on the label . . . unless the claim is made in accordance with this regulation," i.e., each provision within the section. 21 C.F.R. § 101.13(b). Section 101.13(n), in turn, provides that "[n]utrition labeling in accordance with § 101.9 . . . shall be provided for any food for which a nutrient content claim is made." Sections 101.9(c)(7)(i)–(iii) mandates that, if a manufacturer makes a protein claim anywhere on the label it "shall" state the "corrected amount of protein" in the Nutrition Facts Panel ("NFP") expressed as a %DV, and calculated according to the PDCAAS method. As this Court has held, where a product does not provide a PDCAAS-based statement of the corrected amount of protein presented as a %DV for protein in the NFP, section 101.13 directly prohibited any protein nutrient content claims on the front label. *See* ECF No. 46 at 2, 4.

## C. Defendants' Labels Did Not Provide a PDCASS-based %DV.

It is undisputed that, during the Class Period (December 29, 2017 through September 5, 2023), Defendants sold Products which included a quantitative front label protein statement, such as "5g protein". *See* ECF 73-8, Exs. 23–47 (Product labels). It is also undisputed that, during the Class Period, the Product labels did not include a PDCAAS-derived %DV for protein in the NFP—either by pure omission of a %DV or by inclusion of a %DV that was not calculated using the PDCASS method. *See* ECF 73-2 (30(b)(6) deposition excerpts) at 95:21–97:3 (NFP did not include PDCAAS-derived %DV for protein).

### 1. Defendants' quantitative protein statements are nutrient content claims and protein claims.

Because the Product labels did not include a PDCAAS-derived %DV for protein in the NFP, so long as the Court determines that "5g Protein" is either a "nutrient content claim" under § 101.13; or a "protein claim" under § 101.9(c)(7); then Defendants' classwide liability under the UCL unlawful prong is established as a matter of law.

Under 21 C.F.R. § 101.13(c), "information that is required or permitted by § 101.9 or § 101.36, as applicable, to be declared in nutrition labeling, and that appears as part of the

nutrition label, is not a nutrient content claim and is not subject to the requirements of this section. **If such information is declared elsewhere on the label or in labeling, it is a nutrient content claim and is subject to the requirements for nutrient content claims**." Section 101.9(c)(7) required DKB to state the number of grams of protein in the NFP for the Products. Once DKB chose to declare that information "elsewhere on the label or in labeling," it became a "nutrient content claim . . . subject to the requirements for nutrient content claims." 21 C.F.R. § 101.13(c). Numerous courts, including this Court and the Ninth Circuit, have held that front label quantity statements are nutrient content claims. *See, e.g.*, ECF 139 at 8 (allowing plaintiff to "proceed on his claim that defendants violated FDA regulations that state that 'a nutrient content claim[] may not be made on the label or in labeling of foods unless' it provides a PDCAAS-based %DV for protein"); *Nacarino v. Kashi Co.*, 77 F.4th 1201, 1205 (9th Cir. 2023) ("When manufacturers make a claim outside the NFP that describes the amount of one of the nutrients required to be included in the NFP, FDA regulations refer to the statement as a 'nutrient content claim,' or, if the statement describes protein, a 'protein claim. The challenged claims here ['11g Protein' and 'PROTEIN 15g'] are protein claims because they appear outside the NFP and characterize the amount of protein in the products."); *Hawkins v. Kroger Co.*, 906 F.3d 763, 769–70 (9th Cir. 2018) (finding that "0 grams trans fat per serving" was a nutrient content claim); *Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111, 1121 (N.D. Cal. 2010) ("[a]n express nutrient content claim is a direct statement about the level or range of a nutrient in a food, like '100 calories'"); *Minor v. Baker Mills, Inc.*, 2020 U.S. Dist. LEXIS 258880, at *7 (N.D. Cal. Nov. 12, 2020) (claim of "8 grams protein" is a nutrient content claim); *Ulrich v. Probalance, Inc.*, 2017 U.S. Dist. LEXIS 132202, at *2 (N.D. Ill. Aug. 18, 2017) (a statement about "the number of grams of protein in each bottle" was a nutrient content claim); *Porter v. NBTY, Inc.*, 2016 U.S. Dist. LEXIS 163352, at *15 (N.D. Ill. Nov. 28, 2016) (front label claim of "60g Premium Protein" was a nutrient content claim). Thus, when DKB uniformly took the protein quantity figure from the NFP and placed it on the front of the Products' packaging, it became a nutrient content claim.

"A [nutrient content claim] may not be made on the label . . . unless the claim is made in accordance with this regulation," i.e., each provision within the section. 21 C.F.R. § 101.13(b).

- 9 -

Section 101.13(n), in turn, provides that "[n]utrition labeling in accordance with § 101.9 . . . shall be provided for any food for which a nutrient content claim is made." And finally, section 101.9(c)(7) mandates that, if a manufacturer makes a protein claim anywhere on the label it "shall" state the "corrected amount of protein" in the NFP expressed as a %DV, and calculated according to the PDCAAS method. Because DKB did not provide a PDCAAS-based statement of the corrected amount of protein presented as a %DV for protein in the NFP, section 101.13 directly prohibited them from making any protein nutrient content claims on the front label.

Moreover, even if the quantitative front label claims about protein were paradoxically not "nutrient content claims," it is impossible to conclude that they were not "protein claims" under § 101.9(c)(7). The only sensible way to define a "protein claim" is as any statement or representation about the protein in the product, meaning that "5g Protein" or similar protein quantity representations qualify. *See Nacarino*, 77 F.4th at 1205 ("The challenged claims here ['11g Protein' and 'PROTEIN 15g'] are protein claims because they appear outside the NFP and characterize the amount of protein in the products."). And, so long as the product makes any "protein claim" outside the NFP, a "statement of the corrected amount of protein per serving . . . shall be given" in the NFP. 21 C.F.R. § 101.9(c)(7)(i).

Thus, whether styled as a "nutrient content claim" and/or a "protein claim," by placing a quantitative statement of protein on the Products' front labels, Defendants were required to include a "statement of the corrected amount of protein per serving" in the NFP. 21 C.F.R. § 101.9(c)(7)(i). Defendants indisputably did not do so. Accordingly, they are liable under the UCL for violating the Sherman Law's incorporation of 21 C.F.R. § 101.9(c)(7)(i).

### D. DKB's Interpretation of the Regulations Is Untethered to the Text and Law.

DKB's Motion for Summary Judgment offers an untethered, countervailing interpretation of the relevant FDA regulations. *See* ECF No. 176 at 6. According to DKB—and their purported FDA regulatory expert—when a front label "merely restates" the grams of protein without any words "characterizing" the protein, such a statement does not constitute a "protein claim" under 21 C.F.R. § 101.9(c)(7)(i). ECF 176 at 14. The Ninth Circuit, however, has explicitly rejected

1  Defendants' position in a binding and published opinion. *Nacarino*, 77 F.4th at 1205. It is easy to

2  understand why.

3    As an initial matter, DKB completely ignores 21 C.F.R. § 101.13(c), under which the

4  quantitative statements of protein on Products' front labels are indisputably nutrient content

5  claims. As established above, the presence of a nutrient content claim requires compliance with

6  21 C.F.R. § 101.9. And when that nutrient content claim pertains to protein—i.e., when it is a

7  protein claim—the product must provide the corrected of protein per serving, calculated using

8  PDCASS, and expressed as a %DV in the NFP. 21 C.F.R. § 101.9(c)(7)(i).

9    The remainder of DKB's "reasoning," does not hold water. First, DKB claims their

10  interpretation is supported by their own internal regulatory department. ECF No. 176 at 6. But a

11  closer look reveals no basis for their conclusion beyond simple *ipse dixit*. ████████████

12  ████████████████████████████████████████████████

13  ████████████████████████████████████████████████

14  ████████████████████████████████████████████████

15  ████████████████████████████████████████████████

16  ████████████████████████████████████████████████

17  ████████████████████████████████████████████████

18  ████████████████████████████████    Regardless, the evidence is

19  irrelevant to the regulatory interpretation. What DKB *believed* the law meant has no bearing on

20  what it *actually* required (imagine the chaos that could ensue if companies needed only to

21  internally state that a law did not apply to them to be able to dispute its applicability). It is hard

22  to imagine how DKB could reach this conclusion and defend it now in the face of multiple courts

23  holding otherwise, and evidence that ████████████████████████████████

24  ████████ concluded that quantitative claims such as those on DKB's labels were protein

25  claims that required a PDCAAS-derived %DV for protein to be in the NFP, which, as noted below,

26  shows Defendants' knowledge and/or intent for the individual fraud claims. Reynolds Dec., Ex.

27  ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

28  [1] DKB also cites to the declaration of Dr. John Wallingford, in support of their argument. But Dr. Wallingford does not opine on FDA regulations; thus, Plaintiff assumes this is in error.

██████████████████████████████████████

██████████████████████████████████████

████████████████████████

Second, DKB's purported expert, Dr. Trumbo, provides no additional support. The myriad reasons for which Dr. Trumbo's report and opinions should be disregarded are explained at length in Plaintiff's motion to exclude (ECF No. 180). Dr. Trumbo's declaration is an ungrounded, farfetched legal conclusion wrapped in the guise of an expert report. According to Dr. Trumbo, the "FDA does not consider the declaration of protein content (e.g., '5g protein') to be a nutrient content claim that characterizes the amount of protein (or 'protein claim)." ECF 176-19 6, ¶ 17. Yet the regulations clearly state that "[i]f such information is declared elsewhere on the label or in labeling, *it is a nutrient content claim* and is subject to the requirements for nutrient content claims." 21 C.F.R. § 101.13(c). Dr. Trumbo has no answer for this inconsistency (indeed, she never cites this provision). Nor is she able to account for contradictory interpretations by the FDA itself, as well as numerous courts. *See* ECF 180-3 at 209:2–210:21 (discussing *Nacarino v. Kashi* and her disagreement with the court); 219:14–220:11 (discussing *Reid v. Johnson & Johnson* and stating she disagrees with the court); 236:24–237:9 (Dr. Trumbo stating that she disagrees with this Court's analysis); 227:3–228:8 (discussing *Guerra v. Kind* and her disagreement with the court); 270:14–271:15 (discussing FDA warning letter contradicting her interpretation and her disagreement with the analysis therein); ECF 180-2 at 3.

In sum, before this Court is a pure question of law. And neither the facts nor the law are in reasonable dispute: DKB's front label protein claims violated federal and state regulations. Accordingly, this Court should grant Plaintiff partial summary judgment as to unlawfulness.

## IV.    PLAINTIFF'S OPPOSITION TO DKB'S MOTION FOR SUMMARY JUDGMENT

### A.    DKB's *Sonner* Argument Fails; This Court Has Equitable Jurisdiction.

#### 1.    There is no remedy at law for Plaintiff's UCL unlawful prong claim.

Plaintiff and the Class's UCL claim alleges that DKB engaged in *unlawful* competition by using a front label protein claim to advertise its products in violation of California's Sherman

Law and parallel regulations under the FDCA. The Sherman Law, although legal in nature, contains no private right of action and thus no remedy at all for DKB's unlawful conduct. *Thomas v. Costco Wholesale Corp.*, 2015 U.S. Dist. LEXIS 106831, at *20 (N.D. Cal. Aug. 13, 2015) ("As the parties acknowledge, there is no private right of action under the Sherman Law"). The FDCA similarly provides no private right of action and thus, no remedy at law for DKB's conduct either. *See Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 349 n.4 (2001)). Accordingly, the *only* remedy available for DKB's unlawful competition is an equitable claim under the UCL's unlawful prong. Since there is no legal remedy at all, let alone an "adequate" one, this Court easily has equitable jurisdiction over the claim.

DKB contends that Plaintiff's *fraud* claim as to the *back label* is adequate to remedy DKB's *unlawful* conduct on the *front label* simply because in *Sonner*, the Ninth Circuit held that a fraud claim was an adequate remedy for a UCL claim. But there, the UCL claim was one for "false advertising" under the *fraudulent* prong; there were no claims that the defendant engaged in separately *unlawful* conduct. *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 837–38 (9th Cir. 2020). It is unsurprising that a legal claim for *consumer fraud* is adequate to remedy an equitable claim also for *consumer fraud*. But here, a *fraud claim* is *no remedy at all* for the Defendants' *unlawful competition* because they embrace different underlying legal theories and involve proof of different elements. For example, the fraud claim turns on whether DKB's *back label* omission was "likely to mislead a substantial portion" of reasonable consumers about the quality of the protein in its products. *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016). By contrast, as explained above, the unlawfulness claim turns on whether DKB's *front label* "5g protein" claim was a "nutrient content claim" and/or a "protein claim" under the applicable regulations—consumer deception plays no role. Indeed, several courts have recognized that "*Sonner* . . . did not purport to disturb the well-established rule that equitable and damages claims may coexist when they are based on different theories," even where those theories involve some (or all) of the same underlying facts. *Brown v. Natures Path Foods, Inc.*, 2022 U.S. Dist. LEXIS 42760, at *6 n.5 (N.D. Cal. Mar. 10, 2022); *Elgindy v. AGA Serv. Co.*, 2021 U.S. Dist. LEXIS 61269, at *46 (N.D. Cal. Mar. 29, 2021).

*Elgindy* is instructive. There the plaintiffs alleged that the defendant's addition of certain fees for non-insurance "assistance services" to the price of its travel insurance products was both deceptive as a hidden fee *and* unlawful in violation of various California insurance statutes and regulations. *Elgindy*, 2021 U.S. Dist. LEXIS 61269, at *46. The defendants argued that the fraud claims precluded the UCL unlawful prong claims under *Sonner* because both embraced the same underlying conduct, which meant that the fraud claim provided an adequate remedy at law. *Id*. But the court held that "*only* equitable claims are available on Plaintiffs' theory that Defendant's services fee violates California insurance statutes and regulations. Therefore, Plaintiffs are entitled to pursue equitable relief under this theory." *Id.* (emphasis added). As the court explained, "Plaintiff's claims under the unlawful and unfair prongs of the UCL are rooted in a different theory than Plaintiff's common-law fraud, FAL, and UCL fraudulent prong claims," which meant that none of those fraud-related claims was a remedy at all for the unlawful conduct in which the Defendant was alleged to have engaged. *Id*. The same holds true here. *See also Rausch v. Flatout, Inc.*, 660 F. Supp. 3d 855, 863 (N.D. Cal. 2023) (allowing UCL unlawful protein labeling claims identical to those at issue here to proceed despite the presence of fraud claims identical to those at issue here because the "legal [fraud] claims require proof of conduct beyond that which must be shown to establish liability for their equitable [unlawfulness] claims"); *Barnes v. Unilever United States Inc*., 2023 U.S. Dist. LEXIS 41196, at *31 (N.D. Ill. Mar. 11, 2023) (plaintiff "lacks an adequate remedy at law for her allegations that Unilever violated the California Sherman Act, which is the basis of her unlawful practices CUCL claim" despite also pursuing deception claims).

### 2. Even if the fraud claim as to the *NFP* were a remedy for DKB's unlawful *front label* advertising, it would be inadequate.

Under *Sonner,* a remedy at law is adequate only if it awards "the same amount of money for the exact same harm." 971 F.3d at 844. Here, even if the fraud claim as to the *back label* could be said to provide some sort of remedy for the Defendants' *illegal conduct* on the *front label*, it would clearly fall short of *Sonner's* adequacy requirement. In the first instance, both claims are directed at remedying *different harms*. The fraud claim remedies the harm of deceiving consumers about the quality of the protein in the Products. The unlawfulness claim, by contrast, remedies

the *harm to competition* from DKB's use of an illegal advertising claim on the front label to attract consumers to its products and away from competitors who were complying with the law.

Unsurprisingly, those different harms also result in different amounts of money at issue. Restitution under the unlawfulness claim is, as this Court has recognized, measured by the "the price premium associated with defendants' alleged violation of the regulatory scheme at issue." ECF 139 at 8. That means the amount of money DKB was able to overcharge consumers as a result of its unlawful front label advertising claim, measured by the price difference that results from removing that front label claim. *See* ECF 176-6 at 37. By contrast, the fraud claim as to the *back label* could never be measured by removing the *front label* protein claim, because any claims as to the front label being fraudulent are preempted by federal law. ECF 34 at 4-8. Instead, only the omission of the %DV on the back label is fraudulent, and that claim would have to be measured by the difference in the value of the product had consumers known the true quality of the protein it contained, i.e., the true percent of daily protein value it provides. *See Fragale v. Faulkner*, 110 Cal. App. 4th 229, 236 (2003) (fraud damages award only "the difference in value between what he actually received and what he was fraudulently led to believe he would receive.").

DKB asserts that "[t]he money Swartz seeks to recover on behalf of himself and the class through restitution under the UCL is identical to the money he seeks as damages under his CLRA claim." ECF 176 ("Motion") at 10. In support of its argument, DKB cherry-picks portions of Plaintiff's complaint, arguing that Plaintiff's UCL restitution in the form of a price premium is identical to the remedy sought under the CLRA. Motion at 10 (quoting First Am. Comp. ¶ 96). But just because Plaintiff alleged that both *could* be measured by a price premium does not establish that the price premium available under the CLRA would be identical to the price premium available under the UCL unlawfulness prong. Indeed, as explained above, both price premia would *have to* be different as they would *have to* be measured differently since this Court's order on the first motion to dismiss prohibits measuring fraud damages by reference to the front label claim. DKB never deals with this inconvenient fact, even though this Court has already approved measuring restitution under the unlawful prong claim via removing the illegal front label protein claim. *See* ECF 139 at 8. Moreover, this is summary judgment, and the time for

relying on allegations has passed. DKB offers no evidence that measuring damages for the *back label* fraud claim would result in the same amount of money as the *front label* unlawfulness claim, and it is inconceivable that those two different claims, subject to two different measurements and calculations, could result in the exact same amount of money being at issue.

Further, where equitable restitution is "more certain, prompt, or efficient" than the legal remedies available, a plaintiff is permitted to pursue equitable remedies. *See Am. Life Ins. Co. v. Stewart*, 300 U.S. 203, 214 (1937) ("A remedy at law does not exclude one in equity unless it is equally prompt and certain and in other ways efficient."); *Crowder v. Shade Store, LLC*, 2025 U.S. Dist. LEXIS 43189, at *7–8 (N.D. Cal. Mar. 10, 2025) (allegations that damages were inadequate because restitution is "more certain, prompt, and efficient" to be sufficient to pursue equitable relief). Here, Plaintiff's UCL unlawful prong claim is more certain and efficient than Plaintiff's fraud claims. Unlike Plaintiff's legal claims that require a showing of deception, the only element of Plaintiff's UCL claim is to establish that DKB violated the relevant regulations. *Bruton v. Gerber Prods. Co.*, 2017 U.S. App. LEXIS 12833, at *6 (9th Cir. July 17, 2017) (Unless reasonable consumer deception is an element of the predicate violation, it is not an element of a claim under the unlawful prong.). A showing of deception requires not only establishing that Plaintiff was deceived, but also that a reasonable consumer would be deceived. This question goes to a jury, whereas Plaintiff's UCL claim is subject to a bench trial. *See Nationwide Biweekly Admin., Inc. v. Superior Court*, 9 Cal. 5th 279, 304 (2020). Moreover, while Plaintiff himself must establish Article III and statutory standing (which he has done), there is no requirement under the UCL to show class wide reliance, whereas there is such a requirement under the CLRA. *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1020 (9th Cir. 2011) (citing *In re Tobacco II Cases*, 46 Cal. 4th 298, 320 (2009)); *see also* ECF 37 (First Am. Compl.) ¶ 86 (alleging "Plaintiff and the Class lack an adequate remedy at law to obtain such relief with respect to their 'unlawfulness' claims in this UCL cause of action because the California Sherman Law does not provide a direct cause of action, so Plaintiff and the Class must allege those violations as predicate acts under the UCL to obtain relief"). Because Plaintiff's UCL unlawful claim is more certain, prompt, and efficient than his legal claims, this Court has jurisdiction for his equitable claims.

3.    **DKB waived their objection to this Court's equitable jurisdiction, or at minimum allowing it would be unfair.**

"[U]nlike lack of [subject matter] jurisdiction as a federal court, lack of equity jurisdiction (if not objected to by a defendant) may be ignored by the court. . . . [a]nd where the defendant has expressly consented to action by the court or has failed to object seasonably, the objection will be treated as waived." *Pusey & Jones Co. v. Hanssen*, 261 U.S. 491, 500 (1923). Moreover, "equitable doctrine . . . concerns itself with fairness to litigants." *Mangum v. Action Collection Serv., Inc.*, 575 F.3d 935, 948 (9th Cir. 2009). This case has been pending for nearly four years (ECF 1); DKB filed three separate motions to dismiss (ECF 20, 39 & 87); Plaintiff routinely stated that he believed that the "claims asserted under the UCL's unlawful prong . . . *are the primary claims in this case*," (ECF 40 at 1), not the fraud claims (*see also* ECF 37 at ¶¶ 6, 22, 38, 41, 42, 44, 46, 79, 111); and the parties participated in years of discovery. Yet, it was only *after* Plaintiff sought to certify *solely* the equitable unlawfulness claim that DKB chose to raise any objection to this Court's jurisdiction over that claim. As a result, the objection is not only unseasonable, and thus waived, but reeks of gamesmanship and is manifestly unfair to Plaintiff and the class. Accordingly, this Court should reject it. *See Hadley v. Kellogg Sales Co.*, 2019 U.S. Dist. LEXIS 136791, at *46–48 (N.D. Cal. Aug. 13, 2019) (declining to consider argument that defendant did not raise in six prior motions because it would be "rewarding [defendant] for effectively sandbagging Plaintiff and would be clearly erroneous and a manifest injustice.")

DKB argues that its objection is timely because it "was raised in *Sonner* on the eve of trial." Motion at 10. But that glosses over a distinction that the Ninth Circuit took pains to acknowledge: the parties were on the eve of trial when *the plaintiff* engaged in gamesmanship by seeking to drop his legal claims to avoid a jury trial and secure a bench trial, which he believed advantageous. The district court had warned counsel at a hearing that "it would be 'open season' on a motion to dismiss and that Sonner was taking a 'chance' by dropping the damages claim," and yet he continued. *Sonner*, 971 F.3d at 838. Thus, far from being sandbagged, plaintiff invited the argument through his own conduct. Here, by contrast, DKB is the one playing games.

B.    **Swartz Has Statutory Standing to Pursue the UCL Claims.**

DKB relies on the same stale arguments this Court already rejected to claim that Plaintiff

- 17 -

lacks standing to pursue his UCL claim.[2] To have statutory standing under California's Prop 64, the named plaintiff needs to show that his injury occurred "as a result of" the defendants' unlawful conduct. *In re Tobacco II Cases*, 46 Cal. 4th at 325. This means that the conduct must be a direct, "immediate producing cause" of the injury. *Id.* at 326. Notably, the California Supreme Court has explained that actual reliance means only that the challenged labeling claim was a "substantial factor" in the named plaintiff's decision to purchase the product at issue. *Id.* at 326.[3] It need not "be the sole or even the predominant or decisive factor in influencing" the purchasing decision. *Id.* Indeed, "it is not even necessary [to show that [the plaintiff] would not have acted or refrained from acting as he did unless he had relied on the misrepresentation." *Konik v. Time Warner Cable*, 2009 U.S. Dist. LEXIS 138618, at *49 n.13 (C.D. Cal. Dec. 2, 2009) (quoting Restatement (Second) of Torts, Section 546 at cmt. B—the provision on which *Tobacco II* relied to announce the reliance test). Instead, as long as the label "has played a substantial part, and so has been a substantial factor, in influencing his decision" to purchase the product, reliance is satisfied. *Tobacco II*, 46 Cal. 4th at 326. Moreover, the Plaintiff need only show that the label was a substantial factor "for at least *some* of [his] purchases" to have standing. *Clay v. CytoSport, Inc.*, 2018 U.S. Dist. LEXIS 129300, at *9 (S.D. Cal. July 31, 2018) (emphasis added).

### 1.    There is no dispute of material fact regarding Plaintiff's reliance on the unlawful labeling.

DKB argues that "Swartz lacks statutory standing to pursue the Certified UCL claim" because he did not "[rely] on the allegedly unlawful omissions." Motion at 20. As this Court

---

[2] DKB's repetition of this argument not only ignores this Court's prior orders, but also violates this Court's standing order. This Court requires parties to file a pre-filing conference statement explaining "the grounds for the motion" to receive leave of court to file a motion for summary judgment." Standing Order ¶ 9. DKB filed their letter on April 16, 2025 and did not include their standing argument as a basis for its motion in the letter. *See* ECF 153. Had they done so, this Court may have denied permission to proceed on this ground, as it is based on the same arguments and testimony this Court already considered when it held at that Plaintiff had standing. ECF 139.

[3] Courts have held actual reliance is not required under Prop 64 for a UCL unlawful prong claim where the underlying regulation does not itself require proof of a misrepresentation. *See Cappello v. Walmart Inc.*, 394 F. Supp. 3d 1015, 1020 (N.D. Cal. 2019) ("When a plaintiff alleges a different type of unfair competition not based on a misrepresentation, however, courts have dispensed with the actual reliance requirement."). Regardless, Plaintiff has demonstrated actual reliance for all of his claims.

already held, for Plaintiff's unlawfulness claim, "the lack of a %DV is relevant only insofar as it establishes that defendants allegedly violated regulations, but plaintiff is not required to show that his injury stemmed from reliance on that claim." ECF 139 at 5. DKB emphasizes the distinction between reliance required for Article III standing, which is what this Court addressed, and statutory standing. While the Article III standing requirement may be more lenient, whether Plaintiff is required to have relied on the unlawful front label or the unlawful front and back label does not change among the two analyses.

As described above, Plaintiff alleges two theories of unlawfulness. *See supra* § III.C.1. The first relates to the front label protein nutrient content claim and is the only claim certified in this case. *See* ECF 139. In short, the front label protein content claim was unlawfully present and should never have appeared at all during the class period on any product because DKB failed to satisfy the regulatory prerequisites for making the claim. This Court has already accepted this interpretation of the regulations. ECF 139 at 5, 8; ECF 46 at 2, 4. So too have numerous other courts. *See*, *e.g.*, *Rausch*, 660 F. Supp. 3d at 859; *Roffman v. Perfect Bar, LLC*, 2022 U.S. Dist. LEXIS 159762, at *11 (N.D. Cal. Sep. 2, 2022).

As this Court held, "plaintiff's [unlawfulness] claim does not require reliance on a misleading statement" and because "the lack of a %DV is relevant only insofar as it establishes that defendants allegedly violated regulations [] plaintiff is not required to show that his injury stemmed from reliance on that claim." ECF 139 at 5. The question of whether the 5g protein claim was unlawfully present on the front label turns on whether DKB provided a PDCAAS-based %DV for protein in the NFP, but it does not turn on whether the Plaintiff ever looked there. The regulations do not state that it is legal to make a front label protein claim despite the absence of a %DV in the NFP, so long as the purchaser never looks back there. Accordingly, because the legality of the DKB's conduct *vis a vis* the front label does not depend on the Plaintiff's reliance on the NFP, neither does Prop 64. He lost money (i.e., was economically injured) by paying the price premium associated with that unlawful front label *regardless* of his reliance on the NFP.

Plaintiff testified that he relied on the front label protein claim. *See*, *e.g.*, ECF 103-3 at 92:4–25 (protein was important because of his concern about his daughter's growth); 147:19–24

(protein was determinant of his purchase). He testified that protein was particularly important to him at that time because of his concern over his young daughter's growth. *See*, *e.g.*, *id.* at 154:8–15 (protein was primary determinant of his purchase because of his daughter); 168:13–22 ("I was trying to get as much protein into my daughter as possible"); 198:15–199:3 (protein was important because "maximizing [his daughter's] protein intake was a large part of our strategy" to support her growth). Indeed, protein was the most important determinant in his purchasing decision. *See*, *e.g.*, *id.* at 154:16–24 ("Protein content was the determinant. That's why I was willing to buy the most expensive bread in the section"); 157:9–16 (protein content was reason he picked Dave's Killer Bread). This is more than sufficient to establish his reliance on both the front label.

### 2.    Plaintiff relied on the NFP.

Plaintiff's second unlawful prong theory relates to the nutrition facts panel on the back label. Plaintiff alleges that the NFP is itself unlawful due to the omission of a statement of the corrected amount of protein per serving (expressed as a %DV). *See supra* III.C.1. Because DKB made a protein claim on the front, but left the column for the %DV for protein completely blank, they violated § 101.9(c)(7)(i) and accordingly violated the Sherman Law. *See* FAC ¶¶ 6, 23, 38, 42. As explained above, to have standing under Prop 64 for this claim, he needs to establish reliance on the NFP. The same holds true for Plaintiff's misleading by omission claim. A plaintiff establishes reliance on an omission by showing that "had the omitted information been disclosed, [he or she] would have been aware of it and behaved differently." *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1225 (9th Cir. 2015); *see also Baranco v. Ford Motor Co.*, 294 F. Supp. 3d 950, 967 (N.D. Cal. 2018) (summarizing California law on reliance for consumer protection claims). That a plaintiff would have behaved differently can be presumed or inferred when the omission is material. *Daniel*, 806 F.3d at 1225 (citation omitted).

Here, Plaintiff testified that he would have been aware of the %DV had it been disclosed because he is "sure that [he] read the nutrition facts panel," "specifically gravitated towards [this product] because of protein" and thus, "would have also been looking for the percent daily value" because he usually "compare[s] the percent daily value and that actual amount and like I said – correlate it with the serving size." ECF 103-3 at 140:19–141:24; 145:15–147:3; *see also id.* at

84:19–23 (reviewed NFP when purchasing) 91:2–6 (looked at protein in NFP when purchasing); 94:16–95:18 (looked at NFP and used it to compare products); 142:1–8 (looked at NFP before purchasing and used it to compare products); 142:12–143:2 (same); 143:19–144:9 (protein was most important in NFP because of his daughter's growth); 144:18–145:2 (same); 146:11–147:4 (relied on protein labeling on front and back and used %DV to compare products); 147:19–24 (protein was determinant of his purchase). He also testified that he would have "behaved differently" initially had DKB disclosed a low percent %DV for protein. For example, he testified that "some numbers cannot make sense or be really high or really low. And it would [pique] my interest and potentially make me dig further." *Id*. at 107:23–109:3. He also testified that had DKB disclosed 3%DV for protein he "would be inclined to buy the one that had a higher percent DV" and also that he would be "inclined to figure out" why the %DV was so low. ECF 103-3 at 201:5–202:12; *see also id*. at 176:7–177:15 (two products with same grams protein but different %DV would have caused him to "wonder why" and he would have "[tried] to figure it out"); 177:16–178:1 ("I would be puzzled as to why, and I would do further digging"); 202:2–12 ("I would be inclined to buy the one that had a higher percent DV.").

Not only does the evidence show that Plaintiff would have acted differently had DKB disclosed a PDCAAS-based %DV, it also demonstrates how protein, and specifically the %DV for protein, were material to Plaintiff's purchasing decisions, which allows the Court to infer reliance. *Daniel*, 806 F.3d at 1225. Plaintiff has a practice of looking for the %DV for protein. ECF 103-3 at 84:19–23 (testifying he usually looks at the NFP when purchasing a new product). The information provided for protein %DV affects his product selections; Plaintiff uses it to compare products and to help him choose products with higher %DVs for protein when a manufacturer provides that information (though not all do). *Id*. at 146:20–147:3 ("usually I compare the percent daily value and the actual amount [of protein]"). When given the option of two products with different %DVs, Plaintiff chooses the one with the higher %DV for protein. *Id*. at 202:2–12. Plaintiff believed that "the product would actually provide the specific amount of protein on the front label in a form the body could utilize as protein." FAC ¶ 61; ECF 103-3 at 152:4–16 (Based on the 5 gram protein statement "I would assume that it's protein that is useful

to a human."). Without the %DV, Plaintiff had no reason to believe the products provided less protein than represented. ECF 103-3 at 153:4–11 ("[T]here is no percent daily value listed on it. There is no additional information to sway my understanding of [protein content]").

DKB raises two arguments to challenge Plaintiff's reliance on the NFP, neither of which entitles it to summary judgment, and neither of which is supported by case law. The first defies logic. DKB seizes upon Plaintiff's inability to specifically recall whether 8 years ago DKB's NFP had a %DV for protein or not, and an off-hand remark that they *might* have had one, as proof that he could not have relied on the NFP had they *actually* had one. Motion at 14. But whether or not he recalls if the Product included a %DV in 2016 does not mean that the Product somehow became magically imbued with a %DV based on PDCAAS that was, in fact, not there. DKB does not dispute that at the time Plaintiff first purchased the Products, the NFP did not include a PDCAAS-based %DV for protein. ECF 72-4 at 51:1–53:10, 60:8–61:19, 115:6–10. So, the whole line of questioning is little more than attorney driven "gotcha." DKB also conveniently ignores that Plaintiff later clarified that "[i]ts possible that the reason I don't remember [the %DV] is because it wasn't there." ECF 103-3 at 197:21–22. In any event, the whole point is irrelevant. It is undisputed that the product *did not have* a PDCAAS-based %DV at any time when Plaintiff purchased the Products, thus nothing detracts from his testimony that seeing a low %DV, such as 3%, would have caused him to act differently. ECF 73-8, Exs. 23-47.

DKB's second argument is that Plaintiff's testimony shows that he does not know how the %DV for protein is calculated, he could not perform the calculation to compare the %DV to the grams of protein, and therefore "the %DV is meaningless to him." Mot. at 14.[4] Nothing requires the Plaintiff to be able to convert the %DV into the corrected amount of protein per serving to have standing to challenge the illegality of Defendants' omission of the %DV. *See Rausch*, 660 F. Supp. 3d at 861 (rejecting argument that a consumer must have "regulatory or mathematical skill" to convert the %DV to grams of digestible protein in order for the %DV to

---

[4] DKB also cites the report of Dr. Wallingford to cast doubt on the FDA-required PDCAAS method. As it acknowledges, Dr. Wallingford's opinion is "not material to the motion." Regardless, it is also irrelevant and refuted. *See* Reynolds Dec., Ex. 22 (Dr. Wolfe report).

be helpful in dispelling deceit. "[A] consumer might see '20% of the daily value of protein' and think, 'I'd have to eat roughly five of these to get enough protein for the day.'"); *see also* ECF 103-3 at 108:6–18 (Plaintiff looks at the %DV because "I don't generally have a really keen understanding of how much of specific things somebody is supposed to take in. . . And it can be a good way to compare products."). Contrary to DKB's conclusion that the "'%DV was completely irrelevant to Swartz's purchasing decision'" (Mot. at 14) his testimony confirms that without the %DV, he could not compare similar products and that he did not have any reason to believe that the Products provided less protein:

> Q: Okay. If you -- if you were in the store and you were comparing two products, and they both had the same five gram protein claim, and next to it, there was one that had a 3 percent DV and another one with a higher DV -- let's say 4 or 5 percent. All things being equal, which would you purchase?
>
> A: I would be inclined to buy the one that had a higher percent DV. I would also be inclined to figure out why that was.

ECF 103-3 at 202:2–12.

Without the %DV, Plaintiff had no ability to compare Products, and no reason to question whether the 5g protein was actually usable as protein. *See also* 55 Fed. Reg. 29476 (July 19, 1990) (noting that %DV allows consumers to judge the usefulness of a food in meeting overall daily recommended consumption levels and to compare the nutrient contributions of different foods.). Thus, he has adequately alleged that he relied on the omission in the NFP.

### 3. Plaintiff's single post-complaint purchase does not defeat reliance as a matter of law for his repeated pre-complaint purchases.

DKB ignores this Court's Order that rejected their argument that a post-filing purchase defeats standing: "Plaintiff's one-time post lawsuit purchase because his child had become accustomed to its taste is not relevant to the inquiry as he can assert that the protein considerations were no longer as significant as when the child was young." ECF 139 at 4.

Undeterred, DKB argues that Plaintiff's single post-filing purchase "confirms" that "Swartz would not have 'behaved differently' had the %DV been disclosed." Motion at 15. As this Court recognized, a single post-lawsuit purchase "is not enough to defeat reliance." ECF 139 at 4 (citing *Clay*, 2018 U.S. Dist. LEXIS 129300, at *9). Plaintiff testified that when he first started purchasing the product approximately 8 years ago, he was very concerned about feeding

his young daughter protein. *See* ECF 103-3 at 198:15–199:3, 93:1–11; ECF 103-4 ¶¶ 3–4, 6. By the time of this lawsuit, however, when his daughter was 9 years old, that concern had lessened. ECF 103-3 at 93:13–15; ECF 103-4 ¶ 8. Instead, there was now another factor at play: his daughter turned out to be a picky eater and was accustomed to eating Dave's Killer Bread. ECF 103-3 at 55:23–56:3, 80:22–81:6, 119:15–25, 121:7–17; ECF 103-4 ¶¶ 6, 8. Since Plaintiff had not found an alternative that she would accept, not disturbing his daughter's eating habits was a more substantial factor than his new knowledge that DKB's protein was poor quality, especially since he was no longer as concerned about his daughter's growth. *Id*. So, he knowingly chose to make another purchase. But this does not establish that the protein labeling was *never* a substantial factor in his decision to purchase the Products. And, as described above, the rest of his testimony establishes the opposite. Nor does it somehow eliminate (or even diminish) his injury.

Moreover, numerous courts including this one have explicitly rejected DKB's belief that a Plaintiff's potential lack of reliance at one point in time defeats reliance for all points of time. *See* ECF 139 at 4. In *Backus v. ConAgra Foods, Inc.*, the plaintiff had "purchased the products during times when the labels at issue were not present" and had purchased some of the defendant's similar products that did not have the disputed labeling claim. 2016 U.S. Dist. LEXIS 178227, at *6–7 (N.D. Cal. Dec. 22, 2016). Defendant moved for summary judgment, arguing that this necessarily defeated reliance, but the court disagreed. *Id*. It explained that, because the plaintiff may have purchased the products "at different times and for different reasons, but he may yet have relied at some point on the 'healthy lifestyle' claim in purchasing the products at issue during the time period at issue," the testimony was not sufficient to defeat reliance as a matter of law. *Id*.

Similarly, in *Clay v. CytoSport, Inc.*, the plaintiff admitted that "when she first bought the products as a teenager, she did not read the label," or pay attention to the protein claim at that time, which defendant argued entitled it to summary judgment on the issue of reliance. 2018 U.S. Dist. LEXIS 129300, at *9. But the defendant did "not establish that" this was "the only relevant reliance" given the plaintiff's 15 year purchasing history. *Id*. The court held that the plaintiff's testimony that "she used [Defendant's] products because she thought that they were high in protein . . . is sufficient for a reasonable jury to conclude that Clay relied on the protein content

at least for *some of her purchases*." *Id.* (emphasis added). That is true here as well. DKB has not established that the post-lawsuit purchase is the "only relevant" time period in which to consider reliance. *See also Hawkins v. Kroger Co.*, 512 F. Supp. 3d 1079, 1092–93 (S.D. Cal. 2021); *Rahman v. Mott's LLP*, 2014 U.S. Dist. LEXIS 147102, at *21–23 (N.D. Cal. Oct. 15, 2014) (plaintiff's testimony that he "continued to purchase Mott's even when the 'No Sugar Added' statement was not present on the label" was insufficient to justify summary judgment on reliance).

DKB's cited cases do not support their argument. Mot. at 15. Both cases address circumstances where the plaintiff testified that he "would not have been deterred from making the purchase" (*Baghdasarian v. Amazon.com, Inc.*, 458 F. App'x 622, 623–24 (9th Cir. 2011)) even if he were aware of the challenged practice, or that the plaintiff "would have purchased [the product] even if the packaging had [the omitted disclosure]." *In re NJOY, Inc. Consumer Class Action Litig.*, 120 F. Supp. 3d 1050, 1088 (C.D. Cal. 2015). Here, DKB cannot point to similar testimony, and instead Plaintiff's testimony confirms he would have behaved differently if the PDCAAS-derived %DV for protein were in the NFP as the law requires.

### 4. Plaintiff and the Class lost money as a result of DKB's unlawful labeling.

In calculating damages or restitution, "California law requires only that some reasonable basis of computation of damages be used, and the damages may be computed even if the result reached is an approximation." *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 989 (9th Cir. 2015). "The fact that the amount of damage may not be susceptible of exact proof or may be uncertain, contingent or difficult of ascertainment does not bar recovery." *Id.* Summary judgment is appropriate only where plaintiffs have no testimony, expert witnesses, or documents providing evidence from which a jury could estimate damages. *Rickards v. Canine Eye Registration Found., Inc.*, 704 F.2d 1449, 1452 (9th Cir. 1983); *see also McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 808 (9th Cir. 1988) (Plaintiff need only "provide evidence such that the jury is not left to 'speculation or guesswork' in determining the amount of damages to award"). "Class wide damages calculations under the UCL . . . are particularly forgiving. California law requires only that some reasonable basis of computation of damages be used, and the damages may be

computed even if the result reached is an approximation." *Lambert v. Nutraceutical Corp.*, 870 F.3d 1170, 1183 (9th Cir. 2017), rev'd on other grounds, sub nom. *Nutraceutical Corp. v. Lambert*, 139 S. Ct. 710 (2019).

Here, Plaintiff seeks to recover the price premium associated with the at-issue protein claim, which is "well established" as the "valid measure of damages." *Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084, 1104 (N.D. Cal. 2018); *see also* ECF 139 ("Plaintiff's methodology is consistent with his theory of liability, however, because it evaluates the price premium associated with defendants' alleged violation of the regulatory scheme at issue."). To do so, Plaintiff's expert Colin Weir designed and executed four conjoint surveys that isolate the value that consumers in the relevant market attached to the at-issue label claims. Based on these surveys, Mr. Weir concluded that the protein claims commanded a price premium. ECF 176-6, Ex. D at 26 (Weir Report). To determine restitution for Plaintiff and the Class, Mr. Weir multiplied the price premium factor for each product group by the price paid for the units during the Class Period to arrive at the amount the Class overpaid as a result of DKB's unlawful labeling. *Id.* at 35–36.

DKB does not dispute that conjoint is a scientifically sound methodology. Nor does DKB dispute that Mr. Weir's calculations of the total damages amount. Instead, DKB resuscitates arguments this Court has already rejected.[5]

### a)    Weir's Survey Accounts for the Location of the Protein Claim

DKB raises not just one argument this Court rejected at class certification about the damages model, but two. DKB again argues that the restitution model "did not account for the placement of the protein statement on the label" this time suggesting it will entitle them to summary judgment. Motion at 17. But, as the Court said in its class certification order, the survey

---

[5] DKB present their attacks on Weir in their argument that Swartz does not have statutory standing to pursue his unlawful claims, arguing that "there is no evidence that Swartz—or any other class member—lost money as a result of the allegedly unlawful practice." ECF 176 at 24. Plaintiff is not required to show the class has statutory standing. *See Clay*, 2018 U.S. Dist. LEXIS 153124, at *16 (S.D. Cal. Sep. 7, 2018) ("In class actions alleging UCL and FAL violations, once a class representative establishes statutory standing, injunctive relief and restitution are 'available without individualized proof of deception, reliance and injury.'"(citation omitted)). Because DKB references their arguments in other sections of their motion (*see*, *e.g.*, Motion at 22), Plaintiff addresses these arguments to show he has statutory standing and there is a triable issue of fact on the restitution owed to the class.

"demonstrates that users are being asked about front-of-package claims. The '5g Protein' claim at issue is provided alongside other claims that appear on the front of packages. Further, respondents would not confuse the '5g protein' claim for a NFP claim because there are no other claims in the survey that are typically included in a NFP." ECF 139 at 7.

Nevertheless, DKB reasserts the argument here. Despite lacking any evidence to suggest that even one respondent was confused about the location of the statement, DKB argues that because Mr. Weir included a "0g trans fat" claim as one of the tested label statements in one of his four surveys, the Court's previous rationale for rejecting this argument is now "wholly untrue." ECF 153 at 3. As an initial matter, DKB ignores that it remains "wholly true" that the "5g Protein" claim is still presented "alongside other claims that appear on the front of packages," which was the Court's primary reason for rejecting the argument previously. Moreover, although "0 g trans fat" or "70 calories" can appear in the NFP, it also regularly appears as *a front label claim* as well. *See Hawkins*, 906 F.3d at 771. (holding that "0g trans fat per serving" on a product's *front label* was a nutrient content claim). So too does "calorie content." *See* 21 C.F.R. § 101.13(b)(1) ("An expressed nutrient content claim is any direct statement about the level (or range) of a nutrient in the food, e.g., . . . 'contains 100 calories.'").

DKB relies on their expert Dr. Kivetz to argue that the executed surveys do not measure the price premium of the front label protein claim. Dr. Kivetz states, with no basis, that "survey participants reasonably would have believed that the protein 'label statement' referred to any statement on the label, including the protein statement in the nutrition label, and that a product profile without a protein statement means that the entire label lacked any such statement." ECF 176-12 (Kivetz Report) at ¶ 17. Yet Dr. Kivetz did not interview any respondents to test his hypothesis. Reynolds Dec., Ex. 1 at 115:4–116:20. Furthermore, in deposition, when confronted with labels that do include these claims on the front labels, Dr. Kivetz admitted that these statements could and do in fact appear on the front label of competitor products. *Id*. at 113:13–24. Claims like 0g trans fat and 70 calories are the only two examples he provides of statements that can appear in the NFP to support his conclusion that respondents would believe the tested protein claim appeared in the NFP. These two claims appear in the bagels survey (0g trans fat)

and the thin-sliced bread survey (70 calories). *See* ECF 176-6, Ex. D (Weir Report) at 18, Table 1. Dr. Kivetz does not cite any other claims to support his conclusion; thus DKB cannot offer this criticism with regards to the other two surveys: sliced bread and burger buns.

Although two of the claims in the survey *may* appear in both locations, the remaining 25 claims in the survey appear *only on the front label*, e.g., "Heart Healthy"; "No High Fructose Corn Syrup"; "USDA Organic;" "NON-GMO"; "No Artificial Flavors" etc. The Court's prior rationale remains in full effect. And, regardless, DKB's argument about the wording of two of the four surveys would, at best, be a jury argument going to the weight rather than the admissibility. *See, e.g., Billfloat Inc. v. Collins Cash Inc.*, 105 F.4th 1269, 1275 (9th Cir. 2024) ("[A survey] should be admitted as long as it is conducted according to accepted principles and is relevant. Technical inadequacies in a survey, including the *format of the questions* or the manner in which it was taken, bear on the weight of the evidence, not its admissibility.") (emphasis added; quotations and alterations omitted). This is no basis for summary judgment.

Finally, DKB's remaining arguments regarding Dr. Kivetz's surveys do not add anything to the argument. As explained by Plaintiff's rebuttal expert Dr. J. Michael Dennis, Dr. Kivetz relies on flawed survey methodology designed to render results that favor DKB. See Reynolds Dec., Ex. 21. Dr. Kivetz admitted he did not attempt to measure a price premium and surveys related to materiality are not relevant to Plaintiff's and the Class's unlawfulness claims. *Id*. Ex. 1 at 47:19-48:14 ("These surveys did not measure [] a market price premium. . . They did not measure damages. . . . They were what you might call materiality surveys"); *Id*. at 35:15-38:10; *see Stearns*, 655 F.3d at 1020-22.

> b)    **Plaintiff and the Class paid a price premium associated with the front label protein claim**.

According to DKB, the "only restitution" that Plaintiff and the Class can recover under the UCL is attributable to "the omission of the %DV in the NFP" not the statement of "5g protein on the front label." Mot. at 21. Thus, since Plaintiff's damages model "attributes a price premium to the [front label] statement" DKB believes Plaintiff lacks evidence of injury. *Id.*

If this argument sounds familiar, that is because it is *identical* to DKB's argument at class

certification, which this Court rejected. ECF 139 at 7–8. At that stage, DKB argued that "to be consistent with [his] liability theory, plaintiff's model must specifically test whether there is a price premium associated with the omission of a %DV in the NFP, instead of testing only the premium associated with a front-of-label claim." ECF 139 at 8. But as this Court explained, Plaintiff's model was "consistent with his theory of liability, however, because it evaluates the price premium associated with defendants' alleged violation of the regulatory scheme at issue. . . . A seller can comply with [the regulations] by either omitting a front-of-package protein content claim, or [by adding] a %DV . . . on the back of the package. Weir's methodology estimates a price premium by measuring the cost of complying with the regulation, specifically by omitting a front-of-package claim . . . [and is therefore] consistent with plaintiff's liability case." ECF 139 at 8. All Mr. Weir has done since class certification is execute the damages model he proposed. Since that measure of damages was "consistent with liability" at class certification, it necessarily measures a "legally cognizable injury" at summary judgment and trial.

DKB's cited cases are inapplicable to the analysis of Plaintiff's and the Class's UCL claim because they exclusively address fraud claims. The liability for the UCL claims arises from DKB's violation of FDA regulations: the front label claim itself is unlawful because of DKB's failure to comply with NFP requirements. *See* 21 C.F.R. § 101.13(n). In contrast, in *Zeiger v. WellPet*, the only cited case that addresses California law, plaintiffs brought claims exclusively under fraud theories and did not pursue any unlawfulness theory. *Zeiger v. WellPet LLC*, 526 F. Supp. 3d 652, 682 (N.D. Cal. 2021). Furthermore, even if the omission theory were relevant to Plaintiff's unlawfulness claims, *Zeiger* does not address omissions claims because defendant did not move for summary judgment on the omission claims. *Id.* ("WellPet focuses exclusively on the Wellness Statements. Because WellPet does not move for summary judgment on the pure omissions claims, they survive."). Thus, *Zeiger* is not applicable to the analysis of the Class's unlawful claim damages. Similarly, DKB's out-of-circuit cases applying New York law to fraud claims offer little guidance. Mot. at 21 (citing *Allegra v. Luxottica Retail N. Am.*, 341 F.R.D. 373, 459–60 (E.D.N.Y.2022); *Passman v. Peloton Interactive, Inc.*, 671 F. Supp. 3d 417, 468 (S.D.N.Y. 2023)). Notably, the *Passman* opinion has since been vacated because of the judge's failure to

recuse himself. *Passman v. Peloton Interactive, Inc.*, 2025 U.S. Dist. LEXIS 84144, at *17 (S.D.N.Y. May 2, 2025). As this Court has already explained, restitution for Plaintiff's unlawfulness claim is appropriately measured based on the price premium associated with Defendants' unlawful front label claims.[6]

### C. The Evidence Creates a Triable Issue of Fact Regarding Plaintiff's Individual Claims.

#### 1. There is a triable issue of fact regarding deception.

Claims for deception "under the California consumer protection statutes are governed by the 'reasonable consumer' test." *Ebner*, 838 F.3d at 965. To meet this test, a plaintiff must "'show that members of the public are likely to be deceived,'" which requires proof only of a "probability 'that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled.'" *Id.* (internal citations omitted).

California's consumer protection statutes do "not call for a showing of 'actual deception or confusion caused by misleading statements.'" *Ariz. Cartridge Remanufacturers Ass'n v. Lexmark Int'l, Inc.*, 421 F.3d 981, 985 (9th Cir. 2005) (quotation omitted). Thus, Plaintiff has no burden to prove that any consumers actually were deceived, only that it was *likely* that a significant portion of reasonable consumers would be deceived. *See Miletak v. Allstate Ins. Co.*, 2010 U.S. Dist. LEXIS 26913, at *13 (N.D. Cal. March 5, 2010) ("'a section 17200 violation [can be shown] even if no one was actually deceived, relied upon the fraudulent practice, or sustained any damage.'") (quotation omitted); *Copart, Inc. v. Sparta Consulting, Inc.*, 2018 U.S. Dist. LEXIS 154062, at *52 (E.D. Cal. September 10, 2018) ("There can be a violation without 'actual deception, reasonable reliance and damage.'").

DKB ignores that the labels themselves are sufficient evidence at trial. California law is clear that "'extrinsic evidence,' such as expert testimony or consumer surveys" is not necessary "to sustain the plaintiffs' burden" of proof. *Colgan v. Leatherman Tool Group, Inc.*, 135 Cal. App. 4th 663, 681 (2006). Instead, "with regard to the showing of deception, 'the primary evidence in

---

[6] As discussed below, Plaintiff's evidence regarding the omission is sufficient to establish damages for his fraud theory.

a false advertising case is the advertising itself.'" *Silicon Image, Inc. v. Analogix Semiconductor, Inc.*, 642 F. Supp. 2d 957, 968 (N.D. Cal. 2008) (quotation omitted). From that, the jury can determine "[t]he 'misleading character' of a given representation" by "applying its words to the facts." *Colgan*, 135 Cal. App. 4th at 679.

For example, in *Colgan*, plaintiffs alleged that the defendant's "Made in U.S.A." claim was misleading because most of the components were manufactured abroad and simply assembled in the U.S. 135 Cal. App. 4th at 680. The plaintiff's only evidence of a likelihood of deception was "the 'Made in U.S.A.' representations themselves; the declaration of a Leatherman executive describing the various manufacturing processes the Leatherman tool components underwent outside the United States; and the testimony of two plaintiffs who attested to being misled by Leatherman's representations." *Id*. at 682. The defendant argued that plaintiffs had no evidence to show that consumers interpreted the phrase "Made in U.S.A." to exclude any foreign manufacturing. *Id*. at 681–82. The court rejected that argument. *Id*. at 683. Numerous courts have similarly held that a jury can determine whether advertising is likely to mislead by simply comparing the challenged advertising to what was actually delivered. *See*, *e.g.*, *Consumer Advocates v. Echostar Satellite Corp.*, 113 Cal. App. 4th 1351, 1362 (2003) (reversing summary judgment on issue of deception because whether a reasonable consumer would be misled raised fact questions that could not be resolved on summary judgment, even in the absence of survey evidence); *Silicon Image, Inc.*, 642 F. Supp. 2d at 969 (same); *Miletak*, 2010 U.S. Dist. LEXIS 26913, at *13 (same); *O'Shea v. Epson Am., Inc.*, 2011 U.S. Dist. LEXIS 85273, at *32 (C.D. Cal. July 29, 2011) (allowing the jury to resolve whether reasonable consumers would be misled by a package claim in absence of any survey). To state it another way, "California law generally reserves for the jury the question of whether a reasonable consumer is likely to be deceived," and the jury is capable of determining whether an advertisement is misleading without other evidence. *Mullins v. Premier Nutrition Corp.*, 178 F. Supp. 3d 867, 892 (N.D. Cal. 2016).

There is a genuine triable question of fact on whether DKB's labeling was likely to mislead reasonable consumers. That evidence consists of at least the following:

o  The labels themselves. ECF 73-8, Exs. 23-47.



The jury is entitled to see DKB's advertising scheme and DKB's own research that shows the protein claim was important to purchasers, see that DKB targeted consumers who read food labels, and decide whether the scheme was likely to mislead.

DKB's argument that *Ebner v. Fresh* is "instructive" glosses over an important distinction: the label at issue in *Ebner* was "in accordance with applicable laws." ECF 139 at 32. In *Ebner*, plaintiff alleged, *inter alia*, that the net weight of lipstick tubes was misleading because only a portion of the lipstick was "reasonably accessible." *Ebner*, 838 F.3d at 962. The net weight listing was "in accordance with applicable laws," so the Ninth Circuit found the claims were properly dismissed under the safe harbor doctrine, reasoning: "Because [Defendant] complied with federal and state law requiring a net weight statement on [the product] label, this conduct cannot form the basis of an unfair competition claim." *Id*. at 964. By contrast, the court found that Ebner's claims that the label was fraudulent by omission was not protected by the safe harbor doctrine

and was not preempted. *Id.* at 964–65.[7] Here, Defendants' Products are not labeled "in accordance with applicable laws," and instead violate applicable regulations. Thus, *Ebner* is not "instructive."

### 2.    The evidence creates a triable issue of fact on Plaintiff's injury.

"The fact that the amount of damage may not be susceptible of exact proof or may be uncertain, contingent or difficult of ascertainment does not bar recovery." *Id.* Summary judgment is appropriate only where plaintiffs have no testimony, expert witnesses, or documents providing evidence from which a jury could estimate damages. *Rickards*, 704 F.2d at 1452; *see also McGlinchy*, 845 F.2d at 808 (Plaintiff need only "provide evidence such that the jury is not left to 'speculation or guesswork' in determining the amount of damages to award").

Plaintiff has testified, and Defendants do not dispute, that he purchased the Products on at least one occasion. Plaintiff subpoenaed and obtained evidence from Information Resources, Inc. (now known as Circana) which shows the pricing data in California for each product during the period Plaintiff purchased. Reynolds Dec., Ex. 23. IRI data is reliable evidence of the price consumers paid for the Products. *Allen v. Hyland's Inc*., 300 F.R.D. 643, 671 (C.D. Cal. 2014) (restitution or out-of-pocket costs can be "readily calculated using Defendants' sales numbers and an average retail price."). Plaintiff also has evidence regarding the quality of protein he believed he was promised—the label without a %DV and his testimony that he had no reason to believe it was anything other than high quality protein—and evidence regarding the quality of protein he was actually provided—DKB's own PDCAAS testing. *See* Reynolds Dec., Ex. 20. From this evidence the jury can determine what the difference in value was worth *to him*. Since this is not a class claim, Plaintiff does not have to show that damages are measurable across the class as a whole based on an objective standard,[8] but can instead be measured on a more subjective basis. *See Fragale*, 110 Cal. App. 4th at 236 (on individual fraud claim holding that damages could be

---

[7] Although not discussed by DKB, the *Ebner* Court ultimately dismissed the omissions fraud-based claims too, concluding that the allegations were "not plausible" because a reasonable consumer "understands the general mechanics of these dispenser tubes" and could decide to get the remaining portion with "a finger or a small tool." *Ebner*, 838 F.3d at 965–66. By contrast here, courts have agreed that a reasonable consumer would be misled by the omission of the %DV for protein in the NFP. *See, e.g.*, *Rausch*, 660 F. Supp. 3d at 863

[8] This type of damages model, such as a conjoint model, would be cost-prohibitive in an individual fraud case.

"the difference in value between what *he* actually received and what *he* was fraudulently led to believe *he* would receive") (emphases added). Nothing more is required. *See Anderson*, 477 U.S. at 255 (At summary judgment "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [their] favor."); *Miller v. Peter Thomas Roth, LLC*, 2020 U.S. Dist. LEXIS 10854, at *15 n.1 (N.D. Cal. Jan. 22, 2020) ("[Plaintiff] testified at deposition that she purchased the challenged product in 2018, that is sufficient to preclude summary judgment on this point."); *Miller*, 2020 U.S. Dist. LEXIS 10854, at *14 ("[Plaintiff] also provides sufficient basis to find she suffered the requisite harm. As above, Paulson testified at her deposition that she purchased [the product]. [Thus] [s]he paid an undue price premium."); *see also Farar v. Bayer AG*, 2017 U.S. Dist. LEXIS 193729, at *50 (N.D. Cal. Nov. 15, 2017) (plaintiff's testimony sufficient to establish injury-in-fact); *Jensen v. Natrol, LLC*, 390 F. Supp. 3d 1100, 1101, n.1 (N.D. Cal. 2019) (plaintiff's testimony sufficient to create issue of fact on standing and reliance at summary judgment) (J. Chhabria).[9]

### 3. The evidence creates a triable fact on whether DKB acted intentionally for Plaintiff's common law fraud claims.

As DKB's cited case confirms, "[g]enerally, scienter should not be resolved by summary judgment." *Provenz v. Miller*, 102 F.3d 1478, 1489 (9th Cir. 1996). Plaintiff can "establish scienter by proving either actual knowledge or recklessness." *Id*. DKB insists that there is evidence that its "regulatory team" engaged in "good-faith discussions about the meaning of complex federal regulations, before reasonably concluding that restating the protein content on the front of pack did not trigger an obligation to include the %DV." ECF 176 at 32. But there is no evidence of what those discussions entailed, only that DKB stated the subject had been "discussed at length." Resch Decl. ¶ 13 Ex. L. Put differently, there is no evidence and instead only DKB's self-serving description of its decision that the discussion was "in good faith." And DKB's supposed "expert" Dr. Trumbo that offers a "consistent" opinion is contradicted by an FDA warning letter that was sent during Dr. Trumbo's tenure at the FDA. ECF 180-2. The

---

[9] DKB does not challenge Plaintiff's pursuit of injunctive relief under the UCL. Thus, even if there was not a triable issue of fact on damages, Plaintiff may still pursue injunctive relief.

available legal authority at the time of the decision indeed instructed the exact opposite: quantitative protein statements are protein claims that require inclusion of a PDCAAS-derived %DV in the NFP. And evidence confirms that DKB knew that it was making a protein claim and chose to unlawfully label its Products:



Thus, there is more than enough evidence for a jury to conclude that DKB acted intentionally when adding a quantitative protein claim and omitting information that would reveal the Products do not nutritionally provide the amount of protein claimed on the front.

#### 4.    Plaintiff's unjust enrichment claim may also proceed.

Defendants' only argument that summary judgment is warranted for Plaintiff's unjust enrichment claim is that "Swartz has no evidence that he is entitled to any amount in restitution." As explained above, Plaintiff's evidence is sufficient to establish restitution. Moreover, unjust enrichment is not limited to restitution and includes disgorgement of profits. DKB's sale of the Products in California during the class period amounted to a total of nearly $550 million. Plaintiff is entitled to seek all available remedies and has evidence to support his claim.

1

Dated: August 29, 2025

2

**GUTRIDE SAFIER LLP**

3

/s/ Hayley A. Reynolds

4

Seth A. Safier (State Bar No. 197427)
   seth@gutridesafier.com

5

Marie A. McCrary (State Bar No. 262670)
   marie@gutridesafier.com

6

Hayley A. Reynolds (State Bar No. 306427)
   hayley@gutridesafier.com

7

100 Pine Street, Suite 1250
San Francisco, CA 94111

8

Telephone: (415) 639-9090
Facsimile:  (415) 449-6469

9

Matthew T. McCrary (*pro hac vice*)

10

   matt@gutridesafier.com
4450 Arapahoe Ave., Suite 100

11

Boulder, CO 80303
Telephone: (415) 639-9090

12

Facsimile:  (415) 449-6469

13

Patrick J. Branson (*pro hac vice*)
   patrick@gutridesafier.com

14

305 Broadway, 7th Floor
New York, NY 10007

15

Telephone: (415) 639-9090
Facsimile:  (415) 449-6469

16

*Attorneys for Plaintiff*

17

*David Swartz*

18

19

20

21

22

23

24

25

26

27

28