| | |
|---|---|
| 1 | MICHAEL L. RESCH (SBN 202909) |
| | mresch@kslaw.com |
| 2 | LIVIA M. KISER (SBN 285411) |
| | lkiser@kslaw.com |
| 3 | SAMUEL R. DIAMANT (SBN 288738) |
| | sdiamant@kslaw.com |
| 4 | KING & SPALDING LLP |
| | 50 California Street, Suite 3300 |
| 5 | San Francisco, California 94111 |
| | Telephone: (415) 318-1200 |
| 6 | Facsimile: (415) 318-1300 |
| 7 | QUYEN L. TA (SBN 229956) |
| | quyen.ta@skadden.com |
| 8 | SKADDEN, ARPS, SLATE, MEAGHERS |
| | & FLOM LLP |
| 9 | 525 University Avenue, Suite 1400 |
| | Palo Alto, California 94301 |
| 10 | Telephone: (650) 470-4500 |
| | Facsimile: (650) 798-6523 |

*Attorneys for Defendants*
Dave's Killer Bread, Inc.
and Flowers Food, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| DAVID SWARTZ, | Case No. 4:21-cv-10053-YGR |
| Plaintiff, | Honorable Yvonne Gonzalez Rogers |
| v. | **SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF DEFENDANTS DAVE'S KILLER BREAD, INC. AND FLOWERS FOODS, INC.'S MOTION FOR SUMMARY JUDGMENT** |
| DAVE'S KILLER BREAD, INC. AND FLOWERS FOODS, INC., | |
| Defendants. | Date: December 9, 2025 |
| | Time: 2:00 p.m. |
| | Location: Courtroom 1 – 4th Floor |

Defendants Flowers Food, Inc. and Dave's Killer Bread, Inc. (collectively, "Flowers") submit this separate statement of undisputed materials facts, together with references to supporting evidence, in support of their motion for summary judgment against Plaintiff David Swartz ("Swartz").

| Issue | Flowers' Undisputed Material Facts and Supporting Evidence | Swartz's Response and Supporting Evidence |
|---|---|---|
| Issue 1: Plaintiff did not rely on the alleged omission of the percent daily value (%DV). | 1. Swartz does not recall whether Dave's Killer Bread had a %DV for protein in the nutrition facts panel the first time he purchased it.<br><br>Declaration of Michael L. Resch ("Resch Decl.") ¶ 2 Ex. A at 147:4–9; *id.* at 167:17-22. | Plaintiff relied on the Nutrition Facts Panel when he purchased the Product for the first time.<br>ECF 103-3 at 84:19-23; 91:2-6; 140:22-141:13; 142:1-8 (same); 142:12-143:2 (same).<br><br>Plaintiff has a practice of looking for the %DV for protein when purchasing a new product.<br>ECF 103-3 at 84:19–23<br><br>Plaintiff testified that "[i]ts possible that the reason I don't remember [the %DV] is because it wasn't there." ECF 103-3 at 197:21–22.<br><br>Defendants' 30(b)(6) witness testified that the Products did not have a %DV based on PDCAAS on them until sometime in 2023.<br>ECF 72-4 at 51:1–53:10, 60:8–61:19, 115:6–10. |
| Issue 1 | 2. Swartz does not recall whether Dave's Killer Bread had a %DV for protein when he looked at the nutrition facts panel.<br><br>Resch Decl. ¶ 2 Ex. A at 147:4–9. | When Plaintiff reviewed the NFP, protein was the most important information in the NFP because of his daughter's growth.<br>ECF 103-3 at 143:19-144:9; 144:18-145:2 (same); 145:15-25 (same) |

1

| | | | |
|---|---|---|---|
| Issue 1 | 3. Swartz does not know what the Food and Drug Administration ("FDA") daily value for protein is or what it is based on.<br>Resch Decl. ¶ 2 Ex. A at 105:13-24. | | Plaintiff relies on the %DV because he does not have a "keen understanding of ho much of specific things somebody is supposed to take in."<br>ECF 103-3 at 108:6–18 |
| Issue 1 | 4. Swartz does not know how the %DV is calculated, and he has never attempted to calculate it.<br>Resch Decl. ¶ 2 Ex. A at 173:15–18; *id.* 174:17–21. | | Plaintiff relied on labeling on front and back and used %DV to compare products ECF 103-3 at 146:11-147:4 |
| Issue 1 | 5. Swartz does not know how much protein inside any particular product is usable.<br>Resch Decl. ¶ 2 Ex. A at 203:22–24. | | Plaintiff relied on labeling on front and back and used %DV to compare products and would buy the product that had a higher %DV.<br>ECF 103-3 at 146:11-147:4; 176:7-177:15. |
| Issue 1 | 6. Swartz does not recall whether the %DV on the Nutrition Facts Panel ("NFP") reflects anything regarding the usability of protein in the product.<br>Resch Decl. ¶ Ex. # at 203:25–204:5. | | Plaintiff relied on labeling on front and back and used %DV to compare products and would buy the product that had a higher %DV.<br>ECF 103-3 at 146:11-147:4; 176:7-177:15.<br><br>Plaintiff compares both the stated amount of protein and the percent daily value when purchasing products.<br>ECF 103-3 at 146:20–147:3<br><br>Plaintiff believed that the product would actually provide the specific amount of protein stated on the label in a form the body could utilize as protein.<br>ECF 103-3 at 152:4–16<br><br>Because there was not a %DV listed on the labeling, Plaintiff had no reason to believe the products provided less protein than |

| | | |
|---|---|---|
| | | represented. ECF 103-3 at 153:4-11 |
| Issue 1 | 7. At the time Swartz purchased the Dave's Killer Bread products, he did not know whether the %DV had any relationship with the usability of the protein in the product.<br><br>Resch Decl. ¶ 2 Ex. A 204:14–205:1. | Plaintiff relied on labeling on front and back and used %DV to compare products and would buy the product that had a higher %DV. ECF 103-3 at 146:11-147:4; 176:7-177:15. |
| Issue 1 | 8. On January 7, 2022, 10 days after the original complaint in this action was filed, Swartz purchased the same bread he had purchased earlier and is at issue in this case.<br><br>Resch Decl. ¶ 2 Ex. B 64:8–66:15; Resch Decl. ¶ 3 Ex. B | When Plaintiff purchased the Product for the first time, protein was the primary reason he purchased the bread because of concern about his young daughters' growth. ECF 103-3 at 198:15-199:3, 93:1-11<br><br>He purchased the Product one additional time after filing the lawsuit because his daughter was accustomed to eating the Products. ECF 103-3 at 55:23-56:3, 80:22-81:6, 119:15-25, 121:7–17; |
| Issue 2: There is no evidence that Swartz—or any consumer—lost money as a result of the allegedly unlawful practice. | 9. Participants in Swartz's expert Colin Weir's conjoint surveys were not shown product packages but instead "product profiles" in a text-based format with bulleted statements below a brand logo.<br><br>Resch Decl. ¶ 4 Ex. C at 93:5–16. | The default in conjoint surveys is not to include images of product packages. ECF 118 at 35, ¶ 100. |
| Issue 2 | 10. Weir testified that his conjoint surveys do not directly indicate the placement or prominence of the "label statements" shown to participants.<br><br>Resch Decl. ¶ 4 Ex. C at 96:7–20; 124:17–22; 126:25–127:2. | The conjoint survey indicates the location of the tested attribute by defining the attribute as "label statements" and including attributes that commonly appear on the front of DKB and competitor packages. |

| | | | |
|---|---|---|---|
| | | | ECF 16-6, Ex. D (Weir Report) at ¶ 60 n. 30; Reynolds Dec., Ex. 1. |
| | Issue 2 | 11. Weir's conjoint surveys showed participants label statements that appear on the front, side, and back labels, and in the NFP, of Dave's Killer Bread products, including statements that never appear on the front label.<br><br>Resch Decl. ¶¶ 7–10 & Exs. F–I. | The statement "5g protein" does not appear in the NFP; the NFP states "Protein 5g" in the required NFP format. ECF 73-8 (product labels).<br><br>The other label statements appear on the front labels of Dave's Killer Bread and competitor products. ECF 76-6, Ex. D (Weir Report) at ¶ 60 n. 30; Reynolds Dec., Ex. 1. |
| | Issue 2 | 12. Weir's conjoint surveys do not measure the price premium associated with the omission of the %DV.<br><br>Resch Decl. ¶ 4 Ex. C at 70:7–11; 77:2–21; 86:7-12. | |
| | Issue 2 | 13. Adding the %DV for protein to the NFP does not decrease consumers' likelihood of purchasing the at-issue Dave's sliced bread.<br><br>Resch Decl. ¶ 11 Ex. J at ¶¶ 143–147. | The surveys on which DKB relies are based on a misapplication of survey methodology that renders the results unreliable. Reynolds Dec., Ex. 21.<br><br>DKB knows its consumers read and rely on the "totality" of its labels and read the labels when deciding to purchase the Products. Reynolds Dec. Exs. 3, 8, 19.<br><br>Grams of protein is among the top three reasons most consumers purchase the Products according to DKB's consumer research. Reynolds Dec., ¶¶ 3-4, Exs. 9, 10 |

| | | |
|---|---|---|
| Issue 2 | 14. The absence of a %DV for protein on the NFP did not cause class members to purchase, or pay any alleged price premium for, those products.<br><br>Resch Decl. ¶ 11 Ex. J at ¶¶ 143–147. | The surveys on which DKB relies are based on a misapplication of survey methodology that renders the results unreliable. Reynolds Dec., Ex. 21. |
| Issue 3: Flowers did not act with the knowledge or intent required for Swartz's common law fraud claim or False Advertising Law claim. | 15. Between 2017 and 2020, Flowers employees discussed at length whether stating the numerical value of protein on the package would constitute a "claim" under federal regulations.<br><br>Resch Decl. ¶ 12 Ex. K at 203:12–204:15, 204:25–205:17; Resch Decl. ¶ 13 Ex. L; Resch Decl. ¶ 15 Ex. N; Resch Decl. ¶ 16 Ex. O. | Flowers employees disregarded guidance from third parties and its own employees and ignored applicable case law that established the front label protein statement is a protein claim under federal regulations.<br>Reynolds Dec., Exs. 4, 5 |
| Issue 3 | 16. Multiple Flowers employees responsible for labeling and regulatory compliance believed, based on their understanding of FDA regulations, that stating only the quantitative value of protein on the package would not constitute a "claim" that would trigger the requirement to include the %DV for protein in the NFP.<br><br>Resch Decl. ¶ 12 Ex. K at 138:20-25, 141:1–6, 146:19–6, 149:12–19, 203:12–204:15; Resch Decl. ¶ 13 Ex. L; Resch Decl. ¶ 15 Ex. P; Resch Decl. ¶ 16 Ex. O. | Flowers employees disregarded guidance from third parties and its own employee, and ignored applicable case law that established the front label protein statement is a protein claim under federal regulations.<br>Reynolds Dec., Exs. 4, 5<br><br>The FDA has interpreted the regulations and concluded a front label quantitative protein statement is a protein claim that requires the NFP to include a PDCAAS-derived %DV for protein.<br>ECF 180-2 |