**GUTRIDE SAFIER LLP**
Seth A. Safier (State Bar No. 197427)
  seth@gutridesafier.com
Marie A. McCrary (State Bar No. 262670)
  marie@gutridesafier.com
Hayley A. Reynolds (State Bar No. 306427)
  hayley@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile:  (415) 449-6469

*Attorneys for Plaintiff*
*David Swartz*

## UNITED STATES DISTRICT COURT FOR THE

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID SWARTZ, an individual, on behalf of himself, the general public, and those similarly situated,<br><br>                         Plaintiff,<br><br>        v.<br><br>DAVE'S KILLER BREAD, INC. and FLOWERS FOODS, INC.,<br><br>                         Defendants. | Case No. 4:21-cv-10053-YGR<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE THE EXPERT TESTIMONY OF COLIN B. WEIR**<br><br>Hon. Yvonne Gonzalez Rogers<br><br>Date:            December 9, 2025<br>Time:           2:00 pm<br>Location:      Courtroom 1, 4th Floor |

# TABLE OF CONTENTS

I.     INTRODUCTION ...................................................................................................1

II.    STATEMENT OF FACTS .....................................................................................3

    A.    Mr. Weir's Qualifications. .........................................................................3

    B.    Mr. Weir's Methodologies and Results. ....................................................3

III.   LEGAL STANDARDS...........................................................................................4

IV.    ARGUMENT ..........................................................................................................5

    A.    Mr. Weir's Proposed Damages Model Is Relevant and Accurately Measures the Injury Resulting from Plaintiff's Theory of Liability. ....................................5

        i.    Mr. Weir's survey tests the front label protein claim. .............................6

        ii.   Defendants' assumptions about respondents' beliefs are unfounded. .....10

    B.    Mr. Weir's Opinions are Reliable. ...........................................................11

        i.    Mr. Weir's survey results are rational.....................................................13

        ii.   Mr. Weir did not omit key attributes.......................................................16

V.     CONCLUSION .....................................................................................................18

# TABLE OF AUTHORITIES

**Cases**

*Active Sports Lifestyle USA LLC v. Old Navy, LLC*,
    No. SACV 12-00572 JVS (Ex), 2013 U.S. Dist. LEXIS 190005
    (C.D. Cal. Nov. 21, 2013) ........................................................................................... 11

*Apple, Inc. v. Samsung Elecs. Co., Ltd.*,
    No. 12-CV-00630-LHK, 2014 U.S. Dist. LEXIS 24506 (N.D. Cal. Feb. 25, 2014) ...... 16, 18

*Bailey v. Rite Aid Corporation*,
    No. 4:18-cv-06926 YGR, 338 F.R.D. 390 (N.D. Cal. Apr. 28, 2021) ............................... 1, 3

*City of Pomona v. SQM N. Am. Corp.*,
    750 F.3d 1036 (9th Cir. 2014) ....................................................................................... 9

*Daubert v. Merrell Dow Pharms., Inc.*,
    509 U.S. 579 (1993) ........................................................................................................ 5

*Davidson v. Apple, Inc.*,
    No. 16-CV-04942-LHK, 2018 U.S. Dist. LEXIS 137707 (N.D. Cal. May 7, 2018) ........... 14

*Ellis v. Costco Wholesale Corp.*,
    657 F.3d 970 (9th Cir. 2011) ......................................................................................... 11

*Elosu v. Middlefork Ranh Inc.*,
    26 F.4th 1017 (9th Cir. 2022) ......................................................................................... 5

*Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt.*,
    618 F.3d 1025 (9th Cir. 2010) ................................................................................... 6, 11

*Hadley v. Kellogg Sales Company*,
    No. 16-CV-04955-LHK, 324 F. Supp. 3d 1084 (N.D. Cal. 2018) ..................... 1, 3, 14, 17

*Hawkins v. Kroger Co.*,
    906 F.3d 763 (9th Cir. 2018) .......................................................................................... 7

*In re Apple Inc. Sec. Litig.*,
    No. 4:19-cv-02033-YGR, 2023 U.S. Dist. LEXIS 122877 (N.D. Cal. July 17, 2023) ........... 5

*In re Arris Cable Modem Consumer Litig.*,
    327 F.R.D. 334 (N.D. Cal. Aug. 10, 2018) ...................................................................... 16

*In re ConAgra Foods, Inc.*,
    90 F. Supp. 3d 919 (C.D. Cal. 2015) .............................................................................. 14

*In re JUUL Labs, Inc., Mktg. Sales Pracs. & Prods. Liab. Litig.*,
    609 F. Supp. 3d 942 (N.D. Cal. Jun. 28, 2022) ........................................................ 15, 18

*Johnson Elec. N. Am. Inc. v. Mabuchi Motor Am. Corp.*,
    103 F. Supp. 2d 268 (S.D.N.Y. June 30, 2000) ............................................................... 15

*Johnson v. Glock, Inc.*,
    No. 20-cv-08807-WHO, 2024 U.S. Dist. LEXIS 184041 (N.D. Cal. Sep. 30, 2024) .......... 14

*Keith v. Volpe*,
    858 F.2d 467 (9th Cir. 1988) ......................................................................................... 11

*Krommenhock v. Post Foods LLC*,
    No. 3:16-cv-04958-WHO, 334 F.R.D. 552 (N.D. Cal. 2020) ...................................... 1, 3

*Lust ex rel. Lust v. Merrell Dow Pharms., Inc.*,
    89 F.3d 594 (9th Cir. 1996) ............................................................................................ 4

*Lytle v. Nutramax Labs., Inc.*,
    114 F.4th 1011 (9th Cir. 2024) ..................................................................................... 12

*Macdougall v. Am. Honda Motor Co.*,
    No. 20-56060, 2021 U.S. App. LEXIS 37780 (9th Cir. Dec. 21, 2021) ........................ 6, 17

*Maldonado v. Apple, Inc.*,
    No. 3:16-cv-04067-WHO, 2021 U.S. Dist. LEXIS 92483 (N.D. Cal. May 14, 2021) ....... 1, 3

*Messick v. Novartis Pharm. Corp.*,
    747 F.3d 1193 (9th Cir. 2014) ................................................................................... 5

*Noohi v. Johnson & Johnson Consumer Inc.*,
    No. 23-55190, 2025 U.S. App. LEXIS 18547 (9th Cir. July 25, 2025) ....................... 2, 12

*Odyssey Wireless, Inc. v. Apple Inc.*,
    No. 15-cv-01735-H-RBB, 2016 U.S. Dist. LEXIS 187982 (S.D. Cal. Sep. 14, 2016) ........ 15

*Oracle Am., Inc. v. Google Inc.*,
    No. C 10-03561 WHA, 2012 U.S. Dist. LEXIS 33619
    (N.D. Cal. Mar. 13, 2012) ................................................................. 15, 16, 17, 18

*Perez v. Rash Curtis & Assocs.*, |
    No. 16-cv-03396-YGR, 2019 U.S. Dist. LEXIS 58639 (N.D. Cal. Apr. 4, 2019) ................ 5

*Primiano v. Cook*,
    598 F.3d 558 (9th Cir. 2010) .............................................................................. 5, 11

*Spin Master, Ltd. v. Zobmondo Entm't, LLC*,
    No. CV 06-3459 ABC (PLAx), 2012 U.S. Dist. LEXIS 188155
    (C.D. Cal. Apr. 27, 2012) ....................................................................................... 11

*Svenson v. Google, Inc.*,
    No. 13-cv-04080-BLF, 2016 U.S. Dist. LEXIS 189093 (N.D. Cal. Dec. 21, 2016) ........... 17

*TV Interactive Data Corp. v. Sony Corp.*,
    929 F. Supp. 2d 1006 (N.D. Cal. 2013) ................................................................. 16

*Vizcarra v. Michaels Stores, Inc.*,
    No. 23-cv-00468-NW, 2025 U.S. Dist. LEXIS 104521 (N.D. Cal. June 2, 2025) ............. 1, 3

*Wendt v. Host Int'l, Inc.*,
    125 F.3d 806 (9th Cir. 1997) ..................................................................................... 5

*Williams v. Apple, Inc.*,
    338 F.R.D. 629 (N.D. Cal. May 28, 2021) ............................................................. 14

**Rules**

Fed. R. Evid. 702 ....................................................................................... 4, 5

**Regulations**

21 C.F.R. § 101.13(b)(1) ............................................................................. 7

## I.     INTRODUCTION

Plaintiff David Swartz submits the opinions of Mr. Colin Weir—a highly qualified expert in economics, statistics, and conjoint surveys—to testify regarding classwide damages. Mr. Weir analyzed the results of four conjoint surveys and determined that the price premiums associated with the front label protein claims for the at issue products ranged from 2.40% to 5.61%. ECF No. 176-2 ("Amd. Weir Decl."). Defendants Dave's Killer Bread, Inc. and Flowers Foods, Inc. ("Defendants" or "DKB") move to exclude Mr. Weir's testimony and opinions based on specious and regurgitated arguments this Court has already rejected. This Court should follow its previous findings, and those of numerous other courts, which have all accepted conjoint surveys, including those proposed by Mr. Weir. *See, e.g.*, *Vizcarra v. Michaels Stores, Inc.,* No. 23-cv-00468-NW, 2025 U.S. Dist. LEXIS 104521, at *11–13 (N.D. Cal. June 2, 2025); *Hadley v. Kellogg Sales Company*, No. 16-CV-04955-LHK, 324 F. Supp. 3d 1084, 1090 (N.D. Cal. 2018); *Krommenhock v. Post Foods LLC*, No. 3:16-cv-04958-WHO, 334 F.R.D. 552, 575–76 (N.D. Cal. 2020); *Maldonado v. Apple, Inc.*, No. 3:16-cv-04067-WHO, 2021 U.S. Dist. LEXIS 92483, at *67–81 (N.D. Cal. May 14, 2021); *Bailey v. Rite Aid Corporation*, No. 4:18-cv-06926 YGR, 338 F.R.D. 390, 409–11 (N.D. Cal. Apr. 28, 2021) (Gonzalez Rogers, J.).

In seeking exclusion, Defendants present many of the same arguments that this Court previously rejected at class certification, but fail to establish any grounds that merit reconsideration. And they still fail to tie their criticisms to the relevant standards for relevance and reliability. Nor could they because Mr. Weir's opinions are undeniably relevant; they will assist the fact finder in determining the price premium and class wide restitution owed as a result of Defendants' unlawful front label protein statements. His opinions are also highly reliable as each is based on the well-accepted conjoint methodology that Mr. Weir has dutifully executed.

Undeterred by the high standard for exclusion, Defendants nevertheless argue that Mr. Weir's testimony is irrelevant because it is untethered to the front-label protein statement. But the Court previously disagreed, finding that the conjoint tested the front label protein claim and "Plaintiff's methodology is consistent with his theory of liability [] because it evaluates the price premium associated with defendants' alleged violation of the regulatory scheme at issue." ECF

No. 139 ("Class Cert. Order") at 8. Nothing has changed. That Plaintiff did not test every theory of liability remains immaterial.

Defendants also reargue that the surveys are irrelevant based on Mr. Weir's inclusion of attributes that could appear on the back label of products. But Defendants continue to ignore that the overwhelming majority of the attributes are not found in the nutrition facts panel ("NFP"). And, the three statements that Defendants identify that are found in the NFP, also appear on the front label of competitor products. Thus, there is no evidence that respondents believed that the tested front label protein claim appeared in the NFP of the Products, as opposed to the front label.

Next, Defendants claim Mr. Weir fails to take the NFP into account, but as explained by Mr. Weir, the market simulation "hold[s] the value of the nutrition facts panel constant." ECF No. 117-5 ("Weir Depo Tr.") at 217:2–219:2. Thus, there is no basis to find Mr. Weir's testimony irrelevant on this basis.

Defendants' reliability arguments are also easily disposed of. The Ninth Circuit has recognized that conjoint surveys are reliable methods of calculating classwide damages. *Noohi v. Johnson & Johnson Consumer Inc.*, No. 23-55190, 2025 U.S. App. LEXIS 18547, at *19 (9th Cir. July 25, 2025). Here, Mr. Weir ensures reliability by conducting cognitive interviews, reviewing evidence, pre-testing the survey, reviewing the response data, and running additional market simulations to test accuracy and reliability. Amd. Weir Decl. ¶¶ 39–53, 60 n. 30, 66–69, 75, 79–80, 94–95. Defendants counter that the results are "irrational" because of analyses conducted by their expert on the distractor attributes (that the survey was not designed to test) are supposedly side label statements that received a higher price premium. Even if such an exercise were appropriate, Defendants' insistence that it would be irrational for a side label statement to command a higher price premium than the front label statement falls apart because the statements also appear on the *front* label of DKB's competitor products. Thus, there is no basis to call them "side label statements" and the front label premium is not irrational. Similarly, Defendants argument that the results are irrational because the protein claims on bagels received a lower premium than thin-sliced bread, merely affirms the appropriateness of Mr. Weir's use of four

different conjoint surveys based on four different product types with four different consumer groups.

Finally, Defendants argue that Mr. Weir's surveys are unreliable because they did not include the %DV, but this Court squarely rejected this argument at class certification because it allowed Plaintiff to proceed on multiple theories of liability. Class Cert. Order at 5, 7–8. ("While a conjoint study measuring the effect of %DV may also be consistent with plaintiff's liability case, plaintiffs are not generally required to test every potential liability theory."). Defendants ultimately fail to support any of their arguments with expert evidence and instead rely on lawyer created misinterpretation of the facts and data. And even if Defendants' arguments had merit, at best, each would go to weight, not admissibility.

For each of these reasons, the Court must fully deny the motion.

## II.    STATEMENT OF FACTS

### A.    Mr. Weir's Qualifications.

Mr. Weir is President of Economics and Technology, Inc., a leading forensic accounting firms. *See* Amd. Weir Decl. He has a master's degree in business administration from Northeastern University and has extensive experience conducting economic, statistical, and regulatory research and analysis. *See id.* ¶¶ 1–3. Mr. Weir has provided expert testimony before federal and state courts, the FCC, and state regulatory commissions, and has contributed research and analysis to numerous publications and testimony at the state, federal, and international levels. *Id.* Numerous courts have recognized him as an expert in conjoint analysis. *Id.* ¶ 2 (listing cases including, but not limited to, *Vizcarra,* 2025 U.S. Dist. LEXIS 104521, at *11–13; *Hadley*, 324 F. Supp. at 1090; *Krommenhock*, 334 F.R.D. at 575–76; *Maldonado*, 2021 U.S. Dist. LEXIS 92483, at *67–81; *Bailey*, 338 F.R.D. 390, 409–11; *see also* Weir Decl. Ex. 1 (Statement of Qualification).

### B.    Mr. Weir's Methodologies and Results.

Mr. Weir calculates the price premium class members paid as a result of Defendants' unlawful conduct during the class period using a choice-based conjoint methodology. Amd. Weir Decl. ¶ 13. Defendants' own experts acknowledge that this method is commonly used in

marketing and other research. ECF No. 118 ("Weir Class Cert. Reply Decl.") ¶¶ 10–15. To reach his conclusions, Mr. Weir properly undertook exploratory research in the form of cognitive interviews to understand consumer preferences. Amd. Weir Decl. ¶¶ 39–53. And he also reviewed DKB's and competitor labels, documentary evidence, DKB's and competitor's websites, retailer websites, and deposition testimony in selecting the attributes. *Id.* ¶ 60 n. 30.

Prior to putting the survey in the field, Mr. Weir pretested the conjoint questionnaire for quality control and validation of specifications. Amd. Weir Decl. ¶¶ 66–69. Mr. Weir sampled 360 respondents for each of the four conjoint exercises—comprised of California residents, age 18+, who had purchased or considered purchasing Dave's Killer Bread product in the past six years. *Id.* ¶¶ 70–72. Mr. Weir reviewed the response data for factors that may warrant exclusion. *Id.* ¶¶ 73–75, 93. Mr. Weir excluded 31 cases of response data where the respondents straightlined the survey (i.e., the respondent picked the same conjoint profile in all of the available tasks). *Id.* ¶¶ 73–75. Mr. Weir also tested whether to exclude other response data for speeders, laggards, and low root likelihood, but found no statistical differences in all four surveys after testing such exclusions. *Id.* ¶¶ 94–95. After "checking the survey data for straightliners, checking the statistical properties of the models using the widely accepted measure of hold out hit rate performance and Mean Absolute Error, checking the data for other possible problematics respondents, and making conservative choices in the conduct of the market simulations . . . [Mr. Weir] opin[es] that the results of all four surveys are scientifically and statistically reliable." *Id.* ¶¶ 96–97. Mr. Weir ultimately determined that the price premiums associated with the front label protein claims ranged from 2.40% to 5.61%, depending on the product type and protein claim. *Id.* ¶ 91. His methodology and opinions are relevant, reliable and admissible.

## III.   LEGAL STANDARDS

The proponent of expert testimony "has the burden of proving [its] admissibility." *Lust ex rel. Lust v. Merrell Dow Pharms., Inc*., 89 F.3d 594, 598 (9th Cir. 1996); *see* Fed. R. Evid. 702. "An expert should be permitted to testify if the proponent demonstrates that: (i) the expert is qualified; (ii) the evidence is relevant to the suit; and (iii) the evidence is reliable." *In re Apple Inc. Sec. Litig.*, No. 4:19-cv-02033-YGR, 2023 U.S. Dist. LEXIS 122877, at *3 (N.D. Cal. July

17, 2023) (Gonzalez Rogers, J.) (quoting *Perez v. Rash Curtis & Assocs.*, No. 16-cv-03396-YGR, 2019 U.S. Dist. LEXIS 58639, at *5 (N.D. Cal. Apr. 4, 2019)). Expert testimony must also be "relevant to the task at hand" and "fit" the facts of the case. *Id.* (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 591, 597 (1993) and Fed. R. Evid. 702).[1] "Ultimately, the test under *Daubert* is not the correctness of the expert's conclusions but the soundness of [their] methodology." Class Cert. Order at 16 (quoting *Elosu v. Middlefork Ranh Inc.*, 26 F.4th 1017, 1024 (9th Cir. 2022). Here, Defendants do not challenge Mr. Weir's qualification, but instead argue relevance and reliability. Neither argument has any merit.

## IV.    ARGUMENT

### A.    Mr. Weir's Proposed Damages Model Is Relevant and Accurately Measures the Injury Resulting from Plaintiff's Theory of Liability.

The Ninth Circuit has emphasized that relevance under *Daubert* is a "minimal" standard: expert testimony is relevant if it will "assist the trier of fact in understanding the evidence or determining a fact in issue." *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010) (quoting Fed. R. Evid. 702). Testimony is irrelevant if it does not relate to any issue in the case, fails to aid the jury, or is otherwise disconnected from the facts at issue. *See Messick v. Novartis Pharm. Corp.*, 747 F.3d 1193, 1196 (9th Cir. 2014).

Here, Mr. Weir's opinion will assist the trier of fact in determining the amount of restitution owed to the class as a result of Defendants' unlawful front label protein claim. Mr. Weir utilizes the well-accepted conjoint methodology to determine the price premium associated with the at issue claim; this Court has already agreed that Plaintiff's damages methodology "evaluates the price premium associated with defendants' alleged violation of the regulatory scheme at issue." Class Cert. Order at 8. Moreover, this Court previously rejected Defendants' attempt to exclude Mr. Weir on the same grounds, concluding all of the criticisms went to weight, not admissibility. *See* Class Cert. Order at 16–17; *see also Wendt v. Host Int'l, Inc.*, 125 F.3d 806, 814 (9th Cir. 1997) ("Challenges to survey methodology go to the weight given the survey, not its admissibility."). It should do so again here.

---

[1] This Court's standing order also requires that the "motions must clearly specify the paragraphs or portions of the report that the party seeks to exclude." Court's Standing Order, ¶ 11.

Defendants first argue that Mr. Weir's opinion is "irrelevant" because the survey 1) fails to account for the location of the protein statement on the product label, and 2) there is a "risk" of confusion among respondents who "could have easily believed" that a product profile that did not list protein content meant that the product did not contain any protein at all. These criticisms boil down to quibbles with Mr. Weir's attribute selection and formatting, neither of which is grounds for exclusion. *See Macdougall v. Am. Honda Motor Co*., No. 20-56060, 2021 U.S. App. LEXIS 37780, at *3 (9th Cir. Dec. 21, 2021) (challenges to "the absence of market considerations, specific attribute selection, and the use of averages to evaluate the survey data—go to the weight given the survey, not its admissibility.") (quotation omitted); *see also Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt*., 618 F.3d 1025, 1036 (9th Cir. 2010) ("technical inadequacies in a survey, including the format of the questions or the manner in which it was taken, bear on the weight of the evidence, not its admissibility.") (quotation omitted). But even considering the arguments, both collapse under scrutiny, as each is premised on a mistaken facts and conjecture.

### i.    Mr. Weir's survey tests the front label protein claim.

Defendants' argument that "Weir's surveys failed to account for the fact that the same protein statement is always included on the NFP on the back labels" may sound familiar. ECF No. 178 at 10. This Court already rejected it, concluding that Mr. Weir's "survey methodology sufficiently tests whether users would pay more for protein claims because ***it demonstrates that users are being asked about front-of-packaging claims***." Class Cert. Order at 7 (emphasis added); *see also* Class Cert. Order at 9 ("plaintiff meets his burden by demonstrating that he and the class members paid a price premium resulting from the inclusion of a front-of-package claims without a %DV in the NFP."). Defendants nevertheless reprise the argument here.

Defendants again argue, for example, that "Weir's surveys failed to account for the fact that the same protein statement is always included on the NFP on the back labels." ECF No. 178 at 10; *compare with* ECF No. 89 at 11–12 (Motion to Strike Colin Weir) (same). They further argue that Mr. Weir's use of "0g Trans Fat," "70 calories," and "No Artificial Ingredients" which appear "on the back and sides of Dave's Killer Bread product labels makes clear that he is not

testing only front label statements" means that "Weir's surveys as executed are thus misaligned with the proposed study that the Court accepted at class certification." ECF No. 178 at 10–11. Not so.[2]

As a preliminary matter, Defendants' claim that these three attributes appear on the back or side label is premised on the incorrect assumption that they were derived solely from DKB's own product labels. They were not. As Mr. Weir's report explains, the attributes were chosen based on several factors, including an analysis of both DKB's labels and those of competing products. Am. Weir Decl. ¶ 60 n. 30. Indeed, Defendants' expert, Dr. Kivetz, also admitted that the claims do in fact appear on the front label of competitor products. *See* ECF No. 182-2 ("Kivetz Depo Tr.") at 113:21–24 ("Q. So do you agree that '0g trans fat' can and does appear on the front label of certain products? A. I—of course, it can."). Undeterred by the facts, Defendants present the argument here anyway.

Specifically, among the six distractor attributes in the bagel survey, Mr. Weir used "0g trans fat" in part because the claim "0g trans fat" appears on the front label of a competitor product, Sara Lee Plain Bagels. *See* Reynolds Decl., Ex. A (Kivetz Dep. Tr., Ex. 112); Amd. Weir Decl., Ex. 2 (Documents Reviewed). Indeed, case law confirms that the claim regularly appears on front labels. *See Hawkins v. Kroger Co.*, 906 F.3d 763, 771 (9th Cir. 2018). (holding that "0g trans fat per serving" on a product's front label was a nutrient content claim). Mr. Weir used the "70 calories" claim as one attribute among the eight distractor attributes in the thin-sliced bread survey because consumers identified calories as an important decision factor in this category and, as DKB admits, it is a claim that appears on the front label of its Products. Indeed, calorie claims often appear on the front of products such that the FDA specifically regulates the claims. *See* 21 C.F.R. § 101.13(b)(1) ("An expressed nutrient content claim is any direct statement about the level (or range) of a nutrient in the food, e.g., . . . 'contains 100 calories.'"). And finally, "No

---

[2] The two claims "0g Trans Fat" and "70 calories" are the only two examples DKB provides of statements that appear in the NFP to support the conclusion that respondents would believe the tested protein claim appeared in the nutrition label. These claims appear in the bagels survey (0g trans fat) and the thin-sliced bread survey (70 calories). Amd. Weir Decl. ¶¶ 63–65, Table 1. Defendants do not cite any other evidence in support of their speculation, and therefore Defendants cannot offer this criticism with regards to the other two surveys: sliced bread and burger buns.

artificial ingredients" or similar claims also regularly appear on the front label of products (*See* Reynolds Decl., Ex. B (product label for Nature's Own 100% Whole Wheat sliced bread also owned by Flowers Foods)), and certainly is not a claim that is associated with being on the back label of a product.

Defendants speculate that "no respondent would understand the response to the survey should be limited to the front statement" and inclusion of the three identified claims "would have caused the very confusion among respondents that the Court previously was assured would not be present." But Defendants offer no evidence such as interviews or, frankly, anything else, that would support their conjecture. ECF No. 182-1, Ex. 1 at 115:4–116:20. As explained above, Mr. Weir's use of common front label claims within the appropriate categories demonstrates the "5g Protein" claim is still presented "alongside other claims that appear on the front of packages," which was the Court's primary reason for rejecting the argument previously. Ultimately, this is a question for the trier of fact.

Next, Defendants' expert argues that the methodology does not "hold constant" the information appearing in the NFP. ECF No. 178 at 11. But Dr. Kivetz's conclusion that the Lighthouse platform used by Mr. Weir for the market simulation "has no way whatsoever to address the nutrition label" is beside the point and fails to advance Defendants' position, as the simulation did not depend on the Lighthouse platform's capacity to analyze nutrition labels. Rather, as Mr. Weir explained, it is well accepted in conjoint literature that it is *respondents* that hold constant product features that are not included in the survey. Weir Class Cert. Reply Decl. ¶ 95; *see also id.* ¶ 105 ("In other words, the Dave's Products being simulated will receive credit for the value of the NFP in both the real world and the but for world.").

Furthermore, Mr. Weir explained during his deposition, the conjoint does not simulate a product that has removed *all* protein statements, including the one in the NFP. ECF No. 117-5 ("Weir Depo Tr."). Indeed, when asked directly, "your survey is going to come up with a price premium that would eliminate both 5g proteins from the package, correct?" he answered "No . . . We measure the label statement and hold the value of the nutrition facts panel constant." *Id.* at 217:2–219:2. The only protein claim that is removed in the market simulator is "the front-of-pack

protein claim" not the one "in the nutrition facts." *Id.* at 54:5–55:21, 91:13–92:22; *see also id.* at 217:2–219:2. Instead, "whatever the nutrition fact panel was in the real world, *it will be held the same* as in the but-for-world. That way we control for any value that the nutrition facts panel may provide." *Id.* (emphasis added). [3] As a result, "there would be no double counting in the measurement of the price premium, because the value attributable to the NFP would be held constant, allowing the conjoint to isolate the premium due solely to Defendants' use of the [Challenged] Claim" on the front label. Weir Class Cert. Reply Decl. ¶ 105. Regardless, how the methodology accounts for the NFP, or whether it is required to at all, does not bear on admissibility; it is a clear battle of the experts. *See City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014) ("A factual dispute is best settled by a battle of the experts before the fact finder, not by judicial fiat. Where two credible experts disagree, it is the job of the fact finder, not the trial court, to determine which source is more credible and reliable.").

Finally, Defendants exhume their argument that determining the price premium associated with the unlawful front label claim "disqualifies" Mr. Weir's testimony. ECF No. 178 at 11–12. But this Court already considered and rejected these arguments. Class Cert. Order at 6–8. It held that "Plaintiff's methodology is consistent with his theory of liability [] because it evaluates the price premium associated with defendants' alleged violation of the regulatory scheme at issue." *Id.* at 8. The Court further explained that it allowed "plaintiff to proceed on this claim that defendants violated FDA regulations that state that 'a nutrient content claim[] may not be made on the label or in the labeling of foods unless' it provides PDCAAS-based %DV for protein." *Id.* Defendants could have complied with the FDA regulation "by either omitting a front-of-package protein content claim, or if they choose to include such a claim, they can also include a %DV for the protein content in the nutrition fact panel on the back of the package." *Id.* The Court ultimately found that Plaintiff's methodology is consistent with his liability case because "Weir's

---

[3] The transcript caught a verbal stumble of the first part of the word "nutrition", i.e. "nu" that was transcribed as "new" which has been cleaned up in this quotation. Mr. Weir's testimony makes clear he was not referring to a "new" (in the sense of "different" or "revised") nutrition facts panel in the market simulator. Instead, it would be the same nutrition facts panel that exists in the real world. *See e.g.*, Weir Depo. Tr. at 54:5–55:21; 81:23–82:10; 91:13-92:22; 217:2–220:21; 267:4–268:10.

methodology estimates a price premium by measuring the cost of complying with the regulation, specifically by omitting a front-of-package claim." *Id.* Mr. Weir's execution of the model does not change these findings. Nor, for that matter, do Defendants provide any facts or law to merit reconsideration. Defendants acknowledge that this Court already determined that Mr. Weir's methodology was consistent with Plaintiff's theory and Mr. Weir did not need to test the premium associated with the %DV. As such, Defendants concede: "the Court need not revisit this issue." ECF No. 178 at 12, n. 3.

ii.     **Defendants' assumptions about respondents' beliefs are unfounded.**

Defendants further argue that "respondents in Weir's surveys as conducted could have easily believed that a product profile that did not list protein content meant that the product did not contain any protein at all." ECF No. 178 at 12. But this is simply conjecture. Defendants take aim at Mr. Weir for admitting that "he did not know, and never attempted to determine, what respondents would take away from a product profile." ECF No. 178 at 12. And yet, neither did Defendants. ECF No. 182-1, Ex. 1 at 115:4–116:20. Similarly, Defendants criticize Mr. Weir for arguing that "the inconsistencies do not matter." ECF No. 178 at 13. Notably, Defendants fail to offer any reason why they would matter.

Defendants claim that survey respondents were confused as evidenced by a single survey response. ECF No. 178 at 13 ("For example, according to his data, some respondents greatly preferred '4g protein' over '5g protein' or no protein over '5g protein'"). Nonsense. First, Defendants cherry-pick quotes from Mr. Weir's deposition, but it is clear that it is evident that counsel cut off Mr. Weir's answer when viewing the transcript as a whole. Weir Depo. Tr. at 162:16–17 ("If I can just finish my explanation."). Mr. Weir explained that such an anomaly may occur for a single respondent which is why the results are not dependent on a single response. *Id.* at 162:18–164:18. Indeed, Defendants do not argue that the results would have changed based on this single respondent, and nor could they. It is telling that of the 1440 responses (360 per survey), DKB managed to only find a single purported anomaly. And, even if the respondent was confused, it is still appropriate to include it in the results as it accurately reflects the real market place that sets the market price. *See* Amd. Weir Decl. ¶¶ 96–97 ("For example, a respondent may make

hasty choices in the survey, but in a similar fashion to the way they might make a hasty decision in a supermarket. As another example, a respondent with a low root likelihood may not express strong opinions about product attributes, which could be reflective of their actual opinions").

In sum, none of Defendants' arguments demonstrate that Mr. Weir's opinion does not relate to any issue in the case, fails to aid the jury, or is otherwise disconnected from the facts at issue. At best, the arguments go to weight, not admissibility. *See, e.g.*, *Fortune Dynamic, Inc.*, 618 F.3d at 1037–38 (objections that survey may have been suggestive, and produced counterintuitive results go to weight and not admissibility); *Keith v. Volpe*, 858 F.2d 467, 480–81 (9th Cir. 1988) (affirming district court finding of admissibility of expert survey and rejecting challenges to universe of survey respondents, general trustworthiness, clarity of questions, qualifications of interviewers, and objectivity of survey); *Active Sports Lifestyle USA LLC v. Old Navy, LLC*, No. SACV 12-00572 JVS (Ex), 2013 U.S. Dist. LEXIS 190005, at *44, *48 (C.D. Cal. Nov. 21, 2013) ("Old Navy also argues that the survey included confusing and misleading questions and that it improperly excluded certain clearly non-confused respondents. The Hollander Report provides relevant, and therefore, 'helpful' opinion testimony, and any imperfections in the Report or the survey are subject to challenge on cross-examination."); *Spin Master, Ltd. v. Zobmondo Entm't, LLC*, No. CV 06-3459 ABC (PLAx), 2012 U.S. Dist. LEXIS 188155, at *65–66 (C.D. Cal. Apr. 27, 2012) ("Plaintiffs present several challenges to Dr. Ostberg's survey, such as that . . . the questions were potentially confusing . . . . Similar to the many objections the Ninth Circuit has held go to a survey's weight and not admissibility, Zobmondo's objections here go to the weight of Dr. Ostberg's survey, not its admissibility.").

### B.    Mr. Weir's Opinions are Reliable.

Expert testimony "is reliable if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline." *Primiano*, 598 F.3d at 565 (footnote omitted). While the district court "must act as a 'gatekeeper' to exclude junk science that does not meet . . . reliability standards," *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 982 (9th Cir. 2011), "[t]he test under *Daubert* is not the correctness of the expert's conclusions but the soundness of his methodology," *Primiano*, 598 F.3d at 564 (quotation marks omitted).

The Ninth Circuit and this Court have recognized that conjoint surveys are reliable methods of calculating classwide damages. *Noohi*, 2025 U.S. App. LEXIS 18547, at *19 ("courts have approved damages models that use conjoint analysis, which asks survey respondents to select from a range of similar products that vary in characteristics like price, labeling, and design.") (citing *Lytle v. Nutramax Labs., Inc.*, 114 F.4th 1011, 1033 (9th Cir. 2024)); Class Cert. Order at 16–17 (rejecting challenge to scientific validity and holding methodological arguments go to weight, and not admissibility). Here, Mr. Weir further ensured reliability by using several methods, including exploratory research, pre-testing, and data analysis.

First, he reviewed DKB Product labels and competitor product labels to compile a list of commonly used label claims. Amd. Weir Decl., Ex. 2. Mr. Weir then undertook exploratory research in the form of cognitive interviews to understand the factors influencing consumer choices. Amd. Weir Decl. ¶¶ 39–53. For the selection of product attributes, Mr. Weir also reviewed competitor labels, documentary evidence, Defendants' and their competitor's websites, retailer websites, and the testimony of Dan Letchinger, DKB's most knowledgeable 30(b)(6) witness. *Id.* ¶ 60 n. 30; *see also* Weir Dep. Tr. at 117:5–14 (describing how he chose label statements, "I was focusing on the things that people found to be important about that category and that were evidenced on various different labels, predominantly the Dave's labels as they relate to those product categories."). Mr. Weir opined that "it is not necessary, nor advisable to include every possible product attribute in a conjoint analysis," citing a Harvard Business School publication on conjoint analysis that simply states "Do not use too many attributes." Weir Class Cert. Reply Decl. ¶¶ 90, 94. Indeed, Dr. Kivetz agrees that "typically you do not want to use more than 8 or 10 attributes." *Id.* ¶ 96 (quoting Kivetz deposition). Based on scientific methodology, Mr. Weir used six to eight attributes in addition to the at-issue protein claims per survey. Amd. Weir Decl. ¶ 65.

Mr. Weir also pre-tested the survey design to ensure respondents understood the questions. *Id.* ¶¶ 66–69. Mr. Weir reviewed the response data for reliability and excluded 31 straightlined responses. *Id.* ¶ 75. Mr. Weir also measured the predictive accuracy of the survey data with market simulation tools and found it to be "excellent." *Id.* ¶¶ 79–80. Finally, Mr. Weir ran additional

1  market simulation exercises in determining whether to exclude speeders, laggards, and low root

2  likelihood, and found no statistically significant difference in all four surveys for such exercises.

3  *Id.* ¶¶ 94–95. Thus, Mr. Weir properly tested and verified reliability.

4             **i.    Mr. Weir's survey results are rational.**

5             Defendants contend that Mr. Weir's survey is unreliable because the "surveys determined

6  questionable price premia for many of the 'Other Label Statements' in the surveys" because "the

7  'No Artificial Ingredients' and 'No High Fructose Corn Syrup' . . . received higher 'price premia'

8  estimates than did the front-label claims 'USDA Organic' and 'NON-GMO.'" ECF No. 178 at

9  15. Defendants make this bare assertion with no evidentiary support and claim that "[t]he organic

10 and non-GMO statements should have received much higher price premia due to their prominence

11 and placement as well as their impact on consumer purchasing behavior, as evidence by the well-

12 known popularity of organic and non-GMO products." *Id.*[4] But this argument must be supported

13 with evidence and Defendants' expert himself failed to conduct any analysis to support such an

14 assertion.

15            In any event, as explained above (*see supra* IV.A.i), this argument rests on an improper

16 assumption that all of the attributes in the survey, including "No Artificial Ingredients" and "No

17 High Fructose Corn Syrup," came from Dave's Killer Bread packaging. The attributes were based

18 on Dave's Killer Bread and competitor labels, cognitive interviews, documentary evidence,

19 Defendants' and their competitor's websites, retailer websites, and the testimony of Dan

20 Letchinger. Amd. Weir Decl. ¶¶ 39–53, 60 n. 30, 66–69, 75, 79–80, 94–95. For example, O

21 Organic, a competitor during the Class Period identified by Defendants in its discovery responses,

22 included "No High Fructose Corn Syrup" and "No Artificial Colors or Flavors" on the front label

23 of its organic classic wheat bread. *See* Reynolds Decl., Ex. C; Amd. Weir Decl., Ex. 2 (Documents

24 Reviewed). Similarly, Nature's Own, another brand of Defendant Flower's Foods, includes the

25 claims "no high fructose corn syrup" and "never any artificial preservatives, colors, or flavors"

26 on the front label of its whole wheat bread. *See* Reynolds Decl., Ex. B; Amd. Weir Decl., Ex. 2

27

28 ───────────────
[4] DKB's argument is a tacit admission that front label statements, such as the protein claim at issue here, command a higher price premium.

(Documents Reviewed). Thus, DKB lacks foundation for its argument that the statements "No High Fructose Corny Syrup" and "No Artificial Ingredients" are necessarily side label statements. And, as further explained below, Mr. Weir did not design the survey for purposes of calculating the price premia of these statements. *See, e.g., Johnson v. Glock, Inc.*, No. 20-cv-08807-WHO, 2024 U.S. Dist. LEXIS 184041, at *45 (N.D. Cal. Sep. 30, 2024) (rejecting challenge to attribute selection when the expert "has explained the many, facially reliable sources that he reviewed to select attributes."); *Davidson v. Apple, Inc.*, No. 16-CV-04942-LHK, 2018 U.S. Dist. LEXIS 137707, at *61–62 (N.D. Cal. May 7, 2018) (rejecting challenge to exclusion of attributes when expert explained basis for doing so); *In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 954 n. 100 (C.D. Cal. 2015) (same). Defendants' bare reference to Plaintiff's preference for "products with organic and non-GMO features" does not show that the "organic and non-GMO statements should have received much higher price premia" on a classwide basis. ECF No. 178 at 15–16. But even if they did, it would not defeat the premium associated with the protein claims.

Defendants further suggest, again without any evidentiary support, that Mr. Weir's results are "irrational" because "Weir calculated a lower price premium for the '11g' protein on the Bagel (3.47%) than the '3g' protein on the Thin-Sliced Bread (3.58%)." ECF No. 178 at 16. These results are not "irrational" as DKB suggests. DKB compares two distinct products, with distinct purchasers and therefore distinct survey respondents, and it is not irrational for consumers of one product type to place a higher premium on the protein in a thin sliced bread than those purchasing bagels. Moreover, Defendants fail to explain the significance of some label claims being valued by consumers more than others; that is the exact purpose of the conjoint: to show that valuation. Indeed, these differences affirm Mr. Weir's use of four different conjoint surveys based on four different product types. *Williams v. Apple, Inc.*, 338 F.R.D. 629, 649 (N.D. Cal. May 28, 2021) ("The general idea behind conjoint analysis is that the market value for a particular product is driven by features or descriptions of features embodied in that product. Survey respondents are therefore asked to choose between different sets of product attributes, the responses are aggregated, and statistical methods are then used to determine the value . . . that consumers attach to each specific attribute") (quoting *Hadley*, 324 F. Supp. at 1103)). Defendants' reliance on

*Johnson Elec. N. Am. Inc. v. Mabuchi Motor Am. Corp.*, is inapposite because that is a patent case applying New York law and the expert did not rely on conjoint analysis like Mr. Weir does here. 103 F. Supp. 2d 268, 270 (S.D.N.Y. June 30, 2000).

Defendants' reliance on *Oracle Am., Inc. v. Google Inc.* is also misplaced because the conjoint there was not used to measure damages, and instead was offered to measure the market share due to patent infringement in a case involving cell phones. No. C 10-03561 WHA, 2012 U.S. Dist. LEXIS 33619, at *29 (N.D. Cal. Mar. 13, 2012). The *Oracle* court first recognized that "conjoint surveys are appropriate for damages calculation in litigation." *Id.* at *29–30. However, the court rejected the conjoint in part because the expert's decision to exclude over 30 features that consumers identified as important. *Id.* The *Oracle* court criticized the expert's decision to exclude the clearly important factors because he "had no reasonable criteria for choosing the four non-patented features to test." *Id.* at *32. In support for the court's conclusion that exclusion of attributes rendered the survey unreliable, the court identified "irrational results" within a single survey demonstrated respondents were considering attributes beyond those presented in the survey. *Id*. But here, Mr. Weir undertook cognitive interviews, pre-tested the survey design to understand consumer behavior, and reviewed evidence in selecting the product attributes. Amd. Weir Decl. ¶¶ 39–53, 60 n. 30, Ex. 2. He then used the very features identified by consumers in the interviews. *Id*. And, unlike *Oracle*, Defendants improperly juxtapose the results of two separate surveys, with two separate consumer groups, to manufacture a basis for criticism. Put differently, Defendants cannot identify results that suggest that omission of any attributes rendered the results irrational. Many courts have rejected or distinguished *Oracle* in similar circumstances. *See, e.g., In re JUUL Labs, Inc., Mktg. Sales Pracs. & Prods. Liab. Litig*., 609 F. Supp. 3d 942, 1021, n. 66 (N.D. Cal. Jun. 28, 2022) (rejecting attribute challenge because "JLI has failed to show that some key or critical variable was omitted such that there is no utility or relevance to Singer's analysis."); *Odyssey Wireless, Inc. v. Apple Inc.*, No. 15-cv-01735-H-RBB, 2016 U.S. Dist. LEXIS 187982, at *25 (S.D. Cal. Sep. 14, 2016) ("In *Oracle*, the expert at issue used a conjoint analysis to attempt to measure market share, not a consumer's willingness to pay for a particular feature of a product."); *Apple, Inc. v. Samsung Elecs. Co., Ltd.*, No. 12-CV-00630-

LHK, 2014 U.S. Dist. LEXIS 24506, at *72–73 n.10 (N.D. Cal. Feb. 25, 2014) ("Whether Dr. Hauser chose the correct distraction features, or whether he should have instead relied on other distraction features, goes to weight, not admissibility. Samsung's reliance on *Oracle* is misplaced."); *TV Interactive Data Corp. v. Sony Corp.*, 929 F. Supp. 2d 1006, 1026 (N.D. Cal. 2013) (explaining that in *Oracle*, "the expert tested seven features in the analysis, three of which were covered by the patented technology, and four of which were not. . . . Judge Alsup remarked that the expert offered no principle basis for selecting the four non-patented features for inclusion in the analysis.").

### ii.    Mr. Weir did not omit key attributes.

Defendants next argue that the surveys are unreliable because "the %DV—a feature that Plaintiff himself claims is important to consumer's purchase decisions" was not included and "[n]othing . . . tested the impact of the presence or absence of a %DV." ECF No. 178 at 17. But as explained above, this Court allowed Plaintiff to proceed on multiple theories of liability and further held that he need not test every theory of liability because "the lack of a %DV is relevant only insofar as it establishes that defendants allegedly violated regulations." Class Cert. Order at 5. Mr. Weir designed his survey to test the front label at-issue unlawful protein claim. In doing so, he chose attributes that appear on the front labels of DKB's Products and competitor products. Thus, it would not have been appropriate to include %DV in the attributes for this survey.[5]

Defendants argue that Mr. Weir omitted key attributes related to "Whole-Grains," "Fiber," "Calories," and "Taste/Flavors" rendering his opinions unreliable. ECF No. 178 at 17. To the extent Defendants argue this resulted in a focalism bias, this Court already found that "alleged focalism bias goes to the weight of the expert's opinion, not its admissibility." Class Cert. Order at 16 (quoting *In re Arris Cable Modem Consumer Litig.*, 327 F.R.D. 334, at 372 (N.D. Cal. Aug. 10, 2018)). Moreover, this argument is completely unsupported because Mr. Kivetz himself did not test whether these attributes would have changed the price premium. As explained above, Mr.

---

[5] Notably, at class certification, Mr. Weir opined that it would have been possible to include the %DV as reflected in the NFP if necessary. *See* ECF No. 118 ¶ 105. However, following the Court's ruling, he did not include it in the executed surveys.

1    Weir chose the attributes based on a variety of factors, not just what "consumers directly told

2    Weir." *Id.*

3        Further, Mr. Weir did test these claims on the appropriate products. For example, Mr.

4    Weir tested the whole grains and fiber claims on the regular sliced bread and thin sliced bread.

5    Amd. Weir Decl. ¶ 65, Table 1. Mr. Weir only tested the calorie statement on the thin sliced bread

6    because that was the only consumer group that identified calories as being important. *Id.*; *see also*

7    Weir Tr. at 65:9–66:6 ("the concept of the calories only came up with respect to the thin-sliced

8    bread."). Thus, Defendants disagreement with Mr. Weir's attribute choices, at best, goes to weight

9    rather than admissibility. Class Cert. Order at 16; *see See Macdougall*, 2021 U.S. App. LEXIS

10   37780, at *3 (challenges to "specific attribute selection . . . go to the weight given the survey, not

11   its admissibility.") (quotation omitted); *see also Hadley*, 324 F. Supp. at 1110 (rejecting similar

12   "focalism" bias challenge); *Svenson v. Google, Inc.*, No. 13-cv-04080-BLF, 2016 U.S. Dist.

13   LEXIS 189093, at *17–18 (N.D. Cal. Dec. 21, 2016) (rejecting argument that biases, including

14   focalism bias, rendered expert's opinion inadmissible).

15       Finally, Defendants' *Oracle* comparison in this context similarly falls short. There, the

16   court ultimately rejected the conjoint in part because it was used to measure smartphone market

17   share and the survey's reliance on only seven (7) features did not reliably measure real world

18   behavior because the expert's research showed that real world consumers would have considered

19   thirty-nine (39) different features when considering purchasing a smartphone. 2012 U.S. Dist.

20   LEXIS 33619, at *30–31. But here, Mr. Weir undertook exploratory research, including cognitive

21   interviews to determine relevant consumer preferences and features. Amd. Weir Decl. ¶¶ 39–53.

22   Mr. Weir selected the attributes "based upon a review of Dave's Killer Bread and competitor

23   labels, the cognitive interviews, the documentary evidence, a review of Defendants' and

24   competitor's websites, retailer websites and the testimony of Dan Letchinger." Amd. Weir Decl.

25   ¶ 60 n. 30. Nor does DKB identify anything close to the nearly 30 omitted features in *Oracle*. For

26   example, Defendants only identify one attribute (calories) that they claim is missing from the

27   regular sliced-bread survey. ECF No. 178 at 17. And, although interview respondents said they

28   considered flavor in their decision-making process, the surveys control for that attribute by

instructing respondents to assume that "all of packages of [the bread products] are available in your choice of flavor/variety." *See* Amd. Weir Decl. ¶ 58; *see also id*. ¶ 75 (survey question). And finally, Mr. Weir tested front label statements, and therefore inclusion of %DV, which appears in the back label NFP, would not have been included in this survey design. Thus, unlike *Oracle*, Mr. Weir has provided reasoning for his carefully chosen attributes, and his opinion cannot be excluded on this basis. *See, e.g., In re JUUL Labs*, 609 F. Supp. at 1021, n. 66 (rejecting attribute challenge because "JLI has failed to show that some key or critical variable was omitted such that there is no utility or relevance to Singer's analysis."); *Apple, Inc.*, 2014 U.S. Dist. LEXIS 24506, at *72–73 n.10 ("Whether Dr. Hauser chose the correct distraction features, or whether he should have instead relied on other distraction features, goes to weight, not admissibility. Samsung's reliance on *Oracle* is misplaced.").

## V.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' motion to exclude the testimony of Colin Weir.

Dated: September 5, 2025

GUTRIDE SAFIER LLP

*/s/ Hayley A. Reynolds /s/*
Seth A. Safier (State Bar No. 197427)
Marie A. McCrary (State Bar No. 262670)
Hayley A. Reynolds (State Bar No. 306427)
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile:  (415) 449-6469

*Attorneys for Plaintiff David Swartz*