MICHAEL L. RESCH (SBN 202909)
mresch@kslaw.com
LIVIA M. KISER (SBN 285411)
lkiser@kslaw.com
SAMUEL R. DIAMANT (SBN 288738)
sdiamant@kslaw.com
KING & SPALDING LLP
50 California Street, Suite 3300
San Francisco, California 94111
Telephone: (415) 318-1200

REBECCA L. PARADIS (admitted *pro hac vice*)
rparadis@kslaw.com
KING & SPALDING LLP
1700 Pennsylvania Avenue, NW, Suite 900
Washington, DC 20006
Telephone: (202) 737-0500

QUYEN L. TA (SBN 229956)
quyen.ta@skadden.com
SKADDEN, ARPS, SLATE, MEAGHERS
& FLOM LLP
525 University Avenue, Suite 1400
Palo Alto, California 94301
Telephone: (650) 470-4500

*Attorneys for Defendants*
Dave's Killer Bread, Inc.
and Flowers Food, Inc.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| DAVID SWARTZ, | Case No. 4:21-cv-10053-YGR |
| Plaintiff, | Honorable Yvonne Gonzalez Rogers |
| v. | **DEFENDANTS DAVE'S KILLER BREAD, INC.'S AND FLOWERS FOODS INC.'S OPPOSITION TO PLAINTIFF'S MOTION TO EXCLUDE THE EXPERT TESTIMONY OF DR. PAULA TRUMBO** |
| DAVE'S KILLER BREAD, INC., AND FLOWERS FOODS, INC. | |
| Defendants. | |
| | Hearing Date:  December 9, 2025 |
| | Hearing Time:  2:00 p.m. |
| | Courtroom:  Courtroom 1, 4th Floor |

# TABLE OF CONTENTS

I.   INTRODUCTION .................................................................................................. 1

II.  BACKGROUND ................................................................................................... 3
     A.   The Complex Regulatory Scheme ............................................................. 3
     B.   Years Before This Lawsuit, Flowers' Regulatory Team Interpreted FDA's
          Protein Labeling Requirements And Concluded That The Protein Content
          Statement Did Not Constitute A Protein Claim ......................................... 5
     C.   Plaintiff's Claims ...................................................................................... 7
     D.   Dr. Trumbo's Qualifications and Opinions ................................................ 8

III. LEGAL STANDARD ........................................................................................... 9

IV.  ARGUMENT ....................................................................................................... 9
     A.   Dr. Trumbo's Regulatory Opinions are Relevant ..................................... 9
     B.   Dr. Trumbo's Opinions are Helpful to the Trier of Fact ......................... 12
     C.   Dr. Trumbo's Opinions are Reliable ....................................................... 13
          1.   Dr. Trumbo's opinions are supported by her significant experience at
               FDA and working with the food industry, conversations with others at
               FDA, and analysis of the regulations. ............................................. 13
          2.   Plaintiff's challenges to Dr. Trumbo's opinions are inappropriate under
               *Daubert* and only further establish that her testimony is needed. ....... 15
     D.   Dr. Trumbo Does Not Opine on FDA's "Official" Interpretation of the
          Regulations ............................................................................................... 17
     E.   Dr. Trumbo is Qualified to Opine on Industry Practice .......................... 18

V.   CONCLUSION .................................................................................................. 19

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
5
    509 U.S. 579 (1993) ..................................................................................*passim*

6

*Drake v. Allergan, Inc.*,
    *No.* 2:13-CV-234, 2014 WL 5392995 (D. Vt. Oct. 23, 2014) ................................................ 11

7

*Elsayed Mukhtar v. Cal. State Univ., Hayward*,
8
    299 F.3d 1053 (9th Cir. 2002) ................................................................................................. 9

9

*In re Fosamax Prods. Liab. Litig.*,
    645 F.Supp.2d 164 (S.D.N.Y. 2009) .................................................................................. 2, 11

10

*Guerra v. KIND, LLC*,
11
    No. 22-cv-06654-RS, 2023 WL 3436093 (N.D. Cal. May 11, 2023) .............................. 15, 16

12

*Hangarter v. Provident Life & Acc. Ins. Co.*,
13
    373 F.3d 998 (9th Cir. 2004) ................................................................................................. 19

14

*Holley v. Gilead Scis., Inc.*,
    No. 18-CV-06972-JST, 2023 WL 2469632 (N.D. Cal. Feb. 27, 2023) ...........................*passim*

15

*Kennedy v. Collagen Corp.*,
16
    161 F.3d 1226 (9th Cir. 1998) ................................................................................................. 9

17

*Krouch v. Wal-Mart Stores, Inc.*,
18
    No. 12-cv-02217-YGR, 2014 WL 5463333 (N.D. Cal. Oct. 28, 2014) .................................. 14

19

*Kumho Tire Co. v. Carmichael*,
    526 U.S. 137 (1999) ............................................................................................................... 14

20

*McCoy v. DePuy Orthopaedics, Inc.*,
21
    No. 22-CV-2075 JLS (SBC), 2024 WL 1705952 (S.D. Cal. Apr. 19, 2024) .................... 2, 10

22

*In re Mirena IUD Prods. Liab. Litig.*,
23
    169 F. Supp. 3d 396 (S.D.N.Y. 2016) .............................................................................. 11, 12

24

*Nacarino v. Kashi Co.*,
    77 F.4th 1201 (9th Cir. 2023) ......................................................................................... 15, 16

25

*Pfizer Inc. v. Teva Pharms. USA, Inc.*,
26
    461 F.Supp.2d 271 (D.N.J. 2006) ......................................................................................... 11

27

*Reid v. Johnson & Johnson*,
    780 F.3d 952 (9th Cir. 2015) ................................................................................................. 16

28

*Roffman v. Rebbl, Inc.*,
    No. 22-cv-05290-JSW ............................................................................................ 19

*Sherris Minor v. Baker Mills Inc. and Kodiak Cakes LLC*,
    No. 20-cv-02901-RS ............................................................................................... 19

*Sonner v. Premier Nutrition Corp.*,
    971 F.3d 834 (9th Cir. 2020) ................................................................................. 2

*Swartz v. Dave's Killed Bread, Inc.*,
    No. 4:21-CV-10053-YGR, 2023 WL 11965054 (N.D. Cal. Sept. 1, 2023) ........... 16

*United States v. Hankey*,
    203 F.3d 1160 (9th Cir. 2000) ............................................................................... 9

*United States v. Unruh*,
    855 F.2d 1363, 1376 (9th Cir. 1987) ............................................................... 12, 17

*United States v. W.R. Grace*,
    455 F.Supp.2d 1156 (D. Mont. 2006) ................................................................... 12

*Wells v. Allergan, Inc.*,
    No. 12–CV–973, 2013 WL 7208221 (W.D. Okla. Feb. 4, 2013) ........................... 11

*Wendell v. GlaxoSmithKline LLC*,
    858 F.3d 1227 (9th Cir. 2017) .......................................................................... 3, 15

*In re Yasmin & YAZ (Drospirenone) Mktg., Sales Practices & Prods. Liab. Litig.*,
    No. 3:09-2100-DRH, 2011 WL 6302287 (S.D. Ill. Dec. 16, 2011) ............ 2, 12, 17

*In re Zicam Cold Remedy Mktg., Sales Pracs.*, *& Prods. Liab. Litig.*,
    No. 09-MD-2096-PHX-FJM, 2011 WL 798898 (D. Ariz. Feb. 24, 2011) ......... 2, 10, 17

*Zucchella v. Olympusat, Inc.*,
    No. CV197335DSFPLAX, 2023 WL 2628107 (C.D. Cal. Jan. 10, 2023) .............. 19

**Other Authorities**

21 C.F.R. 101.8 ................................................................................................................ 13

21 C.F.R. § 101.9(c)(7) ................................................................................................ *passim*

21 C.F.R. § 101.13 ........................................................................................................ *passim*

21 C.F.R. 101.54 ......................................................................................................... 4, 13

58 Fed. Reg. 2066 ....................................................................................................... 4, 13

58 Fed. Reg. 2344 ............................................................................................................ 4

71 Fed. Reg. 8597 ........................................................................................................... 13

Cal. Bus. & Prof. Code § 17200 ................................................................. 2, 7

FDA, *Guidance for Industry and FDA: Dear Manufacturer Letter Regarding Food Labeling*, https://www.fda.gov/regulatoryinformation/search-fda-guidance-documents/guidance-industry-and-fda-dear-manufacturer-letter-regarding-food-labeling; .................................................................................................... 4

FDA, *Label Claims for Conventional Foods and Dietary Supplements*, https://www.fda.gov/food/nutrition-food-labeling-and-criticalfoods/label-claims-conventional-foods-and-dietary-supplements; ..................................... 4

Fed. R. Evid. 704 .................................................................................... 3, 12

Fed. R. Evid. 702 ................................................................................... *passim*

1

## I.    **INTRODUCTION**

The Court should deny Plaintiff's Motion to Exclude the Expert Testimony of Dr. Paula Trumbo. As Dr. Trumbo is an expert who proffers testimony and opinions that are relevant and reliable and that would be helpful to the jury and Court, her testimony and opinions are properly admitted. *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 588-89 (1993).

Plaintiff's individual and sole class claims rest on an alleged technical violation of an obscure interpretation of an unusually complex series of food labeling regulations promulgated by the Food & Drug Administration ("FDA"). Specifically, Plaintiff alleges that a protein content statement that simply restates the amount of protein legally required to be stated in the nutrition facts panel ("NFP") (*e.g.*, "5g protein") is somehow a characterization of the protein that renders that number a "protein claim" under 21 C.F.R. § 101.9(c)(7)(i). To be clear, everyone agrees that when the "5g" amount appears on the NFP it is *not* a "protein claim." But Plaintiff claims that if the "5g" number is put anywhere else on the package, it somehow becomes a "characterization" of the protein rather than just a number. This matters because when protein is characterized (*e.g.*, as a "good source" of protein), a percent Daily Value ("%DV") for protein must be included in NFP. Notably, the term "protein claim" is not defined anywhere in the regulations, and FDA indicates elsewhere that only a descriptor *characterizing* the level of the nutrient in some way requires a disclosure (like a %DV). *See*, *e.g.*, 21 C.F.R. § 101.13(b).

Years before this lawsuit was filed, the Flowers regulatory team analyzed this very issue and determined that a %DV for protein was not required because restating the legally-required grams from the NFP did *not* characterize the protein and thus did *not* constitute a "claim." This conclusion was consistent with numerous other food labels in the market at the time, which only included a %DV for protein where a descriptor appeared on the product that characterized the protein (*e.g.*, "good source" of protein). Nonetheless, based on his counsel's belief that identifying the legally-required grams of protein from the NFP elsewhere on the package characterizes the protein and renders it a "claim," Plaintiff has alleged that Flowers violated the law and is improperly

1

seeking over $20 million.[1]

Dr. Paula Trumbo worked at the FDA for over 15 years where she had direct responsibility over the food labeling regulations at issue in this case. To bring clarity to a complex federal regulatory scheme, discuss how FDA viewed and interpreted the regulations during her tenure, and provide context concerning Flowers' interpretation of the regulations, Dr. Trumbo has offered opinions. She is well qualified to do so.

Dr. Trumbo appropriately relies on her relevant FDA experience and her interpretation of the regulations and other FDA statements to opine that a factual statement pulled from the NFP that does not characterize the level of protein in the product, like "5g protein," does not constitute a "protein claim." Based not only on her FDA experience but also other experience working with and in the food industry, Dr. Trumbo offers relevant and reliable testimony on FDA requirements with respect to labeling, as well as Flowers' compliance with, and industry's general understanding of, those requirements. Not only are these regulatory opinions necessary in this case—the law is also clear that they are admissible. *See, e.g.*, *Holley v. Gilead Scis., Inc.*, No. 18-CV-06972-JST, 2023 WL 2469632, at *3 (N.D. Cal. Feb. 27, 2023) (expert could testify on company's compliance with FDA regulations); *In re Fosamax Prods. Liab. Litig.*, 645 F.Supp.2d 164, 191 (S.D.N.Y. 2009) (same); *McCoy v. DePuy Orthopaedics, Inc.*, No. 22-CV-2075 JLS (SBC), 2024 WL 1705952, at *18 (S.D. Cal. Apr. 19, 2024) (expert could testify on industry regulations); *In re Zicam Cold Remedy Mktg., Sales Pracs.*, & Prods. Liab. Litig., No. 09-MD-2096-PHX-FJM, 2011 WL 798898, at *22 (D. Ariz. Feb. 24, 2011) (same); *In re Yasmin & YAZ (Drospirenone) Mktg., Sales Practices & Prods. Liab. Litig.*, No. 3:09-2100-DRH, 2011 WL 6302287, at *24-*25 (S.D. Ill. Dec. 16, 2011) (same).

Despite Plaintiff's attempt to paint this regulatory issue as straightforward, the reality is that FDA's labyrinthine requirements for labeling are beyond the common understanding of jurors and courts. How to interpret these rules requires expert analysis and the synthesis of numerous FDA

---

[1] Under governing authority, Plaintiff cannot pursue claims for monetary relief in federal court under California's Unfair Competition Law ("UCL"). *See Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020); *see also* Defendants' Motion for Summary Judgment (ECF No. 176), at 9-12.

regulations, guidances, and other documents, including those related to nutrient content claims and other types of claims. Dr. Trumbo's testimony thus will be helpful in assessing both Plaintiff's "unlawful" claim (the only claim being pursued on behalf of the class) and Plaintiff's individual claims of fraud, deceit, misrepresentation, and unjust enrichment. *See* Fed. R. Evid. 704 Advisory Committee Note ("[t]he basic approach to opinions, lay and expert, . . . is to admit them when helpful to the trier of fact"). Plaintiff has no expert to rebut Dr. Trumbo's opinions. Nor does he seriously argue that Dr. Trumbo lacks expertise on the relevant subject matters. Instead, he challenges Dr. Trumbo's opinions through a motion to exclude that outlines certain documents that, he suggests, conflict with Dr. Trumbo's opinions. But as explained in more detail below, under governing law, such efforts to impeach an expert's opinions go to weight and not admissibility. *See Wendell v. GlaxoSmithKline LLC*, 858 F.3d 1227, 1237 (9th Cir. 2017). And, in any event, the documents Plaintiff cites do not render Dr. Trumbo's expert opinions unreliable. Rather, these documents only confirm that, without Dr. Trumbo's testimony, the jury and Court will be put upon to untangle prolix, complex regulatory rules and guidance.

Dr. Trumbo tenders testimony and opinions that are relevant and reliable and would be helpful to the jury and Court. As a result, her testimony and opinions are properly admitted and Flowers respectfully requests that the Court deny Plaintiff's Daubert motion. *See Daubert*, 509 U.S. at 588-89.

## II.   **BACKGROUND**

### A.   **The Complex Regulatory Scheme**

FDA *requires* companies to label food with the number of grams of protein in the NFP, calculated based on the nitrogen method. 21 C.F.R. § 101.9(c)(7). FDA also *permits* disclosing the grams of protein outside of the NFP, including on the front of pack, calculated based on the nitrogen method, as was done with the Dave's Killer Bread products at issue. *Id*. Plaintiff does not dispute that the protein statement on the front of Dave's Killer Bread products is allowed to be there or that it was appropriately calculated. Rather, Plaintiff argues that the when the number of grams of protein are put anywhere on the package other than the NFP, that number somehow morphs into a

descriptor falling within the ambit of a "protein claim" set forth in § 101.9(c)(7)(i). If a label actually contains a bona fide "protein claim," then the %DV for protein calculated pursuant to a different method (PDCAAS) must be disclosed on the NFP. *See id.*

To be clear, FDA does not define the term "protein claim." § 101.9(c)(7)(i). FDA, however, explains elsewhere (in its regulations, final notices, guidance, and websites) that the labeling of nutrients, including protein, is permitted outside of the NFP without a concomitant disclosure (like a %DV) so long as the statement does not constitute a "nutrient content claim.[2] A "nutrient content claim" is a "claim that expressly or implicitly characterizes the level of a nutrient of the type required to be in nutrition labeling under § 101.9 or also under § 101.36," such as protein. *Id.* That same regulation explains what does *not* constitute a prohibited nutrient content claim—specifically, "a statement about the amount or percentage of a nutrient," like protein. § 101.13(i)(3). Unlike "nutrient content claims," statements about the amount of a nutrient are permissible so long as "[t]he statement does not in any way implicitly characterize the level of the nutrient in the food and it is not false or misleading in any respect." *Id.*

By way of illustration, FDA explains that statements like "100 calories" or "5 grams of fat" are *not* nutrient content claims. *Id.* The similarity between "5g protein," on the one hand, and "5 grams of fat," on the other, is striking. FDA also explains that terms like "low fat," "high in oat bran," "good source," "contains," and "provides" *would* be considered "nutrient content claims" (*i.e.*, descriptors) that must meet certain criteria (like a certain %DV) because they "explicitly or implicitly characterize[]" the amount of the nutrient. §§ 101.13(a)-(b); 101.54. But the regulations are not a paragon of clarity. For example, other parts of the regulations (like § 101.13(c)), when looked at in isolation, have at times been read to suggest that even statements that simply restate the amount as set forth on the NFP constitute "nutrient content claims." *See* Plaintiff's Motion to Exclude Defendant's Expert, Dr. Paula Trumbo (ECF No. 180), at 13-14 ("Motion"). But such a

---

[2] *See e.g.,* 21 C.F.R. § 101.13(b); FDA, *Guidance for Industry and FDA: Dear Manufacturer Letter Regarding Food Labeling*, https://www.fda.gov/regulatoryinformation/search-fda-guidance-documents/guidance-industry-and-fda-dear-manufacturer-letter-regarding-food-labeling; FDA, *Label Claims for Conventional Foods and Dietary Supplements*, https://www.fda.gov/food/nutrition-food-labeling-and-criticalfoods/label-claims-conventional-foods-and-dietary-supplements; 58 Fed. Reg. 2066, 2344.

reading runs afoul of other sections of the regulations, and arguably the broader regulatory scheme, including the definition itself at § 101.13(b), which defines a "nutrient content claim" as a statement that "characterizes" as opposed to one that simply restates a nutrient's amount. *See also* § 101.13(i).

As Dr. Trumbo explains in her report, the front label's protein content statement (*e.g.*, "5g protein") is indistinguishable from "100 calories" or "5 grams of fat"—statements that FDA has explicitly stated are not "nutrient content claims" (and, accordingly, cannot be "protein claims") and thus *do not* require a disclosure (like the %DV). *See* Declaration of Michael L. Resch ("Resch Decl."), Exhibit ("Ex.") A, Report at 7-11 ("Report"). Dr. Trumbo also makes clear that during her tenure at the FDA, this is how she interpreted and applied the regulations. *See id*. She remains to this day firmly committed to this understanding of the regulatory scheme. Resch Decl., Ex. B, June 26, 2025 Paula Trumbo Deposition ("Dep.") Transcript ("Tr.") at 271:17-23 (Q: And now I would like to give you one opportunity. Would you like to withdraw your opinion in this case? A: As an FDA employee for 15 years working with FDA staff and attorneys on regulations and premarket scientific reviews, no, I have no need to withdraw my statement.); *see also* Resch Decl., Ex. C, Apr. 29, 2025 Paula Trumbo Dep. Tr. at 45:18-22 (stating that she stands by her opinions "100%).

**B.    Years Before This Lawsuit, Flowers' Regulatory Team Interpreted FDA's Protein Labeling Requirements And Concluded That The Protein Content Statement Did Not Constitute A Protein Claim**

Following Flowers' acquisition of Dave's Killer Bread in 2015, Flowers' regulatory team independently assessed the requirements for what constitutes a "protein claim" under § 101.9(c)(7)(i). Because the front label protein content statement merely restates the amount of grams of protein and does not characterize the level of protein in the product, Flowers determined that the statement did not qualify as a "protein claim" under the regulations; it simply stated the amount of protein in the product. *See* Resch Decl., Exs. D-H. For example, in June 2017, Flowers employees discussed whether the grams of protein statement on the front of Dave's Killer Bread products without the %DV complied with FDA regulations—and they concluded that it did. *See* Exhibit E. The following emails reflect Flowers' prudent and diligent effort to analyze and comply with the regulations:

- "In US, if we want to claim protein, we need to claim as %DV, which we couldn't meet

that requirement after calculation. We can still put gram of protein on the bag, but that is not claimed protein." *Id*. at 4 (June 28, 2017 email);

- "Placing the gram amount of a nutrient on the front of pack label does not automatically make it a nutritional claim here in the US." *Id*. at 3 (June 28, 2017 email);

- "[The company's previous regulatory analysis] did not raise any issues pertaining to us listing the protein per serving on the FOP." *Id*. at 3 (June 29, 2017 email); and

- "We have previously discussed this subject at length and decided that the protein 'call outs' on the DKB items, in the current format, would not constitute a "claim." *Id*. at 1 (Mar. 18, 2020 email).

Other internal Flowers emails and testimony by Flowers' director of regulatory compliance (Valerie Wayland) confirm the same understanding. *See* Resch Decl., Ex. G (Jan. 26, 2018 email: "If I understood correctly, calling out '12 g of protein' is ok and not an actual claim. A claim would be something like for example. 'Good Source of Protein' or 'Excellent Source of Protein'"); Ex. H (Jan. 26, 2018 email: "since there are no protein 'claims,' then we don't need PDCAAS values and the %DV for Protein should not be included on the product label"); Resch Decl., Ex. D, Oct. 15, 2024 Valerie Wayland Dep. Tr. at 146:19-147:6 (Q. Did you ever have any concerns that a grams of protein statement could be a protein claim that would require a percent of daily value for protein? A. No, I did not. Q. Why not? A. Because the statement of fact on protein, which is just a restatement of what is in the nutrition facts panel, is not a claim as defined by FDA regulations, which specifically state that claims have to characterize the level of a nutrient in a product with statements like high, good source, low in some cases. But the statement just restating what was in the nutrition facts panel was not considered a claim.); *id*. at 149:7-22 (Q. I'm asking who at Flowers and Dave's Killer Bread decided that a grams of protein statement was not a protein claim. A. So the review of product labels is a collaborative effort again, as I've stated. And when looking at the FDA regulations as a whole and understanding what is a claim and what is not a claim, it is clear that per FDA regulation, a statement, a pure statement that doesn't quantify or imply a specific health benefit or quantity of the product in relationship to claims is not a claim. Q. Does the

OPPOSITION TO MOTION TO EXCLUDE EXPERT PAULA TRUMBO     CASE NO. 4:21-cv-10053-YGR

1    company still believe that today? A. Yes, we do.).

2         Flowers' determination during this time is consistent with Dr. Trumbo's opinions (and how

3    she applied the regulations during her tenure at the FDA which overlapped with Flowers' regulatory

4    team's assessment of this issue). As described in more detail below, Plaintiff's effort to attack

5    Flowers' interpretation and at the same time exclude Dr. Trumbo's opinions should be rejected.

6         **C.    Plaintiff's Claims**

7         Plaintiff's First Amended Complaint ("FAC") asserts claims for unlawful, unfair, and

8    fraudulent trade practices under the Unfair Competition Law ("UCL"), violations of the Consumer

9    Legal Remedies Act ("CLRA") and the False Advertising, Business and Professions Code ("FAL"),

10   and common law fraud, deceit, misrepresentation, and unjust enrichment claims. FAC (ECF No.

11   37) ¶¶ 76-121. The Court certified a class on Plaintiff's UCL unlawful prong claim only. Sept. 20,

12   2024 Order Granting Plaintiff's Motion for Class Certification (ECF No. 139), at 1. Plaintiff alleges

13   more than $20 million dollars in restitution for the class based on this alleged technical violation.

14        Plaintiff originally asserted two claims challenging Flowers' protein statement on the front

15   labels. As the Court observed, Plaintiff in his original Complaint alleged that: (1) the "nutrient

16   content claim" on the front label was calculated under the wrong method (*i.e.*, the nitrogen method),

17   which inflated the amount of protein available from the product; and (2) the "nutrient content claim"

18   on the front label was not accompanied by a %DV for protein in the NFP as, he argued, was required

19   by 21 C.F.R. § 101.9(c)(7)(ii). May 20, 2022 Order Granting in part and Denying in Part

20   Defendants' Motion to Dismiss (ECF No. 34), at 4. The Court rejected the first claim on preemption

21   grounds (*id*. at 8), and Plaintiff subsequently amended his complaint to focus on the second theory.

22        Now, the Class's and all of Plaintiff's claims depend on Plaintiff's theory that Flowers

23   violated § 101.9(c)(7)(i) because (he argues) the front of pack grams of protein was characterizing

24   the protein (thereby making it a "protein claim") that required a disclosure of a %DV for protein.

25   *See* FAC ¶¶ 3, 24-25, 38-54; 78-79; 90; 98; 109; 117. Thus, an in-depth regulatory analysis is

26   required for this threshold issue. Additionally, as it relates to Plaintiff's fraud-based claims, such a

27   regulatory analysis is also necessary to establish, among other things, whether Flowers'

28

1  interpretation of the regulations was consistent with industry practice (it was), thereby tending to

2  disprove an intent to deceive.

3     **D.    Dr. Trumbo's Qualifications and Opinions**

4        There is no dispute that Dr. Trumbo is qualified to serve as an expert on these matters. Dr.

5  Trumbo worked at FDA for more than 15 years and led FDA's Nutrition Science Review Team

6  that was responsible for the pre-market review of the scientific evidence for food labeling, including

7  labeling involving protein statements and protein claims. Report at 1. She also drafted amendments

8  to the regulations on the NFP set forth in § 101.9. *Id*. Prior to joining FDA, from 1998-2003, she

9  worked at Institute of Medicine's ("IOM") Food and the Nutrition Board at the National Academy

10  of Sciences ("NAS"), during which time she served as a study director for reports that set dietary

11  rates for vitamins, minerals, fat, carbohydrates, and protein. *Id*. Since leaving FDA in 2018, she has

12  worked as an independent consultant on various food topics, including food labeling and protein

13  labeling issues. *Id*.

14        Dr. Trumbo offers testimony on: (i) the regulatory scheme of protein labeling generally, (ii)

15  Flowers' compliance with FDA's requirements for protein labeling, and (iii) industry practices

16  related to protein labeling. Specifically, Dr. Trumbo will explain that:

17  - There is a complex series of regulations governing the labeling of protein, which

18    requires looking beyond just one provision (like 21 C.F.R. § 101.9(c)(7)(i) or

19    1013.13(i)) and considering other relevant regulations, FDA guidances and statements,

20    and final rules. *See* Report at 4-6.

21  - A restatement of protein content from the NFP is not a "protein claim" under FDA

22    regulations because it does not characterize the level of protein in the product. *See id*. at

23    6-8. The Dave's Killer Bread Product labels do not include a "protein claim" and

24    therefore the products did not need to disclose %DV for protein. *See id*. at 7-11.

25  - FDA has stated that protein "generally has no %DV listed" and its common and

26    historical practice in the industry for foods to make statements regarding protein content

27    in FOP labeling without a %DV for protein in the NFP. *See id*. at 6-7.

28

All of Dr. Trumbo's opinions are based on her education, work experience working at FDA and with industry, as well as her expert review and thorough analysis of publicly available FDA statements and documents. *See id*. at 3.

## III.    LEGAL STANDARD

Rule 702 allows admission of "scientific, technical, or other specialized knowledge" by a qualified expert if it will "assist the trier of fact to understand the evidence or to determine a fact in issue." *Daubert,* 509 U.S. at 588. Expert testimony is required to be both relevant and reliable. *Id*. at 589; *see also Elsayed Mukhtar v. Cal. State Univ., Hayward*, 299 F.3d 1053, 1063 (9th Cir. 2002) ("Expert testimony is admissible pursuant to Rule 702 if it is both relevant and reliable.") (citing *Daubert*, 509 U.S. at 589), *amended by* 319 F.3d 1073 (9th Cir. 2003). If it satisfies both of those requirements and will assist the jury, "then it is a matter for the finder of fact to decide what weight to accord the expert's testimony." *Kennedy v. Collagen Corp.,* 161 F.3d 1226, 1230 (9th Cir. 1998). When considering arguments regarding admissibility of expert testimony under Rule 702, both the Ninth Circuit and the Supreme Court have emphasized that "[t]he inquiry envisioned by Rule 702 is . . . a flexible one." *Elsayed,* 299 F.3d at 1063 n.7 (quoting *Daubert*, 509 U.S. at 594). "[F]ar from requiring trial judges to mechanically apply the *Daubert* factors . . . judges are entitled to broad discretion when discharging their gatekeeping function." *United States v. Hankey,* 203 F.3d 1160, 1168 (9th Cir. 2000).

As described in detail below, the law is clear that regulatory opinions, like the ones offered here by Dr. Trumbo, are admissible under Rule 702.

## IV.    ARGUMENT

### A.    Dr. Trumbo's Regulatory Opinions are Relevant

Dr. Trumbo's opinions are of central importance to this case. Even Plaintiff cannot seriously dispute that her opinions are highly relevant. Dr. Trumbo opines on the regulatory scheme of protein labeling generally ("regulatory scheme opinions"), Flowers' compliance with FDA's requirements for protein labeling ("compliance opinions"), and industry practices related to protein labeling ("industry practices opinions"). All of these opinions will assist the trier of fact,

particularly given the complexity of the regulatory scheme. Dr. Trumbo's regulatory scheme opinions helpfully explain that FDA's regulation of protein labeling requires the piecing together of various regulations and other FDA statements and that FDA's requirements are not (and have never been) based on one regulatory provision read in isolation. *See* Report at 5-11. Dr. Trumbo's compliance opinions explain that, based on her analysis of the complex regulatory scheme, and taking all of FDA's regulations and statements into consideration, Flowers complied with FDA's requirements related to protein labeling. *See id.* at 7-11. Her industry practices opinions provide important context to Flowers' labeling—specifically that others in the industry similarly did not include a %DV for protein when making the same type of front label statements.

Plaintiff argues that all Trumbo's opinions discussing the regulations should be excluded because they are "legal conclusions." Motion at 10. But it is Plaintiff's argument that is contrary to the law. Courts in the Ninth Circuit routinely permit experts with the necessary "expertise and experience" to testify on a company's "compliance with FDA regulations, including with respect to labeling and warnings." *Holley,* 2023 WL 2469632, at *3; *see also McCoy*, 2024 WL 1705952, at *18 (holding that expert can testify about "the problems with warnings or the lack of warnings to help the jury understand the standard of care, even if doing so involves discussions of industry regulations"); *Zicam,* 2011 WL 798898, at *22 ("Industry practices and the regulatory framework governing both prescription and over-the-counter drugs, as well as homeopathic and allopathic drugs, are complex . . . Expert testimony could help a jury understand agency rules and procedures.").

In *Holley*, Judge Tigar declined to exclude the plaintiff's FDA regulatory expert after defendant Gilead argued that the expert testified regarding his interpretation of the regulatory activity in the case. 2023 WL 2469632, at *2-3. The Court concluded that the expert's testimony on defendant's compliance with FDA regulations, including with respect to labeling and warnings, would be helpful to the trier of fact from a regulatory perspective. *Id*. at *3. The Court also explained that it "will not allow expert testimony on the 'reasonableness' of Gilead's actions because such testimony would improperly attempt to instruct the jury on how to apply the law to

the facts of this case, [b]ut this does not mean that an expert may not testify as to whether Gilead's actions complied with relevant standards, including FDA regulations and other standards reliably established by an expert's experience." *Id.* at n.3.

Courts in other Circuits have held the same. These courts recognize that, "while generally 'an expert's testimony on issues of law is inadmissible,'" courts nonetheless "admit expert testimony regarding companies' compliance with FDA regulations." *In re Mirena IUD Prods. Liab. Litig.*, 169 F. Supp. 3d 396, 467 (S.D.N.Y. 2016). This is because opinions about FDA regulations do not "usurp" the role of the trial judge. *Wells v. Allergan, Inc.,* No. 12–CV–973, 2013 WL 7208221, at *1 (W.D.Okla. Feb. 4, 2013). Such permissible opinions extend to an FDA expert's testimony "about the FDA's regulatory scheme in general, FDA practices and procedures, [the defendant's] compliance with FDA regulations, the FDA's relationship with [relevant] companies, and the standard of care for the [relevant] industry based on his training and experience." *Drake v. Allergan, Inc., No.* 2:13-CV-234, 2014 WL 5392995, at *6 (D. Vt. Oct. 23, 2014); *see also Pfizer Inc. v. Teva Pharms. USA, Inc.*, 461 F.Supp.2d 271, 278–79 (D.N.J. 2006) (finding admissible expert testimony regarding pharmaceutical company's "compli[ance] with the FDA's statutory and regulatory requirements"). As courts recognize, "a lay jury cannot be expected to understand the complex regulatory framework that informs the standard of care in the [the defendant's] industry" so the expert's "assessment of the reasonableness of [the defendant's] conduct in light of [the expert's] experience and her understanding of FDA regulations will be helpful to the jury." *In re Fosamax Prods. Liab. Litig.*, 645 F.Supp.2d at 191 (denying motion to preclude expert from "testifying about general FDA regulatory requirements and procedures or offering an opinion as to [the pharmaceutical company's] compliance therewith").

Plaintiff's argument that it is "axiomatic" that experts cannot opine on matters of law misses the point. Dr. Trumbo is not opining on "matters of law." Rather she is opining on matters related to the complex regulatory scheme on protein labeling, how she applied these same regulations during her tenure at the FDA, and industry's understanding of the regulations more broadly. As shown through the cases above, courts regularly admit such testimony to shed light on complex

11

1    regulatory schemes, and her testimony addresses one of the central issues in the case.

2    **B.    Dr. Trumbo's Opinions are Helpful to the Trier of Fact**

3        Dr. Trumbo's opinions are in no sense "legal conclusions" simply because they touch upon

4    matters of legal significance. But even if any of Dr. Trumbo's opinions were legal conclusions, that

5    would not make them *per se* inadmissible. Even as to opinions that implicate legal conclusions, "it

6    is [] within the Court's discretion to admit the testimony if it is accurate and would be helpful to

7    the jury in deciding the issues." *United States v. W.R. Grace*, 455 F.Supp.2d 1156, 1165-66 (D.

8    Mont. 2006) ("Although . . . opinion testimony consisting of legal conclusions is not admissible,

9    the Court still retains the discretion that accompanies all evidentiary rulings."); *United States v.*

10   *Unruh*, 855 F.2d 1363, 1376 (9th Cir. 1987) ("The trial judge's decision to let the testimony in,

11   rather than explaining Regulation O in his instructions to the jury, is justified by the aid that it gave

12   the jury in understanding other evidence presented as part of the prosecution's case."). As the

13   Advisory Committee Notes on Rule 704 make clear, "[t]he basic approach to opinions, lay and

14   expert, . . . is to admit them when helpful to the trier of fact." *See also Holley*, 2023 WL 2469632,

15   at *3 ("such testimony would be helpful to the trier of fact from a regulatory perspective."); *see*

16   *also In re Yasmin & YAZ*, 2011 WL 6302287, at *25 (discussing FDA regulations and finding that

17   "[t]o the extent [the expert] does offer legal conclusions, the Court finds that [the expert's]

18   testimony is permissible because of the complex nature of the process and procedures and the jury

19   needs assistance understanding it. [The expert's] testimony will assist the trier of fact in

20   understanding the federal regulations, and the jury will be instructed that that the Court, not [the

21   expert] nor any other witness, will instruct the jury on the law in this case.").

22       This Court can address any concerns related to how, and to what extent, Dr. Trumbo's

23   opinions will be utilized by a jury, including through proper jury instructions. *In re Mirena*, 169 F.

24   Supp. 3d at 467 ("the Court finds that [the expert's] testimony is permissible because of the complex

25   nature of the process and procedures and the jury needs assistance understanding it. [The expert's]

26   testimony will assist the trier of fact in understanding the federal regulations, and the jury will be

27   instructed that that the [sic] Court, not [the expert] nor any other witness, will instruct the jury on

28

the law in this case").

Plaintiff proposes this Court implement a categorical bar to the admission of testimony from an indisputable expert regarding a complex regulatory scheme with which Dr. Trumbo has significant professional experience, including at the FDA itself. But governing and persuasive authority dictates otherwise. *See supra* at 13-14. Because Dr. Trumbo's opinions will be helpful to the trier of fact, Plaintiff's motion to exclude should be denied.

### C.    Dr. Trumbo's Opinions are Reliable

Plaintiff also argues that Dr. Trumbo's opinions are somehow "unreliable" because they are based on her experience and conflict with dicta and isolated FDA statements. Motion at 11-14. Both of these arguments also fail.

### 1.    Dr. Trumbo's opinions are supported by her significant experience at FDA and working with the food industry, conversations with others at FDA, and analysis of the regulations.

Plaintiff is wrong that Dr. Trumbo's opinions are based solely on her 15 years of experience at FDA. *See* Motion at 12. Dr. Trumbo relies on various regulations, FDA documents, and even conversations with others in the agency in support of her opinions. *See* Report at 7 ("Based on my experience at FDA, my review of FDA regulations and statements, and my conversations with others at the agency, the FOP statement on DKB products is not a protein claim' as outlined in 21 CFR 101.9(c)(7).") For example, Dr. Trumbo is extremely familiar with and references other relevant portions of the C.F.R. (*e.g.*, Sections 101.8, 101.13, and 101.54) and federal register notices related to the same (*e.g.*, 58 FR 2066). *See id*. at 7, 11. Her encyclopedic knowledge of the FDA documents and materials allows her to rely on and point to various FDA documents, including FDA's Food Labeling Guide and other guidance and related notices (*e.g.*, 71 FR 8597), FDA's website on label claims, and even an IOM report commissioned by FDA and NAS. *See id*. at 9-11. She also provided other relevant examples of FDA's work with Omega-3 fatty acids and trans fats, which shed light by analogy on how the agency thinks about what actually constitutes a protein claim. *See id*. at 9-10; Resch Decl., Ex. C June 26, 2025 Dep. Tr. at 272:11-273:13. Dr. Trumbo's

familiarity with these regulations and the overall regulatory scheme evince the value that expertise and deep understanding bring to the issues at bar.

Further, even if her opinions were based solely on her "experience" (they are not), that would not render her testimony unreliable for *Daubert* purposes. In fact, Rule 702 permits expert opinions based on experience alone, stating that "a witness qualified as an expert by knowledge, skill, *experience*, training, or education, may testify in the form of an opinion or otherwise." (emphasis added). Indeed, the Advisory Committee Note to Rule 702 (for the 2000 Amendment) expressly rejects Plaintiff's contrary argument: "Nothing in this amendment is intended to suggest that experience alone—or experience in conjunction with other knowledge, skill, training or education—may not provide a sufficient foundation for expert testimony. To the contrary, the text of Rule 702 expressly contemplates that an expert may be qualified on the basis of experience. In certain fields, experience is the predominant, if not sole, basis for a great deal of reliable expert testimony."

Here, there is no question that Dr. Trumbo is qualified to render opinions based on her significant experience, especially given that her experience is directly relevant to issues being decided by the trier of fact. Dr. Trumbo was responsible for food labeling while at FDA and this is a food labeling case. And, since 2018, she has served as a consultant working in the area of food labeling, including protein labeling. Resch Decl., Ex. C June 26, 2025 Dep. Tr. at 212:25-213:3. The objective of *Daubert*'s gatekeeping requirement is "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). And that is exactly what Dr. Trumbo has done here.[3]

---

[3] The cases on which Plaintiff relies are inapposite, as the experts being challenged in those cases were not bona fide regulatory experts like Dr. Trumbo. *See* Motion at 11-12 (citing *Claar v. Burlington N. R. Co.*, 29 F.3d 499, 502 (9th Cir. 1994) (excluding experts whose conclusions were not based on scientific knowledge); *Krouch v. Wal-Mart Stores, Inc.,* No. 12-cv-02217-YGR, 2014 WL 5463333, at *6 (N.D. Cal. Oct. 28, 2014) (excluding expert opining on interpretation of a car maintenance guide).

**2.    Plaintiff's challenges to Dr. Trumbo's opinions are inappropriate under *Daubert* and only further establish that her testimony is needed.**

Plaintiff argues that Dr. Trumbo's opinions must be unreliable because they conflict with certain courts' reading of the regulations and one FDA warning letter. Motion at 11-14. As an initial matter, Plaintiff's reference to materials that he contends conflict with Dr. Trumbo's opinions goes to weight and not admissibility. The Ninth Circuit has decreed it so. *See Wendell*, 858 F.3d at 1237 ("Where, as here, the experts' opinions are not the 'junk science' Rule 702 was meant to exclude, the interests of justice favor leaving difficult issues in the hands of the jury and relying on the safeguards of the adversary system—[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof[.]") (cleaned up).

*Wendell* is particularly instructive here. In *Wendell*, the court found that "two doctors who stand at or near the top of their field and have extensive clinical experience with the . . . disease at issue," and who were prepared to offer reliable testimony, were not barred by *Daubert* even though there was no study that definitively supported their position, among other things. *Id.* at 1237-38. The court there found that the fact that defendants could "offer other equally qualified" opinions in opposition to the doctors did "not support the idea that *Daubert* should bar the admission" of their testimony. *Id.* at 1238. Applying *Wendell*, this Court should find that Dr. Trumbo's testimony is admissible because it is relevant and reliable. *Id.* "Then, the jury, as the trier of fact, would be empowered to decide, based on the law given in proper jury instructions and the facts as determined by the jury." *Id*.

This is particularly true given Plaintiff is wrong in suggesting that the regulatory issues in this case have already been clearly resolved. As far as the cases Plaintiff cites, they do not support his argument for several reasons:

*First,* Plaintiff's authority involves very different types of issues and claims. For example, the *Nacarino* and *Guerra* plaintiffs alleged that nutrient content claims made outside the NFP were inherently misleading because they represented total rather than corrected protein. *Nacarino v. Kashi Co.*, 77 F.4th 1201, 1203, 1206 (9th Cir. 2023); *Guerra v. KIND, LLC*, No. 22-cv-06654-RS, 2023 WL 3436093, at *8 (N.D. Cal. May 11, 2023). But as discussed above, *supra* at 7, that claim

OPPOSITION TO MOTION TO EXCLUDE EXPERT PAULA TRUMBO    CASE NO. 4:21-cv-10053-YGR

1    is no longer at issue here. This Court correctly held that any claim challenging the calculation of

2    protein via use of the FDA-approved nitrogen method is preempted. *See* ECF No. 34 at 5.

3         *Second*, in the cases Plaintiff cites, the Court employed its regulatory analysis in the context

4    of a preemption ruling—a question of legal interpretation which requires a different type of

5    analysis. *See e.g., Nacarino*, 77 F.4th at 1207-10; *Guerra*, 2023 WL 3436093, at *8; *Reid v.*

6    *Johnson & Johnson*, 780 F.3d 952, 962 (9th Cir. 2015). As *Reid* aptly explains: for an unlawful

7    analysis, FDA regulations must *prohibit* the conduct, whereas for a preemption analysis, FDA

8    regulations must *authorize* the conduct. *Id.* at 962-63. And this case is at an entirely different

9    procedural posture where the inquiry is driven by Rule 702 and *Daubert*, not Rule 12.

10        *Third*, Plaintiff citations from these cases are only dicta with no binding legal effect. *See*

11   *Swartz v. Dave's Killed Bread, Inc.*, No. 4:21-CV-10053-YGR, 2023 WL 11965054, at *1 (N.D.

12   Cal. Sept. 1, 2023) (observing that *Nacarino* included "dicta" on "the theory advanced by plaintiff

13   here regarding nutrient content claims is *not* preempted") (citing *Nacarino*, 77 F.4th at 1203)

14   (emphasis in original). The courts in these cases only discussed the relevant regulatory provisions

15   in passing and did not employ the same thorough regulatory analysis that Dr. Trumbo provides in

16   the context in which she is providing it. Nor did the courts in these cases address other FDA

17   regulations that conflict with Plaintiff's claims, despite identifying them as relevant to the analysis.

18   For example, the court in *Reid* recognized:

19
         Nutrient content claims are statements that "expressly or implicitly characterize[ ]
20       the level of a nutrient." 21 C.F.R. § 101.13(b). However, the regulations do
         authorize some nutrient content claims. These include statements . . . that do not
21       characterize the level of nutrient and are not false or misleading (e.g., "100
         calories"). *Id.* § 101.13(i).
22

23   780 F.3d at 959. The court in *Reid* further acknowledged that a company *can* "make a truthful

24   statement on a product's label that specifies the amount of *trans* fat per serving." *Id*. at 962 (citing

25   21 C.F.R. § 101.13(i)). Yet, the court in *Reid* did not square these statements with the other

26   statements cited by Plaintiff, nor could it without the requisite regulatory expertise.

27        Plaintiff also lobs in an unauthenticated Warning Letter from an FDA district office to

28   suggest that FDA has made the same conclusive determination as the courts. But this argument

fails as well. As Dr. Trumbo testified, this does not represent FDA's position regarding its interpretations of its regulations. *See* Resch Decl., Ex. C June 26, 2025 Dep. Tr. at 253:13-22; 282:12-283:18. And even if it did, this Warning Letter that Plaintiff cites is inapplicable to this case as it involves front-of-pack protein representations that are fundamentally different. Notably, the label (that Plaintiff asserts) was at issue in that Warning Letter did not simply disclose the amount of protein on the front-of pack (*i.e.*, 16 g protein), but it also prominently displayed the term "PROTEIN" as part of the product's statement of identity (i.e., "PROTEIN BAR") in all caps and in an extremely large font size that measured almost half of the principal display panel. *See* Resch Decl., Ex. I, Paula Trumbo. June 6, 2025 Dep., Ex. 154. The specific nature of that overall product label, including the overwhelming size of the term "PROTEIN," raises fundamentally different issues than merely disclosing, in small font, the grams of protein that are identified in the NFP.

To be clear, Plaintiff's arguments only serve to underscore the complexity of the regulatory regime, which weighs in favor of admitting testimony by a qualified regulatory expert in this case. In such situations, a Court and jury would benefit from hearing directly from someone with highly relevant regulatory experience and expertise. *Holley*, 2023 WL 2469632, at *3 ("[S]uch testimony would be helpful to the trier of fact from a regulatory perspective."); *In re Zicam*, 2011 WL 798898, at *22 (because "[i]ndustry practices and the regulatory framework . . are complex . . . expert testimony could help a jury understand agency rules and procedures"); *Unruh*, 855 F.2d at 1376 (admission of expert testimony was "justified by the aid that it gave the jury in understanding other evidence presented as part of the prosecution's case"); *In re Yasmin & YAZ*, 2011 WL 6302287, at *25 (expert testimony "is permissible because of the complex nature of the process and procedures and the jury needs assistance understanding it"). The trier of fact deserves to have these complexities adequately presented and analyzed through expert testimony.

## D.    Dr. Trumbo Does Not Opine on FDA's "Official" Interpretation of the Regulations

Plaintiff is simply wrong in contending that Dr. Trumbo purports to represent FDA's official opinion. Motion at 8. Dr. Trumbo repeatedly testified that her opinions are her own and based on her expertise and experience. *See* Resch Decl., Ex. C, June 26, 2025 Paula Trumbo Dep. Tr. at

OPPOSITION TO MOTION TO EXCLUDE EXPERT PAULA TRUMBO    CASE NO. 4:21-cv-10053-YGR

1  204:17-25 (Q. So those opinions regarding what the FDA regulations at issue in this case require

2  are still your own? A. Yes, that is correct, based on my experience working there for 15 years. Q.

3  And your opinions regarding how to interpret -- interpret the regulations at issue in this case also

4  continue to be your own. Correct? A. That is correct.); *see also* 205:5-16 (stating that her opinions

5  were based on her 15 years of experience at FDA). Accordingly, Dr. Trumbo's opinions cannot and

6  should not be excluded on this basis.

7           **E.    Dr. Trumbo is Qualified to Opine on Industry Practice**

8           Plaintiff specifically takes issue with Dr. Trumbo's industry practice opinions, stating that

9  they are both irrelevant and unsupported. Both arguments fail.

10          *First*, Dr. Trumbo's industry practice opinions are directly relevant to Plaintiff's claims,

11  including his fraud-based claims asserting Flowers "knew" its label was false, and that it

12  purposefully omitted the %DV with the intent to deceive (it did not). Indeed, Plaintiff has made

13  clear that he intends to argue that "the company chose to violate the regulations." Plaintiff's Motion

14  for Summary Judgment, at 3. Dr. Trumbo's opinions on industry practice provide important context

15  as to the environment in which Flowers was operating and the Flowers interpretation of the

16  regulations.

17          *Second*, Plaintiff cannot argue that Dr. Trumbo lacks support for her industry practices

18  opinions just because she did not have a specific example at the top of her mind during her

19  deposition. Motion at 8. Just as her experience at FDA and within industry provides the necessary

20  support for her regulatory scheme opinions and compliance opinions, *see supra* at 13, it also

21  supports her industry practice opinions. Indeed, Dr. Trumbo was responsible for overseeing food

22  labeling for nearly 15 years at FDA, where she was exposed to various labeling practices by food

23  manufacturers, including labeling regarding protein. *See supra* at 13. As a consulting expert, she

24  also has worked for various food manufacturers on labeling issues, including providing expert

25  testimony for another food manufacturer on very similar allegations. *See* Resch Decl, Ex. B, April

26  29, 2025 Paula Trumbo Dep. Tr. at 20:18-23; 174:14-175:11.

27

28

1    In addition to her experience, Dr. Trumbo's report also cites the wave of recent lawsuits

2    targeting companies for engaging in the very same conduct alleged here underscores how the food

3    industry took a different view on the regulations than Plaintiff's purported reading. Report at 6-7;

4    *see also* Ex. B, April 29, 2025 Paula Trumbo Dep. Tr. at 174:14-175:11; *Sherris Minor v. Baker*

5    *Mills Inc. and Kodiak Cakes LLC,* No. 20-cv-02901-RS (%DV for protein not listed on NFP by

6    defendant); *Roffman v. Rebbl, Inc.*, No. 22-cv-05290-JSW (same).

7    Dr. Trumbo is plainly more than qualified, and has more than enough support, to offer an

8    opinion on historical and industry practice based on her extensive experience working with the food

9    industry and at the FDA. This is especially true where "Fed.R.Evid. 702 contemplates a broad

10   conception of expert qualifications." *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998,

11   1015-16, 1018 (9th Cir. 2004) (cleaned up) (finding that expert's 25 years of experience working

12   for insurance companies and as an independent consultant was enough for the expert to testify on

13   the practices and norms of insurance companies). Plaintiff's attempt to characterize Dr. Trumbo's

14   "prior experience so narrowly is unavailing" and doing so would "would seemingly conflict with

15   the Ninth Circuit's guidance that expert witnesses are qualified to give expert testimony . . . where

16   they possess at least the minimal foundation of knowledge, skill, and experience required."

17   *Zucchella v. Olympusat, Inc.*, No. CV197335DSFPLAX, 2023 WL 2628107, at *14 (C.D. Cal. Jan.

18   10, 2023) (quoting *U.S. Fidelity and Guar. Co. v. Ulbricht,* 576 F. Supp. 3d 850, 860 (W.D. Wash.

19   2021)).

20   **V.    CONCLUSION**

21   For the foregoing reasons, Flowers respectfully requests that the Court admit Dr. Trumbo's

22   testimony in its entirety.

23

24

25

26

27

28

1    Dated: September 5, 2025

2

3    **KING & SPALDING LLP**

By: _/s/ Michael L. Resch_

4    MICHAEL L. RESCH
LIVIA M. KISER
5    SAMUEL R. DIAMANT
REBECCA PARADIS
6    QUYEN L. TA

7    *Attorneys for Defendants*
*Dave's Killer Bread, Inc.*
8    *and Flowers Foods, Inc.*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28