# EXHIBIT C

```
 1                UNITED STATES DISTRICT COURT

 2            FOR THE NORTHERN DISTRICT OF CALIFORNIA

 3

 4   DAVID SWARTZ, as an individual,
     on behalf of himself, the
 5   general public, and those
     similarly situated,
 6
                Plaintiffs,
 7
        vs.                           Case No. 4:21-cv-10053-YGR
 8
     DAVE'S KILLER BREAD, INC.,
 9   and FLOWERS FOODS, INC.,            CERTIFIED COPY

10              Defendants.
     _____/
11

12                     DEPOSITION OF

13               PAULA R. TRUMBO, Ph.D.

14                     VOLUME II

15       TAKEN REMOTELY BY VIDEOCONFERENCE

16           Thursday, June 26, 2025

17

18              - CONFIDENTIAL -

19

20   STENOGRAPHICALLY REPORTED BY:
     MARY ANN PAYONK, CSR NO. 13431
21

22

23

24             NOGARA REPORTING SERVICE
           150 Sutter Street, P.O. Box 538
25           San Francisco, California 94105
                   (415) 398-1889
```

| | | |
|---|---|---|
| 1 | A. Yes. | 10:07 |
| 2 | Q. And I think that the specific correction | 10:07 |
| 3 | you're referring to was you changed the word "express" | 10:07 |
| 4 | to "expressed." | 10:07 |
| 5 | A. Correct. | 10:07 |
| 6 | Q. And I believe that same correction was | 10:07 |
| 7 | probably necessary for my questions, but I have yet to | 10:07 |
| 8 | make that. | 10:07 |
| 9 | Other than that correction, those -- what | 10:07 |
| 10 | you're referring to as editorial corrections, any other | 10:07 |
| 11 | corrections to that testimony you'd like to make today? | 10:07 |
| 12 | A. No, not at this time, no. | 10:07 |
| 13 | Q. And similarly, the opinions stated in your | 10:07 |
| 14 | expert declaration in this matter continue to be your | 10:07 |
| 15 | own opinions. Correct? | 10:07 |
| 16 | A. That is correct. | 10:07 |
| 17 | Q. So those opinions regarding what the FDA | 10:07 |
| 18 | regulations at issue in this case require are still your | 10:07 |
| 19 | own? | 10:08 |
| 20 | A. Yes, that is correct, based on my experience | 10:08 |
| 21 | working there for 15 years. | 10:08 |
| 22 | Q. And your opinions regarding how to | 10:08 |
| 23 | interpret -- interpret the regulations at issue in this | 10:08 |
| 24 | case also continue to be your own. Correct? | 10:08 |
| 25 | A. That is correct. | 10:08 |

```
 1       Q.   And I believe you stated your tenure at the        10:08
 2  FDA was 2003 to 2018.                                         10:08
 3            Is that correct?                                    10:08
 4       A.   That is correct.                                    10:08
 5       Q.   And the opinion that you are offering today         10:08
 6  continues to be your opinion based on your 15 years of        10:08
 7  experience at FDA regarding how you believe the FDA           10:08
 8  would interpret the regulations at issue in this case,        10:08
 9  that is, the regulations concerning protein labeling.         10:08
10            Is that --                                          10:09
11            ATTORNEY TA:   Objection.  Sorry.                   10:09
12  BY ATTORNEY SAFIER:                                           10:09
13       Q.   Is that a fair statement?                           10:09
14            ATTORNEY TA:   Objection as to form.  If you        10:09
15  understand.                                                   10:09
16       A.   Yeah, I do.  That is correct.                       10:09
17  BY ATTORNEY SAFIER:                                           10:09
18       Q.   Do you recall that at the end of the previous       10:09
19  session of your deposition we were looking at a case          10:09
20  from the Ninth Circuit called Nacarino versus Kind?           10:09
21       A.   I do recall that.                                   10:09
22       Q.   Have you substantively -- strike that.              10:09
23            Have you subsequently reviewed that case            10:09
24  again?                                                        10:09
25       A.   Briefly.                                            10:09
```

```
 1  says "by definition."                                        10:18
 2  BY ATTORNEY SAFIER:                                          10:18
 3      Q.  Well, it says that the FDA regulations refer         10:18
 4  to the statement as a nutrient content claim or, if the      10:18
 5  challenged claims here are protein claims because they       10:19
 6  appear outside the NFP and characterize the amount of        10:19
 7  protein in the products, they are protein claims.            10:19
 8          You can look at that next sentence:  For             10:19
 9  example, the front label on a box of Kashi Go Cinnamon       10:19
10  Crisp Cereal includes an 11G protein claim.  And the         10:19
11  front label on the Kellogg's Special K Cereal includes a     10:19
12  protein 15G claim.  The Ninth Circuit believes those are     10:19
13  protein claims and also nutrient content claim.              10:19
14          Do you disagree with that?                           10:19
15      A.  Yes, I disagree.                                     10:19
16          ATTORNEY SAFIER:  Okay.  David, can you pull         10:19
17  up Reid?  Can you pull up Reid?                              10:19
18  BY ATTORNEY SAFIER:                                          10:19
19      Q.  While he is pulling up Reid, Dr. Trumbo, do          10:19
20  you have any authority other than your 13 years'             10:20
21  experience working at the FDA that support your position     10:20
22  that is in disagreement with the Ninth Circuit as stated     10:20
23  in Nacarino versus Kashi Co.?                                10:20
24          ATTORNEY TA:  Objection as to form.  Go ahead.       10:20
25      A.  Well, I worked at FDA for 15 years, not 13           10:20
```

```
 1  years.  And since I retired from the FDA in 2018, I, as         10:20
 2  a consultant, have also been working in the area of food        10:20
 3  labeling, including protein labeling.                           10:20
 4  BY ATTORNEY SAFIER:                                             10:20
 5      Q.   Okay, but that's not answering my question.            10:20
 6  I -- I -- first off, I apologize for -- for cutting your        10:20
 7  experience at --                                                10:20
 8      A.   That's all right.                                      10:20
 9      Q.   -- at FDA by two years.  That was not                  10:20
10  intentional.                                                    10:20
11      A.   I know.                                                10:20
12      Q.   So other than your -- your 15 years'                   10:20
13  experience at the FDA and the work that you've done             10:20
14  subsequently, do you have any authority, for example,           10:20
15  from the FDA in writing, another Court opinion, a               10:21
16  scholarly article, or anything of that nature that              10:21
17  supports your interpretation that conflicts with the            10:21
18  Ninth Circuit's statements in Nacarino versus Kashi Co.?        10:21
19      A.   Well, if you're referring to other sources,            10:21
20  which it sounds like you are, I'm -- I haven't looked           10:21
21  for those to see if there's any documents by the FDA or         10:21
22  other authoritative bodies or other sources that would          10:21
23  be in disagreement with my opinion except for these that        10:21
24  we're going -- we're discussing now.                            10:21
25      Q.   Right.  The gist of -- of your statement is is         10:21
```

| | | |
|---|---|---|
| 1 | Q. Are you familiar with FDA warning letters? | 11:36 |
| 2 | A. Yes, I am. | 11:36 |
| 3 | Q. And what are those? | 11:36 |
| 4 | A. They're letters that are written to companies, | 11:36 |
| 5 | manufacturers, and they can vary. It can be about | 11:37 |
| 6 | misbranding in this case or other issues. And | 11:37 |
| 7 | they're -- they're warning the company that there's | 11:37 |
| 8 | something about their food label that's not correct or | 11:37 |
| 9 | consistent with FDA regulations. Sometimes it's one or | 11:37 |
| 10 | two or more issues. And then the FDA is giving them a | 11:37 |
| 11 | certain amount of time to correct their label. And | 11:37 |
| 12 | these are public. | 11:37 |
| 13 | Q. Right. And -- and FDA warning labels -- | 11:37 |
| 14 | sorry. And FDA warning letters -- | 11:37 |
| 15 | A. Uh-huh. | 11:37 |
| 16 | Q. -- state the FDA's position regarding its | 11:37 |
| 17 | interpretations of its regulations. Correct? | 11:37 |
| 18 | A. Some -- some do; some are more detailed than | 11:37 |
| 19 | others. So I -- I haven't read every warning letter to | 11:38 |
| 20 | know exactly what they say or how they're expressed -- | 11:38 |
| 21 | Q. Could you -- | 11:38 |
| 22 | A. -- about a particular situation. | 11:38 |
| 23 | Q. My apologies, Dr. Trumbo. I thought you were | 11:38 |
| 24 | done. | 11:38 |
| 25 | A. That's okay. | 11:38 |

|    |                                                                                         |       |
|----|-----------------------------------------------------------------------------------------|-------|
| 1  | fatty acid proposed and final rules in response to a                                    | 12:05 |
| 2  | FDAMA notification.                                                                     | 12:05 |
| 3  | BY ATTORNEY SAFIER:                                                                     | 12:05 |
| 4  | Q.  Fair enough, Dr. Trumbo.  I will restate.                                           | 12:05 |
| 5  | I gave you the opportunity to provide to me                                             | 12:05 |
| 6  | any written authority from the FDA as it concerns                                       | 12:05 |
| 7  | protein labeling or protein claims, but you were unable                                 | 12:05 |
| 8  | to provide any.  Correct?                                                               | 12:05 |
| 9  | A.  I did not provide any.                                                              | 12:05 |
| 10 | Q.  And what we have is one written statement here                                      | 12:05 |
| 11 | by way of this FDA warning letter that is Exhibit 153,                                  | 12:05 |
| 12 | and it is inconsistent with your opinion.  Correct?                                     | 12:05 |
| 13 | A.  It is inconsistent with my opinion based on                                         | 12:05 |
| 14 | the assumptions that have been made --                                                  | 12:05 |
| 15 | Q.  Sure.                                                                               | 12:05 |
| 16 | A.  -- with this particular product.                                                    | 12:05 |
| 17 | Q.  Correct.  And now I would like to give you one                                      | 12:05 |
| 18 | opportunity.  Would you like to withdraw your opinion in                                | 12:06 |
| 19 | this case?                                                                              | 12:06 |
| 20 | A.  As an FDA employee for 15 years working with                                        | 12:06 |
| 21 | FDA staff and attorneys on regulations and premarket                                    | 12:06 |
| 22 | scientific reviews, no, I have no need to withdraw my                                   | 12:06 |
| 23 | statement.                                                                              | 12:06 |
| 24 | Q.  Even though the basis of your statement is                                          | 12:06 |
| 25 | what you think the FDA would have said during your                                      | 12:06 |

| | | |
|---|---|---|
| 1 | tenure there, but we have one written statement from the | 12:06 |
| 2 | FDA during that time and it is diametrically opposed to | 12:06 |
| 3 | your opinion. Correct? | 12:06 |
| 4 | A. It is -- it's inconsistent with the Food | 12:06 |
| 5 | Center's opinion based on the assumptions and lack of -- | 12:06 |
| 6 | of information that's available to me to make a -- an | 12:06 |
| 7 | accurate assessment. | 12:06 |
| 8 | Q. But -- but -- but you have no written | 12:06 |
| 9 | standpoint of the Food Center's opinions other than what | 12:07 |
| 10 | you recall from your tenure there. Correct? | 12:07 |
| 11 | A. I have mentioned the Omega-3 fatty acid, | 12:07 |
| 12 | nutrient content claim FDAMA. And one other I -- I | 12:07 |
| 13 | could mention would be on trans fat. These are examples | 12:07 |
| 14 | of where there's not a daily value, and therefore, | 12:07 |
| 15 | nutrient content claims are not allowed to be placed on | 12:07 |
| 16 | food labels. And that is why statements like zero grams | 12:07 |
| 17 | trans fat, or 5 grams of Omega-3 fatty acids are allowed | 12:07 |
| 18 | to be placed on the label because they're not viewed as | 12:07 |
| 19 | nutrient content claims; they're statements. And they | 12:07 |
| 20 | cannot be made as nutrient content claims because | 12:07 |
| 21 | there's not a daily value, which is what a nutrient | 12:07 |
| 22 | content claim is based on. | 12:07 |
| 23 | Q. But there is a daily value for protein. | 12:07 |
| 24 | Correct, Dr. Trumbo? | 12:07 |
| 25 | A. There is. That is correct. But whether there | 12:08 |

1  is one or not, it needs to be based on a daily value.  12:08
2      Q.   Right.  And there is a daily value of -- of  12:08
3  protein that the FDA recommends.  It's 50 grams.  12:08
4  Correct?  12:08
5      A.   Yes.  But the point is if you don't have one,  12:08
6  then you can't make nutrient content claims.  12:08
7      Q.   That's right.  12:08
8      A.   And so -- and so as a result, instead of  12:08
9  saying high in trans fat or low in trans fat or high in  12:08
10 Omega-3s, they can't make statements like that.  They  12:08
11 have to say zero grams trans fat or 5 grams Omega-3  12:08
12 fatty acids because nutrient content claims are not  12:08
13 permitted.  12:08
14     Q.   Let's circle back.  I -- I understand your  12:08
15 point that you think you have authority outside of the  12:08
16 context of protein claims.  You think you have it in the  12:08
17 context of trans fats and/or Omega-3s.  12:08
18          But where I want to focus your attention here  12:09
19 is any FDA written authority from your time spent there  12:09
20 or after you left that supports your opinion here as it  12:09
21 concerns protein claims.  12:09
22          There's nothing, right?  12:09
23     A.   It was not an issue at -- when I was there at  12:09
24 the time within my Center regarding protein.  It was not  12:09
25 an issue, so there wasn't the necessity for extensive  12:09

```
 1      Q.   I'm not asking --                                 12:21
 2      A.   -- me.                                            12:21
 3           (Simultaneous speaking.)                          12:21
 4      Q.   -- to withdraw on the assumptions.  I'm asking    12:21
 5 you to withdraw if it turns out to be true the gram         12:21
 6 amount in the nutritional --                                12:21
 7      A.   No.                                               12:21
 8      Q.   -- facts panel and the gram amount on the         12:21
 9 front of the label is an identical statement.  Protein,     12:21
10 16G.  If that turns out to be true, will you withdraw       12:21
11 your opinion, Dr. Trumbo?                                   12:21
12      A.   No, because of my 15 years of experience at       12:21
13 the FDA working with many, many people.  I don't know       12:21
14 who wrote this.  It could be one person, this guy,          12:22
15 veterinarian from -- in Minneapolis that wrote this         12:22
16 letter.  I will assign on the scientists that actually      12:22
17 wrote them and the attorneys that -- that help us write     12:22
18 these regulations.                                          12:22
19      Q.   So you believe that the warning letter that is    12:22
20 provided to you as Exhibit 153 is not the official          12:22
21 statement of the FDA, and instead, the Court should rely    12:22
22 on what you recall from the time that you spent at the      12:22
23 FDA --                                                      12:22
24      A.   Well, the official --                             12:22
25      Q.   -- seven years ago.  Over seven years --          12:22
```

| | | | |
|---|---|---|---|
| 1 | A. | -- statement -- | 12:22 |
| 2 | | (Simultaneous speaking.) | 12:22 |
| 3 | Q. | -- ago. | 12:22 |
| 4 | A. | -- is the Code of Federal Regulations. | 12:22 |

5  That's -- that's the official.  FDA writes those, so 12:22
6  that's their official statement, and then it's carrying 12:22
7  them out as -- by the FDA staff.  I would say that this 12:22
8  Code of Federal Regulations is the official statement. 12:23
9       Q.   You don't think that this warning letter is 12:23
10 the official statement of the FDA? 12:23
11      A.   Well, first of all, I don't know if there's 12:23
12 other warning letters out there about this topic and 12:23
13 what they say.  All I know is about this one warning 12:23
14 letter, and I don't have the label to really make a -- 12:23
15 an assessment of what they mean from this letter.  I -- 12:23
16 particularly when what's being cited in 101.13 talks 12:23
17 about additional information being placed outside of the 12:23
18 nutrition facts label. 12:23
19      Q.   No, it just talks about the -- the gram 12:23
20 amount -- 12:23
21      A.   Yes. 12:23
22      Q.   -- being placed outside the -- 12:23
23      A.   Right. 12:23
24      Q.   -- the -- the nutrition facts panel, which is 12:23
25 exactly consistent with 101.13(c). 12:23

1              REPORTER'S CERTIFICATE

2              I, MARY ANN PAYONK, shorthand reporter and

3   Notary Public, CA CSR No. 13431, do hereby certify that

4   the witness whose deposition is hereinbefore set forth

5   was sworn by agreement of all parties, that the

6   proceedings were reported stenographically by me, and

7   that this transcript is a true, correct, and full record

8   of the testimony given.

9              Further, that if the foregoing pertains to

10  the original transcript of a deposition in a Federal

11  Case, before completion of the proceedings, review

12  of the transcript [ ] was [X] was not requested.

13             I further certify that I am not related to

14  any of the parties to this action by blood or by

15  marriage, and that I am in no way interested in the

16  outcome of this matter.

17             IN WITNESS WHEREOF, I have hereunto set my

18  hand this 9th day of July, 2025.

19

20

21

22  MARY ANN PAYONK, CSR #13431

23

24

25