MICHAEL L. RESCH (SBN 202909)
mresch@kslaw.com
LIVIA M. KISER (SBN 285411)
lkiser@kslaw.com
SAMUEL R. DIAMANT (SBN 288738)
sdiamant@kslaw.com
KELLY L. PERIGOE (SBN 268872)
kperigoe@kslaw.com
KING & SPALDING LLP
50 California Street, Suite 3300
San Francisco, California 94111
Telephone: (415) 318-1200
REBECCA L. PARADIS (admitted *pro hac vice*)
rparadis@kslaw.com
KING & SPALDING LLP
1700 Pennsylvania Avenue, NW, Suite 900
Washington, DC 20006
Telephone: (202) 737-0500

QUYEN L. TA (SBN 229956)
quyen.ta@skadden.com
SKADDEN, ARPS, SLATE, MEAGHERS & FLOM LLP
525 University Avenue, Suite 1400
Palo Alto, California 94301
Telephone: (650) 470-4500

*Attorneys for Defendants Dave's Killer Bread, Inc. and Flowers Foods Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| DAVID SWARTZ, | Case No. 4:21-cv-10053-YGR |
| Plaintiff, | Honorable Yvonne Gonzalez Rogers |
| v. | **DEFENDANTS DAVE'S KILLER BREAD, INC. AND FLOWERS FOODS, INC.'S REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| DAVE'S KILLER BREAD, INC. AND FLOWERS FOODS, INC., | |
| Defendants. | |
| | Date: December 9, 2025 |
| | Time: 2:00 p.m. |
| | Location: Courtroom 1 – 4th Floor |

# **TABLE OF CONTENTS**

Page(s)

I.   INTRODUCTION ................................................................................................ 1

II.  FLOWERS' MOTION FOR SUMMARY JUDGMENT SHOULD BE
     GRANTED ......................................................................................................... 2

     a.   Swartz's UCL Claims, Including the Sole Certified Claim, Must Be
          Dismissed Under *Sonner* ........................................................................ 3

          i.   Swartz Failed to Establish That He Lacks an Adequate Remedy at
               Law ................................................................................................ 4

          ii.  Flowers' *Sonner* Argument Is Timely ....................................... 7

     b.   Swartz Lacks Statutory Standing to Pursue the Certified UCL Claim ................. 8

          i.   Swartz Cannot Show Reliance ............................................... 9

          ii.  There Is No Evidence that Swartz Lost Money as a Result of the
               Allegedly Unlawful Practice ................................................. 13

     c.   There Is No Evidence that the Class Suffered Any Cognizable Injury ............... 17

     d.   Each of Swartz's Individual Claims Fails ............................................... 17

          i.    Swartz's UCL Fraud and Unfair Claims Fail as a Matter of Law ........... 17

          ii.   Swartz's Common Law Fraud Claim Fails as a Matter of Law ............. 21

          iii.  Swartz's CLRA Claim Fails as a Matter of Law ......................... 22

          iv.   Swartz's FAL Claim Fails as a Matter of Law ......................... 22

          v.    Swartz's Unjust Enrichment Claim Fails as a Matter of Law ............. 22

III. SWARTZ'S PARTIAL SUMMARY JUDGMENT MOTION SHOULD BE
     DENIED ........................................................................................................... 23

     a.   Legal Standard ................................................................................... 24

     b.   Swartz Ignores an Essential Element of His UCL Unlawful Prong Claim ........... 25

     c.   "5g Protein" Is Not a "Protein Claim" Under FDA Regulations ...................... 27

          i.   A Factual Statement of Protein Content That Does Not
               Characterize the Protein Level Is Not a "Protein Claim" ................. 28

i

ii.    Swartz's Interpretation of the Regulations Is Flawed.................................. 30

iii.    Flowers' FDA Expert and Contemporaneous Interpretations Are
Consistent with the Regulations................................................................. 33

IV.    CONCLUSION.......................................................................................................... 35

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*In re Actimmune Mktg. Litig.*,
    No. C 08–02376 MHP, 2010 WL 3463491 (N.D. Cal. Sept. 1, 2010) ...................................26

5

*Allegra v. Luxottica Retail N. Am*,
    341 F.R.D. 373 (E.D.N.Y. 2022) .......................................................................................16, 17

6

7

*Anderson v. Liberty Lobb, Inc.*,
    477 U.S. 242 (1986) ...........................................................................................................25, 35

8

9

*Ang v. Bimbo Bakeries USA, Inc.*,
    No. 13-CV-01196-WHO, 2014 WL 1024182 (N.D. Cal. Mar. 13, 2014) ..............................26

10

*Beaver v. Tarsadia Hotels*,
    29 F. Supp. 3d 1294 (S.D. Cal. 2014) ....................................................................................26

11

*Beaver v. Tarsadia Hotels*,
    816 F.3d 1170 (9th Cir. 2016) ...............................................................................................26

12

13

*Brown v. Natures Path Foods, Inc.*,
    No. 21-CV-05132-HSG, 2022 WL 717816 (N.D. Cal. Mar. 10, 2022) .......................9, 11, 26

14

15

*Brown v. Van's Int'l Foods*,
    No. 3:2022-cv-0001-WHO, 2022 WL 3590333 (N.D. Cal. Aug 22, 2022) ...........................11

16

*Cabo Distrib. Co. v. Brady*,
    821 F. Supp. 601 (N.D. Cal. 1992) .......................................................................................24

17

18

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986)) ............................................................................................................24

19

20

*Chacanaca v. Quaker Oats Co.*,
    752 F. Supp. 2d 1111 (N.D. Cal. 2010) ................................................................................32

21

*Colgan v. Leatherman Tool Grp., Inc.*,
    135 Cal. App. 4th 663 ...........................................................................................................19

22

23

*Consumer Advocs. v. Echostar Satellite Corp.*,
    113 Cal. App. 4th 1351 (2003) .............................................................................................20

24

*Daniel v. Ford Motor Co.*,
    806 F.3d 1217 (9th Cir. 2015) ..............................................................................................10

25

26

*Durell v. Sharp Healthcare*,
    183 Cal. App. 4th 1350 (2010) ...........................................................................9, 11, 25, 26

27

28

iii

*Duttweiler v. Triumph Motorcycles (Am.) Ltd.*,
No. 14–cv–04809–HSG, 2015 WL 4941780 (N.D. Cal. Aug. 19, 2015)................................4

*Elgindy v. AGA Serv. Co.*,
No. 20-CV-06304-JST, 2021 WL 1176535 (N.D. Cal. Mar. 29, 2021) ...................................7

*First Am. Title Ins. Co. v. Super. Ct. of L.A. Cty.*,
146 Cal. App. 1564 (Cal. App. 2007)...............................................................................11, 26

*French v. Banana Republic LLC*,
No. 24-CV-05216-VC, 2024 WL 4682312 (N.D. Cal. Nov. 4, 2024) ....................................8

*Gill v. Chipotle Mexican Grill, Inc.*,
No. 8:24-cv-01672-FWS-JDE, 2025 WL 1443767 (C.D. Cal. May 19, 2025)........................4

*Gudgel v. Clorox Co.*,
514 F. Supp. 3d 1177 (N.D. Cal. 2021) ...............................................................................22

*Guzman v. Polaris Indus. Inc.*,
49 F.4th 1308 (9th Cir. 2022) ......................................................................................3, 4, 8

*Hanscom v. Reynolds Consumer Prods. LLC*,
No. 21-CV-03434-JSW, 2022 WL 591466 (N.D. Cal. Jan. 21, 2022) .................................5, 6

*Haskell v. Time, Inc.*,
965 F. Supp. 1398 (E.D. Cal. 1997).......................................................................................18

*Hawkins v. Kroger Co.*,
512 F. Supp. 3d 1079 (S.D. Cal. 2021)..................................................................................25

*Hawkins v. Kroger Co.*,
906 F.3d 763 (9th Cir. 2018) ...........................................................................................25, 32

*Hernandez v. Polanco Enters., Inc.*,
19 F. Supp. 3d 918 (N.D. Cal. 2013) ..............................................................................24, 27

*Holistic Candlers & Consumers Ass'n v. Food & Drug Admin.*,
664 F.3d 940 (D.C. Cir. 2012) ..............................................................................................33

*In re iPhone Application Litig.*,
6 F. Supp. 3d 1004 (N.D. Cal. 2013) ......................................................................................9

*King v. Nat'l Gen. Ins. Co.*,
No. 15-CV-00313-DMR, 2025 WL 2494366 (N.D. Cal. Aug. 29, 2025)...............................7

*King Jewelry, Inc. v. Fed. Exp. Corp.*,
316 F.3d 961 (9th Cir. 2003) .................................................................................................24

*Konik v. Time Warner Cable*,
2009 U.S. Dist. LEXIS 138618 (C.D. Cal. Dec. 2, 2009) .......................................................9

iv

*Korea Supply Co. v. Lockheed Martin Corp.*,
   29 Cal. 4th 1134 (2003) ......................................................................................6

*Kwikset Corp. v. Superior Ct.*,
   51 Cal. 4th 310 (2011) ........................................................................................13

*Lanovaz v. Twinings N. Am., Inc.*,
   No. 12–CV–02646–R, 2015 WL 729705 (N.D. Cal. Feb. 19, 2015) .....................................23

*Lazar v. Superior Ct.*,
   12 Cal.4th 631 (2012) ........................................................................................21

*Lee v. Luxottica Retail N. Am., Inc.*,
   65 Cal. App. 5th 793 (2021) ..................................................................................6

*Lytle v. Nutramax Lab'ys, Inc.*,
   114 F.4th 1011 (9th Cir. 2024) ...............................................................................13

*Lytle v. Nutramax Lab'ys, Inc.*,
   145 S. Ct. 1308, 221 L. Ed. 2d 396 (2025) ..................................................................13

*Menzel v. Scholastic, Inc.*,
   No. 17-CV-05499-EMC, 2019 WL 6896145 (N.D. Cal. Dec. 18, 2019) .........................24, 27

*Minor v. Baker Mills, Inc.*,
   No. 20-CV-02901-RS, 2020 WL 11564643 (N.D. Cal. Nov. 12, 2020) ...............................32

*Nacarino v. Kashi Co.*,
   77 F.4th 1201 (9th Cir. 2023) ................................................................................32

*Noohi v. Johnson & Johnson Consumer Inc.*,
   146 F.4th 854 (9th Cir. 2025) ....................................................................13, 15, 16

*Norman v. Gerber Prods. Co.*,
   No. 21-CV-09940-JSW, 2023 WL 2633220 (N.D. Cal. Mar. 24, 2023)..............................6, 7

*O'Shea v. Epson Am., Inc.*,
   No. CV 09 -8063 PSG CWX, 2011 WL 3299936 (C.D. Cal. July 29, 2011) ..................20, 21

*Passman v. Peloton Interactive, Inc.*
   671 F. Supp. 3d 417 (S.D.N.Y. 2023) ...............................................................16, 17

*Passman v. Peloton Interactive, Inc.*
   No. 19-cv-11711 (LGS), 2025 WL 1284718 (S.D.N.Y. May 2, 2025)..............................16, 17

*Peacock v. Pabst Brewing Co.*,
   No. 24-2494, 2025 WL 1189562 (9th Cir. Apr. 24, 2025)..................................................19

*Phillips v. Brooklyn Bedding LLC*,
   2024 WL 2830663 (N.D. Cal. Mar. 28, 2024)..........................................................7

v

*Porter v. NBTY, Inc.*,
   No. 15 CV 11459, 2016 WL 6948379 (N.D. Ill. Nov. 28, 2016) ...........................................32

*Provenz v. Miller*,
   102 F.3d 1478 (9th Cir. 1996) ............................................................................................21

*Pusey & Jones Co. v. Hanssen*,
   261 U.S. 491 (1923)...............................................................................................................8

*Rahman v. Mott's LLP*,
   No. CV 13-3482 SI, 2014 WL 5282106 (N.D. Cal. Oct. 15, 2014) .......................................19

*Richter v. CC-Palo Alto, Inc.*,
   176 F. Supp. 3d 877 (N.D. Cal. 2016) ..................................................................................22

*Ries v. Arizona Beverages USA LLC*,
   No. 10-01139 RS, 2013 WL 1287416 (N.D. Cal. Mar. 28, 2013)..........................................17

*Silicon Image, Inc. v. Analogix Semiconductor*,
   642 F. Supp. 2d 957 (N.D. Cal. 2008) ..................................................................................20

*Sonner v. Premier Nutrition Corp.*,
   971 F.3d 834 (9th Cir. 2020) ...................................................................................... *passim*

*S. California Gas Co. v. City of Santa Ana*,
   336 F.3d 885 (9th Cir. 2003) .................................................................................23, 24, 27

*Southern Pac. R. Co. v. United States*,
   200 U.S. 341 (1906)...............................................................................................................8

*Strumlauf v. Starbucks Corp.*,
   No. 16-cv-01306-YGR, 2018 WL 306715 (N.D. Cal. Jan. 5, 2018)......................................15

*Svenson v. Google Inc.*,
   No. 13-CV-04080-BLF, 2016 WL 8943301 (N.D. Cal. Dec. 21, 2016) ................................13

*In re Tobacco II Cases*,
   46 Cal. 4th 298 (2009) ............................................................................................................9

*Tran v. Sioux Honey Ass'n, Coop.*,
   471 F. Supp. 3d 1019 (C.D. Cal. 2020) .................................................................................19

*Trazo v. Nestle USA, Inc.*,
   No. 5:12-CV-2272 PSG, 2013 WL 4083218 (N.D. Cal. Aug. 9, 2013)..................................19

*Turrey v. Vervent, Inc.*,
   2023 WL 6390620 (S.D. Cal. Sept. 29, 2023).........................................................................7

*Ulrich v. Probalance, Inc.*,
   2017 U.S. Dist. LEXIS 132202 (N.D. Ill. Aug. 18, 2017).....................................................32

vi

*Utne v. Home Depot U.S.A., Inc.*,
    2022 WL 1443339 (N.D. Cal. May 6, 2022) ..................................................................................8

*VP Racing Fuels, Inc. v. Gen. Petroleum Corp.*,
    673 F. Supp. 2d 1073 (E.D. Cal. 2009)..................................................................................22

*Zeiger v. WellPet LLC*,
    526 F. Supp. 3d 652 (N.D. Cal. 2021) ..................................................................................16

**Statutes**

California Consumer Legal Remedies Act ........................................................... *passim*

California False Advertising Law............................................................................ *passim*

California Unfair Competition Law......................................................................... *passim*

**Other Authorities**

21 C.F.R. § 101.9(c)(7)..............................................................................................5, 11

21 C.F.R. 101.13 ........................................................................................................13

21 C.F.R. § 101.13(b). ...........................................................................................24, 28

21 C.F.R. § 101.13(c). ......................................................................................... *passim*

21 C.F.R. § 101.13(i)................................................................................24, 28, 29, 30

21 C.F.R. § 101.54 .................................................................................................28, 30

21 C.F.R. § 317.362 ....................................................................................................32

21 U.S.C. 343(a) ..........................................................................................................29

71 Fed. Reg. 8597 ........................................................................................................29

1    **I.     INTRODUCTION**

2         Before the Court are (1) Defendants Dave's Killer Bread, Inc. and Flowers Foods, Inc.'s

3    (collectively, "Flowers") motion for summary judgment, and (2) Plaintiff David Swartz's motion

4    for partial summary judgment. But the Court need go no further than the lead argument in Flowers'

5    summary judgment motion. Binding Ninth Circuit precedent—*Sonner v. Premier Nutrition Corp.*

6    and *Guzman v. Polaris Industries Inc.*—requires dismissal of Swartz's Unfair Competition Law

7    ("UCL") claims, including the sole class claim, because this Court lacks equitable jurisdiction to

8    grant restitution, the sole remedy he seeks. Plaintiff has an adequate remedy at law under the

9    Consumer Legal Remedies Act ("CLRA") for his alleged harm. To the extent his UCL claims can

10   be tried at all, they must be tried in *state court*.

11        Although the *Sonner* ground alone is dispositive of Swartz's UCL claims, the undisputed

12   evidence also confirms that he lacks statutory standing under the UCL—an issue that this Court

13   reserved for an evidentiary motion. And Swartz's individual claims under the UCL, CLRA, False

14   Advertising Law ("FAL"), and common law fraud similarly collapse under the weight of

15   undisputed facts and controlling law.

16        Finally, while the Court need not reach Swartz's motion for partial summary judgment, it

17   should be denied in full for the simple reason that his motion fails to address every element required

18   for liability under his failed UCL unlawful claim. His motion and his separate statement are silent

19   on the issue of causation—*i.e.* whether his alleged injury occurred "as a result of" the challenged

20   labeling. But that is an element of his claim and an issue of statutory standing under Proposition 64

21   ("Prop. 64")—an element on which Swartz concedes he bears the burden of proof. *See* Plaintiff's

22   Opposition to Defendants' Motion for Summary Judgment (Dkt. 182) ("Opp.") at 18 ("To have

23   statutory standing under California's Prop. 64, the named plaintiff needs to show that his injury

24   occurred 'as a result of' the defendants' unlawful conduct.").

25        Swartz's motion should independently be denied because his interpretation of the governing

26   Food & Drug Administration ("FDA") regulations is wrong. Both his favored interpretation (as

27   well as the cases on which he relies) ignores the regulations' definition of a "nutrient content claim,"

28   which is expressly limited to *characterizations* of nutrient levels. It also fails entirely to grapple

1

DEFENDANTS' OPP. TO PLAINTIFF'S MOTION FOR SUMMARY          Case No. 4:21-cv-10053-YGR
JUDGMENT AND REPLY ISO MOTION FOR SUMMARY JUDGMENT

1   with—let alone reconcile—another section of the regulation that expressly allows a statement that

2   merely restates the amount of a nutrient without implicitly characterizing it, even without additional

3   information like the % daily value ("%DV") that Swartz claims the regulations require. To help

4   explain these complex regulatory provisions, Flowers offers the expert testimony of Dr. Paula

5   Trumbo, who spent over 15 years at FDA working directly on these issues. Her testimony not only

6   brings expert insight to the regulatory question at the heart of this case, but also underscores the

7   various and fundamental flaws in Swartz's proffered interpretation of how the regulations apply.

8        Flowers respectfully requests that the Court grant summary judgment in Flowers' favor on

9   all claims, and deny Swartz's motion.

10  **II.    FLOWERS' MOTION FOR SUMMARY JUDGMENT SHOULD BE GRANTED**

11       Flowers' Motion for Summary Judgment (Dkt. 176) demonstrated that dismissal of

12  Swartz's sole certified claim under the UCL is mandatory under *Sonner v. Premier Nutrition*

13  *Corporation* for lack of equitable jurisdiction, and that his sole class and individual claims

14  independently failed on the merits. None of Swartz's arguments raises a genuine issue of dispute

15  as to any of these grounds.

16       This Court lacks equitable jurisdiction because the CLRA provides an adequate remedy at

17  law for the price premium he alleges he (and the class) paid as a result of the inclusion of the

18  products' front-label protein statement without a %DV in the nutrition facts panel ("NFP"). Swartz

19  strategically attempts *ex ante* to narrow the CLRA claim he asserts in an attempt to distinguish it

20  from his UCL claim. But the strategy fails: question under *Sonner* is whether an adequate legal

21  remedy is *available* not whether he has sought one. The Court should reject his sleight of hand

22  along with his oft-rejected arguments that the CLRA claim is inadequate because it requires more

23  elements than his UCL claim or because it must be tried by a jury rather than the Court.

24       Swartz's remaining, individual UCL claims should also be dismissed on the independent

25  grounds that he failed to demonstrate statutory standing under Prop. 64, a requirement that Swartz

26  concedes he must satisfy and acknowledges is not as "lenient" as Article III standing. Opp. at 19.

27  Swartz also does not meaningfully challenge that this means he must show reliance on the alleged

28  omission—indeed, the Court has held as much—and his own testimony proves that the presence of

a %DV for protein on the products would not have made any difference to his understanding of the protein statement or his purchasing behavior. Separately, Swartz has no competent evidence of a price premium "as a result of" the challenged labeling because he relies exclusively on his purported expert's (Colin Weir's) surveys. Now that those surveys have been conducted, it is clear that they fail to reliably test a premium resulting from a front label statement and do not even attempt to test a premium from a front label statement accompanied by an NFP with no %DV. While this Court held the survey design was sufficient at the class certification stage, the inquiry is far more searching at summary judgment, and the Court must now examine the surveys as conducted.

Finally, all of Swartz's individual claims must fail because there is no meaningful dispute that Flowers acted in good faith in interpreting the complex regulatory scheme as it did and because Swartz has presented no evidence whatsoever that the "reasonable consumer" would be deceived by the front protein statement coupled with the omission of the %DV for protein. Swartz cannot meet his burden by pointing only to the labels themselves, as it is undisputed that there is nothing deceptive about information already included in the NFP (because such a theory has already been held by this Court to be preempted). That leaves as the sole evidence on this subject Flowers' expert's (Dr. Ran Kivetz's) surveys, which showed consumers the actual product packaging and demonstrates that the challenged labeling statements were *not* material.

For all these reasons, Flowers' motion for summary judgment should be granted in full.

### a. Swartz's UCL Claims, Including the Sole Certified Claim, Must Be Dismissed Under *Sonner*

Swartz spends several pages trying to complicate a straightforward issue that compels dismissal of his UCL claims: The Ninth Circuit's binding decisions in *Sonner* and *Guzman* require dismissal of Swartz's equitable claims for restitution under the UCL because an adequate legal remedy exists under the CLRA for Swartz (and the class). *Sonner*, 971 F.3d 834, 841 (9th Cir. 2020) (a plaintiff "must establish that []he lacks an adequate remedy at law before securing equitable restitution for past harm under the UCL and CLRA"); *see also Guzman v. Polaris Indus. Inc.*, 49 F.4th 1308, 1312 (9th Cir. 2022) (remanding with instructions to dismiss equitable UCL claim where adequate remedy at law through CLRA claim existed).

1    It does not matter that Swartz has *chosen* to avoid asserting a CLRA claim to recover the

2    money he seeks through restitution or to seek to certify such claims. *See Sonner*, 971 F.3d at 844.

3    Nor does it matter that such a CLRA claim would fail. *See Guzman*, 49 F.4th at 1311 (CLRA claim

4    was adequate remedy at law "even though [plaintiff] could no longer pursue it"). It also does not

5    matter that a CLRA claim would be harder to prove, require proof of more elements, or result in a

6    smaller award. *Gill v. Chipotle Mexican Grill, Inc.*, No. 8:24-cv-01672-FWS-JDE, 2025 WL

7    1443767, at *5 (C.D. Cal. May 19, 2025) (that "restitution could be higher or easier to obtain than

8    damages" does not "reflect an inadequate remedy at law."). All that matters is that an adequate

9    remedy at law is *available*. Because the CLRA provides such a remedy here, a straightforward

10    application of binding Ninth Circuit precedent compels dismissal here.

11    **i.   Swartz Failed to Establish That He Lacks an Adequate Remedy at Law**

12    The controlling question, which Swartz does not meaningfully confront, is whether

13    "damages under the CLRA alone would not provide adequate relief." *Duttweiler v. Triumph*

14    *Motorcycles (Am.) Ltd.*, No. 14–cv–04809–HSG, 2015 WL 4941780, at *8 (N.D. Cal. Aug. 19,

15    2015). There is no viable argument that the legal remedies available to Swartz and the class are

16    somehow inadequate here. Swartz's theory is that placing a protein statement on the front label

17    without including %DV on the NFP allegedly misleads consumers. *See* May 20, 2022 Order

18    Granting In Part and Denying In Part Defendants' Motion to Dismiss (Dkt. 34), at 9 (describing

19    claims as asserting "that defendants' nutrient content claims indicating total protein are misleading

20    because defendants fail to include %DV corrected protein per serving in the nutrient label, as

21    required by section 101.9(c)(7)(ii)."); Jan. 09, 2023 Order Denying Motion to Dismiss (Dkt. 46) at

22    2-3 ("Because defendants do not provide %DV corrected protein, and the front label claim is based

23    on total rather than corrected protein, plaintiff alleges he was misled into believing the product

24    provided more digestible protein than it does."). The harm for which he seeks redress under this

25    theory is the purported "price premium" he claims to have paid as a result. Plaintiff's Response to

26    Defendants' Pre-filing Conference (Dkt. 156) at 3. And Swartz concedes (as he must) that damages

27    under the CLRA "*could* be measured by a price premium." Opp. at 15 (emphasis in original).

28

1    In other words, Swartz does not contest that an adequate legal remedy *exists* for the

2    equitable relief he seeks through his UCL claim. He argues only that the CLRA claim *he asserts*

3    does not provide an adequate remedy at law. Opp. at 13-16. But that is not the right inquiry. It is

4    legally irrelevant if Swartz has *chosen* not to bring a CLRA claim based on the same theory and for

5    the same harm as his UCL claim. What matters is that he *could* have brought one.

6        *Sonner* itself is instructive on this point. There, the plaintiff initially brought claims for

7    equitable relief under the UCL and for money damages under the CLRA, but later "strategically"

8    dismissed the CLRA claim to avoid a jury trial, seeking the same amount of money as restitution

9    rather than damages. The Ninth Circuit held that notwithstanding the plaintiff's strategic dismissal

10   of her CLRA claim, she could not show "that [she] lack[ed] an adequate legal remedy," and "could

11   not explain how the same amount of money for the exact same harm [was] inadequate or

12   incomplete" to compensate for the alleged harms. *Id.* at 844. Here, too, Swartz cannot rely on a

13   strategic purported narrowing of his CLRA claim in an attempt to argue that the CLRA would not

14   provide adequate money damages. Swartz does not explain why the CLRA could not provide

15   money damages for "a price premium resulting from the inclusion of a front-of-package claims

16   without a %DV in the NFP." September 20, 2024*, Order Denying Motion to Dismiss and Granting

17   Class Certification (Dkt. 139) at 9. Nor could he. *See Hanscom v. Reynolds Consumer Prods. LLC*,

18   No. 21-CV-03434-JSW, 2022 WL 591466, at *3 (N.D. Cal. Jan. 21, 2022) (plaintiff represented

19   by Gutride Safier sought price premium for damages under CLRA and restitution under UCL,

20   which is one reason the court dismissed plaintiff's claims for equitable relief).

21       Even though it is irrelevant what claim he *brought*, Swartz is also wrong to characterize his

22   CLRA claim—for the first time—as being based only on the "back label." Opp. at 1, 14-16. A

23   claim based solely on the NFP without regard to whether a "protein claim" is on the front label

24   would be preempted because 21 C.F.R. § 101.9(c)(7) provides that all nutrition labels for packaged

25   foods must include the total amount of protein per serving, calculated using the nitrogen-content

26   method. 21 C.F.R. § 101.9(c)(7).[1]

---

[1] Moreover, Swartz has not proved that damages available for his reimagined CLRA theory
would be any different. He surmises that "it is inconceivable" that "measuring damages for the

1    The remainder of Swartz's arguments are ones that courts routinely (and rightly) reject.

2    Ignoring the wealth of cases that dismiss UCL claims for restitution on the ground that the CLRA

3    provides an adequate legal remedy, Swartz argues incorrectly that the UCL claim "remedies the

4    *harm to competition*" whereas the CLRA claim "remedies the harm of deceiving *consumers*." Opp.

5    at 1. (emphasis added). Not so. Swartz's UCL claim *only* remedies the harm to consumers, which

6    it does through restitution. In fact, "nonrestitutionary disgorgement of profits—that is, profits that

7    are neither money a defendant took from the plaintiff nor funds in which the plaintiff has an

8    ownership interest—is not an authorized remedy under the UCL in an individual action." *Lee v.*

9    *Luxottica Retail N. Am., Inc.*, 65 Cal. App. 5th 793, 800–01 (2021) (holding compensation to

10   competitor for lost market share was not a remedy authorized by UCL) (citing *Korea Supply Co. v.*

11   *Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1140, 1144, 1148, 1152 (2003)).

12   To the extent Swartz suggests that a CLRA claim can never provide an adequate legal

13   remedy for a UCL claim under the *unlawful prong*, that is plainly wrong, too. Courts have no

14   problem dismissing UCL unlawful prong claims under *Sonner* on the ground that CLRA fraud

15   claims provide a remedy at law. In *Hanscom v. Reynolds Consumer Prods. LLC*, for example, the

16   court rejected the same argument Swartz asserts here, dismissing the plaintiff's UCL "unlawful and

17   unfair claims" because, as here, they were "rooted in the same legal theory and factual allegations

18   as her consumer deception claims." 2022 WL 591466, at **2–3. In doing so, the court looked to

19   the "gravamen of Plaintiff's complaint," which—like here—was that the same labeling was

20   actionable for the same reason. *Id.*; *see also Norman v. Gerber Prods. Co.*, No. 21-CV-09940-JSW,

21   2023 WL 2633220, at *2 (N.D. Cal. Mar. 24, 2023) (remedy at law available where CLRA claim

22   and UCL claim were "based on the same underlying facts and legal theory: Defendant advertises

23   its Products as Non GMO when they are not"); *cf. Elgindy v. AGA Serv. Co.,* No. 20-CV-06304-

24   _____

25   back label fraud claim would result in the same amount of money as the front label unlawfulness
     claim." Opp. at 16 (emphasis in original). But even if this were the right inquiry—and it is not—
26   this is summary judgment, and it is Swartz who "must establish that []he lacks an adequate
     remedy at law." *Sonner*, 971 F.3d at 844 (emphasis added). Swartz has no evidence whatsoever
27   to show what price premium, if any, results from the omission of %DV—because he deliberately
     has not tested for it. Flowers' Separate Statement of Undisputed Facts (Dkt. 176-1) ("SSUF") ¶
28   12.

JST, 2021 WL 1176535, at *15 (N.D. Cal. Mar. 29, 2021) (plaintiff adequately alleged that UCL claim and fraud claim were based on different theories where UCL claim challenged fee that was unlawful to charge *at all*, whereas fraud claim was based on the theory that the fee was *hidden*).

Swartz also trots out the regularly rejected argument that restitution is more "certain" because the UCL requires proof of fewer elements. Opp. at 16 ("Unlike Plaintiff's legal claims that require a showing of deception, the only element of Plaintiff's UCL claim is to establish that DKB violated the relevant regulations"); *id.* ("there is no requirement under the UCL to show class wide reliance, whereas there is such a requirement under the CLRA"). Courts consistently reject arguments that a plaintiff has no adequate remedy at law because "his legal claims have different elements that are harder to prove and require additional showings of proof." *Phillips v. Brooklyn Bedding LLC*, 2024 WL 2830663, at *2 (N.D. Cal. Mar. 28, 2024); *see, e.g., King v. Nat'l Gen. Ins. Co.*, No. 15-CV-00313-DMR, 2025 WL 2494366, at *6 (N.D. Cal. Aug. 29, 2025) (legal remedy not inadequate "because it includes an additional element" that "makes the claim harder to prove than [plaintiffs'] UCL claim"); *Norman*, 2023 WL 2633220, at *2 (rejecting argument that plaintiff "would be required to make greater showings to prove her CLRA and common law claims than she would under the UCL"). Swartz also argues that restitution is more "prompt" and "efficient" because the fraud claim "goes to a jury, whereas Plaintiff's UCL claim is subject to a bench trial." Opp. at 16. But, *by definition*, that will be true in every comparison of a legal claim to an equitable one under *Sonner*. As one court aptly put it, if allegations that a jury trial was less prompt or efficient "were enough to establish the inadequacy of a legal remedy, *Sonner* and *Guzman*'s rule would be practically nullified." *Phillips*, 2024 WL 2830663, at *2; *see Norman*, 2023 WL 2633220, at *2 (rejecting argument that "because a jury trial may take longer than a bench trial," damages were "less prompt and certain"). Swartz's reliance on such meritless arguments tells the Court all that it needs to know.

### ii.  Flowers' *Sonner* Argument Is Timely

*Sonner* also disposes of Swartz's timeliness argument—that Flowers was required to raise the Court's lack of equitable jurisdiction on the pleadings as opposed to after class certification. In *Sonner*, dismissal came on the "brink of trial." *Sonner* 971 F.3d at 837; *see also Turrey v. Vervent,*

7

*Inc.*, 2023 WL 6390620, at *5 (S.D. Cal. Sept. 29, 2023) ("An objection to equitable jurisdiction . . . may be presented on the hearing even in the appellate court.'") (quoting *Southern Pac. R. Co. v. United States*, 200 U.S. 341, 349 (1906)). Unsurprisingly then, Plaintiff identifies no case holding that a *Sonner* objection must be raised in a pleading challenge. Nor does he address the cases Flowers cites where the court rejected the equitable UCL claim on summary judgment, as the Court must do here. *See, e.g.*, *Guzman*, 49 F.4th at 1313 (affirming grant of summary judgment of UCL claim on *Sonner* grounds); *Utne v. Home Depot U.S.A., Inc.*, 2022 WL 1443339, at *2 (N.D. Cal. May 6, 2022) (granting on *Sonner* grounds motion for judgment on the pleadings brought after motion for summary judgment).

Swartz instead relies on a hundred-year-old, off-point case for the general proposition that a "lack of equity jurisdiction (if not objected to by a defendant) may be ignored by the court." Opp. at 17 (citing *Pusey & Jones Co. v. Hanssen*, 261 U.S. 491, 500 (1923)). But he cites no authority in which a court found a *Sonner* argument waived because it was not "timely" raised. To the contrary, some courts have suggested that testing "Sonner's requirement makes the most sense at summary judgment, after a record has been developed." *French v. Banana Republic LLC*, No. 24-CV-05216-VC, 2024 WL 4682312, at *2 (N.D. Cal. Nov. 4, 2024). That is certainly true here where the Court's preemption rulings at the pleading stage have crystallized Swartz's sole remaining theory, the Court has certified a class as to a single UCL claim, and it is now clear that Swartz only purports to have evidence measuring a single price premium and so cannot demonstrate that a price premium in the form of damages would be any different than restitution.

Because Swartz has not met his burden at summary judgment to show he lacks an adequate remedy at law, his UCL claims—including the sole certified claim—must be dismissed under *Sonner*, 971 F.3d at 844, and the Court need not reach the other grounds for summary adjudication of the UCL claims set forth in Sections B and C, below, or Swartz's summary judgment motion.

**b.  Swartz Lacks Statutory Standing to Pursue the Certified UCL Claim**

Swartz acknowledges that, as the named plaintiff, he must establish not only Article III standing, but also statutory standing. As the Court has held, that means Swartz must show that "he relied on the defendants' purported misrepresentations and suffered economic injury as a result."

8

Dkt. 34 at 9 (citing *Brown v. Natures Path Foods, Inc.*, No. 21-CV-05132-HSG, 2022 WL 717816, at *4 (N.D. Cal. Mar. 10, 2022)). As explained, although asserted under the unlawful prong, Swartz's claim, like the others that survived dismissal, is "based on the contention that defendants' nutrient content claims indicating total protein are misleading because defendants fail to include %DV corrected protein per serving in the nutrient label, as required by section 101.9(c)(7)(ii)." *Id.* at 9. As Flowers' motion demonstrated, he can establish neither reliance nor economic injury as a result of the allegedly misleading labeling.

### i. Swartz Cannot Show Reliance

Swartz concedes that to have statutory standing he must show "actual reliance." Opp. at 18 (citing *In re Tobacco II Cases*, 46 Cal. 4th 298, 325 (2009)).[2] As the Court has held, that means Swartz must show that he relied on the allegedly unlawful omission on Flowers' packaging. Dkt. 34 at 9; Dkt. 46 at 3; Dkt. 139 at 8–9.[3] The Court thus required Swartz to allege—and ultimately prove—"that he read or relied upon the nutrition label when he decided to purchase defendants' products" and "that requiring defendants to include %DV on the nutrition label would redress his alleged confusion over the protein content of the products he purchased." Dkt. 34 at 9. To survive dismissal, Swartz made *allegations* that the Court held were sufficient because they would show that if the NFP had "included %DV, he would have understood that there were less than five grams of usable protein per serving and would have either not purchased or spent less on the product." Dkt. 46 at 3.

---

[2] Swartz half-heartedly argues that actual reliance is not required where the regulation underlying the UCL claim does not require proof of a misrepresentation. (Opp. at n.3.) But where, as here, "the gravamen of Plaintiff['s] claim[] under the UCL's unlawful . . . prong[] is that [the defendant] misrepresented" the digestible protein content of its products, the "plaintiff must have actually relied on the misrepresentation, and suffered economic injury as a result of that reliance, in order to have standing to sue." *In re iPhone Application Litig.*, 6 F. Supp. 3d 1004, 1013 (N.D. Cal. 2013); *see also Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1355 (2010) ("to have standing to bring a claim under the 'unlawful' prong of the UCL, in which the predicate unlawful conduct is based on misrepresentations, as here, the reasoning of *Tobacco II* is equally applicable and actual reliance is an element of the claim").

[3] To the extent Swartz seeks to lower the burden of proving actual reliance under *Tobacco II* by relying on a district court decision that happens to interpret the same Restatement section that *Tobacco II* cited, Opp. at 18 (citing *Konik v. Time Warner Cable*, 2009 U.S. Dist. LEXIS 138618, at *49 n.13 (C.D. Cal. Dec. 2, 2009)), that effort should be rejected, as the California Supreme Court has final say on how substantive California law is interpreted.

9

1    Now that the time has come to substantiate those allegations with evidence, however, his

2    testimony proves he cannot. Specifically, Swartz's sworn admissions that he does not even know

3    what %DV means (and, in fact, believes that the product labels included the %DV), SSUF ¶¶ 3-7,

4    preclude him from showing that if the %DV were included, "he would have understood that there

5    were less than five grams of usable protein per serving and would have either not purchased or

6    spent less on the product." Dkt. 46 at 3. In other words, Swartz's testimony *disproves* "that, had the

7    omitted information been disclosed, [he] would have been aware of it and behaved differently."

8    *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1225 (9th Cir. 2015) (quotation marks omitted). In fact,

9    the undisputed facts are that once he became aware of the omitted information by virtue of his

10    participation in this lawsuit, he *did not* behave differently.  He continued to purchase the product.

11    SSUF ¶ 7.[4] These facts, taken separately or together, foreclose a showing of reliance and require

12    dismissal of his claim for lack of statutory standing.

13    Nothing in Swartz's opposition allows him to avoid this conclusion.

14    **First**, despite acknowledging that statutory standing is distinct from the "more lenient"

15    Article III standing, Swartz argues that the Court's Article III ruling settles the issue of statutory

16    standing, too. Opp. at 19. But the Court's ruling was expressly limited to Article III standing. *See*

17    Dkt. 139 at 5 (ruling that "plaintiff's claim does not require reliance on a misleading statement;

18    only that plaintiff bought an unlawful product and paid a premium" and by alleging as much Swartz

19    "*therefore established Article III standing*") (emphasis added). The Court expressly reserved the

20    statutory standing issue, as distinct from Article III standing. *See id.* at n.4 ("analyz[ing] only

21    whether plaintiff has Article III standing" and declining to convert the Rule 12(b)(1) motion into a

22    motion for summary judgment to consider statutory standing). As to *statutory* standing, the Court

23    has consistently held that reliance *is* required. *See* Dkt. 34 at 9 ("To plead standing under the . . .

24    UCL, a plaintiff must also allege that he relied on the defendants' purported misrepresentations and

25    _____

26    [4] Swartz argues that "potential lack of reliance at one point in time defeats the reliance for all
points of time," Opp. at 24-25, but none of the cases he cites involved a post-lawsuit purchase at a

27    time it was undisputed that the plaintiff was aware of the allegedly unlawful or misleading
label, like Swartz's purchase here. *E.g.*, *Hawkins v. Kroger Co.*, 512 F. Supp. 3d 1079, 1093

28    (S.D. Cal. 2021) (noting "Plaintiff testified during her deposition that she stopped purchasing
Kroger breadcrumbs 'as soon as [she] found that the zero trans fat statement wasn't accurate.'").

10

1    suffered economic injury as a result."); Dkt. 46 at 3 ("To state his claims, plaintiff must adequately

2    allege that he relied on the statements or omissions on defendants' packaging that were unlawful,

3    misleading, or fraudulent.") (citing *Brown v. Van's Int'l Foods*, No. 3:2022-cv-0001-WHO, 2022

4    WL 3590333 at * 6-7 (N.D. Cal. Aug 22, 2022).

5         ***Second***, Swartz's attempt to read reliance out of his claim must also be rejected. Swartz

6    argues that the "question of whether the 5g protein claim was unlawfully present on the front label

7    turns on whether DKB provided a PDCAAS based %DV for protein in the NFP, ***but it does not***

8    ***turn on whether the Plaintiff ever looked there***." Opp. at 19 (emphasis added). This argument

9    evinces a fundamental misunderstanding about statutory standing, which imposes *additional*

10   elements on a UCL claim based on "Proposition 64's intention to limit private enforcement actions

11   under the UCL." *Durell*, 183 Cal. App. 4th at 1363. After Prop. 64, it is not enough for a plaintiff

12   to simply establish that a practice was unlawful. He must also show that he *personally* lost money

13   or property in *reliance* on the allegedly misleading omission. *First Am. Title Ins. Co. v. Super. Ct.*

14   *of L.A. Cty.*, 146 Cal. App. 1564, 1577 (Cal. App. 2007).

15        By design, Prop. 64 imposed an additional hurdle to bringing an otherwise legally viable

16   claim, which Swartz cannot clear.

17        ***Third***, Swartz argues he need only demonstrate reliance on the *front label*. But that

18   argument runs headlong into the Court's express direction as to what Swartz had to demonstrate to

19   show reliance—namely, "that he read or relied upon the nutrition label when he decided to purchase

20   defendants' products" and "that requiring defendants to include %DV on the nutrition label would

21   redress his alleged confusion over the protein content of the products he purchased." Dkt. 34 at 9;

22   *see also Brown*, 2022 WL 717816 at *4 (dismissing claims based on defendants' omission of %DV

23   protein on a nutrition label where plaintiff only alleged reliance on front label).

24        Allowing Swartz to satisfy statutory standing requirements by showing reliance only on the

25   *front label* would also convert the sole theory the Court allowed to proceed—one based on the

26   *relationship* between the front label and NFP—into a theory based *solely* on the front label. The

27   Court already correctly ruled that a claim challenging the front label alone would be preempted.

28   Dkt. 34 at 1 (dismissing with prejudice on preemption grounds all of "plaintiff's claims regarding

1    statements defendants made about protein on the front label of their products" because 21 C.F.R. §

2    101.9(c)(7) allows for use total protein and the nitrogen-content method for nutrient content claims

3    on labels). Tellingly, Swartz was solicited by his counsel to pursue claims "regarding the amount

4    of protein per serving in a product *on the front label* (e.g., 15g protein), when in fact the product

5    does not contain as much protein as claimed." Declaration of Kelly L. Perigoe ("Perigoe Decl."),

6    Ex. 2 (PLAINTIFF_0002) (emphasis added). But Swartz cannot resurrect his preempted front-label

7    claim just because that is the only claim he might have standing to assert.

8         ***Finally***, Swartz argues that notwithstanding his admissions to the contrary, his testimony

9    creates a dispute of fact as to whether he relied on the NFP's omission of the %DV. His sworn

10   testimony is clear, however, that grams of protein—and grams of protein alone—drove his

11   purchasing decision. Opp. at 4 ("The protein listed on the front and back [of the Product] was

12   crucial to my decision to buy that specific product . . . . And to be willing to pay for it what I paid

13   for it.") (citing Dkt. 103-3 200:9-15); *id*. at 5 (Swartz "purchased the bread because 'this was the

14   highest grams of protein that [he] saw.'") (citing Dkt. 103-3 at 180:17–20). Swartz did not rely on

15   the *combination* between the front of pack claim and the omission of the %DV to make his

16   purchasing decision—he testified repeatedly that he does not even remember if the product labels

17   identified the %DV for protein and, in fact, believes they *did*. SSUF ¶¶ 1–2.

18        Swartz's generalized testimony that "he would be 'inclined to buy [a product] that had a

19   higher percent DV'" Opp. at 5 (citing Dkt. 103-3 at 202:2-12) proves nothing. For his surviving

20   UCL claim, Swartz has to show "that requiring defendants to include %DV on the nutrition label

21   would redress his alleged confusion over the protein content of the products he purchased," Dkt.

22   34 at 9—and his testimony confirmed that it would not and did not. Swartz admitted he does not

23   know how %DV is calculated, he does not understand its relationship to usable protein, and he

24   could not perform the calculation to compare the %DV to the grams of protein (nor did he ever

25   attempt to), so reading a %DV would not have told Swartz anything. SSUF ¶¶ 3-7. Nor did Swartz

26   present any evidence that a comparison to other bread products would have resulted in him

27   purchasing a different product—or even that another bread product *exists* with a higher %DV than

28   Swartz's claims should have been on Flowers' products. Thus, even if the %DV had been included,

1    it could not have allowed Swartz to clarify any alleged confusion about so-called "digestible"

2    protein or altered his decision in any way.

3         ii.  **There Is No Evidence that Swartz Lost Money as a Result of the Allegedly**

4              **Unlawful Practice**

5         Separately, as Flowers demonstrated, Swartz's reliance on the results of Weir's conjoint

6    studies to make the required showing that he paid a price premium "as a result of" the allegedly

7    deceptive labeling also fails. *See Kwikset Corp. v. Superior Ct.,* 51 Cal. 4th 310, 322 (2011);

8    *Svenson v. Google Inc.*, No. 13-CV-04080-BLF, 2016 WL 8943301, at *17 (N.D. Cal. Dec. 21,

9    2016). Swartz does not create a genuine dispute of fact as to this aspect of statutory standing, either.

10        As an initial matter, Swartz's effort to cast this issue as already having been decided is

11   wrong. To be sure, the Court held for purposes of class certification that Weir's proposed studies

12   were sufficient to show a means of proving class-wide damages, but "the inquiry at the class

13   certification stage differs from that at summary judgment." *Noohi v. Johnson & Johnson Consumer*

14   *Inc*., 146 F.4th 854, 863 (9th Cir. 2025); *cf.* Dkt. 139 (noting that there is no requirement that

15   evidence relied on by plaintiff to support class certification be presented in admissible form at the

16   class certification stage). A proposed conjoint survey might be considered a reliable method for

17   determining a price premium for class certification purposes even though, for instance, "a poorly

18   conducted survey might produce responses that inflate damages" including because "survey

19   conditions might not accurately replicate conditions faced by consumers in stores." *Noohi*, 146

20   F.4th at 867. A defendant thus "must be given the opportunity in advance of trial to test the

21   sufficiency and reliability of [the conjoint] model once it has been fully executed, including through

22   a motion for summary judgment and/or a renewed *Daubert* motion." *Lytle v. Nutramax Lab'ys,*

23   *Inc.*, 114 F.4th 1011, 1034 (9th Cir. 2024), *cert. denied*, 145 S. Ct. 1308, 221 L. Ed. 2d 396 (2025).

24   In such circumstances, "should [the] execution of the survey fall short of the mark," summary

25   judgment may be appropriate. *Noohi*, 146 F.4th at 867.

26        Summary judgment is appropriate here because, as conducted, Weir's studies neither (1)

27   isolate the front-label protein statement (as he promised they would), nor (2) test a price premium

28   associated with omission of %DV from the NFP (as they should have done). The problem is not

13

one of *inexactness*, *cf.* Opp. at 25-26 (arguing that an approximation of damages is sufficient), it is one of *inaptness*. The price premium that Weir purports to approximate is simply not *as a result of* the alleged UCL violation.

**Weir's surveys, as conducted, do not isolate the allegedly unlawful front-of-package protein statement**. At class certification, the Court accepted a damages model that purported to calculate a price premium based on the front of pack protein statement alone, reasoning that Weir's "methodology sufficiently tests whether users would pay more for protein claims" as long as "it demonstrates that users are being asked about *front-of-package claims*." Dkt. 139 at 7 (emphasis added). Despite this Court's guidance at class certification, however, Weir's methodology does *not* so demonstrate. It demonstrates just the opposite.

- **Swartz does not dispute—and Weir admitted—that the survey does not expressly identify the "label statements" as "front label statements" as opposed to statements that are required appear in the NFP or elsewhere on the package.** SSUF ¶¶ 9–10. Survey respondents were not shown labels; they were only shown a "product profile" in a text-based format and told that bulleted statements are "label statement[s]." SSUF ¶¶ 9–10. Swartz does not dispute Weir's important admission in his deposition that the surveys do not tell the participant whether the "5g protein" appears on the front, the side, or the NFP, and do not contain any indicia of placement or prominence on the label. SSUF ¶ 10.

- **Nothing in Weir's surveys ultimately ensured that "respondents would not confuse the '5g protein' for a [mandated] NFP statement."** Dkt. 139 at 7. In finding that Weir's proposed studies could measure class-wide damages, the Court reasoned (1) that the "5g protein" statement would be provided alongside other front-of-package statements and (2) that "there are no other claims in the survey that are typically included in a NFP." *Id*. Swartz is forced to agree, however, that statements in the as-conducted surveys, such as "70 calories" and "0g Trans Fat," *do* appear in the NFP. Opp. at 27. Because it is undisputed that other statements in the survey are *not* front-of-pack statements and *do* typically appear in the NFP, the Court's initial inference that "respondents would not confuse the '5g protein' claim for a NFP claim" does not apply to the conducted surveys. It is not Flowers' burden,

14

as Swartz suggests, to come up with "evidence to suggest that [a] respondent was confused about the location of the statement." *Id.* Swartz must prove economic injury as a result of the alleged misrepresentation or omission, and Weir's conducted study does not do so. Even so, as set forth further in Flowers' motion to exclude Weir's opinion, the incongruous results of Weir's survey *do* show respondent confusion. *See* Dkt. 178 at 14-18.

- **Weir's artificial and unrealistic "product profiles" are inherently misleading.** Summary judgment may be appropriate where "survey conditions [do] not accurately replicate conditions faced by consumers in stores." *Noohi*, 146 F.4th at 867; *see also Strumlauf v. Starbucks Corp.*, No. 16-cv-01306-YGR, 2018 WL 306715 (N.D. Cal. Jan. 5, 2018) (granting summary judgment where survey presented unrealistic Starbucks menu board and caricatured images of coffee cups). Here, rather than present images of actual products that necessarily show where on the package the label statement appears, Weir's surveys show bulleted "product profiles" that, as Weir conceded, cannot test for label placement. SSUF ¶ 10. Comparing Weir's survey to Dr. Kivetz's survey is illustrative.

 

Weir Decl. ¶ 63:                                    Kivetz Report ¶ 92.

The difference matters. With an incomplete list of "label statements" untethered to the actual packaging and an instruction to hold "all other variables constant," Dkt. 178 at 11, a survey respondent is faced with a confusing, if not impossible, task. For instance, how would a respondent presented with Weir's image above hold protein content constant, when Dave's Killer Bread and 365 Whole Foods Market each list 5g protein, but Organics is silent as to protein? It is hard to imagine what conclusion a participant would draw other than that

15

1    the Organics product has no protein at all. For a study intended to test the price premium as

2    a result of a protein *label*—not protein *content*—this is a fatal flaw. Weir's surveys thus

3    cannot prove Swartz suffered economic injury as a result of even the front label.

4    ***Weir does not present any evidence of a price premium associated with the %DV***.

5    Moreover, as the Court previously held, it is *not* the front label alone that matters; it is the

6    *combination* of (1) the inclusion of the front label statement *and* (2) the omission of the %DV in

7    the NFP that gives rise to Swartz's legal injury. Dkt. 139 at 9. Thus, for the survey to "accurately

8    replicate conditions faced by consumers in stores," it would not be enough to test the a "5g Protein"

9    front label statement in a vacuum; it would have to compare the "5g Protein" front label statement

10   *with* the %DV on the NFP to the "5g Protein" front label statement *without* the %DV on the NFP.

11   *Noohi*, 146 F.4th at 867. Yet, Weir admits that his survey is blind to the %DV.  SSUF ¶ 12.

12   Multiple cases explain that to show a price premium involving omissions, the premium must

13   measure "what [plaintiff] would have paid *for the products absent the alleged . . . omissions*."

14   *Zeiger v. WellPet LLC*, 526 F. Supp. 3d 652, 686 (N.D. Cal. 2021) (emphasis in original). The court

15   in *Allegra v. Luxottica Retail N. Am.*, held that a damages model "fail[ed] to analyze, or account

16   for, any price premium associated with LensCrafters' alleged omissions, *i.e.*, that LensCrafters did

17   not manufacture glasses to 0.1mm and that 0.1mm glasses have no clinical benefit." 341 F.R.D.

18   373, 459-60 (E.D.N.Y. 2022). The court reasoned that the plaintiff's expert only "found that the

19   *claims* made by LensCrafters about AccuFit have had an impact on consumer preferences, [and]

20   measured the potential impact of the AccuFit *claims* by estimating consumers' willingness to pay

21   for the digital measurement attribute (as described by those claims)," but did not analyze "the

22   impact of LensCrafters' alleged fraudulent omissions on price, or a calculation of damages

23   attributable to these omissions." *Id.* (internal quotation marks omitted; emphasis in original).

24   Similarly, in *Passman v. Peloton Interactive, Inc.*, the court held that Weir's analysis "at most . . .

25   measure[d] the price impact of the 'ever-growing library' statement," but not the "*alleged*

26   *omission* that the number of classes in the library would shrink" and thus failed to measure price

27

28

1    impact of alleged omission. 671 F. Supp. 3d 417, 468 (S.D.N.Y. 2023) (emphasis added), vacated,[5]

2    No. 19-cv-11711 (LGS), 2025 WL 1284718, at *2 (S.D.N.Y. May 2, 2025). The same is true here.

3        Swartz brushes aside these cases as inapposite because they involve fraud claims, but even

4    if that mattered, Swartz's claim, too, is based on a theory of deception by omission. *See* Dkt. 34 at

5    9; Dkt. 46 at 2-3. Under Swartz's theory, there is nothing wrong with a "5g protein" statement on

6    the front label *unless* the NFP *omits* the %DV that Swartz alleges would have cleared up his

7    confusion. *See* Opp. at 29 (arguing "the front label claim itself is unlawful *because of* DKB's failure

8    to comply with NFP requirements") (emphasis added). And while Swartz criticizes Flowers'

9    reliance on *Allegra*, 341 F.R.D. 373, and *Passman*, 671 F. Supp. 3d 417, because they involve

10   claims under New York law, he does not explain how New York law is distinguishable on this point;

11   nor does he explain why that makes the courts' analyses of how to quantify price impact of an

12   alleged omission wrong.

13       **c.   There Is No Evidence that the Class Suffered Any Cognizable Injury**

14       For the reasons explained above, Plaintiff's UCL claim is properly dismissed under *Sonner*,

15   and therefore, the class claim is also properly dismissed.  But even if the Court had jurisdiction to

16   award equitable relief (and it does not), there is no evidence that any class member paid *any* price

17   premium as a result of the alleged omission. The *only* study to test the price premium resulting from

18   the omission of %DV in the NFP, is Dr. Kivetz's study, which concludes that the front label and

19   %DV had no impact whatsoever on purchasing behavior. SSUF ¶¶ 13-14. Because no class member

20   is entitled to any money under any scenario, summary judgment should be granted on the certified

21   UCL claim for this reason as well. *Ries v. Arizona Beverages USA LLC*, No. 10-01139 RS, 2013

22   WL 1287416, at *7-8 (N.D. Cal. Mar. 28, 2013).

23       **d.   Each of Swartz's Individual Claims Fails**

24       Swartz cannot save his individual claims which fail for the same reasons stated above and

25   the further reasons stated below.

26       **i.   Swartz's UCL Fraud and Unfair Claims Fail as a Matter of Law**

27
---
28   [5] Although the *Passman* decision was later vacated due to a possible financial conflict of interest, *see* 2025 WL 1284718, at *1, its reasoning remains analytically sound and highly persuasive, *see* 671 F. Supp. 3d at 468.

17

1   As an additional ground for summary judgment, Swartz's individual UCL claims are

2   properly dismissed because Swartz does not satisfy the "reasonable consumer test" requiring

3   Swartz "demonstrate by extrinsic evidence . . . that the challenged statements tend to mislead

4   consumers." *Haskell v. Time, Inc.*, 965 F. Supp. 1398, 1406–07 (E.D. Cal. 1997).[6]

5   Swartz concedes that he bears the burden to demonstrate that a significant portion of

6   consumers would be deceived. Opp. at 30. But Swartz does nothing to carry his burden on summary

7   judgment. All evidence is to the contrary. Flowers calculated and listed the total grams of protein

8   on the NFP in a manner that was fully compliant with FDA regulations and always included the

9   total grams of protein on the NFP. *See* Dkt. 176 at 6, 16. Flowers' decision to restate the properly

10  calculated total grams of protein on the front of the packaging, alongside various other health

11  information and label statements, would in no way mislead a reasonable consumer who would

12  always have access to the very same information on the NFP on the back of the package. In fact,

13  Flowers' consumer research expert Dr. Ran Kivetz conducted several studies, which found no

14  material differences in consumer behavior based on the front label protein statements and alleged

15  omission of the %DV for protein on the NFP. *See* Declaration of Michael L. Resch in Support of

16  Flowers' Motion for Summary Judgment ("Resch Decl."), Ex. J (Dkt. 176-12) ("Kivetz Report")

17  ¶¶ 135, 141, 147. Nor is there any evidence in the record that a reasonable consumer could have

18  used a %DV for protein (even if required) to determine that the products were somehow deficient

19  in "usable" protein. Swartz himself testified that he would not have been able to use a %DV to form

20  any conclusions about protein usability. SSUF ¶¶ 3–7. Moreover, depending on a given consumer's

21  nutritional profile and meal choices, Flowers' nutritional expert Dr. John Wallingford found that

22  all of the protein in the products could have been usable. *See* Resch Decl., Ex. P (Dkt. 176-18).

23  In short, there is inherently nothing deceptive or misleading about these product labels, and

24  Swartz does not even attempt to argue that the reasonable consumer could have been misled. Nor

25  can a purported technical FDA regulatory violation save Swartz's UCL claim. *See Trazo v. Nestle*

26  *USA, Inc.*, No. 5:12-CV-2272 PSG, 2013 WL 4083218, at *10 (N.D. Cal. Aug. 9, 2013), on

27
28  [6] The Court may dispose of Swartz's individual UCL claims on the same bases described in
    Sections A-C, above, including because (i) Swartz has an adequate legal remedy under *Sonner* and
    (ii) Swartz admittedly did not rely on the allegedly omitted %DV for protein on the NFP.

18

1    reconsideration, 113 F. Supp. 3d 1047 (N.D. Cal. 2015) (holding an alleged regulatory violation is

2    not enough to show that the statements misled a reasonable consumer under the fraud/unfair prongs

3    of the UCL). The Court should thus follow the line of cases dismissing UCL claims at the summary

4    judgment stage for failing to satisfy the reasonable consumer test.[7]

5           Swartz instead claims to have demonstrated a triable issue through the labels themselves

6    and would have the Court defer the reasonable consumer question to trial. Opp. at 30-31. For this

7    point, Swartz relies heavily on *Colgan v. Leatherman Tool Grp., Inc.*, 135 Cal. App. 4th 663,

8    681(2006)), but *Colgan* involved an alleged false labeling statement, and in any event was not

9    decided based on the label alone. "The evidence in [that] case included the 'Made in U.S.A.'

10   representations themselves" as well as "the declaration of [the defendant's] executive describing

11   the various manufacturing processes [the defendant's] tool components underwent outside the

12   United States; and the testimony of two plaintiffs who attested to being misled by [the defendant's]

13   representations," whereas the defendant "presented no evidence suggesting a lack of deception."

14   *Id.* at 682. That the undisputed admissible evidence demonstrated that the products in fact were *not*

15   substantially made in the United States allowed the court to grant summary judgment in plaintiff's

16   favor. Here, by contrast, there are *no facts* showing the label was false or that Swartz (or any

17   reasonable consumer) was misled by the protein label statements. To the contrary, the only evidence

18   regarding consumer deception that is before the Court, Kivetz's survey results, confirms a *lack* of

19

20

---

21   [7] *See, e.g.*,  *Tran v. Sioux Honey Ass'n, Coop.*, 471 F. Supp. 3d 1019, 1028 (C.D. Cal. 2020)
     (granting defendant's motion for summary judgment on CLRA, FAL, and UCL claims because
22   plaintiff offered "nothing to show that her view of the labels equates to that of the reasonable
     consumer" and failed to provide survey evidence which would have been "particularly helpful in
23   determining whether a reasonable consumer" could be misled by the "Pure" and "100% Pure"
     challenged statements); *Rahman v. Mott's LLP*, No. CV 13-3482 SI, 2014 WL 5282106, at *9 (N.D.
24   Cal. Oct. 15, 2014) (granting defendant's motion for summary judgement on UCL, CRLA, FAL,
     and negligent misrepresentation claims because plaintiff had no way of knowing whether other
25   consumers were similarly deceived by the "No Sugar Added" on the product labels or what
     information other consumers relied on when purchasing the products and where the "deceptive
26   nature of the statement is not self-evident" because the statement "No Sugar Added" is "literally
     true" when considering the ingredients used to make the product); *Peacock v. Pabst Brewing Co.*,
27   No. 24-2494, 2025 WL 1189562, at *1 (9th Cir. Apr. 24, 2025) (affirming grant of defendant's
     motion for summary judgment on UCL claim where plaintiff only cited to his "personal
28   assumptions and limited deposition testimony" which were "not relevant to whether the . . . label
     was likely to confuse 'an appreciable number' of reasonable consumers") (citation omitted).

1    deception. Kivetz Report ¶¶ 135, 141, 147 (no change in consumer behavior based on presence or

2    absence of front label protein statement or back label %DV for protein).

3         Even if a label alone could be sufficient to survive a defendant's motion for summary

4    judgment in *some* cases, Swartz does not even try to explain how any reasonable consumer could

5    be misled by the label in *this* case. Instead, Swartz includes a bulleted list of characterizations of

6    Flowers' testimony and documents Swartz says relate to Flower's "advertising scheme" and its

7    own research showing that protein "was important to purchasers" and that Flowers' consumers

8    "read food labels." Opp. at 31-32. This evidence only proves Flowers' point. If the target consumer

9    that Swartz describes is "interested in understanding the nutrition profile of the products" and

10   "reads the 'totality' of the packaging," as Swartz contends, then that consumer would always read

11   the total grams of protein on the NFP regardless of whether that same information is restated on the

12   product's front label, and thus could not have been deceived by the front label. Similarly, Flowers'

13   consumer research cited by Plaintiff regarding respondents listing protein as something that is

14   "important" to their purchase of sliced bread products has nothing to do with likelihood of

15   deception given that protein is always in the bread and that protein content is always shown on the

16   NFP. *See* Opp. at 32. The outcome might be different if Swartz were pursuing a claim that the

17   advertised protein overstated the amount of protein in the product, but he is not.

18        Swartz's remaining citations either support Flowers' arguments or are inapposite. *Echostar*

19   actually affirmed summary judgment for defendant on several label statements, including because

20   there was no evidence that the true statement "digital signal" would mislead a reasonable consumer

21   into believing that the signal was digital "from inception to delivery." *See Consumer Advocs. v.

22   Echostar Satellite Corp.*, 113 Cal. App. 4th 1351, 1360 (2003). Here too, there is no evidence that

23   a reasonable consumer could have been misled by the restatement of the correctly-calculated total

24   grams of protein between the NFP and the product front label. *Analogix* dealt with the very different

25   facts that defendant's computer chips were "not software compatible" contrary to defendant's

26   statements that the chips were "compatible," creating a jury issue regarding the falsity of the

27   representation. *Silicon Image, Inc. v. Analogix Semiconductor*, 642 F. Supp. 2d 957, 969 (N.D. Cal.

28   2008). And *Epson America* concerned a potentially confusing statement of "replace only the color

20

1   you need with individual ink cartridges" when the printer required all cartridges (*i.e.*, color and

2   black-and-white) to function. *O'Shea v. Epson Am., Inc.*, No. CV 09 -8063 PSG CWX, 2011 WL

3   3299936, at *9 (C.D. Cal. July 29, 2011). There is simply nothing false about the labeling at issue

4   in this case, and the Court already ruled that such a theory is preempted.

5        Having neither presented evidence of consumer deception nor explained how the labeling

6   itself shows a reasonable consumer would be deceived, Swartz cannot satisfy the reasonable

7   consumer test, which is fatal to both his UCL and FAL claims.

8            **ii.   Swartz's Common Law Fraud Claim Fails as a Matter of Law**

9        As explained above, there is no evidence that Swartz relied on the omission of the %DV

10  when making purchases or that he suffered any damages. *See supra* at 9-18. Swartz has therefore

11  failed to establish multiple elements of his claim for common law fraud. *See Lazar v. Superior Ct.*,

12  12 Cal.4th 631, 638 (2012) (requiring justifiable reliance and resulting damages).

13       Swartz also has no evidence that Flowers purposefully omitted the %DV with the intent to

14  deceive. Thus, "there is no rational basis in the record for concluding that any of the challenged

15  statements was made with requisite scienter." *Provenz v. Miller*, 102 F.3d 1478, 1490 (9th Cir.

16  1996). In fact, Flowers' regulatory team considered this issue on several occasions and concluded

17  based on a reasoned interpretation of the FDA regulations that that the %DV need not be included.

18  *See* Dkt. 176-16 ("since there are no protein 'claims' . . . the %DV for Protein should not be

19  included on the product label"); *id.* Dkt. 176-14 ("[w]e have previously discussed this subject at

20  length and decided that the protein 'call outs' on the DKB items, in the current format, would not

21  constitute a 'claim.'"). That Flowers' understanding is consistent with the expert opinion of former

22  FDA official Dr. Trumbo is further evidence that its interpretation was made in good faith.

23       Swartz's list of purported facts (Opp. at 35) confuses the issues and does not come close to

24  establishing the required knowledge and intent to deceive. Swartz cites to a document from a third-

25  party firm that conducted nutritional analyses for Flowers but fails to explain how the opinions of

26  the third party (which are themselves ambiguous and do not conduct a rigorous analysis of the

27  regulations) can be imputed to Flowers to establish the requisite intent. *See id.* Swartz also provides

28  no facts to suggest that Flowers read or considered the third party's opinions, let alone that the

21

1    company was required to adopt a third party's perspective over the sound reasoning of its regulatory

2    team. The balance of Swartz's documents only *confirm* Flowers' good faith belief that restating the

3    correctly-calculated total grams of protein on the front of the package is *not* a protein claim. *See*

4    *id.*; *see also infra* at 35-36. All these documents refer to an implied claim such as "good source" or

5    "high in protein" which Flowers never included and understood could not be made without a %DV

6    for protein. The documents are thus fully consistent with Flowers' good faith belief, described

7    above, that simply restating the total grams of protein outside of the NFP was not a "protein claim."

8        Summary judgment should be granted against Swartz's individual claim for common law

9    fraud because Swartz cannot establish the elements of reliance, injury, or intent to deceive.

### iii. Swartz's CLRA Claim Fails as a Matter of Law

11       Swartz concedes that reliance is a required element of any CLRA claim. Opp. at 16; *see*

12   *also Richter v. CC-Palo Alto, Inc.*, 176 F. Supp. 3d 877, 899 (N.D. Cal. 2016) ("a CLRA claim

13   based in fraud requires reliance."). For the reasons set forth in Section B(1), above, Flowers is

14   entitled to summary judgment because there is no evidence that Swartz relied on the alleged

15   omission.

### iv. Swartz's FAL Claim Fails as a Matter of Law

17       As set forth in Flowers' motion, to prevail on his individual FAL claim, Swartz must

18   establish both that (1) statements in the advertising are untrue or misleading in that members of the

19   public are likely to be deceived under the reasonable consumer test, and (2) Flowers knew or should

20   have known that the statements were untrue or misleading. *See VP Racing Fuels, Inc. v. Gen.*

21   *Petroleum Corp.*, 673 F. Supp. 2d 1073, 1088 (E.D. Cal. 2009). For the reasons stated above in

22   Sections D(1)&(2), Swartz can do neither. Therefore, summary judgment should be granted.

### v. Swartz's Unjust Enrichment Claim Fails as a Matter of Law

24       Swartz does not dispute and therefore concedes that his unjust enrichment claim is entirely

25   duplicative of his statutory claims under the UCL, CLRA, and FAL. Swartz's individual claim for

26   unjust enrichment is therefore properly dismissed with his individual UCL claims for the same

27   reasons shown above. *Gudgel v. Clorox Co.*, 514 F. Supp. 3d 1177, 1188 (N.D. Cal. 2021).

28

Swartz cites, without any authority, that he is also entitled to "disgorgement of profits," referencing the total sales for relevant products during the class period. This is wrong. Disgorgement of profits is not a proper remedy for consumer claims. *See Lanovaz v. Twinings N. Am., Inc.*, No. 12–CV–02646–R, 2015 WL 729705, at *2 (N.D. Cal. Feb. 19, 2015) ("allowing plaintiffs to recover disgorgement remedies would appear to conflict with the comprehensive consumer protection scheme laid out in the UCL, FAL, and CLRA"). In any event, Swartz has no evidence that Flowers retained any amounts that can be attributed to the alleged underlying wrong. Thus, Swartz cannot proceed with his new and vaguely stated claim for disgorgement of profits.

## III.    SWARTZ'S PARTIAL SUMMARY JUDGMENT MOTION SHOULD BE DENIED

Swartz asks this Court to determine that as a matter of law that Flowers is liable under the UCL's unlawful prong. *See* Plaintiff's Motion for Partial Summary Judgment ("Motion") (Dkt. 182) at 6. To the extent the Court reaches Swartz's motion, it should deny it for two independent reasons.

*First*, Swartz's submission of so-called undisputed facts flagrantly violates this Court's Standing Order in Civil Cases. Rather than adhering to the Court's clear and mandatory three-column chart, Swartz introduces additional columns, headings, and formatting that renders the chart noncompliant, confusing, and difficult to respond to. What is worse, Swartz fails to identify or number his asserted facts and omits the required attestation by his lead counsel. These procedural failures warrant disregard of Swartz' purported undisputed "facts"—whatever those may be.

*Second*, Swartz entirely ignored an essential element of his unlawful prong liability claim—*i.e.,* causation under the "as a result of" language added to the UCL through Prop. 64. Swartz's separate statement does not include a single undisputed fact regarding causation. *See* Separate Statement of Undisputed Facts in Support of Plaintiff's Motion for Summary Judgment (Dkt. 182-7). Nor does Swartz's motion address causation at all. The motion should be denied based on this failure alone. *See S. California Gas Co. v. City of Santa Ana*, 336 F.3d 885, 888 (9th Cir. 2003) (a party moving for summary judgment must establish "beyond controversy every essential element of its" claims) (citation omitted).

*Third*, Swartz's regulatory interpretation is wrong. The regulatory question at issue—*i.e.*,

23

whether a front label statement that does nothing more than restate the protein content of the product without characterizing it in any way constitutes a "protein claim" under 21 C.F.R. § 101.9(c)(7)— requires a holistic analysis of the complex regulatory scheme that harmonizes all provisions and avoids absurd results. Swartz's proffered definition of a "protein claim" as any statement whatsoever about protein is found nowhere in the regulations and ignores the plain meaning of the word "claim," as well as the way that word is used elsewhere in the regulations. The term "protein claim" is not defined in 21 C.F.R. § 101.9(c)(7), or anywhere else, but a "nutrient content claim" is defined. And only a nutrient content claim that characterizes the level of the nutrient requires a "disclaimer" or any other additional information like a % daily value ("%DV"). 21 C.F.R. § 101.13(b). The same regulation also states that similar statements like "5 grams of fat" or "100 calories" are *not* nutrient content claims that require such additional information (specifically because they do not characterize the amount of the nutrient). 21 C.F.R. § 101.13(i)(3). This explains why the Flowers regulatory team, when it analyzed the issue over eight years ago, concluded that the numeric statement of protein grams is *not* a "protein claim" and a %DV for protein is *not* required—and why Dr. Trumbo, a former FDA official with responsibility over the protein and nutrient content labeling regulations, agrees. Because Swartz's motion is based on a fatally flawed definition of "protein claim" with no basis in the regulations, his motion should be denied.

### a.  Legal Standard

"A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact." *Hernandez v. Polanco Enters., Inc.*, 19 F. Supp. 3d 918, 925 (N.D. Cal. 2013) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986)). This same standard applies to requests for partial summary judgment. *See King Jewelry, Inc. v. Fed. Exp. Corp.*, 316 F.3d 961, 964 (9th Cir. 2003).

Swartz is moving for partial summary judgment on the issue of Flowers' liability under the unlawful prong. That means Swartz must establish "beyond controversy every essential element" required to prove liability for his claim. *S. California Gas Co.*, 336 F.3d at 888 (citation omitted); *see also Menzel v. Scholastic, In*c., No. 17-CV-05499-EMC, 2019 WL 6896145, at *2 (N.D. Cal.

24

Dec. 18, 2019) (citing *Cabo Distrib. Co. v. Bra*dy, 821 F. Supp. 601, 607 (N.D. Cal. 1992)) ("Where a plaintiff moves for summary judgment on claims that it has brought (*i.e.*, for which it has the burden of proof), it 'must prove each element essential of the claims . . . by undisputed facts.'"). This requires Swartz to establish both that there is no genuine issue of fact and that the "evidence . . . would support a jury verdict" in his favor. *Anderson v. Liberty Lobb, Inc.*, 477 U.S. 242, 257 (1986).

**b.  Swartz Ignores an Essential Element of His UCL Unlawful Prong Claim**

Swartz contends that, if the Court adopts his interpretation of the relevant FDA regulations, then Flowers is automatically liable under the UCL. Motion at 8 ("so long as the Court determines that '5g Protein' is either a 'nutrient content claim' under § 101.13; or a 'protein claim' under § 101.9(c)(7); then Defendants' classwide liability under the UCL unlawful prong is established as a matter of law"). By doing so, Swartz suggests that a claim under the UCL's unlawful prong has only one element—whether there was a purported violation of law. Not so. Both the plain language of the UCL and Prop. 64 require him to show more than a bare regulatory violation to succeed on a motion for partial summary judgment on the issue of liability.

The UCL states that only a "person who has suffered injury in fact and has lost money or property *as a result of* the unfair competition" can recover under the statute. Cal. Bus. & Prof. Code § 17204 (emphasis added). Courts have interpreted the phrase "as a result of" to mean that the "alleged unfair competition must have caused the plaintiff to lose money or property." *Beaver v. Tarsadia Hotels*, 29 F. Supp. 3d 1294, 1312 (S.D. Cal. 2014), *aff'd*, 816 F.3d 1170 (9th Cir. 2016) (quoting *Hall v. Time Inc.*, 158 Cal. App. 4th 847, 849 (2008), as modified (Jan. 28, 2008)); *see also Durell*, 183 Cal. App. 4th at 1360 (a plaintiff pursuing a UCL claim "must make a twofold showing: he . . . must demonstrate injury in fact and a loss of money or property caused by unfair competition.") (citation omitted). Indeed, that is exactly what the trial court in *Hawkins v. Kroger Co.* did—on remand after the Ninth Circuit case on which Swartz himself relies—when it denied plaintiffs' motion for summary judgment on a UCL unlawful claim for failure to show causation. 512 F. Supp. 3d 1079, 1091–92 (S.D. Cal. 2021); *see* Motion at 9 (citing *Hawkins v. Kroger Co.*, 906 F.3d 763, 769–70 (9th Cir. 2018)).

25

1    This Court also has recognized causation as a required element, holding that Swartz's

2    unlawful claim required a showing: "that he and the class members paid a price premium *resulting*

3    *from* the inclusion of a front-of-package claim[] without a %DV in the NFP." Dkt. 139 at 8

4    (emphasis added); *see also* May 20, 2022 Order (Dkt. 34) at 9 ("To plead standing under the FAL,

5    CLRA, or UCL, a plaintiff must also allege that he relied on the defendants' purported

6    misrepresentations and suffered economic injury *as a result*.") (citing *Brown*, 2022 WL 717816, at

7    *4) (emphasis added). These rulings are consistent with other decisions. *See, e.g.*, *In re Actimmune*

8    *Mktg. Litig.*, No. C 08–02376 MHP, 2010 WL 3463491, at *8 (N.D. Cal. Sept. 1, 2010) (alleging

9    unlawfulness alone, without reliance, "only accomplishes half of a plaintiff's burden in a UCL

10   unlawful prong action," since "as a result of" in the statutory language places burden on plaintiff

11   to show reliance).

12   Prior to the passage of Prop. 64, the UCL permitted any consumer—regardless of whether

13   they had suffered actual harm—to bring a suit for unlawful business practices on behalf of others.

14   This broad standing provision effectively allowed private citizens to act as quasi-attorneys general,

15   which resulted in a surge of litigation against corporations. In 2004, voters decisively passed Prop.

16   64 to do away with such "abuses of the class action system by prohibiting private attorneys from

17   filing lawsuits for unfair competition where they have no client who has been injured in fact." *First*

18   *Am. Title Ins.*, 146 Cal. App. 4th at 1577 (cleaned up). The voters had found that the "UCL's broad

19   grant of standing had encouraged frivolous unfair competition lawsuits that clog our courts, cost

20   taxpayers, and threaten the survival of small businesses[.]" *Durell*, 183 Cal. App. 4th at 1360

21   (cleaned up). Prop. 64 amended the UCL to require that a private plaintiff demonstrate actual injury

22   as a result of the alleged unlawful conduct. Prop. 64, §§ 2, 3 (amending Cal. Bus. & Prof. Code §§

23   17203, 17204).

24   Swartz's effort to obtain summary judgment conflicts with the plain language of the UCL

25   and the intent of Prop. 64. Rather than engage with the statute's actual requirements—namely,

26   proof of causation—Swartz leans entirely on a single line of dicta from *Ang v. Bimbo Bakeries*

27   *USA, Inc.*, which merely states that a mislabeling claim is "resolvable" because it is "either illegal

28   or it is not." No. 13-CV-01196-WHO, 2014 WL 1024182, at *1 (N.D. Cal. Mar. 13, 2014). But

26

1   *Ang* did not involve a motion for summary judgment on a UCL unlawful claim, and its dicta cannot

2   displace the statutory language of the UCL and the clear purpose of Prop. 64. Swartz's Statement

3   of Undisputed Facts ("Statement") suffers from the same fundamental flaw as it contains no facts

4   related to causation or injury. *See* Dkt. 182-7. Indeed, not only is Swartz's Statement insufficient

5   for failing to address all elements of his claim, but it also runs afoul of this Court's Standing Order,

6   which requires parties' statements to identify facts and number them accordingly and be signed by

7   lead counsel (which Swartz also fails to do). *See* Judge Yvonne Gonzalez Rogers Standing Order

8   in Civil Cases **§** 9(c); *see also* Apr. 24, 2025 Order Pre-Filing Conference Order (Dkt. 158) at 2

9   (reminding the parties of these requirements). It is unsurprising that Swartz avoids the UCL's "as

10  a result" of language, and causation more generally. As reflected in Flowers' motion for summary

11  judgment, and discussed in more detail in Flowers' reply above, *infra* at 13-18, Swartz has no

12  evidence of causation and economic injury resulting from the alleged unlawful conduct—because

13  there is none.

14      Having failed to demonstrate the absence of a genuine issue of material fact as to all

15  elements of Flowers' "liability under the unlawfulness prong of the UCL," Motion at 6, Swartz's

16  summary judgment should be summarily denied. *See Hernandez*, 19 F. Supp. 3d at 925; *S.*

17  *California Gas Co.*, 336 F.3d at 888; *Menzel*, 2019 WL 6896145, at *2.

18      **c.   "5g Protein" Is Not a "Protein Claim" Under FDA Regulations**

19      Swartz also fails to prove as a matter of law that that the label of Dave's Killer Bread

20  products violated FDA regulations due to the absence of a %DV for protein in the NFP. Motion at

21  1, 6. All agree that the regulations provide that a %DV for protein in the NFP is only required if

22  the product label makes a "protein claim" outside of the NFP. 21 C.F.R. § 101.9(c)(7). But "protein

23  claim" is undefined, as Swartz admits, and a protein statement that merely restates the protein

24  amount (literally a number) without characterizing it in any way does not qualify as a "protein

25  claim" under the regulations.[8] Swartz's motion for partial summary judgment should thus be denied

26  _____

27  [8] The lack of textual clarity has led to significant confusion in the industry, as evidenced by the
    slew of protein labeling cases filed over the last several years (including this one). *See*, *e.g.*,

28  *Sherris Minor v. Baker Mills Inc. and Kodiak Cakes LLC,* No. 20-cv-02901-RS (%DV for protein
    not listed on NFP by defendant); *Roffman v. Rebbl, Inc.*, No. 22-cv-05290-JSW (same).

on the additional basis that it fails to address, let alone reconcile, relevant FDA labeling regulations.

Because the protein content statements are not "protein claims" that require that %DV be included in the NFP, the Court should deny Swartz's motion for partial summary judgment.

### i. A Factual Statement of Protein Content That Does Not Characterize the Protein Level Is Not a "Protein Claim"

A factual statement of protein content—without any characterization of the protein level in the product—does not qualify as a "protein claim" under § 101.9(c)(7)(i). While FDA regulations do not define the term "protein claim," they do define "nutrient content claim." A "nutrient content claim" is a statement that "*characterizes*" the level of nutrient in the food. 21 C.F.R. § 101.13(b) (emphasis added). The regulations also provide illustrative examples of what is a nutrient content claim. Specifically, statements like "low fat," "high in oat bran," "good source," "contains," and "provides" *are* nutrient content claims (because they *characterize* the amount of the nutrient). § 101.13(b)(1),(2), 101.54 (requiring foods with such labels to meet certain criteria for the nutrients being described and include a corresponding disclaimer (like a %DV)). Applying this same meaning to the word "claim" as used in the undefined term "protein claim," would mean a "protein claim" must *characterize* the level of protein—which "5g protein" undisputably does not do.

To the extent Plaintiff argues that a "protein claim" is a type of "nutrient claim," that same definitional prerequisite—a *characterization*—would be necessary. But even if the front label protein statement met the definition of a nutrient content claim under 101.13(b) (it does not), that alone would not require the listing of a %DV. The FDA regulation governing nutrient content claims explains elsewhere that the labeling of nutrients is *permitted* outside of the NFP, even without a concomitant disclaimer (like a %DV), so long as the statement does not characterize the level of the nutrient:

- 21 C.F.R. § 101.13(i)(3): Stating that a label may "contain a statement about the amount or percentage of nutrient if . . . [it] does not in any way implicitly characterize the level of the nutrient in the food and it is not false or misleading in any respect (e.g., '100 calories' or '5 grams of fat'), in which case no disclaimer is required.";

- FDA's Food Labeling Guide: Permitting manufacturers to make statements about the amount of omega-3 fatty acids present in food product, "including "x grams of omega-3 fatty acids", so long as those statements do not implicitly characterize the level of a nutrient. Request for Judicial Notice ("RJN"), Exhibit ("Ex.") A at 75;

- 71 Fed. Reg. 8597: "Manufacturers may make factual statements about whole grains on the label of their products, such as '100% whole grain' (as percentage labeling under 21 CFR 102.5(b)) or '10 grams of whole grains' (21 CFR 101.13(i) (3)) provided that the statements are not false or misleading under section 403(a) of the Federal Food, Drug, and Cosmetic Act (the act) (21 U.S.C. 343(a)) and do not imply a particular level of the ingredient, i.e., 'high' or 'excellent source.'" RJN, Ex. B.

- FDA's Dear Manufacturer Letter Regarding Food Labeling: "Nutrient content claims (21 CFR 101.13) describe the level of a nutrient in a food using terms such as free, high and low, or they compare the level of a nutrient in a food to that of another food, using terms such as, more, reduced and lite. An accurate quantitative statement (e.g., 200 mg of sodium) may be used to describe any amount of a nutrient present. However, a statement such as only '200 mg of sodium' characterizes the level of sodium as being low and would have to conform to the criteria of an appropriate nutrient content claim or carry a disclosure statement that it does not comply with the claim." RJN, Ex. C at 3.

- FDA Label Claims Website: "Nutrient content claims describe the level of a nutrient in the product, using terms such as *free*, *high*, and *low*, or they compare the level of a nutrient in a food to that of another food, using terms such as *more*, *reduced*, and *lite*. An accurate quantitative statement (e.g., 200 mg of sodium) that does not otherwise characterize the nutrient level may be used to describe the amount of a nutrient present." (emphasis in original). RJN, Ex. D at 3.

*See also* Perigoe Decl., Ex. 1 ("Trumbo Report") at 3-11.

FDA regulations also provide illustrative examples of label statements, such as "100 calories" or "5 grams of fat," that are expressly permitted without a disclaimer (because they *do not*, even implicitly, characterize the amount of the nutrient). 21 C.F.R. § 101.13(i). The front label

29

1    protein content statement at issue here (*e.g.*, "5g protein") is indistinguishable from "100 calories"

2    or "5 grams of fat"—statements that FDA has explicitly stated *are not* "nutrient content claims"

3    that require a disclaimer (like the %DV). *See* §§ 101.13(i)(3); § 101.54. The FDA regulations and

4    related guidance thus make clear that a statement that merely restates the protein content of a

5    product is not a "protein claim."

6    ### ii.  Swartz's Interpretation of the Regulations Is Flawed

7    Swartz's Motion relies solely on his own selective interpretation of the regulations and on

8    court dicta, but his regulatory interpretation is flawed for each of the following reasons:

9    *First*, Swartz primarily argues that the "only sensible way to define a 'protein claim' is as

10   *any statement or representation* about the protein in the product." Motion at 10 (emphasis added).

11   But that illogical argument is inconsistent with FDA's use of the word "claim" and indeed reads

12   the word "claim" out of the term altogether. If that were what FDA intended, the regulation would

13   have said "protein statement" rather than using the word "claim"—which denotes a specific

14   meaning under FDA regulations. FDA states that "[a]mong the claims that can be used on food and

15   dietary supplement labels are three categories of claims that are defined by statute and/or FDA

16   regulations: health claims, nutrient content claims, and structure/function claims." RJN, Ex. D at 1;

17   *see also* Trumbo Report at 8. The protein statement at issue here does not fall within any one of

18   these three categories.

19   *Second*, Swartz's secondary argument, that a protein statement like "5g protein" is a

20   "nutrient content claim" requiring a %DV disclaimer (Motion at 8), relies selectively on a single

21   subsection of the nutrient content claim regulation, making no attempt to reconcile all of its sections

22   with his theory. Swartz not only does not (and cannot) explain how the front protein statement

23   "characterizes" the level of the protein in the product in such a way that it fits the definition of a

24   nutrient content claim under § 101.13(b), but he also fails entirely to grapple with § 101.13(i)(3) of

25   the "nutrient content claim" regulation, which expressly states that *"no disclaimer is required"* for

26   non-misleading statements that "do[] not in any way implicitly characterize the level of the nutrient

27   in the food . . . (e.g., '100 calories' or '5 grams of fat')"—statements that are indistinguishable from

28   "5g Protein." 21 C.F.R. § 101.13(i)(3) (emphasis added). Swartz does not even acknowledge this

30

1   section because it simply cannot be reconciled with his regulatory interpretation.

2           Instead, Swartz relies exclusively on § 101.13(c), *see* Motion at i, 8-9, and cases that quote

3   the language of § 101.13(c), *see id.* at 9-10, to suggest that even a statement that simply restates the

4   amount of nutrient as set forth in the NFP constitutes a "nutrient content claim." But § 101.13(c)

5   must be read in conjunction with the definition of "nutrient content claim" in § 101.13(b) and the

6   rest of the regulation. Indeed, Section 101.13(c) states that if information required in the NFP is

7   also declared elsewhere on the label, it "is subject to the requirements for nutrient content claims."

8   And those requirements indisputably *include* § 101.13(i)(3), which expressly exempts statements

9   like "5g protein" from the requirement to include a disclaimer like %DV.

10          As the table set forth below makes clear, Section 101.13(c) can only be read to mean that

11  NFP restatements are not *immunized* from the nutrient content claim regulation and are still subject

12  to its requirements. Any other reading of § 101.13(c) could not be reconciled with the definition of

13  nutrient content claims § 101.13(b) (which requires nutrient content claims to characterize the level

14  of a nutrient) and § 101.13(i) (which explains that NFP restatements like "100 calories" and "5

15  grams of fat," which do not characterize the level of a nutrient, do not require a disclaimer).

| § 101.13(b) | § 101.13(c) | § 101.13(i) |
|---|---|---|
| *"A claim that expressly or implicitly characterizes the level of a nutrient of the type required* to be in nutrition labeling under § 101.9 or under § 101.36 *(that is, a nutrient content claim)* may not be made on the label or in labeling of foods unless the claim is made in accordance with this regulation and with the applicable regulations in subpart D of this part or in part 105 or part 107 of this chapter." (emphasis added) | "Information that is required or permitted by § 101.9 or § 101.36, as applicable, to be declared in nutrition labeling, and that appears as part of the nutrition label, is not a nutrient content claim and is not subject to the requirements of this section. *If such information is declared elsewhere on the label or in labeling, it is a nutrient content claim and is subject to the requirements for nutrient content claims.*" (emphasis added) | "Except as provided in § 101.9 or § 101.36, as applicable, or in paragraph (q)(3) of this section, *the label or labeling of a product may contain a statement about the amount or percentage of a nutrient if: . . . The statement does not in any way implicitly characterize the level of the nutrient in the food and it is not false or misleading in any respect (e.g., "100 calories" or "5 grams of fat"), in which case no disclaimer is required.*" (emphasis added) |

27  Swartz does nothing to reconcile his reliance on § 101.13(c) with other parts of that same

28

1    regulation—like § 101.13(i)—and neither do the cases he cites.

2        *Third*, without grappling with—much less reconciling—other subsections of § 101.13,

3    Swartz inappropriately relies on dicta and irrelevant cases to support his regulatory interpretation.

4    For example, he suggests that *Nacarino v. Kashi* definitively resolved this regulatory issue. But the

5    text in *Nacarino* on which he relies is dictum with no binding legal effect. *See* September 1, 2023

6    Order Denying Stay at n. 3 (Dkt. 65) (observing that *Nacarino* included "dicta" on "the theory

7    advanced by plaintiff here regarding nutrient content claims is *not* preempted") (emphasis in

8    original). *Nacarino* involved the question of whether a protein representation made outside of the

9    NFP was inherently misleading because it represented total rather than corrected protein. Motion

10   at 9 (citing *Nacarino v. Kashi Co.*, 77 F.4th 1201, 1205 (9th Cir. 2023)). But that is not the issue

11   being assessed here as the Court already dismissed that claim. Dkt. 34 at 8. The *Nacarino* court,

12   moreover, only restated the text of § 101.13(c) and did not employ a thorough regulatory analysis

13   that can reconcile other FDA regulations that conflict with Swartz's interpretation (like §

14   101.13(i)). 77 F.4th at 1209. Other cases on which Swartz relies similarly involve the same

15   irrelevant claim (regarding total versus corrected protein) and/or involved descriptors (like

16   "Premium" protein) that characterized the level of protein (that are not present here). *See e.g.*, *Minor

17   v. Baker Mills, Inc.*, No. 20-CV-02901-RS, 2020 WL 11564643, at *1 (N.D. Cal. Nov. 12, 2020);

18   *Ulrich v. Probalance, Inc*., 2017 U.S. Dist. LEXIS 132202, at *3-4 (N.D. Ill. Aug. 18, 2017); *Porter

19   v. NBTY, Inc.,* No. 15 CV 11459, 2016 WL 6948379, at *1 (N.D. Ill. Nov. 28, 2016). And for others,

20   Swartz picks and chooses only the helpful dicta within the cases but ignores the other language that

21   undermines his argument. *See, e.g.*, *Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111, 1121

22   (N.D. Cal. 2010) (stating that "[a]n express nutrient content claim is a direct statement about the

23   level or range of a nutrient in a food, like '100 calories.'"—but then stating that "*A purveyor may

24   include such a claim so long as it 'does not in any way implicitly characterize the level of the

25   nutrient in the food and it is not false or misleading in any respect (e.g., '100 calories' or '5 grams

26   of fat'), in which case no disclaimer is required.' 21 C.F.R. § 101.13(i)(3).*") (emphasis added). Or

27   he takes on other non-protein statements, *see*, *e.g.*, *Hawkins*, 906 F.3d at 769-70 ("0g Trans Fat"),

28   that have additional regulatory considerations and complexities due to specific rounding rules for

1    statements relating to fats (that are not applicable here), *see* 21 C.F.R. § 317.362.

2       *Fourth*, Swartz cites to a Warning Letter to suggest that there are "contradictory

3    interpretations" between FDA and Dr. Trumbo. Motion at 12. This Warning Letter was issued by

4    an FDA district office in 2014—the same time that Dr. Trumbo was serving as Acting Director of

5    Nutrition Programs at FDA. *See* Trumbo Report at 2. Such inconsistency among FDA employees

6    interpreting these regulations at the same time is only further reason to deny Swartz's motion for

7    partial summary judgment as it shows that the regulatory question at the heart of this case is largely

8    unsettled. And, in any event, Swartz misstates the impact of FDA Warning Letters, as well as the

9    meaning behind this particular FDA Warning Letter. A Warning Letter is not final agency action

10   because FDA uses them for "voluntary compliance" and includes conditional language (such as a

11   manufacturer "should" take corrective action and failure to comply "may result in regulatory

12   action").  *See Holistic Candlers & Consumers Ass'n v. Food & Drug Admin.*, 664 F.3d 940, 944

13   (D.C. Cir. 2012). The plain language of a Warning Letter (including the one cited by Swartz here)

14   indicates that FDA has not finished its decision-making process and that the Letter does not reflect

15   a final determination by FDA. *Id.*  Further, this one Warning Letter Swartz cites was directed at a

16   specific label that is not applicable to this case. *See* Resch Declaration in Support of Flowers'

17   Opposition to Plaintiff's Motion to Exclude Dr. Trumbo, Ex I (Dkt. 186-10). The label did not

18   simply restate the amount of protein on the front-of pack (*i.e.*, 16 g protein), but also prominently

19   displayed the term "PROTEIN" as part of the product's statement of identity (i.e., "PROTEIN

20   BAR") in all caps and in an extremely large font size that measured almost half of the principal

21   display panel. June 6, 2025, Ex. 154. In contrast, the Dave's Killer Bread label does nothing more

22   than restate the protein content from the NFP along with other information from the NFP.

23          **iii.  Flowers' FDA Expert and Contemporaneous Interpretations Are**

24              **Consistent with the Regulations**

25       To the extent there were any ambiguity over how the regulations must be interpreted,

26   Flowers offers the expert testimony of Dr. Trumbo, who spent over 15 years at FDA working

27   directly on these issues, to help explain how these complex regulatory provisions work together.

28   Trumbo Report at 2. Dr. Trumbo's analysis makes clear that interpreting these regulations demands

1    more than a surface-level or selective reading; it requires expertise in navigating the technical

2    language, regulatory context, and agency intent. Swartz's motion exemplifies the risks of drawing

3    legal conclusions from complex regulatory frameworks without the benefit of expert insight.

4          Notably, Flowers' reading of the regulations (as supported by Dr. Trumbo's testimony) is

5    also consistent with Flowers' own internal regulatory analysis over eight years ago. Numerous

6    emails reflect that Flowers regulatory team analyzed the precise issue before the Court as early as

7    June 2017 and determined that the factual statement of protein on the products was not a "protein

8    claim" because it did not characterize the level of protein in the product.

9    - "In US, if we want to claim protein, we need to claim as %DV, which we couldn't meet that

10       requirement after calculation. We can still put gram of protein on the bag, but that is not

11       claimed protein." Resch Decl., Ex. L (Dkt. 176-14) at 4 (June 28, 2017 email);

12    - "Placing the gram amount of a nutrient on the front of pack label does not automatically

13       make it a nutritional claim here in the US." *Id*. at 3 (June 28, 2017 email);

14    - "[T]he company's previous regulatory analysis] did not raise any issues pertaining to us

15       listing the protein per serving on the FOP." *Id*. at 3 (June 29, 2017 email);

16    - "We have previously discussed this subject at length and decided that the protein 'call outs'

17       on the DKB items, in the current format, would not constitute a 'claim.'" *Id*. at 1 (Mar. 18,

18       2020 email);

19    - "If I understood correctly, calling out '12 g of protein' is ok and not an actual claim. A claim

20       would be something like for example. 'Good Source of Protein' or 'Excellent Source of

21       Protein'." Resch Decl., Ex. N (Dkt. 176-16) at 1 (Jan. 26, 2018 email);[9] and

22    - "[S]ince there are no protein 'claims,' then we don't need PDCAAS values and the %DV

23       for Protein should not be included on the product label." *Id*. (Jan. 26, 2018 email).

24          The testimony of Flowers' director of regulatory compliance (Valerie Wayland) confirms

---

[9] Swartz cites to this same email to suggest that this employee "concluded the '12 g protein' claims required the use of a PDCAAS-derived %DV", but, as shown here, the email states the exact opposite. Motion at 12 (citing Reynolds Decl, Ex. 4 (Dkt. 182-6)). As to the other emails he cites, these include language from third parties (not Flowers) and still reflect that consistent with Dr. Trumbo's testimony, Flowers' employees determined their labels complied with the regulations because they did not characterize the level of protein in the product. Motion at 11-12.

34

1    the same understanding. Resch Decl., Ex. K (Dkt. 176-13) at 146:19-147:6 (Q. Did you ever have

2    any concerns that a grams of protein statement could be a protein claim that would require a percent

3    of daily value for protein? A. No, I did not. Q. Why not? A. Because the statement of fact on protein,

4    which is just a restatement of what is in the nutrition facts panel, is not a claim as defined by FDA

5    regulations, which specifically state that claims have to characterize the level of a nutrient in a

6    product with statements like high, good source, low in some cases. But the statement just restating

7    what was in the nutrition facts panel was not considered a claim.); *see also id.* at 149:7-22 (Q. I'm

8    asking who at Flowers and Dave's Killer Bread decided that a grams of protein statement was not

9    a protein claim. A. So the review of product labels is a collaborative effort again, as I've stated.

10    And when looking at the FDA regulations as a whole and understanding what is a claim and what

11    is not a claim, it is clear that per FDA regulation, a statement, a pure statement that doesn't quantify

12    or imply a specific health benefit or quantity of the product in relationship to claims is not a claim.

13    Q. Does the company still believe that today? A. Yes, we do.).

14         Swartz argues that Flowers' understanding of the regulations is irrelevant to his unlawful

15    claim. Motion at 11. But Swartz misses the point. Flowers' contemporaneous analysis—supported

16    by Flowers' regulatory expert, a former FDA official—all of which is consistent with the FDA

17    regulations—demonstrates that there is only one way to interpret this complex regulatory scheme,

18    and that is to hold that a "protein claim" cannot encompass a statement that neither implicitly or

19    explicitly characterizes the amount of protein in a product.

20         Swartz's motion for summary judgment as to his unlawful claim should be denied because

21    his regulatory interpretation is wrong. Because there is a dispute as to how the complex regulatory

22    scheme should be applied here and as to whether "5g protein" is a "protein claim," at the very least,

23    the issue should be deferred to trial, where the Court will have the benefit of expert testimony and

24    other evidence. *See Anderson*, 477 U.S. at 251-52 (summary judgment should be denied where the

25    evidence is not "so one-sided" that moving party "must prevail as a matter of law").

26    **IV.    CONCLUSION**

27         For the foregoing reasons, Flowers respectfully requests that the Court grant summary

28    judgment in Flowers' favor on all claims, and deny Swartz's motion for partial summary judgment.

1    Dated: October 3, 2025                KING & SPALDING LLP

2                                          By:   */s/ Kelly L. Perigoe*
3                                                Kelly L. Perigoe
                                                 Michael L. Resch
4                                                Livia M. Kiser
                                                 Samuel R. Diamant
5                                                Rebecca L. Paradis
                                                 Quyen L. Ta
6
                                                 *Attorneys for Defendants*
7                                                *Flowers Food, Inc. and*
                                                 *Dave's Killer Bread, Inc.*
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

36