**GUTRIDE SAFIER LLP**
Seth A. Safier (State Bar No. 197427)
  seth@gutridesafier.com
Marie A. McCrary (State Bar No. 262670)
  marie@gutridesafier.com
Hayley Reynolds (State Bar No. 306427)
  hayley@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile:  (415) 449-6469

Matthew T. McCrary (*pro hac vice*)
  matt@gutridesafier.com
4450 Arapahoe Ave., Suite 100
Boulder, CO 80303
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

Patrick J. Branson (*pro hac vice*)
  patrick@gutridesafier.com
305 Broadway, 7th Floor
New York, NY 10007
Telephone: 415-639-9090
Facsimile: (415) 449-6469

*Attorneys for Plaintiff
David Swartz*

UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID SWARTZ, an individual, on behalf of himself, the general public, and those similarly situated,<br><br>                      Plaintiff,<br><br>  v.<br><br>DAVE'S KILLER BREAD, INC. and FLOWERS FOODS, INC.,<br><br>                      Defendants. | CASE NO. 4:21-cv-10053-YGR<br><br>REPLY IN SUPOORT OF PLAINTIFF'S MOTION TO EXCLUDE DEFENDANT'S EXPERT, DR. PAULA TRUMBO<br><br>DATE: December 9, 2025<br>TIME: 2:00 p.m.<br>CTRM: Courtroom 1, 4th Floor<br><br>Hon. Yvonne Gonzalez Rogers |

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................... 1
II. ARGUMENT .................................................................................................................. 2
    A. Dr. Trumbo's Legal Opinions are Improper and Unhelpful. ............................... 2
    B. Dr. Trumbo Cannot Opine on Behalf of the FDA. ................................................ 6
    C. Dr. Trumbo's Regulatory Opinions Are not Reliable. ........................................... 7
    D. Daubert Requires Exclusion. ................................................................................. 8
    E. Dr. Trumbo's Industry Practice Opinions Should be Excluded. ............................ 9
III. CONCLUSION ............................................................................................................. 10

# TABLE OF AUTHORITIES

**Cases**

*Eisen v. Day*,
   No. 21-cv-05349-VKD, 2024 U.S. Dist. LEXIS 50880 (N.D. Cal. Mar. 21, 2024) ................ 9

*Extenet Sys. Ltd. Liab. Co. v. City of Rochester*,
   623 F. Supp. 3d 178 (W.D.N.Y. 2022) ................................................................................. 5

*Hawkins v. Kroger*,
   906 F.3d 763 (9th Cir. 2018) ................................................................................................. 6

*Holley v. Gilead Scis., Inc.*,
   No. 18-cv-06972-JST, 2023 U.S. Dist. LEXIS 43145 (N.D. Cal. Feb. 27, 2023) ............... 1, 3

*In re Coll. Athlete Nil Litig.*,
   No. 20-cv-03919 CW, 2023 U.S. Dist. LEXIS 216553 (N.D. Cal. Nov. 3, 2023) .................. 3

*In re DA Vinci Surgical Robot Antitrust Litig.*,
   No. 21-cv-03825-AMO, 2024 U.S. Dist. LEXIS 244092 (N.D. Cal. Mar. 31, 2024) ............. 3

*In re Fosamax Prods. Liab. Litig.*,
   645 F. Supp. 2d 164 (S.D.N.Y. 2009) ........................................................................... 1, 4, 5

*In re Xyrem Sodium Oxybate Antitrust Litig.*,
   No. 20-md-02966-RS, 2024 U.S. Dist. LEXIS 167408 (N.D. Cal. Aug. 16, 2024) ............... 3

*In re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices & Prods. Liab. Litig.*,
   No. 3:09-md-02100-DRH-PMF, 2011 U.S. Dist. LEXIS 145593 (S.D. Ill. Dec. 16, 2011) ... 4

*In re Zicam Cold Remedy Mktg., Sales, Practices, & Prods. Liab. Litig.*,
   No. 09-md-2096-PHX-FJM, 2011 U.S. Dist. LEXIS 20356 (D. Ariz. Feb. 23, 2011) ........... 5

*Kisor v. Wilkie*,
   588 U.S. 558 (2019) ............................................................................................................... 7

*McCoy v. Depuy Orthopaedics, Inc.*,
   No. 22-CV-2075 JLS (SBC), 2024 U.S. Dist. LEXIS 72108 (S.D. Cal. Apr. 19, 2024) .... 1, 4

*Nacarino v. Kashi Co.*,
   77 F.4th 1201 (9th Cir. 2023) ................................................................................................ 6

*Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*,
   523 F.3d 1051 (9th Cir. 2008) ............................................................................................ 1, 3

*Reid v. Johnson & Johnson*,
   780 F.3d 952 (9th Cir. 2015) ................................................................................................. 6

*United States v. Bilzerian*,
   926 F.2d 1285 (2d Cir. 1991) ................................................................................................ 4

*United States v. Diaz*,
   876 F.3d 1194 (9th Cir. 2017) ............................................................................................... 4

*United States v. Duncan*,
   42 F.3d 97 (2d Cir. 1994) ...................................................................................................... 4

*United States v. Hermanek*,
   289 F.3d 1076 (9th Cir. 2002) ............................................................................................ 7, 9

*Wendell v. GlaxoSmithKline LLC*,
   858 F.3d 1227 (9th Cir. 2017) ............................................................................................ 8, 9

**Other Authorities**

71 Fed. Reg. 8597 ........................................................................................................................ 7

**Rules**

Fed. R. Evid. 702 .................................................................................................................... 2

**Regulations**

21 C.F.R. § 101.13(b) ............................................................................................................. 6

21 C.F.R. § 101.13(b)(1) ......................................................................................................... 5

21 C.F.R. § 101.13(c) ........................................................................................................ 5, 6

21 C.F.R. § 101.13(i)(3) .......................................................................................................... 6

I.     INTRODUCTION

In his opening brief, Plaintiff established that this Court should exclude the legal conclusions masquerading as expert opinions from Dr. Paula Trumbo. In response, Defendants claim that Dr. Trumbo's opinions are proper and necessary because the FDA regulations at issue in this case are "labyrinthine requirements . . . beyond the common understanding of jurors and courts," ECF No. 186 ("Opp'n") at 2, despite the fact that this Court and multiple other courts—including the Ninth Circuit—have interpreted these very regulations in simple and straightforward terms. In other words, Defendants acknowledge that Dr. Trumbo's opinions on the FDA regulations at issue here are legal conclusions, but because Defendants do not like the interpretations reached by courts—and the FDA itself—they wish to offer their own interpretation of the law in the guise of an expert opinion. This is improper.

As discussed in Plaintiff's opening brief, legal conclusions offered by an expert are plainly impermissible and inadmissible. *See* ECF No. 180 ("Mot. to Exclude) at 9–11. Indeed, "an expert witness cannot give an opinion as to her legal conclusion, i.e., an opinion on an ultimate issue of law. Similarly, instructing the jury as to the applicable law is the distinct and exclusive province of the court." *Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1058 (9th Cir. 2008). In the cases Defendants cite in their opposition, experts analyzed the FDA's complex approval and compliance processes to lay a foundation for their opinions, rather than—as here—solely interpretating specific regulations. *See, e.g.*, *Holley v. Gilead Scis., Inc.*, No. 18-cv-06972-JST, 2023 U.S. Dist. LEXIS 43145, at *27–30 (N.D. Cal. Feb. 27, 2023) (allowing expert to opine on *reasonableness* of compliance with FDA regulations regarding drug approval); *In re Fosamax Prods. Liab. Litig.*, 645 F. Supp. 2d 164, 191 (S.D.N.Y. 2009) (allowing expert to reference FDA regulations in testimony to establish the "*standard of care* in the pharmaceutical industry," because "a lay jury cannot be expected to understand the complex regulatory framework that informs the standard of care"); *McCoy v. Depuy Orthopaedics, Inc.*, No. 22-CV-2075 JLS (SBC), 2024 U.S. Dist. LEXIS 72108, at *49 (S.D. Cal. Apr. 19, 2024) ("To the extent Dr. Kessler opines that DePuy's warnings were inadequate as a matter of state law, his testimony is improper. But Dr. Kessler may testify on the problems with warnings or the lack of warnings to help the jury

understand the standard of care, even if doing so involves discussing industry regulations."). Moreover, that testimony was only allowed because it helped the expert opine on an *underlying factual issue*, not simply to offer an opinion on what the *law requires*. These cases are, therefore, inapposite. Ultimately, nothing Defendants offer saves Dr. Trumbo's testimony under Rule 702, which permits expert opinions only if they "help the trier of fact to understand the *evidence* or to determine *a fact in issue*." (emphasis added). Dr. Trumbo interpretations of the law do neither.

Moreover, as Plaintiff initially established, even if Dr. Trumbo's opinions interpreting FDA regulations were not plainly legal conclusions, they are unhelpful and unreliable. *See* Mot. to Exclude at 11–15. Indeed, despite Defendants' claims that the regulations here are beyond the comprehension of courts, this Court—and the Ninth Circuit—have had no issue interpreting them. Dr. Trumbo offers nothing of substance to rebut these interpretations but her own *ipse dixit*. Further, despite purporting to base her opinions on her knowledge and experience at the FDA, a contemporaneous warning letter from the FDA directly contradicts her legal interpretation. *See* Mot. to Exclude at 6–7; ECF No. 180-2. Dr. Trumbo offers nothing to bridge the gap between her recollection of the FDA's interpretation and the FDA's actual conduct—calling into question the reliability of her opinions which are purportedly based on her time at the agency.

Finally, Dr. Trumbo is not qualified to opine on industry practice regarding protein labeling. And even if qualified, Dr. Trumbo has not proffered reliable opinions regarding industry practice. As Plaintiff established in his opening brief, Dr. Trumbo, despite her purported experience with labeling requirements, could not identify a single product with labeling similar to Defendants' labels and, in fact, admitted that she did not, and does not typically, review product labels. Thus, Dr. Trumbo has not connected her knowledge and experience with her opinions on industry practice—making her opinions on such practices inherently unreliable.

## II. ARGUMENT

### A. Dr. Trumbo's Legal Opinions are Improper and Unhelpful.

In her report, Dr. Trumbo concludes that, as a matter of law, "[t]he front of pack protein content statement on DKB product labels complied with FDA regulations." ECF 176-19 (Report of Dr. Trumbo) (hereinafter "Report") at 7; *see also* Report at 7–8, ¶ 22 ("the FOP statement on

DKB products is not a 'protein claim' as outlined in 21 CFR 101.9(c)(7)."); *id.* ("Because '5g protein' on the front label is an accurate quantitative statement, rather than a nutrient content claim that characterizes the level of a nutrient, a 'corrected' amount of protein, expressed as %DV, is not required.").

Such conclusions are plainly legal in nature and are "the distinct and exclusive province of the court." *Nationwide Transp. Fin.*, 523 F.3d at 1058. As such, Dr. Trumbo's opinions are impermissible and inadmissible. *See In re Coll. Athlete Nil Litig.*, No. 20-cv-03919 CW, 2023 U.S. Dist. LEXIS 216553, at *26–27 (N.D. Cal. Nov. 3, 2023) (finding "opinions about what Title IX requires or does not require, based on [expert's] understanding of the history of Title IX or otherwise, . . . are impermissible legal conclusions"); *In re Xyrem Sodium Oxybate Antitrust Litig.*, No. 20-md-02966-RS, 2024 U.S. Dist. LEXIS 167408, at *23 (N.D. Cal. Aug. 16, 2024) (excluding expert testimony "to the extent [the expert] offers specific legal conclusions about the scope of FDA's authority to require a single central pharmacy."); *In re DA Vinci Surgical Robot Antitrust Litig.*, No. 21-cv-03825-AMO, 2024 U.S. Dist. LEXIS 244092, at *17–18 (N.D. Cal. Mar. 31, 2024) (holding that an expert "cannot offer an ultimate opinion as to Plaintiffs' compliance or noncompliance with regulatory requirements, because an expert may not testify that certain conduct did or did not violate the law." (cleaned up)).

In opposition, Defendants point to cases in which courts allowed a regulatory expert to opine on complex FDA regulatory structures and administrative procedures regarding market pre-approval for pharmaceuticals. *See* Opp'n at 2. But even in those cases, the courts were clear that pure legal conclusions, such as those offered by Dr. Trumbo, remained impermissible; instead, although the expert's language embraced legal terminology it still ultimately went to a disputed issue of fact not law. *See, e.g., Holley*, 2023 U.S. Dist. LEXIS 43145, at *29–30 ("Consistent with Rule 704(a), this court has repeatedly affirmed that an expert witness cannot give an opinion as to her legal conclusion, i.e., an opinion on an ultimate issue of law. This prohibition of opinion testimony on an ultimate issue of law recognizes that, when an expert undertakes to tell the jury what result to reach, this does not aid the jury in making a decision, but rather attempts to substitute the expert's judgment for the jury's." (cleaned up)); *In re Fosamax Prods. Liab. Litig.*,

645 F. Supp. 2d at 173 ("testimony is not helpful if it 'usurp[s] either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts before it.'" (quoting *United States v. Duncan*, 42 F.3d 97, 101 (2d Cir. 1994) (quoting *United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991))); *McCoy*, 2024 U.S. Dist. LEXIS 72108, at *49 ("To the extent Dr. Kessler opines that DePuy's warnings were inadequate as a matter of state law, his testimony is improper."). This is in keeping with the Ninth Circuit's clear rule that an expert's testimony "is not an impermissible legal conclusion" simply because it "resort[s] to language that recurs in the applicable legal standard," but nevertheless is an inadmissible legal conclusion where it is "an attempt to *instruct the jury on the law*, or how to *apply the law to the facts of the case*." *United States v. Diaz*, 876 F.3d 1194, 1198–99 (9th Cir. 2017). Here, Dr. Trumbo's report does not just embrace legal terminology, she attempts to instruct the jury (or the court) either on (1) what the law actually entails, i.e., how to interpret the regulations at issue; or (2) how to apply the law to the facts of the case, i.e., by opining that Defendants' conduct complied with the law.

      Indeed, where courts allow a regulatory expert to opine on factual issues that intersect with compliance with FDA regulations, it is because those cases require the jury to understand exceedingly complex regulatory frameworks and standards. For example, in *In re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices & Prods. Liab. Litig.*, plaintiff offered an expert to opine on pharmaceutical approval standards and obligations for promoting off-label uses. *See In re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices & Prods. Liab. Litig.*, No. 3:09-md-02100-DRH-PMF, 2011 U.S. Dist. LEXIS 145593, at *37 (S.D. Ill. Dec. 16, 2011) ("The Court finds that Dr. Kessler's testimony is permissible because of the complex nature of the process and procedures and the jury needs assistance understanding it."). In *In re Zicam Cold Remedy Mktg., Sales, Practices, & Prods. Liab. Litig.*, plaintiffs offered an expert on whether (and if so, when) pharmaceutical industry and regulatory standards required defendants to warn Zicam consumers about possible health risks, what defendants should have known about a possible risk of anosmia, and when they should have known it—all still factual issues. No. 09-md-2096-PHX-FJM, 2011 U.S. Dist. LEXIS 20356, at *108–09 (D. Ariz. Feb. 23, 2011) ("Industry practices and the

regulatory framework governing both prescription and over-the-counter drugs, as well as homeopathic and allopathic drugs, are complex . . . . [T]he agency's proactive approach to drug safety requires that manufacturers take specific steps in response to the detection of certain safety signals. Expert testimony could help a jury understand agency rules and procedures."). And in *In re Fosamax Prods. Liab. Litig.*, an out-of-circuit negligence case, plaintiffs offered expert testimony on, among other things, the general role of the FDA and the duties and obligations of prescription drug manufacturers, as well as the FDA's approval of the New Drug Application for the drug at issue, which testimony the court ultimately allowed. 645 F. Supp. 2d 164, 191 (S.D.N.Y. 2009). Notably, however, the question in that case was not whether the defendant had violated FDA regulations, but whether it had violated the state duty of care, which in turn depended on the *fact question* of the reasonableness of the defendant's conduct. The expert's testimony was admissible because her "assessment of the *reasonableness* of Merck's conduct in light of her understanding of FDA regulations will be helpful to the jury" because "a lay jury cannot be expected to understand the complex regulatory framework that *informs the standard of care* in the pharmaceutical industry." *Id.* (emphasis added). Put simply, although the expert's opinion embraced FDA regulations, it ultimately went to a disputed question of fact, and did not usurp the Court's role in instructing the jury on what the law is.[1]

Here, in contrast, Dr. Trumbo is not opining on a complex regulatory structure such as pharmaceutical approval, nor is she offering any opinions on *any disputed facts*. She is testifying as to her interpretation of a discrete set of FDA regulations. Indeed, the central question on which Dr. Trumbo seeks to opine is whether the statement "5g Protein" that appears on the front labels of Defendants' packaging is a "protein claim" or "nutrient content claim" under 21 C.F.R. § 101.13(b)(1) and § 101.13(c). Thus, as Dr. Trumbo opines on a discrete legal interpretation rather than any facts that happen to embrace a complex regulatory framework, her opinions are improper and should be excluded.

---

[1] *See Extenet Sys. Ltd. Liab. Co. v. City of Rochester*, 623 F. Supp. 3d 178, 182 (W.D.N.Y. 2022) ("Courts are generally reluctant to grant summary judgment in negligence cases because the assessment of reasonableness is generally a question of fact in all but the most extreme cases.")

In addition to being outright impermissible, Dr. Trumbo's legal conclusions are mistaken and unhelpful. Multiple courts, including this Court and the Ninth Circuit, have already held that quantitative statements about nutrients are nutrient content claims (and/or protein claims), and do directly characterize the level of nutrients in the product under 21 C.F.R. §§ 101.13(b) and (c). *See, e.g.*, ECF 34 at 6 ("For example, the statement '5 Grams of Protein' included on the front label of defendants' products constitutes an explicit nutrient content claim."); *Nacarino v. Kashi Co.*, 77 F.4th 1201, 1205 (9th Cir. 2023) ("When manufacturers make a claim outside the NFP that describes the amount of one of the nutrients required to be included in the NFP, FDA regulations refer to the statement as a 'nutrient content claim,' or, if the statement describes protein, a 'protein claim. The challenged claims here ['11g Protein' and 'PROTEIN 15g'] are protein claims because they appear outside the NFP and characterize the amount of protein in the products."); *Hawkins v. Kroger*, 906 F.3d 763, 770–71 (9th Cir. 2018) (interpreting § 101.13(b), which defines nutrient content claims, and holding that "0g trans fat" was "an 'expressed' nutrient content claim because it was 'a direct statement about the level of trans fat in the food" and therefore subject to the requirements of § 101.13(i)(3)); *Reid v. Johnson & Johnson*, 780 F.3d 952, 960 (9th Cir. 2015) (interpreting § 101.13(c) to mean that "[w]hile a required statement inside a nutrition facts label escapes regulations reserved for nutrient content claims, the identical statement outside of the nutrition label is still considered a nutrient content claim and is therefore subject to section 101.13"). Accordingly, as the regulations here are not—despite Defendants' claims to the contrary—so labyrinthian as to be beyond the ken of courts, Dr. Trumbo's interpretation of the FDA regulations here will not aid the trier of fact but would, rather, usurp the role of the court in determining the law applicable to this case.

**B.      Dr. Trumbo Cannot Opine on Behalf of the FDA.**

Dr. Trumbo purports to opine on how the FDA interprets (or perhaps even "would" interpret) the regulations at issue. *See* Report ¶ 17 ("FDA does not consider the declaration of protein content (e.g., '5g protein') to be a nutrient content claim"); ¶ 22 ("FDA does not consider FOP statements that are identical to statements made in the NFP to require additional labeling, including the %DV"). Dr. Trumbo cannot do so. The Supreme Court has made clear that official

1  agency interpretations can only "emanate from those actors, using those vehicles, understood to
2  make authoritative policy," and that they must reflect the considered views of the agency itself,
3  not the "ad hoc statements" of a single, former employee. *Kisor v. Wilkie*, 588 U.S. 558, 577
4  (2019). That Defendants claim that Dr. Trumbo's opinions are her own and do not purport to be
5  those of the FDA (Opp'n at 17–18) only emphasizes how unhelpful her testimony would be and
6  how Defendants are attempting to cloak *ipse dixit* legal conclusions in the guise of an expert
7  opinion.

8          **C.    Dr. Trumbo's Regulatory Opinions are not Reliable.**

9          Where, as here, "an expert seeks to rely on his knowledge and experience, he must explain
10 the link between his conclusions, his 'knowledge,' and the 'investigatory facts and evidence he
11 [is] drawing from.'" *United States v. Hermanek*, 289 F.3d 1076, 1094 (9th Cir. 2002). Here,
12 despite purporting to base her opinions on her knowledge and experience at the FDA, a
13 contemporaneous warning letter sent by the FDA—*during her time at the agency*—directly
14 contradicts Dr. Trumbo's legal interpretation. *See* Mot. to Exclude at 6–7; ECF No. 180-2. Dr.
15 Trumbo offers nothing to bridge the gap between her recollection of the FDA's interpretation and
16 the FDA's actual conduct—dooming the reliability of her opinions, which are purportedly based
17 on her experience working at the FDA.

18          Moreover, although Defendants claim Dr. Trumbo's knowledge of FDA documents and
19 materials is "encyclopedic," they do not explain how that knowledge relates to her opinions here.
20 *See* Opp'n at 13. Defendants claim that Dr. Trumbo's "encyclopedic knowledge of the FDA
21 documents and materials allows her to rely on and point to various FDA documents, including
22 FDA's Food Labeling Guide and other guidance and related notices (e.g., 71 Fed. Reg. 8597),
23 FDA's website on label claims, and even an IOM report commissioned by FDA and NAS." *Id*.
24 But in her report and at deposition, Dr. Trumbo could not identify a single writing from the FDA,
25 a court, or scholarly article to support her idiosyncratic interpretation of these regulations. *See*
26 Mot. at 2. Thus, although Defendants claim that Dr. Trumbo knows a lot about FDA documents
27 and materials, none of those documents and materials relate to her legal conclusions.
28

In sum, although an expert opinion can be reliable when based on experience, Dr. Trumbo's experience and purported conversations with unnamed FDA employees clearly does not capture the understanding of the FDA with regards to the regulations at issue here, as evidenced by the warning letter, which directly contradicts Dr. Trumbo's conclusion. And Dr. Trumbo's purported knowledge of FDA documents and materials does not relate to her opinion here—which is not supported by documents and materials. Thus, Dr. Trumbo offers nothing but her own *ipse dixit* to support her opinions, which is not a reliable method.

### D.  Daubert Requires Exclusion.

In their opposition, Defendants point to *Wendell v. GlaxoSmithKline LLC*, 858 F.3d 1227, 1233–34 (9th Cir. 2017), in which the Ninth Circuit held that the district court improperly excluded the expert testimony of two physicians offered by plaintiffs, as a "particularly instructive example." There, the Ninth Circuit held that the district court wrongly "put [too] much weight on the fact that the experts' opinions were not developed independently of litigation and had not been published," "wrongly conflated the standards for publication in a peer-reviewed journal with the standards for admitting expert testimony in a courtroom," and wrongly "required that the experts' opinions rely on animal or epidemiological studies." *Id*. at 1235. The experts did, however, "rely on other published studies and articles," as well as "their own wealth of experience and additional literature." *Id*. at 1236. Thus, the court held that:

> Where, as here, two doctors who stand at or near the top of their field and have extensive clinical experience with the rare disease or class of disease at issue, are prepared to give expert opinions supporting causation, we conclude that *Daubert* poses no bar based on their principles and methodology. That defendants may be able to offer other equally qualified medical opinion opposing causation also does not support the idea that *Daubert* should bar the admission of the testimony of the doctors offered as experts by Plaintiffs. Instead, the testimony of Dr. Weisenburger and of Dr. Shustov should have been admitted as expert testimony under Federal Rules of Evidence 702. The defendants' expert testimony could have been offered in opposition. Then, the jury, as the trier of fact, would be empowered to decide, based on the law given in proper jury instructions and the facts as determined by the jury.

*Id*. at 1237–38.

The facts of *Wendell*, however, simply do not track this case. Whereas in *Wendell*, the experts cited published studies and articles to support their experience, Dr. Trumbo offers no such

studies and articles. Whereas in *Wendell*, the doctor's experience went directly to the issue on which they opined—"the rare disease or class of disease at issue"—Dr. Trumbo has not connected her experience with the FDA to her opinions on regulatory interpretation. And whereas, in *Wendell*, the court noted that defendants could offer a rebuttal expert and then allow the trier of fact to decide which expert was correct, Dr. Trumbo offers an opinion on a matter of law, meaning that arguments in opposition would, and have, come from the interpretation of courts (including this one) as to what the law is or is not.

In short, *Wendell* is inapplicable to this case. This is not a matter of weight, but rather a matter of an expert attempting to usurp the role of the courts as the arbiter of the law.

### E. Dr. Trumbo's Industry Practice Opinions Should be Excluded.

Even if qualified, Dr. Trumbo has not proffered reliable opinions regarding industry practice. Dr. Trumbo does not cite any experience, research, or examples to support her conclusion about what was "common," nor does she provide examples of the supposed "several other products with protein statements on the FOP omitted the %DV in the NFP." In deposition, Dr. Trumbo stated that she conducted online research but could not explain how that research supported her conclusion regarding historic practices[2] but could not name a single product that included a protein claim but omitted the %DV in the NFP. Reynolds Decl., Ex. 2, Trumbo Depo., at 173:10–177:17. Moreover, Dr. Trumbo testified, repeatedly, that she does not herself look at food labels. Reynolds Decl., Ex. 2, Excerpt of Deposition Transcript of Dr. Paula Trumbo ("Trumbo Depo."), at 242:20–22.

Because Dr. Trumbo seeks to opine on industry practice based on her knowledge and experience, she must "explain the link between [her] conclusions, [her] 'knowledge,' and the 'investigatory facts and evidence [s]he [is] drawing from.'" *Hermanek*, 289 F.3d at 1094. Dr. Trumbo has not done so—making her opinions on such practices inherently unreliable.

---

[2] To the extent Dr. Trumbo purports to rely on her internet "research" she has failed to disclose any written results or working papers evidencing her methods and conclusions. Such a failure is compounded by Dr. Trumbo's inability to recollect the results on her research at deposition and provides an additional basis to exclude her opinions based on this research. *See Eisen v. Day*, No. 21-cv-05349-VKD, 2024 U.S. Dist. LEXIS 50880, at *17 (N.D. Cal. Mar. 21, 2024) (holding that an expert could not testify on opinions based on undisclosed materials and that the "failure to disclose was compounded by Mr. Clark's inability to remember and testify in detail about the datasets, models, and calculations that he considered and upon which he relief").

1    Dr. Trumbo's industry practice opinion is also irrelevant and unhelpful. Defendants argue that Dr. Trumbo's testimony on industry practice is relevant to show Defendants' knowledge and intent. *See* Opp'n at 18 ("Dr. Trumbo's industry practice opinions are directly relevant to Plaintiff's claims, including his fraud-based claims asserting Flowers 'knew' its label was false, and that it purposefully omitted the %DV with the intent to deceive"). Dr. Trumbo, of course, cannot opine directly on Defendants' knowledge and intent as she has no knowledge of or experience with the internal workings of Defendants other than documents she has reviewed in this litigation. Instead, Defendants argue that Dr. Trumbo's opinions on industry practice "provide important context as to the environment in which Flowers was operating and the Flowers interpretation of the regulations." *Id*. Again, Dr. Trumbo has no knowledge of Defendants' intent or knowledge when they interpreted the regulations. And, as to context, Defendants have not established how this is relevant. Defendants have not, for example, proffered a legal basis for an "everyone-else-was-doing-it" style defense or shown that Defendants looked to others in the industry when interpreting the regulations at issue. Nor could they. The law makes no exceptions for "industry practice." It does not matter of everyone else also violated the regulations at issue in this case, that does not make Defendant any less culpable for its own violations.

### III.  CONCLUSION

For the reasons stated above, the Court should grant Plaintiff's Motion to Exclude the opinions of Dr. Trumbo.

Dated: October 10, 2025

**GUTRIDE SAFIER LLP**

*/s/ Patrick J. Branson*
Seth A. Safier (State Bar No. 197427)
 seth@gutridesafier.com
Marie A. McCrary (State Bar No. 262670)
 marie@gutridesafier.com
Hayley Reynolds (State Bar No. 306427)
 hayley@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

Matthew T. McCrary (*pro hac vice*)
 matt@gutridesafier.com
4450 Arapahoe Ave., Suite 100
Boulder, CO 80303
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

Patrick J. Branson (*pro hac vice*)
 patrick@gutridesafier.com
305 Broadway, 7th Floor
New York, NY 10007
Telephone: 415-639-9090
Facsimile: (415) 449-6469

*Attorneys for Plaintiff
David Swartz*